UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LEROY MONTGOMERY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 07-CV-02234 |
| | ) | |
| PENSION BENEFIT GUARANTY | ) | |
| CORPORATION | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Pension Benefit Guaranty Corporation ("PBGC") submits this memorandum in support of its motion for summary judgment pursuant to Fed. R. Civ. P. 56.

### INTRODUCTION

PBGC is a wholly owned United Stated Government corporation, created under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA").[1] PBGC administers the federal insurance program for underfunded defined benefit pension plans that terminate.[2] Subject to statutory limits, PBGC guarantees the benefits earned by participants in pension plans covered under Title IV. When a pension plan covered under Title IV terminates without sufficient assets to pay benefits, PBGC typically becomes

---

[1] 29 U.S.C. §§ 1301-1461 (2000 & Supp. V 2005).
[2] See generally *PBGC v. LTV Corp.*, 496 U.S. 633 (1990).

trustee of the plan, takes over the plan's assets and liabilities, and pays guaranteed benefits to plan participants and their surviving beneficiaries.[3]

In this action, Plaintiff, Leroy Montgomery, seeks judicial review of PBGC's determination that he is not entitled to a benefit under the LTV Steel Hourly Pension Plan (the "Plan"),[4] the successor to the Pension Plan for Hourly Employees of Youngstown Sheet and Tube Company and Affiliates (hereinafter referred to as the "YS&T Plan"). As the administrative record of PBGC's determination shows, Mr. Montgomery did not have the requisite years of service to receive a benefit under the terms of the YS&T Plan that were in effect when he retired in 1973. Therefore, he is not entitled to a benefit.

## STATUTORY BACKGROUND

ERISA, which Congress enacted on September 2, 1974, is a "comprehensive and reticulated statute which imposes a broad range of requirements on private pension plans."[5] Prior to the enactment of ERISA in 1974, many pension plans required an extensive length of service before an employee's benefit became vested.[6] Congress recognized that many employees with long years of service were losing their anticipated retirement benefits.[7] To address this, Congress prescribed minimum standards for eligibility and vesting in ERISA. When enacted, ERISA provided that pension plans require no more than 10 years of service for a participant's benefit to be 100 percent

---

[3] *See* 29 U.S.C. §§ 1322, 1342, 1344, 1361.
[4] Pursuant to an agreement, dated March 31, 2002, the Plan was terminated and PBGC was appointed its statutory trustee.
[5] *Nachman v. Pension Ben. Guar. Corp.*, 446 U.S. 359, 361 (1980).
[6] *Id*. at 374-75.
[7] *See Swaida v. IBM Retirement Plan*, 570 F.Supp. 482, 484 (S.D.N.Y. 1983).

vested.[8]  Congress explicitly stated, however, that ERISA's vesting provisions would apply only prospectively, effective January 1, 1976.[9]

Title IV of ERISA established a pension plan termination insurance program to address the "'great personal tragedy' suffered by employees whose vested benefits are not paid when pension plans are terminated."[10]  PBGC was created to administer the program.[11]  When a covered pension plan terminates without enough assets to pay the benefits that participants earned under the terms of the plan, PBGC becomes trustee of the plan and pays benefits to participants, up to certain statutory limits.

PBGC guarantees "all nonforfeitable benefits" under a pension plan.[12]  A nonforfeitable benefit is "a benefit for which a participant has satisfied the conditions for entitlement under the plan."[13]  When PBGC becomes trustee of a terminated plan, it obtains the plan and participant records, and determines the amount that each participant is (or will be) due, if any, and sends a letter setting forth the determination.[14]

A participant who wants to challenge PBGC's benefit determination must first file an appeal with PBGC's Appeals Board.[15]  In addressing the appeal, the Appeals Board must consider those portions of the file relating to the initial determination, all materials

---

[8] ERISA § 203(a)(2), Pub.L. 93-406, 1974 U.S.C.C.A.N. (93 Stat.) 965-968, codified at 29 U.S.C. 1053 (a)(2) (1976).  ERISA's current minimum vesting standards mandate that pension plans require no more than five years of service for a participant's benefit to be 100 percent vested or a seven-year cliff vesting schedule, 29 U.S.C. §1053(a)(2).

[9] 29 U.S.C. § 1061(b)(2); The Second, Fifth, Sixth, Seventh, Ninth and DC Circuit Courts of Appeals all held that ERISA's vesting cap was not available retroactively to pension plan participants who ceased employment with the plan sponsor prior to January 1, 1976. *Cohen v. Martin's*, 694 F.2d 296, 298; *Flynn. V. Aetna Cas. & Sur. Co.*, 698 F.2d 758, 759 (5th Cir. 1983); *Fremont* v. McGraw-Edison Co., 606 F.2d 752, 755(7th Cir. 1979), cert. denied, 445 U.S. 951 (1980); *Stewart v. National Shopmen Pension Fund*, 563 F. Supp. 773, 777 (D.D.C. 1983), *reversed on other grounds*, 730 F.2d 1552 (D.C. Cir. 1984).

[10] *Nachman,* 446 U.S. at 374-375 (quoting from 3 Leg.Hist. 4793; 2 Leg.Hist. 1599-1600).

[11] *Id*. at 361.

[12] 29 U.S.C. § 1322.

[13] 29 U.S.C. § 1301(a)(8).

[14] PBGC's regulation governing issuance of its initial determinations and the administrative appeals process is published at 29 C.F.R. Pt. 4003.  *See* 29 C.F.R. §§ 4003.1(a), (b)(6) and (7); 29 C.F.R. § 4003.2.

[15] 29 C.F.R. § 4003.7.

submitted by the appellant and by any third parties, and any additional information submitted by PBGC staff.[16] The decision of the Appeals Board constitutes PBGC's final agency action,[17] after which a participant may seek judicial review under 29 U.S.C. § 1303(f).

## STATEMENT OF FACTS

Plaintiff, Leroy Montgomery, was employed by YS&T from May 19, 1959, until March 17, 1973.[18] He had earned 13 years and 9 months of continuous service under the YS&T Plan when he left employment with YS&T.[19] His employment ended prior to the enactment of ERISA's minimum vesting standards.

After a merger between the LTV Corporation ("LTV") and YS&T, the YS&T Plan was merged into the Plan.[20] Pursuant to an agreement between PBGC and LTV, dated March 31, 2002, the Plan was terminated and PBGC was appointed statutory trustee.[21]

On September 26, 2004, Plaintiff's daughter, Vikki Montgomery, acting on behalf of her father, filed a claim with PBGC for pension benefits under the Plan.[22] On October 5, 2004, PBGC determined that Plaintiff was not entitled to a benefit under the Plan. The determination was based on the provisions of the YS&T Plan that were in effect when Mr. Montgomery retired in 1973, which required that a participant have at least 15 years

---

[16] 29 C.F.R. § 4003.59(a).
[17] 29 C.F.R. § 4003.59(b).
[18] Admin. Rec. at 7.
[19] Id.
[20] Complaint at ¶ 7.
[21] Admin. Rec. at 343-347.
[22] Id. at 4.

of continuous service in order to receive a benefit. Because Mr. Montgomery had only 13 years and 9 months of continuous service, he did not meet this requirement.[23]

Plaintiff appealed PBGC's determination on November 8, 2004.[24] On February 4, 2005, the Appeals Board denied Plaintiff's appeal, determining that Plaintiff did not have at least 15 years of continuous service, as required under the YS&T Plan that was in effect at the time Plaintiff ceased employment in 1973.[25]

On December 11, 2007, Plaintiff filed a complaint with the United States District Court for the District of Columbia, seeking judicial review of PBGC's determination that he is not entitled to a benefit under the Plan.[26]

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings and the record demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[27] The moving party bears the burden of informing the Court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.[28] The nonmoving party may not rely on allegations or conclusory statements, but must present specific facts showing that there is a genuine issue for trial.[29]

---

[23] Id. at 14.
[24] Id. at 18.
[25] Id. at 28.
[26] Plaintiff attached a letter to his Complaint from the Michigan Pension Rights Project (the "MPRP"). Prior to filing his complaint on December 11, 2007, Plaintiff sought the assistance of the MPRP. On June 11, 2007 the MPRP sent Plaintiff a letter stating that he was not entitled to a benefit under the Plan since he had less than the required 15 years of continuous service. See Complaint, Exhibit 5.
[27] Fed. R. Civ. P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23; *Greene v. Dalton*, 164 F.3d 671, 674 (D.C. Cir. 1999).
[28] *Celotex*, 477 U.S. at 327.
[29] *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288 (1968).

STANDARD OF REVIEW

In determining whether a party is entitled to summary judgment, the court's determination "must be guided by the substantive evidentiary standards that apply to the case."[30] In the present case, those standards are governed by the Administrative Procedure Act ("APA").[31]

As a United States Government agency, PBGC is subject to the provisions of the APA.[32] Under the APA, Congress specifically required courts to defer to agency decisions on matters within the agency's expertise, providing that they must be upheld unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[33] In applying the "arbitrary and capricious" standard, the Court may not substitute its judgment for that of the agency.[34] Instead, the court is to ensure that the agency's decision was based on a consideration of the relevant factors, was not a clear error of judgment, and was adequately explained, including a "rational connection between the facts found and the choice made."[35] Moreover, when a final agency action is challenged, the court's review is limited to the administrative record that was before the agency at the time it made its decision.[36] Accordingly, PBGC's administrative record

---

[30] *Anderson,* 477 U.S. at 255 (1986).
[31] 5 U.S.C. §§ 701-706; *Pension Ben. Guar. Corp. v. FEL Corp.*, 798 F. Supp. 239, 241 (D.N.J. 1992); *In re Pan American World Airways, Inc. Coop. Retirement Income Plan*, 777 F. Supp. 1179, 1181 (S.D.N.Y. 1991)
[32] 5 U.S.C. § 551 *et seq.*; *See Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 636 (1990).
[33] U.S.C. 706 (2)(A); *Camp v. Pitts*, 411 U.S. 138, 142 (1973).
[34] *State Farm Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mutual Auto Ins. Co.*, 463 U.S. 29, 43 (1983); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971).
[35] *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)); *accord Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285 (1974); *Overton Park*, 401 U.S. at 416.
[36] 5 U.S.C. §706; *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-744 (1985).

6

provides the complete factual predicate for the Court's review of whether summary judgment is appropriate under the governing legal standard in this case.[37]

## DISCUSSION

Plaintiff asserts that PBGC's determination was an abuse of discretion and was not in accordance with law.[38] The Complaint sets forth three bases for this assertion: 1) Plaintiff worked a substantial number of overtime hours such that he effectively had more than 15 years of continuous service; 2) Hours of service and not calendar years of service were used to determine pension eligibility for other plan participants who retired prior to 1974; and 3) The requirement that participants have 15 years of continuous service was unreasonable and unconscionable because it was not disclosed to participants during employment and was actively concealed by company officials.[39]

Continuous Service

Mr. Montgomery retired in 1973, prior to the enactment of ERISA. Under section 2.6 of the Pension Agreement for Employees of Youngstown Sheet and Tube Company, effective July 31, 1972 (the "YS&T Pension Agreement"), the governing document for the YS&T Plan in 1973, a participant is required to have at least 15 years of continuous service and have attained age 40 to be eligible for a pension benefit.[40] As the Administrative Record reflects, Plaintiff was employed by YS&T from May 19, 1959, until March 17, 1973, thus earning 13 years and 9 months of continuous service.[41] The

---

[37] *Krichbaum v. Kelly*, 844 F.Supp 1107, 1110 (W.D. VA. 1994).
[38] Complaint ¶ 13.
[39] Id.
[40] Admin. Rec. at 122.
[41] Id. at 7. The document in the Administrative Record was also reprinted in Plaintiff's Complaint at Exhibit 4.

7

13 years and 9 months of continuous service earned by Plaintiff is less than the YS&T Plan's requirement of 15 years of continuous service.

### Hours of Service

Plaintiff contends that during his employment with YS&T, he worked a substantial number of overtime hours, which, he asserts, increases his years of continuous service in excess of the 15-year requirement.[42]  As the administrative record reflects, section 5.1 of the YS&T Pension Agreement provides that continuous service is calculated from the participant's date of hire and is broken by a participant's cessation of employment.[43]  Thus, service is measured by the length of time that a participant was employed, not the number of hours worked.[44]  In fact, the term "hours" does not appear anywhere in the YS&T Pension Agreement.[45]  Therefore, as stated in PBGC's Appeals Board decision, overtime hours have no affect on the calculation of Plaintiff's years of service.[46]  Thus, even if Plaintiff could show that he worked overtime hours, there would be no genuine issue of material fact, because hours of service are not relevant to the determination of his benefit.

---

[42] Complaint ¶ 13a.
[43] Admin. Rec. at 122.
[44] The YS&T Pension Agreement's measurement of continuous service is consistent with the Elapsed Time Method of Crediting Service (the "Elapsed Time Method"), which is detailed in Treasury Regulation 1.410(a)-7(a); 26 C.F.R. § 1.410(a)-7(a), adopted in 1980.  Under the Elapsed Time Method, an employee's vesting and benefit accrual is based on the time that has elapsed between their date of hire and the date their employment terminates.  *Id.*  The Elapsed Time Method provides an alternative to the hours of service method which credits service for vesting and benefit accrual if an employee works 1,000 hours within a 12 month period.  *Id.*  Prior to ERISA and the 1980 implementation of Treasury Regulation 1.410(a)-7(a), the Elapsed Time Method was a well known and almost universal method for calculating vesting and benefit accrual that was already being used by many private retirement benefit plans. *Johnson v. Buckley*, 356 F. 3d 1067, 1072 (2004), *Swaida*, 570 F.Supp. at 489.
[45] Plaintiff's application for his pension benefit with YS&T, dated June 30, 1991, is consistent with section 5.1 of the YS&T Pension Agreement.  Plaintiff's application shows the number of years that he worked at YS&T and not his hours of employment with YS&T. Admin. Rec. at 7.
[46] Admin. Rec. at 28.

Plaintiff also asserts that hours of service were previously used to determine pension eligibility for other plan participants whose employment ended prior to January 1, 1974.[47] Plaintiff did not present this argument to PBGC as part of his administrative appeal.[48] Therefore, it is outside the scope of the administrative record and may not be considered by the Court.[49] Moreover, this argument has no merit.

PBGC must make benefit determinations in accordance with the terms of the Plan,[50] Plaintiff never challenged, either in his administrative appeal or in the Complaint, the fact that the terms of the YS&T Pension Agreement govern the determination of his benefit. As discussed above, the terms of the YS&T Pension Agreement clearly state that an employee's years of continuous service is determined by length of service, not the number of hours worked. Since the terms of the Plan are clear, the benefits other participants may have received and under what plan they may have received them are not relevant to the determination of Plaintiff's eligibility for a benefit. Accordingly, even if Plaintiff had raised this argument in his administrative appeal, there would be no genuine of issue of material fact.

15-Year Requirement

In his Complaint, Plaintiff states that the requirement that a participant have 15 years of continuous service in order to receive a benefit was unreasonable and unconscionable as it was not disclosed to him or other plan participants during his employment with YS&T and was actively concealed by company officials.[51] Plaintiff

---

[47] Complaint ¶ 13b.
[48] In his administrative appeal, Plaintiff stated that other employees who worked at LTV for fewer years than Plaintiff were receiving pension benefits. Admin. Rec. at 18. Plaintiff did not argue that hours of service were previously used to calculate pension benefits for other plan participants.
[49] *Florida Power & Light Co.*, 470 U.S. at 743-744.
[50] 29 CFR §4022.4(3).
[51] Complaint ¶13c.

9

did not present this argument in his administrative appeal or in any correspondence with PBGC.[52] Therefore, it is outside of the scope of the administrative record and not before the Court.[53]

Further, Plaintiff's contention involves allegations regarding the conduct of his employer over 35 years ago, not his eligibility for a benefit. Even if true, the alleged conduct does not change the terms of the YS&T Pension Agreement under which PBGC determined Plaintiff is not eligible for a benefit. At most, the allegations might have given rise to an action against the employer for its conduct. Therefore, even if Plaintiff had presented this argument in his administrative appeal, it would not have been material to PBGC's determination.

## CONCLUSION

PBGC's determination that Plaintiff was not entitled to a benefit under the Plan was based on the application of the terms of the YS&T Pension Agreement that were in effect when Plaintiff left employment. The determination was clearly not arbitrary and capricious. Accordingly, there is no genuine issue of material fact, and PBGC is entitled

---

[52] Plaintiff also asserts that PBGC made a finding in its May 13, 2005 letter that the 15-year vesting requirement was not unreasonable and unconscionable. Complaint at ¶12. However, PBGC did not address whether the 15-year vesting requirement was unreasonable and unconscionable in that letter. Rather, the letter specifically addressed a case submitted by Plaintiff, which he asserted as a basis for finding that the 15-year vesting requirement was unreasonable. Admin. Rec. at 55. That case was decided under the Labor Management Relations Act, which is not relevant here. 29 U.S.C.S. § 186(c)(5). Accordingly, in the May 13, 2005, letter, the Appeals Board informed Plaintiff that "the court decision you cited does not appear to be relevant to the [YS&T] Plan's vesting rules." Admin. Rec. at 58.
[53] *Florida Power & Light Co.*, 470 U.S. at 743-744.

to judgment as a matter of law.  The Court should grant PBGC's motion for summary judgment pursuant to Fed. R. Civ. P. 56(c).

        Respectfully submitted,

        __/s/ Nicole C. Hagan_____
        JUDITH R. STARR
        General Counsel
        PHILIP R. HERTZ
        Deputy General Counsel
        KENNETH J. COOPER
        Assistant General Counsel
        BRUCE H. JAMES, DC Bar #416759
        NICOLE C. HAGAN, DC Bar #482274
        Attorneys
        PENSION BENEFIT GUARANTY
        CORPORATION
        1200 K Street, N.W.
        Washington, D.C.  20005-4026
        Tel: (202) 326-4400, ext. 6543
        Fax: (202) 326-4122