UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Leroy Montgomery, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 1:07-CV-02234 |
| | ) | |
| PENSION BENEFIT GUARANTY CORPORATION | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

ADMINISTRATIVE RECORD

May 1, 2008

__/s/ Nicole C. Hagan_____
JUDITH R. STARR
General Counsel
PHILIP R. HERTZ
Deputy General Counsel
KENNETH J. COOPER
Assistant General Counsel
BRUCE H. JAMES
NICOLE C. HAGAN, DC Bar #482274
Attorneys
PENSION BENEFIT GUARANTY
CORPORATION
1200 K Street, N.W.
Washington, D.C.  20005-4026
Tel: (202) 326-4400, ext. 6543
Fax: (202) 326-4122
hagan.nicole@pbgc.gov

# ADMINISTRATIVE RECORD

# TABLE OF CONTENTS

ADMIN REC #

Attestation...................................................................................1

Correspondence from Leroy Montgomery, postmarked November 7, 2002, to the
PBGC's Pension Search Program...............................................................2

Correspondence from Vikki Montgomery, on behalf of Leroy Montgomery, dated
September 26, 2004..............................................................................4

Internal Memo from the Appeals Board, dated September 28, 2004, noting receipt
of correspondence from Vikki Montgomery, on behalf of Leroy Montgomery............9

Letter to Vikki Montgomery, dated September 28, 2004, acknowledging receipt of
recent correspondence..........................................................................10

Printout of Leroy Montgomery's Earning Statement, provided by Vikki Montgomery,
on behalf of Leroy Montgomery; received by the PBGC on October 4, 2004..............11

PBGC's October 5, 2004 Benefit Determination Letter .....................................14

Correspondence from Vikki Montgomery, on behalf of Leroy Montgomery, to
appeal the PBGC's October 5, 2004 determination, dated November 8, 2004..............18

Internal Memo from the Appeals Board, dated November 15, 2004, noting receipt
of correspondence from Vikki Montgomery, on behalf of Leroy Montgomery............23

Letter to Vikki Montgomery, dated November 15, 2004, acknowledging receipt
of recent correspondence.......................................................................24

Internal memo from the Appeals Board, dated November 22, 2004, accepting Vikki
Montgomery's correspondence as an appeal....................................................25

Internal memo to the Appeals file, dated November 23, 2004, regarding a microfiche
request for Leroy Montgomery..................................................................27

PBGC's February 4, 2005, Appeals Board Decision Letter and supporting
Documents.......................................................................................28

Internal Memo from the Appeals Board, dated February 9, 2005, closing Leroy
Montgomery's appeal file.......................................................................49

Internal Memo from the Appeals Board, dated May 16, 2005, noting receipt of correspondence from Leroy Montgomery…………………….………………………...50

Correspondence from Leroy Montgomery, dated May 6, 2005 ……..……………………51

PBGC's May 13, 2005 letter and accompanying documents……………………………58

Correspondence from Leroy Montgomery, dated May 22, 2006…………………………81

Internal memo to the Appeals file, dated June 19, 2006, noting the Appeals Board's response to Leroy Montgomery……………………………………………………………90

PBGC's June 19, 2006, letter and accompanying documents …………………………..91

Correspondence from Leroy Montgomery, postmarked October 11, 2006……………...98

Logs of telephone conversations between Leroy Montgomery and the PBGC ………...102

Pension Agreement for Employees of Youngstown Sheet and Tube Company, effective July 31, 1972…………………………………………………………………122

Revised Retirement Plan for Salaried Non-Union Employees of Youngstown Sheet and Tube Company, effective May 31, 1973……………………………………………...152

LTV Steel Hourly Pension Plan (amended and restated effective November 1, 1999)……………………………………………………………………...182

Trusteeship Agreement between the Pension Benefit Guarantee Corporation ("PBGC") The LTV Corporation, effective March 31, 2002…………………………343

ATTESTATION

I HEREBY ATTEST that:

Attached is a full and complete copy of the Administrative Record supporting the Pension Benefit Guaranty Corporation's February 5, 2005 determination that Leroy Montgomery was not entitled to a benefit under the LTV Steel Hourly Pension Plan, successor to the Pension Plan for Hourly Employees of Youngstown Sheet and Tube Company and Affiliates.

Date: 3/31/08

E. William FitzGerald
Disclosure Officer

It is hereby certified that E. William FitzGerald, Disclosure Officer of the Pension Benefit Guaranty Corporation, which was created by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301-1461 (2000 & Supp. V 2005), is an official custodian of the books and records of said Corporation, and was such official custodian at the time of executing the above attestation, and that he is authorized to execute the above attestation.

By the Corporation

Vince Snowberger
Deputy Executive Director

**ADMIN REC-0001**



PBGC Pension Search
Program 1200 K Street, N.W.
Washington D.C. 20005-4026

ADMIN REC-0002

195740     Kathy Hubert TPP:

ToPb&C PENSION Search Program
+ Leroy MontGomery                                          195c

2 SocIAL SecuriTy Number ███████████████

3 ███████████████████

4 ███████████████████

5 youngstown + Street = Tube Co, Ltd.

6 CAMPBELL Works Coupling Dept CAmpBell OH,

7 Emply May-19-59          4-7-73

8          define BenefiTS     PLAN

9     347037661 IdentificATion  PLAN No (001)

See CCN-195740
MJA 3-12-03

RECEIVED
FEB 10 2003

Lorij MaKenney

PBGC

FEB 0 6 2003

3-12-03
No Answer

ADMIN REC-0003

FAX NO. :3014952388                    Sep. 27 2004 03:30PM  P1

# Vikki Montgomery

Appeals Board
Pension Benefit Guaranty Corporation
1200 K Street, NW, Suite 480
Washington, DC 20005-4026

September 26, 2004

RE:   Case #: 19660300
      SSN:
      Leroy Montgomery

To the Appeals Board:

I am writing on behalf of my father, Leroy Montgomery, who was employed by Republic Steel and J&L Steel at the Youngstown Sheet & Tube, Campbell Works, Lowellville Works, and Struthers Works, all in Ohio, from May 1959 until May 1973. The EIN was 341037661. He was a member of the defined benefit plan, Plan numbers 001 and 002.

My father believes he is due a pension, but he has been told he does not qualify. My father was 43 years of age and had 13 years, 9 months of service when his employment with LTV ended. According to the last person we spoke to, Jason at the LTV Hourly Plan, my father does not qualify because since he retired before 1975, he would have had to have been both 40 years old and had 15 years of service to qualify. Upon further research, my father discovered that this is not true.

According to USCS §1053, n 5 Vesting requirements:
"29 USCS § 1053(a) imposes 2 distinct vesting requirements, one linked to age without regard to length of service and the other depending on length of service without regard to age; plan not only must provide for vesting upon completion of certain period of service but also must provide for vesting at certain time regardless of employee's years of service; as for the vesting at a certain time, Congress intended that employee's pension rights would vest, irrespective of length of his service at "normal retirement age," that is either on his 65th birthday or on 10th anniversary of his joining plan whichever occurred later, unless plan itself allowed earlier vesting, ..."

ADMIN REC-0004

Based on this, my father believes that he should receive his pension, and he asks that PBGC reconsider its decision to deny him his pension. I understand that to launch an appeal, you must have a formal determination letter. My father has never received this letter. The determination information he has received thus far has been by telephone

If you have any questions about this, you may call me at ▮▮▮▮▮▮

Sincerely,

Vikki Montgomery

Enclosure:
- Notarized letter giving Vikki Montgomery authorization to act in Leroy Montgomery's behalf
- Copy of LTV Steel Company application for pension
- Copy of USCS §1053, n 5 Vesting requirements:

ADMIN REC-0005

9-19-04

To Whom It May Concern!

I Leroy Montgomery give my
Daughter   Vikki Montgomery
Authorization to act on my behalf
pretain to receiving information
and to discuss all Matters

Concening: Pension Benefits,

Youngstown Sheet + Tube
Ltd, PBGC, Retirement
Social Security

Leroy Montgomery
Sworn to and subscribed on
9-20-04 by Leroy Montgomery

ADMIN REC-0006

FROM :MONTGOMERY                    FAX NO. :3014950388        Sep. 27 2004 03:32PM P4

*DOROTHY —*
*CAN YOU WORK YOUR MAG*
*& FIND A FILE # FOR MR M, P*
*Thanks*
*LMS 2/2/05 11:30 pm*

Form W-2254 (Rev. 5/73)    YOUNGSTOWN SHEET AND TUBE COMPANY AND CERTAIN SUBSIDIARY COMPANIES

## APPLICATION FOR PENSION

**LTV Steel Company  (YS&T)**          Campbell Works
                Company                              Works or Office

TO THE CHAIRMAN, GENERAL PENSION BOARD
        GENERAL OFFICE
        YOUNGSTOWN, OHIO

Works or Office: **March 31, 1973**      Pension Number **P.S. ASAP**
Effective Date of Retirement: **June 30, 1991**

I hereby make application for pension in accordance with the rules and regulations set forth in the Pension Agreement effective July 31, 1972, and submit the following record as a basis for such pension.

Effective Date of Pension

Effective Date of Special Payment: **June 30, 1991**

Effective Date of Regular Monthly Pension Payment

(1) FULL NAME **Leroy Montgomery**          PAYROLL NO. ▮▮▮▮    SOC. SEC. NO. ▮▮▮▮

(2) ADDRESS ▮▮▮▮▮▮▮▮          Age at Pension    **61.417**

(3) DATE OF BIRTH ▮▮▮▮▮▮    **Coupling Grinder**    AGE AT RETIREMENT  **43.167**    DECIMAL YEARS.

(4) PRESENT OCCUPATION **Coupling Grinder**    DEPARTMENT  **Coupling**

(5) DATE EMPLOYED **May 19, 1959**    DATE LAST WORKED    **March 17, 1973**

(6) ELIGIBLE FOR: Public Pension _____(Yes or No)    VACATION PAID FROM _____ TO _____
                Other Pension _____(Yes or No)    FROM _____ TO _____

(7) INSURANCE DEDUCTION AUTHORIZATION _____(Yes or No)    FROM _____ TO _____

(8) TYPE OF PENSION  ( ) Normal  ( ) 30 Year  ( ) 60/15  ( ) 70/80  ( ) Permanent Incapacity  (X) Deferred Vested

| COMPANY | RECORD OF EMPLOYMENT | | | | | | | | | Annual earnings for last 120 full calendar months employment prior to date of retirement. |
|---|---|---|---|---|---|---|---|---|---|---|
| | INCLUSIVE DATES | | | | | | TOTAL PERIOD | | | |
| | FROM | | | TO | | | | | | |
| | Mo. | Day | Yr. | Mo. | Day | Yr. | Yrs. | Mos. | Days | |
| LTV (YS&T) | 5 | 19 | 59 | 4 | 13 | 64 | 4 | 10 | 25 | |
| LTV (YS&T) | 5 | 26 | 64 | 3 | 31 | 73 | 8 | 10 | 6 | From: |
| | | | | | | | | | | To: |
| (Explain all absences appearing on employment record on reverse side) TOTAL SERVICE AND EARNINGS | | | | | | | 13 | 9 | 1 | $ |
| AVERAGE MONTHLY EARNINGS (Divide total earnings shown by _____ months) | | | | | | | | | | $ |

Date and Title of Document Establishing Date of Birth:

Continuous Service Certified Correct:  **6-10-91**
        Supervisor of Employment
        **Admin.  Employment Programs**

**SPECIAL PAYMENT**
Gross $ _____    Less Vacation Payment Received $ _____    Net $ _____

| COMPUTATION OF MONTHLY PENSION | PERCENT | MONTHLY PENSION | AUTHORIZATION OF GENERAL PENSION BOARD |
|---|---|---|---|
| (1) THE PERCENT PENSION | | | |
| Decimal Years of Service (Not to exceed 30 Years) | x 1.3% | % | Monthly Amount Payable to Pensioner  $ |
| Decimal Years of Service (Exceeding 30 Years) | x 1.2% | % | |
| Total Decimal Years of Service | Total Percent | % | Date Effective |
| Average Monthly Earnings $ | Total x Percent | % $ | Month Reported to Trustee |
| (2) THE MINIMUM PENSION | | | Monthly Amount Payable to Co-pensioner  $ |
| Decimal Years of Service (Not to exceed 15 Years) | x $8.00 | | |
| (Exceeding 15 Years but) Decimal Years of Service (not to exceed 30 Years) | x $9.00 | | Date Effective |
| Decimal Years of Service (Exceeding 30 Years) | x $10.00 | | Month Reported to Trustee |
| Total Decimal Years of Service | Total | | |

(3) PERMANENT INCAPACITY PENSION WHEN DISABILITY SOCIAL SECURITY IS DENIED

Pension Amount Applicable — Greatest of $150.00, (1) and (2)

SEP 27 2004 15:36                3014950388        PAGE.04

ADMIN REC-0007

LABOR

RETIREMENT INCOME SECURITY

29 USCS § 1053, § 1

SEP 27 2004 15:37          3014950388          PAGE.05

ADMIN REC-0008

PA    # 1918188



# APPEALS MEMORANDUM

TO:         DMC                          Date: Sep-28-04 .

FROM:     PEAD, INTAKE GROUP (ext. 4090)

SUBJECT: Appeals/Intake Correspondence In Processing

PEAD has received correspondence from the participant named below. The
Intake Unit is reviewing the correspondence to determine disposition (I.e., Appeal
or RFA [Referred from Appeals]).

Appellant: ESTATE OF LEROY MONTGOMERY     SSN: ███████

Case: 196603

Plan: Bethlehem Steel Corp. Pension Plan

ACTION REQUESTED:

[ ]    STAY DETERMINATION - MAKE NO CHANGES TO BENEFIT. NO
OTHER ACTION REQUIRED BY IOD AT THIS TIME.

IF DISPOSITION OF CORRESPONDENCE REQUIRES IOD ACTION, SCoRE
REPORT WILL INDICATE RFA.

Report: /apps/cognos/cer3/data/pead/PEAD-ACCS/apps/t

2004 SEP 30  A  9 43
WASHINGTON, DC
DOC. MGT. CENTER
REC'D 100

**ADMIN REC-0009**

# ⧣ 1918188

**Pension Benefit Guaranty Corporation**
1200 K Street, N.W., Suite 480, Washington, D.C. 20005-4026

PBGC Case Number: 196603

September 28, 2004

VIKKI MONTGOMERY
ESTATE OF LEROY MONTGOMERY

███████████████████████████████

The Appeals Board has received your recent correspondence regarding the Estate of
LEROY MONTGOMERY.

If your correspondence is an appeal, it will be assigned to an analyst for review. This
process must be thorough and may take several months or more. Matters other than
appeals, including requests for filing extensions, are usually handled in less time. In any
case, we will respond to you as quickly as we can and will keep you informed of our
progress. If you have any questions, write to the Appeals Board at the address shown or
call us at:

      1-800-400-7242     Ext.  4090

             or

      For  TTY/TDD users, call the Federal relay service
      1-800-877-8339 and give the individual the Appeals
      Board toll-free number above.

If we need additional information, we will contact you.

Sincerely,

*The Appeals Board*

PEAD/ACCS/101

**ADMIN REC-0010**

```
*** REC 2003006  144456  BBE908E0.BJKH  CIPQYAF   PQAF    (F-HOD ) ***
```

For Leroy Montgomery SSN: ▮▮▮▮     Case # 95780   1920801

```
QRY    DATE:01/06/03    AN:▮▮▮▮    DOC:210   UNIT:EDE           DEQR  PG:001
INPUT: YRS REQ: 1959-1973; COVERED DETAILS; EMPLOYER ADDRESS
MEF: NA: L   MONTGO DB:▮▮▮▮    SX: M AK: MONTGM
```

DETAIL COVERED FICA EARNINGS AND EMPLOYER NAME AND ADDRESS FOR YEARS REQUESTED

| RPYR | REO | EIN-SEI | LOAC | NAME | EARNINGS | TOTAL COMP | CONTROL NUMBER | PR |
|------|-----|---------|------|------|----------|------------|----------------|-----|
| 0659 | WA | 340634320 | 0004 L | MONTGO | 263.64 | .00 | 1-0111-31-0947 | 01498 |
| 0959 | WA | | 0004 L | MONTGO | 521.23 | .00 | 1-0107-55-1608 | 01498 |
| 1259 | WA | | 0004 L | MONTGO | 328.02 | .00 | 1-0093-79-1222 | 01498 |

```
        EIN 340634320
        YOUNGSTOWN SHEET & TUBE CO
        % LTV CORPORATION
        LTV TWR
        PO BOX 225003
        DALLAS              TX   75265-0000
```

**RECEIVED**

OCT - 4 2004

| 0360 | WA | 340634320 | 0004 L | MONTGO | 1361.71 | .00 | 1-0108-05-1508 | 01498M |
| 0660 | WA | | 0004 L | MONTGO | 1240.55 | .00 | 1-0105-29-1750 | 01498M |
| 1260 | WA | | 0004 L | MONTGO | 113.25 | .00 | 1-0134-80-1471 | 01498M |

```
     340634320   YOUNGSTOWN SHEET & TUBE CO
```

| 0361 | WA | 250952277 | L | MONTGO | 125.00 | .00 | 1-0002-22-0160 | 01498M |
| 0661 | WA | | L | MONTGO | 188.11 | .00 | 1-0002-45-0382 | 01498M |
| 0661 | WA | 340634320 | 0004 L | MONTGO | 753.46 | .00 | 1-0091-29-2051 | 01498M |
| 0961 | WA | | 0004 L | MONTGO | 736.62 | .00 | 1-0091-53-2078 | 01498M |
| 1261 | WA | | 0004 L | MONTGO | 1069.85 | .00 | 1-0070-84-1522 | 01498M |

```
        EIN 250952277
        REIBER CADILLAC PONTIAC CO
        PO BOX 985
        PITTSBURGH          PA   15230-0000
```

```
     340634320   YOUNGSTOWN SHEET & TUBE CO
```

| 0362 | WA | 340634320 | 0004 L | MONTGO | 412.15 | .00 | 1-0091-04-1570 | 01498M |
| 0662 | WA | | 0004 L | MONTGO | 508.55 | .00 | 1-0088-30-1563 | 01498M |
| 1262 | WA | | 0004 L | MONTGO | 149.46 | .00 | 1-0049-76-1547 | 01498M |

```
     340634320   YOUNGSTOWN SHEET & TUBE CO
```

| 0363 | WA | 251119818 | L | MONTGO | 74.23 | .00 | 5-0001-12-0271 | 01498M |
| 0663 | WA | | L | MONTGO | 626.48 | .00 | 5-0001-39-0155 | 01498M |
| 0963 | WA | | L | MONTGO | 625.93 | .00 | 5-0001-60-0394 | 01498M |
| 1263 | WA | | L | MONTGO | 646.94 | .00 | 1-0001-86-0284 | 01498M |

```
        EIN 251119818
        GALEN R MERRYMAN
        MERRYMANS KWIK KLEEN CAR WASK
        122 N JEFFERSON ST
        NEW CASTLE        PA   16101-0000
```

| 0364 | WA | 250952277 | L | MONTGO | 677.50 | .00 | 1-0001-09-0505 | 01498M |
| 0364 | WA | 251119818 | L | MONTGO | 159.55 | .00 | 5-0002-01-0513 | 01498M |
| 0664 | WA | 250952277 | L | MONTGO | 495.68 | .00 | 1-0003-37-0675 | 01498M |
| 0664 | WA | 251119818 | L | MONTGO | 132.67 | .00 | 5-0002-40-0675 | 01498M |
| 0664 | WA | 340634320 | 0004 L | MONTGO | 293.06 | .00 | 1-0082-26-1574 | 01498M |
| 0964 | WA | 251119818 | L | MONTGO | 164.52 | .00 | 5-0002-62-0738 | 01498M |

ADMIN REC-0011

```
QRY    DATE:01/06/03     AN:[REDACTED]        DOC:210      UNIT:EDE        DEQR    PG:003
 0669 WA                    0004 L    MONTGO     914.70        .00 1-0454-26-0243 0149
 0669 WA    341037661       0004 L    MONTGO     502.49        .00 1-0676-26-0285 0149
 0969 WA                    0004 L    MONTGO    1865.00        .00 1-0711-50-1181 0149
 1269 WA                    0004 L    MONTGO    2415.56        .00 1-0675-78-1086 0149

     340634320    YOUNGSTOWN SHEET & TUBE CO

         EIN 341037661                                    1920801 [REDACTED]
         YOUNGSTOWN SHEET & TUBE COMPANY
         % TAX DEPT
         1600 W CARSON ST
         PITTSBURGH          PA   15219-0000

 0370 WA    341037661       0004 L    MONTGO    2133.23        .00 1-0657-04-1084 0149
 0670 WA                    0004 L    MONTGO    2528.76        .00 1-0669-25-1095 0149
 0970 WA                    0004 L    MONTGO    2818.55        .00 1-0676-50-1100 0149
 1270 WA                    0004 L    MONTGO     319.46        .00 1-0655-75-1128 0149

     341037661    YOUNGSTOWN SHEET & TUBE COMPANY

 0371 WA    341037661       0004 L    MONTGO    1671.25        .00 1-0675-01-1104 0149
 0671 WA                    0004 L    MONTGO    2459.08        .00 1-0686-25-1479 0149
 0971 WA                    0004 L    MONTGO    2660.03        .00 1-0647-51-1198 0149
 1271 WA    340229988            L    MONTGO      62.48        .00 1-0001-85-1531 0149
 1271 WA    341037661       0004 L    MONTGO    1009.64        .00 1-0586-75-1199 0149

     341037661    YOUNGSTOWN SHEET & TUBE COMPANY

         EIN 340229988
         USW REGION 1 LOCAL 01418
         % ARLETTE GATEWOOD ADM
         201 OHIO AVE
         MCDONALD             OH   44437-1959

 0372 WA    341037661       0004 L    MONTGO    1956.88        .00 1-0626-03-1329 0149
 0672 WA                    0004 L    MONTGO    2067.77        .00 1-0657-25-1139 0149
 0972 WA                    0004 L    MONTGO    1918.01        .00 1-0651-52-1192 0149
 1272 WA                    0004 L    MONTGO    2172.77        .00 1-0638-75-1193 0149

     341037661    YOUNGSTOWN SHEET & TUBE COMPANY

 0373 WA    341037661       0004 L    MONTGO    1387.25        .00 1-0681-01-1212 0149
 0673 WA    340933524            L    MONTGO    3085.94        .00 1-0003-44-1382 0149
 0673 WA    341037661            L    MONTGO     456.96        .00 1-0701-65-8088 0149
 0973 WA    340933524            L    MONTGO    2207.83        .00 1-0004-57-1765 0149
 1273 WA                         L    MONTGO    5506.23        .00 1-0003-83-1456 0149

     341037661    YOUNGSTOWN SHEET & TUBE COMPANY

         EIN 340933524
         THE EDWARD CORP
         P O BOX 808
         WARREN               OH   44482-0808

 REMARKS
   CLAIMS ACTIVITY--SEE MBR
   CLAIMS ACTIVITY--SEE SSR
```

For:
Leroy Montgomery
Case # 195240
SSN: [REDACTED]

Sent: 10-1-04
From: Vikky Montgomery

[REDACTED]

**ADMIN REC-0012**

*For Leroy Montgomery SSN: ████ (Acc # 145240)*

```
QRY   DATE:01/06/03   AN: ████████       DOC:210    UNIT:EDE        DEQR    PG:0024
 0964  WA  340634320  0004 L    MONTGO    1293.41      .00 1-0081-51-1627 0149&
 1264  WA  251119818       L    MONTGO     185.67      .00 5-0001-89-0154 0149&
 1264  WA  340634320  0004 L    MONTGO    1492.36      .00 1-0048-80-1542 0149&

       250952277    REIBER CADILLAC PONTIAC CO

       251119818    GALEN R MERRYMAN                        1920801  1:77·日·日·

       340634320    YOUNGSTOWN SHEET & TUBE CO

 0365  WA  .251119818      L    MONTGO     198.59      .00 5-0001-12-0114 0149&
 0365  WA  340634320  0004 L    MONTGO.   1409.77      .00 1-0125-08-1668 0149&
 0665  WA  251119818       L    MONTGO     173.41      .00 1-0131-27-0119 0149&
 0665  WA  340634320  0004 L    MONTGO    1606.67      .00 1-0110-50-0199 0149&
 0965  WA             0004 L    MONTGO    1481.81      .00 5-0001-80-0149 0149&
 1265  WA  251119818       L    MONTGO     180.37      .00 5-0001-80-0149 0149&
 1265  WA  340634320  0004 L    MONTGO     301.75      .00 1-0035-76-0097 0149&

       251119818  · GALEN R MERRYMAN

       340634320    YOUNGSTOWN SHEET & TUBE CO

 0366  WA  251119818       L    MONTGO     177.57      .00 1-0001-03-0379 0149&
 0366  WA  340634320  0004 L    MONTGO    1121.86      .00 1-0224-03-0174 0149&
 0666  WA  251119818       L    MONTGO     167.30      .00 1-0001-30-0773 0149&
 0666  WA  340634320  0004    MONTGO     1478.56      .00 1-0488-32-0063 0149&
 0966  WA  251119818            MONTGO     103.93      .00 1-0001-54-2091 0149&
 0966  WA  340634320  00       MONTGO    1590.18     .·.00 1-0116-50-0330 0149&
 1266  WA  251119818            MONTGO     230.90      .00 1-0001-82-2149 0149&
 1266  WA  340634320  0004 L    MONTGO    1101.37      .00 1-0442-77-0210 0149&

       251119818    GALE.    .ERRYMAN

       340634320    YOU?    N SHEET & TUBE CO

 0367  WA  251119818            MONTGO     117.10      .00 1-0001-10-0094 0149&
 0367  WA  340634320  00        MONTGO    .941.45      .00 1-0461-07-0080 0149&
 0667  WA  251119818       L    MONTGO ·    27.80      .00 1-0001-34-0084 0149&
 0667  WA  340634320  00   L    MONTGO     581.60      .00 1-0466-28-2074 0149&
 0967  WA  251119818       L    MONTGO      39.60      .00 1-0001-51-2203 0149&
 0967  WA  340634320  0004 L    MONTGO    1436.72      .00 1-0479-52-2077 0149&
 1267  WA  251119818       L    MONTGO      65.70      .00 1-0001-78-0185 0149&
 1267  WA  340634320  0004 L    MONTGO    1527.08      .00 1-0461-76-0134 0149&

       251119818  · GALEN R MERRYMAN

       340634320    YOUNGSTOWN SHEET & TUBE CO

 0368  WA  251119818       L    MONTGO      34.50      .00 1-0001-05-0609 0149&
 0368  WA  340634320  0004 L    MONTGO    1910.12      .00 1-0483-01-0280 0149&
 0668  WA             0004 L    MONTGO    1560.14      .00 1-0498-27-0092 0149&
 0968  WA             0004 L    MONTGO    1948.71      .00 1-0482-52-0146 0149&
 1268  WA             0004 L    MONTGO    1446.56      .00 1-0435-75-0163 0149&

       251119818    GALEN R MERRYMAN

       340634320    YOUNGSTOWN SHEET & TUBE CO

 0369  WA  340634320  0004 L    MONTGO    1858.77      .00 1-0454-02-0153 0149&
```

**ADMIN REC-0013**



**Pension Benefit Guaranty Corporation**
LTV Service Center
P O Box 151750
Alexandria, VA 22315-1750

405NV
October 05, 2004



PBGC Case Number:    195240
Plan Name:    LTV Steel Hourly Pension Plan

LEROY MONTGOMERY

Dear LEROY MONTGOMERY:

We have finished our review of the plan and your records, and we have determined that you are not entitled to a pension benefit.

Your plan required you to have at least 15 year of service and have attained the age 40 in order to qualify for a vested pension benefit. Although you were 43 years old, you only had 13 years and 9 months of service when you left employment.

This is PBGC's formal determination that you are not entitled to a PBGC benefit. You have the right to appeal this determination if you provide a specific reason why the determination is wrong. Your appeal must be in writing and filed within 45 days of the date of this letter. If you simply have a question about this determination, you should call us for an explanation, instead of filing an appeal. But please note that the time you have to file an appeal will not be extended unless you specifically request an extension within the 45-day period. The enclosed pamphlet, *Your Right to Appeal*, explains more about filing an appeal.

If you have any questions, or need assistance, please call our Customer Contact Center at 1-800-707-7242. Your may also write to:

PBGC
P.O. Box 151750
Alexandria VA 22315-1750

**ADMIN REC-0014**

When writing us, include your Social Security number, PBGC case number 195240, and a daytime telephone number.  Please keep this letter in your records for future reference.

Sincerely,


Monica Sargent
FBA Pension Benefit Analyst
D.L. Skully & Associates



Enclosures: Your Right to Appeal - PS-02

ADMIN REC-0015

# YOUR RIGHT TO APPEAL

You have the right to appeal PBGC's formal determination of your benefit if you can provide a specific reason why the determination is wrong. However, if you simply have a question about your benefit or how it was calculated, you should call PBGC's Customer Service Center at 1-800-400-7242 for an explanation, instead of filing an appeal. (For TTY/TDD users, call the Federal Relay Service toll-free at 1-800-877-8339 and ask to be connected to 1-800-400-7242.) But remember, you have 45 days from the date of the formal determination letter to submit an appeal; if you need more time to resolve your questions before the 45-day limit expires, you can request an extension from PBGC's Appeals Board, as described below.

**How to File an Appeal.** Send your appeal to PBGC's Appeals Board. Your appeal must:

- Be in writing;
- Be clearly marked as an appeal;
- Specifically explain why PBGC's determination is wrong and the result you are seeking;
- Describe the relevant information you believe is known by PBGC and include any additional information that the Appeals Board should consider; and
- Be postmarked by the U.S. Postal service, FAXed, e-mailed or delivered directly to the Appeals Board no later than 45 days after the date of PBGC's formal determination letter.

**You May Request Additional Time to File Your Appeal.** If you need more time to file your appeal, you may ask the Appeals Board for an extension of the filing deadline. The appeal period will be suspended as of the date you file your request for an extension.

Your request for more time must be in writing and must state why you need more time to file your appeal and how much more time you will need. *This request must be postmarked by the U.S. Postal Service, FAXed, e-mailed or delivered to the Appeals Board no later than 45 days after the date of PBGC's formal determination.*

The Appeals Board will grant an extension of time only upon a showing of good cause. If the Board denies the extension, the 45-day appeal period will resume as of the date of the denial.

**Other Information You Should Include.** You should include in your appeal or request for an extension of the filing deadline:

- Your Social Security Number;
- The name of your pension plan;
- The PBGC case number assigned to your plan (this can be found at the top of your formal determination letter);
- Your daytime telephone number (including the area code);
- The name and Social Security Number of the plan participant, if you are not the participant;
- A list of any information requests for which you are awaiting PBGC's response; and
- If possible, a copy of the PBGC formal determination letter and benefit statement.

**Where to Send Appeals and Requests for Additional Time to File an Appeal.** Send your appeal or request for a filing extension to:

Appeals Board
Pension Benefit Guaranty Corporation
1200 K Street, NW, Suite 480
Washington, DC 20005-4026

You may FAX your appeal or request for a filing extension to the Appeals Board at 202/326-4095 or 202/326-4091, or send it by e-mail to appeals@pbgc.gov. The Appeals Board will acknowledge your correspondence within one week of receipt.

**Where to Get Information or Filing Assistance.** If you have questions about how to file an appeal or request a filing extension, or would like information about your appeal, you may call the Appeals Board, toll-free, at 1-800-400-7242, or write to the Board at the above address.

**You Do Not Need an Attorney to Represent You.** You may act on your own behalf during the appeals process, or you may have someone else represent you. You do not need an attorney to file an appeal. However, if you do select a representative and that person is not an attorney, you must send the Appeals Board a notarized **power of attorney** signed by you that specifically states the scope of the representative's authority to act for you.

**Hearings Before the Appeals Board.** Appeals usually are decided without a hearing. Therefore, it is important that your written appeal includes all of the facts you wish the Appeals Board to consider. The Board may request additional information without holding a hearing. However, the

ADMIN REC-0016

Board may grant you an opportunity to appear before it and to present witnesses on your behalf if the Board finds that there is a dispute over a material fact of your case or if you have requested such an opportunity in your appeal.

**You Must Appeal Before You Can Go to Court.** Review by the Appeals Board is the final step in PBGC's administrative review process. If you do not appeal PBGC's formal determination to the Appeals Board, you may not be able to obtain review by a court of law.

**When PBGC's Benefit Determination Will Go into Effect.** If you do not appeal, PBGC's formal benefit determination will take effect when the 45-day appeal period ends. If you do appeal, the determination will not take effect until the Appeals Board issues its decision. PBGC then will make any changes to your benefit ordered by the Appeals Board.

After your benefit determination has taken effect, PBGC may change your benefit if it discovers an error, but only under certain circumstances. PBGC will always change your benefit if correcting the error will **increase** your benefit. PBGC will **decrease** your benefit only if the error is a monthly amount of $5.00 or more and usually only if the error is discovered within three years after the formal determination.

**Reference.** PBGC's "Rules for Administrative Review of Agency Decisions" can be found in Title 29, Code of Federal Regulations, Part 4003. These rules are available on the Internet at:

www.pbgc.gov/laws/lawsregs/code/CFR4003.HTM

## Checklist

- Have you addressed your letter and envelope to the Appeals Board?

  Appeals Board
  Pension Benefit Guaranty Corporation
  1200 K Street, NW, Suite 480
  Washington, DC 20005-4026

- Does your letter include your name, address, Social Security Number, daytime telephone number, plan name, and PBGC case number?

- Does your letter clearly state that it is an **appeal or request for an extension of time** to appeal?

- Does your letter specifically explain why PBGC's determination is wrong or why you are requesting an extension of time?

- Have you included all information that applies to your appeal or request for an extension of time, including a copy of your PBGC formal determination letter and benefit statement?

- Have you included a notarized power of attorney if you are being represented by someone other than a lawyer?

- Is your appeal or request for more time postmarked, FAXed, e-mailed, or delivered to the Appeals Board **no later than 45 days** after the date of PBGC's formal determination letter?



PBGC
U.S. GOVERNMENT AGENCY
PENSION BENEFIT GUARANTY
CORPORATION

YOUR
RIGHT TO
APPEAL

Publication PBGC PS-02
June 2002

ADMIN REC-0017

## Vikki Montgomery

Appeals Board
Pension Benefit Guaranty Corporation
1200 K Street, NW, Suite 480
Washington, DC 20005-4026

And/Or

Monica Sargent/Michelle Flynn
FBA Pension Benefit Analyst
D.L. Skully & Associates
Pension Benefit Guaranty Corporation
LTV Service Center
PO Box 151750
Alexandria, VA 22315-1750

November 8, 2004

RE:    Appeals Letter 405NV, October 5, 2004
       PBGC Case #: 195240
       Plan Name: LTV Steel Hourly Pension Plan
       SSN:
       Leroy Montgomery



To the Appeals Board:

   I am writing on behalf of my father, Leroy Montgomery, who was employed by
Republic Steel and J&L Steel at the Youngstown Sheet & Tube, Campbell Works,
Lowellville Works, and Struthers Works, all in Ohio, from May 1959 until May 1973.
The EIN was 341037661. He was a member of the defined benefit plan, Plan numbers
001 and 002.

   My father believes he is due a pension, but he has been told he does not qualify.
My father was 43 years of age and had 13 years, 9 months of service when his
employment with LTV ended. According to the last person we spoke to, Jason at the
LTV Hourly Plan, my father does not qualify because since he retired before 1975, he
would have had to have been both 40 years old and had 15 years of service to qualify.
Upon further research, my father discovered that this is not true.

**ADMIN REC-0018**

According to USCS §1053, n 5 Vesting requirements:

"29 USCS § 1053(a) imposes 2 distinct vesting requirements, one linked to age without regard to length of service and the other depending on length of service without regard to age; plan not only must provide for vesting upon completion of certain period of service but also must provide for vesting at certain time regardless of employee's years of service; as for the vesting at a certain time, Congress intended that employee's pension rights would vest, irrespective of length of his service at "normal retirement age," that is either on his 65th birthday or on 10th anniversary of his joining plan whichever occurred later, unless plan itself allowed earlier vesting, ..."

In addition to what was mentioned above, my father believes there are several other reasons why he qualifies for his pension under USCS 1053/1054.

1. He had enough overtime hours (500) to qualify for the 15 years. If you will check his hourly records you can see the difference in pay in last 3 years he worked at LTV (1970-1973). The last two years were during the oil embargo, when he made couplings for pipes for the oil industry; he made $10K/year each of those years.

2. He served in the U.S. Military from 1950 to 1953 and in the reserves from 1953 to 1959; he was discharged in November 1959. He started work at LTV in May 1959.

3. He retired on disability in 1990, before he turned 65. This information is available from the Retirement Social Security/Disability Office.

4. Others who have worked at LTV fewer than years than he are receiving pensions.

For these reasons, he would like to have the determination in the October 5, 2004, letter reversed. If you have any questions about this, you may call me at ▮▮▮▮▮▮▮

Sincerely,

Vikki Montgomery

Enclosure (sent via U.S. Mail, 9/26/04):
● Notarized letter giving Vikki Montgomery authorization to act in Leroy Montgomery's behalf
● Copy of LTV Steel Company application for pension
● Copy of USCS §1053, n 5 Vesting requirements

**ADMIN REC-0019**

FROM MONTGOMERY          FAX NO. :3014950388          Sep. 27 2004 03:31PM P3

9-19 04

To Whom It May Concern

I Leroy Montgomery give my
daughter Vikki Montgomery
Authorization to Act on M behalf
pretain to receiving Information
And to discuss All Matters

Concening: Pension Benefits,

Youngstown Sheet & Tube
Ltd, PBGC, Retirement
Social Security

Leroy Montgomery
State of Ohio, Page
Sworn to and subscribed to on
9-20-04 by Leroy Montgomery

ADMIN REC-0020

FROM :MONTGOMERY                    FAX NO. :3014950388              Sep. 27 2004 03:32PM P4

Form W-2254 (Rev. 6/73)    YOUNGSTOWN SHEET AND TUBE COMPANY AND CERTAIN SUBSIDIARY COMPANIES

## APPLICATION FOR PENSION

| LTV Steel Company (YS&T) | Campbell Works | |
|---|---|---|
| Company | Works or Office | Pension Number |

TO THE CHAIRMAN, GENERAL PENSION BOARD            **March 31, 1973**
     GENERAL OFFICE            Effective Date of Retirement
       YOUNGSTOWN, OHIO            **June 30, 1991**
                                       Effective Date of Pension

I hereby make application for pension in accordance with the rules and regulations set forth in the Pension Agreement effective July 31, 1972, and submit the following record as a basis for such pension.            Effective Date of Special Payment
**June 30, 1991**
Effective Date of Regular Monthly Pension Payment

(1) FULL NAME      **Leroy Montgomery**      PAYROLL NO. ▒▒▒▒    SOC. SEC. NO. ▒▒▒▒
(2) ADDRESS ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒       Age at Pension      61.417
(3) DATE OF BIRTH ▒▒▒▒▒▒▒▒▒▒▒       AGE AT RETIREMENT      63.367      DECIMAL YEARS.
(4) PRESENT OCCUPATION  **Coupling Grinder**      DEPARTMENT  **Coupling**
(5) DATE EMPLOYED    **May 19, 1959**      DATE LAST WORKED      **March 17, 1973**
(6) ELIGIBLE FOR: Public Pension ........(Yes or No)  VACATION PAID FROM ............. TO .............
           Other Pension ........(Yes or No)      FROM ............. TO .............
(7) INSURANCE DEDUCTION AUTHORIZATION ........(Yes or No)   FROM ............. TO .............
(8) TYPE OF PENSION  ( ) Normal   ( ) 30 Year  ( ) 60/15  ( ) 70/80  ( ) Permanent Incapacity  (X) Deferred Vested

| RECORD OF EMPLOYMENT | | | | | | | | | | | Annual earnings for last 120 full calendar months employment prior to date of retirement. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | INCLUSIVE DATES | | | | | | TOTAL PERIOD | | | | |
| COMPANY | FROM | | | TO | | | | | | | |
| | Mo. | Day | Yr. | Mo. | Day | Yr. | Yrs. | Mos. | Days | | |
| LTV (YS&T) | 5 | 19 | 59 | 4 | 13 | 64 | 4 | 10 | 25 | | From: |
| LTV (YS&T) | 5 | 26 | 64 | 3 | 31 | 73 | 8 | 10 | 6 | | To: |
| | | | | | | | | | | | $ |
| (Explain all absences appearing on employment record on reverse side) TOTAL SERVICE AND EARNINGS | | | | | | | 13 | 9 | 1 | | $ |

AVERAGE MONTHLY EARNINGS - (Divide total earnings shown by _____ months)

Date and Title of Document Establishing Date of Birth ...............            Continuous Service Certified Correct:
                                                                                                        **6-10-91**
..................................................            Supervisor of Employment            Date
                                                            **Admin. Employment Programs**

SPECIAL PAYMENT
Gross $ ..................                     Less Vacation Payment Received $ ................        Net $ .............

| COMPUTATION OF MONTHLY PENSION | PERCENT | MONTHLY PENSION | AUTHORIZATION OF GENERAL PENSION BOARD |
|---|---|---|---|
| (1) THE PERCENT PENSION | | | |
| Decimal Years of Service (Not to exceed 30 Years) | × 1.3% | % | Monthly Amount Payable to Pensioner $ |
| Decimal Years of Service (Exceeding 30 Years) | × 1.2% | % | |
| Total Decimal Years of Service | Total Percent | % | Date Effective |
| Average Monthly Earnings $ | Total × Percent | % | $ | Month Reported to Trustee |
| (2) THE MINIMUM PENSION | | | |
| Decimal Years of Service (Not to exceed 15 Years) | × $8.00 | | Monthly Amount Payable to Co-pensioner $ |
| (Exceeding 15 Years but) Decimal Years of Service (not to exceed 30 Years) | × $9.00 | | Date Effective |
| Decimal Years of Service (Exceeding 30 Years) | × $10.00 | | Month Reported to Trustee |
| Total Decimal Years of Service | Total | | |
| (3) PERMANENT INCAPACITY PENSION WHEN DISABILITY SOCIAL SECURITY IS DENIED | | | |
| Pension Amount Applicable – Greatest of $150.00, (1) and (2) | | | |

SEP 27 2004 15:36                                   3014950388            PAGE.04

ADMIN REC-0021

RETIREMENT INCOME SECURITY

29 USCS § 1053, n 8

LABOR

ADMIN REC-0022



# APPEALS MEMORANDUM

TO:        DMC                              Date: Nov-15-04

FROM:    PEAD, INTAKE GROUP (ext. 4090)

SUBJECT:  Appeals/Intake Correspondence In Processing

**PEAD has received correspondence from the participant named below. The Intake Unit is reviewing the correspondence to determine disposition (i.e., Appeal or RFA [Referred from Appeals]).**

**Appellant:**        **LEROY MONTGOMERY    SSN:** ▇▇▇▇▇▇

**Case: 195240**

**Plan:** LTV Steel Hourly Pension Plan

**ACTION REQUESTED:**

**[  ]    STAY DETERMINATION - MAKE NO CHANGES TO BENEFIT.  NO OTHER ACTION REQUIRED BY IOD AT THIS TIME.**

**IF DISPOSITION OF CORRESPONDENCE REQUIRES IOD ACTION, SCoRE REPORT WILL INDICATE RFA.**

Report: J:\ACCSimp5\Web Migration\ACCS\Publish\New I

**ADMIN REC-0023**

# FILE COPY

## Pension Benefit Guaranty Corporation

1200 K Street, N.W., Suite 480, Washington, D.C. 20005-4026

PBGC Case Number:  195240

November 15, 2004

**VIKKI MONTGOMERY**

The Appeals Board has received your recent correspondence on behalf of LEROY MONTGOMERY.

If your correspondence is an appeal, it will be assigned to an analyst for review.  This process must be thorough and may take several months or more.  Matters other than appeals, including requests for filing extensions, are usually handled in less time.  In any case, we will respond to you as quickly as we can and will keep you informed of our progress.  If you have any questions, write to the Appeals Board at the address shown or call us at:

> 1-800-400-7242    Ext.  4090
>
>              or
>
> For  TTY/TDD users, call the Federal relay service 1-800-877-8339 and give the individual the Appeals Board toll-free number above.

If we need additional information, we will contact you.

Sincerely,

**The Appeals Board**

PEAD/ACCS/101

**ADMIN REC-0024**



# APPEALS MEMORANDUM

**TO:**        DMC                                    Date: Nov-22-04

**FROM:**      Appeals Board, PEAD (ext. 4090)

**SUBJECT:** Appeal Docketing      Appeal No.   2005-0049

PEAD has accepted participant's correspondence as an appeal.
Relevant correspondence has been scanned to participant's IPS file.

Appellant: LEROY MONTGOMERY            SSN: ████████

Case:  195240

Plan: LTV STEEL HOURLY PENSION PLAN

ACTION REQUESTED:

[  ]    STAY DETERMINATION - MAKE NO CHANGES TO BENEFIT.

[X]    NO OTHER ACTION REQUIRED BY IOD UNTIL APPEAL IS CLOSED.

Report: /apps/cognos/cer3/data/pead/PEAD-ACCS/apps/r

**ADMIN REC-0025**

# INTAKE - DECIDE FIRST ASSIGNMENT

SS #: ▮▮▮▮▮▮▮▮▮▮    NAME: _Leroy Montgomery_

DAYS FILED: _34_    CASE NO. _195240_

APPEAL: ✓    FILING EXTENSION: _____

## APPEAL CRITERIA:

- ☐ Plan Interpretation Question
- ☐ Plan Practice
- ☑ Ineligible for Benefit
- ☐ Legal and/or Policy Question
- ☐ Employer Liability
- ☐ Successor Plans
- ☐ Specific Challenges
- ☐ Novel or Complex Issues
- ☐ Precedent-Setting Cases (issues that could affect some or all plan participants)
- ☐ Disability
- ☐ Inquiries Referred to IOD and Not Resolved
- ☐ QDROs

## REFER TO IOD:

- ☐ Explanation
- ☐ Quickly Identifiable, needed documents are accessible *and BDL might change*
- ☐ Benefit Determination Incomplete (i.e., not vested & does not include service data or lacks a complete calculation)
- ☐ Length of Service
- ☐ Vesting

NOTES: _____

_____

_____

_____

ADMIN REC-0026

# Memo to the File......

| | |
|---|---|
| Participant | Leroy Montgomery |
| SS # | ████████ |
| Plan # | 195240 |
| Subject | Participant APPEAL |

Fiche request was made but no fiche found.

DATE 11/23/04

ADMIN REC-0027

 **PBGC**
U.S. GOVERNMENT AGENCY

## Pension Benefit Guaranty Corporation
**1200 K Street, N.W., Washington, D.C. 20005-4026**

Ms. Vikki Montgomery                              February 4, 2005

███████████████████████████

Re:  Leroy Montgomery, Appeal 2005-0049, Case Number 195240
     LTV Steel Hourly Pension Plan (the "Plan")[1]

Dear Ms. Montgomery:

We have reviewed the appeal you filed on behalf of your father, Mr. Leroy Montgomery. On October 5, 2004, PBGC determined your father is not entitled to a benefit. PBGC found your father earned only 13 9/12 years of service instead of the 15 years the Plan required. As explained below, we are denying your appeal.

<u>Your Appeal</u>

In your November 8, 2004 appeal:

- You noted that under current law, your father's service is enough to become vested in a benefit.

You did not dispute that your father earned 13 9/12 years of service, from May 19, 1959 until March 17, 1973. Because his service totaled less than 15 years, the Plan does not provide him a benefit. Please see Enclosure 1.

The 29 USC 1053(a) minimum vesting rules you cite were enacted by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended. The ERISA minimum vesting rules do not apply to participants such as your father whose service ended before 1974. Thus, the law does not require changing PBGC's determination.

- You stated your father's overtime hours increase his service to the required 15 years.

The Plan measures continuous service from hire date until continuous service is broken, regardless of how many hours are worked. Please see Enclosure 1 pages 46-47. Therefore, overtime may not be used to increase your father's service.

---

[1] successor to the Pension Plan for Hourly Employees of Youngstown Sheet and Tube Company and Affiliates (the "Youngstown Plan")

**ADMIN REC-0028**

- 2 -

- You stated your father served in the U.S. Military from 1950-1953 and in the reserves from 1953 to 1959. He was discharged in November 1959.

Veteran's reemployment laws may allow a person to earn pension rights for time in military service if, among other conditions:[2]

> (i) He leaves a position (other than a temporary position) with an employer to join the Armed Services of the United States, and

> (ii) He is honorably discharged, and

> (iii) He makes application for reemployment within a prescribed period after discharge.

Your father's 1950-1959 military service does not meet condition (i) - his military service began before, instead of after, his YS&T service began. Therefore, the law does *not* require the Plan to increase your father's service for time in the military.

The Plan similarly includes military service in pension service only when military service would otherwise interrupt pension service. Please see Enclosure 1 page 47. Therefore, the Plan does not increase your father's 13 9/12 years pension service with his military service.

- You stated your father retired on disability in 1990, before reaching age 65.

A disabled participant with 15 years of service could start receiving a regular pension under the Plan's Permanent Incapacity Retirement. Retirement may occur no later than when continuous service is broken. Please see Enclosure 1 pages 28 and 29. Thus, your father fails to qualify for a Permanent Incapacity Retirement for two reasons:

> (i) His 13 9/12 years of service are less than the required 15 years, and

---

[2] For example, the Veterans Reemployment Rights Act ("VRRA") was in effect in 1973. The VRRA has been replaced with the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). See 38 USC §§ 4301-4333.

**ADMIN REC-0029**

- 3 -

(ii)  Your  father  did  not  satisfy  the  disability requirement  when  his  continuous  service  was  broken March 17, 1973.

- You stated others who worked at LTV fewer years than your father are receiving pensions.

Plan provisions are complicated and have varying effective dates.  For example, with only 5 years of service a Plan participant who worked after 1988 could earn a vested benefit. Thus, seemingly similarly-situated participants may be affected by different Plan provisions.   Therefore, other participants receiving a benefit with less service than your father do not show your father is entitled to a benefit.

### Where to Submit Any New Evidence

PBGC will always, even after an appeal is closed, consider any new, specific evidence that you may be entitled to a different benefit.   If you obtain any such evidence, please call PBGC's Customer Contact Center at 1-800-400-7242.

### Decision

Having applied the Law and the Plan provisions to the facts in this case, we must deny your appeal.  This letter concludes your administrative remedies with respect to PBGC's October 5, 2004 determination.  You may, if you wish, seek court review of PBGC's determination with respect to the issues you raised.  Thank you for your patience during our careful review of your appeal.

Sincerely,

*William D. Ellis* (signature)

William D. Ellis
Appeals Board Member

Enclosures:
1) Relevant  pages  from  the  July  31,  1972  USW-YS&T  Pension Agreement (7 pages)
2) Comparable pages from YS&T's May 31, 1973 Salaried Non-Union Employees Revised Retirement Plan (11 pages)

Cc:  Mr. Leroy Montgomery

ADMIN REC-0030

# PENSION AGREEMENT

*As Amended Effective July 31, 1972*

*For Employees of*

## Youngstown Sheet and Tube Company

AND

## Youngstown Metal Products Company Division

*Pursuant to Agreement with*

## United Steelworkers of America

**ADMIN REC-0031**

# TABLE OF CONTENTS

|  |  | Paragraph | Page |
|---|---|---|---|
| 1. | INTRODUCTION |  |  |
|  | Definitions | 1.1 | 27 |
|  | When Retirement Occurs | 1.2 | 28 |
|  | Provision of Benefits | 1.3 | 28 |
| 2. | ELIGIBILITY FOR PENSION |  |  |
|  | Normal Retirement | 2.1 | 29 |
|  | 30 Year Retirement | 2.2 | 29 |
|  | 60/15 Retirement | 2.3 | 29 |
|  | Permanent Incapacity Retirement | 2.4 | 29 |
|  | 70/80 Retirement | 2.5 | 30 |
|  | Deferred Vested Pension | 2.6 | 31 |
| 3. | AMOUNT OF PENSION |  |  |
|  | Types of Pension Payments | 3.1 | 31 |
|  | Special Payment | 3.2 | 31 |
|  | Regular Pensions—Normal, 30 Year and 70/80 | 3.3 | 32 |
|  | Regular Pension—60/15 | 3.4 | 34 |
|  | Regular Pension—Permanent Incapacity | 3.5 | 35 |
|  | Regular Pension—Deferred Vested | 3.6 | 35 |
|  | Increased Regular Pensions— Permanent Incapacity, 70/80 | 3.7 | 35 |
|  | Regular Pension—Part-time Participants | 3.8 | 35 |
|  | Deduction for Public Pension | 3.9 | 36 |
|  | Deduction for Other Pension | 3.10 | 36 |
|  | Deduction for Severance Allowance | 3.11 | 37 |
|  | Deduction for Disability Payments | 3.12 | 37 |
|  | Pension Application | 3.13 | 38 |
|  | Commencement of Regular Pensions | 3.14 | 39 |
|  | Termination of Regular Pensions | 3.15 | 39 |
|  | Survivor Options | 3.16 | 40 |
| 4. | SURVIVING SPOUSE'S BENEFIT |  |  |
|  | Eligibility | 4.1 | 43 |
|  | Amount of Benefit | 4.2 | 43 |
|  | Commencement and Termination of Benefit | 4.5 | 45 |
|  | Determination of Status as Surviving Spouse | 4.6 | 45 |
|  | Surviving Spouse of Part-time Participant | 4.8 | 46 |

25

ADMIN REC-0032

| | Paragraph | Page |
|---|---|---|
| 5. DETERMINATION OF CONTINUOUS SERVICE ... | 5.1 | 46 |
| 6. REEMPLOYMENT AFTER ATTAINMENT OF PENSION ELIGIBILITY | | |
| Applicability of Other Sections ............. | 6.1 | 47 |
| Effect on Pension ........................... | 6.2 | 48 |
| Continuous Service of Reemployed Participant | 6.3 | 48 |
| Special Pension Eligibility After Reemployment .... | 6.5 | 49 |
| Special Rules as to Amount of Pension ........ | 6.7 | 50 |
| 7. APPEALS PROCEDURE | | |
| Disputes as to Eligibility or Amount ......... | 7.1 | 50 |
| Disputes as to Permanent Incapacity ......... | 7.2 | 51 |
| 8. TRUST ......................................... | 8.1 | 51 |
| 9. REPORTS ...................................... | 9.1 | 52 |
| 10. APPLICABILITY OF AGREEMENT TO PARTICIPANTS UNDER PRIOR AGREEMENT .... | 10.1 | 52 |
| 11. GENERAL PROVISIONS | | |
| Administration .............................. | 11.1 | 52 |
| Continuation of Benefits .................... | 11.1 | 52 |
| Nonalienation ............................... | 11.2 | 53 |
| Deduction for Insurance Premiums and Overpayments | 11.3 | 53 |
| Rights of Participants ...................... | 11.4 | 53 |
| Distribution of Agreement ................... | 11.5 | 53 |
| Tax and Corporate Approvals ................. | 11.6 | 54 |
| Actuarial Value Percentages ................. | 11.7 | 54 |
| Term of Agreement ........................... | 11.8 | 54 |
| EXHIBIT A—BARGAINING UNITS COVERED. ...... | 11.9 | 55 |
| EXHIBIT B—SURVIVOR OPTION PERCENTAGES ..... | | 56 |
| | | 57 |

# Pension Agreement

Agreement dated August 1, 1971 (effective July 31, 1972) between Youngstown Sheet and Tube Company (hereinafter the "Company") and United Steelworkers of America (hereinafter the "Union").

## 1. INTRODUCTION

**1.1**

### Definitions

Wherever used herein

(a) "Basic Agreement" means a labor agreement between the Company and the Union covering rates of pay, hours of work, and other basic terms and conditions of employment, which is in effect during the term of this Pension Agreement and is applicable to a bargaining unit listed in Exhibit A, attached hereto and made a part hereof; and where used with respect to a participant means the Basic Agreement applicable to him;

(b) "Employee" means any employee who, from time to time during the period in which this Agreement is effective, is covered by a Basic Agreement;

(c) "participant" means any Employee who, from time to time during the period in which this Agreement is effective, is accruing continuous service; where so indicated in the context, "participant" also refers to a person who is no longer accruing continuous service but who had attained pension eligibility under this Agreement at the date he ceased to accrue continuous service, including a person who is retired and is receiving or is entitled to receive pension benefits under this Agreement;

(d) "continuous service" means continuous service determined pursuant to Section 5;

(e) "Public Pension" means a benefit in the nature of an annuity, pension or payment of similar kind

(i) under Title II of the Social Security Act or its successor (hereinafter "Social Security Act"), or

(ii) under the Railroad Retirement Act or its successor, or under a provision of law hereafter established, if as to such benefit the Company has contributed directly or indirectly by tax or otherwise with respect to employment of the participant by the Company;

(f) "eligible for Public Pension" is used with respect to a participant when he is eligible to receive, or would upon application be eligible

ADMIN REC-0033

to receive a Public Pension, or would be so eligible except for a reduction, offset or suspension imposed by law; provided that with respect to a Public Pension which is reduced by reason of its commencement prior to the age at which it is first provided without such a reduction, the participant shall be considered not eligible for a Public Pension until he has attained such age;

(g) "average monthly earnings" means the average monthly earnings of the participant paid by the Company for services rendered during the last 120 full calendar months of continuous service prior to retirement, subject to adjustment as provided in paragraph 3.3.(b).

### 1.2 *When Retirement Occurs*

For purposes of this Agreement, retirement shall be considered to occur:

(a) in the case of a participant who applies for pension prior to a break in continuous service, on the date the specifies as the date he wishes to retire, which shall be a date on or after the latest of

(1) the date of his request for retirement,

(2) the date of his attainment of eligibility for a pension under this Agreement, or

(3) the last day for which he earned wages from the Company, but not later than the last day of his continuous service;

(b) in the case of a participant who applies for pension after a break in continuous service, on the last day of his continuous service, provided that on such last day he was eligible for an immediate or deferred pension under this Agreement.

### 1.3 *Provision of Benefits*

Subject to the corporate action required to provide the benefits and to the Company's obtaining and/or retaining approval by the Commissioner of Internal Revenue of the trust or trusts heretofore or hereafter established under the pension plan of Youngstown Sheet and Tube Company, as changed to provide the benefits set forth in this Agreement as exempt under the applicable provisions of the Internal Revenue Code or successors to them, the following benefits shall be provided by the Company or caused to be provided by the Company for the participants.

28

## 2. ELIGIBILITY FOR PENSION

### 2.1 *Normal Retirement*

Any participant who shall have had at least 15 years continuous service and shall have attained the age of 65 years shall be eligible to retire on or after July 31, 1972 and shall upon his retirement (hereinafter "normal retirement") be eligible for a pension.

### 2.2 *30 Year Retirement*

Any participant who shall have had at least 30 years continuous service shall be eligible to retire on or after July 31, 1972 and shall upon his retirement (hereinafter "30 year retirement") be eligible for a pension.

### 2.3 *60/15 Retirement*

Any participant who shall have had at least 15 but less than 30 years continuous service and shall have attained the age of 60 years shall be eligible to retire on or after July 31, 1972 and shall upon his retirement (hereinafter "60/15 retirement") be eligible for a pension.

### 2.4 *Permanent Incapacity Retirement*

Any participant who shall have had at least 15 years continuous service and who shall have become permanently incapacitated shall be eligible to retire on or after July 31, 1972 and shall upon his retirement (hereinafter "permanent incapacity retirement") be eligible for a pension. A participant shall be considered to be permanently incapacitated (as "permanently incapacitated" is used herein) only (a) if he has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in any employment of the type covered by the Basic Agreement, and (b) after such total disability shall have continued for a period of six consecutive months and, in the opinion of a qualified physician, it will be permanent and continuous during the remainder of his life. A pension shall not be granted under the provisions of this paragraph of this Agreement for the purpose of providing a participant relief from unemployment or on account of any condition other than permanent incapacity for medical reasons. Incapacity contracted, suffered or incurred while the participant was engaged in, or resulted from his having engaged in, a criminal enterprise, or which

29

ADMIN REC-0034

## SECTION 2—ELIGIBILITY FOR PENSION

shall have been directly incurred in and shall be due solely to the future military service of such employee which prevents him from returning to employment with the Company and for which he receives a military pension, shall not entitle a participant to a pension under this paragraph. Such pension shall be discontinued if such participant shall cease to be permanently incapacitated prior to age 65. The Company may at any reasonable time prior to the date on which such pensioner shall reach the age of 65 years verify the continued incapacity of such pensioner by examination of him by a physician designated by the Company.

### 2.5 *70/80 Retirement*

Any participant who shall have had at least 15 years continuous service and (i) shall have attained the age of 55 years and whose combined age and years of continuous service shall equal 70 or more, or (ii) whose combined age and years of continuous service shall equal 80 or more, and

(a) whose continuous service is broken by reason of a permanent shutdown of a plant, department or subdivision thereof or by reason of a layoff or physical disability, or

(b) whose continuous service is not broken and who is absent from work by reason of

  (1) a layoff resulting from his election to be placed on layoff status pursuant to the provisions of the Basic Agreement applicable in the event of a permanent shutdown, or

  (2) a physical disability or a layoff other than a layoff resulting from an election referred to above and whose return to active employment is declared unlikely by his Company, or

(c) whose continuous service is not broken and who, while on layoff status by reason of his election to be placed on such status pursuant to the provisions of the Basic Agreement applicable in the event of a permanent shutdown, accepts a job with the Company and, prior to the expiration of 90 consecutive calendar days from the first day worked on such job, elects to retire, or

(d) who considers that it would be in his interest to retire and his Company considers that such retirement would likewise be in its interest and it approves an application for retirement under mutually satisfactory conditions,

30

## SECTION 2—ELIGIBILITY FOR PENSION

shall be eligible to retire on or after July 31, 1972 and shall upon his retirement (hereinafter "70/80 retirement") be eligible for a pension.

### 2.6 *Deferred Vested Pension*

Any participant not eligible to receive a pension under any other provision of this Section 2 whose continuous service is broken on or after July 31, 1972 for any reason other than discharge and who, at the time of such break in continuous service, shall have had at least 15 years continuous service and shall have attained the age of 40 years shall be eligible for a pension (hereinafter "deferred vested pension"), subject to the provisions relating to application set forth in paragraph 3.13(c). At the time of such break in continuous service, the Company shall furnish such a participant an appropriate written notice of the eligibility requirements and his relevant employment data.

### 2.7

Notwithstanding anything to the contrary contained in this Agreement, no pension (including any special payment) shall be payable for any month with respect to which the participant claims and is eligible for sickness or accident benefits provided under a Company program or similar benefits provided under law.

## 3. AMOUNT OF PENSION

### 3.1 *Types of Pension Payments*

A pension granted pursuant to Section 2 shall consist of

(a) a special initial pension amount (hereinafter "special payment"), except in the case of any participant eligible for a pension for permanent incapacity retirement or a deferred vested pension provided in paragraph 6.7), and

(b) a regular pension amount (hereinafter "regular pension"), payable in monthly installments except as otherwise provided in paragraph 3.15,

provided in accordance with the provisions of this Section 3.

### 3.2 *Special Payment*

(a) The special payment shall be an amount equivalent to 13 weeks of vacation pay

31

ADMIN REC-0035

person is a widow or widower of such participant within the provisions of the Social Security Act, except that where such Act requires reference to the law of the District of Columbia, the applicable law shall be that of the state of Ohio.

4.7 The Company shall make reasonable effort, by an appropriate method or methods, to inform the surviving spouse of the existence of this benefit.

4.8 *Surviving Spouse of Part-time Participants*

In the case of a surviving spouse of a deceased part-time participant, notwithstanding the provisions of paragraph 4.2, the amounts set forth in such paragraph 4.2 shall be reduced on the same basis as is provided in paragraph 3.8 for the reduction of the minimum pension of a part-time participant, whether or not the minimum pension was applicable to such deceased part-time participant.

## 5. DETERMINATION OF CONTINUOUS SERVICE

5.1 The term "continuous service" as used in this Agreement means service prior to retirement calculated from the participant's last hiring date (this means in the case of a break in continuous service, continuous service shall be calculated from the date of reemployment following the last unremoved break in continuous service) in accordance with the following provisions; provided, however, that the last hiring date prior to the date of this Agreement shall be based on the practices in effect at the time the break occurred:

(a) There shall be no deduction for any time lost which does not constitute a break in continuous service, except that in determining length of continuous service for pension purposes that portion of any absence which continues beyond two years from commencement of absence due to a layoff or physical disability, shall not be creditable as continuous service; provided, however, that absence in excess of two years due to a compensable disability incurred during course of employment shall be creditable as continuous service, if the participant is returned to work within 30 days after final payment of statutory compensation for such disability;

(b) Continuous service shall be broken by:

46

(1) Resignation (quit)

(2) Discharge, provided that if the participant is rehired within 6 months the break in continuous service shall be removed.

(3) Absence exceeding period for which leave of absence has been granted.

(4) Termination (when termination occurs pursuant to the Basic Agreement) due to (i) permanent shutdown of a plant, department or subdivision thereof; or (ii) failure to report for work within five working days after written notice to report for work.

(5) Absence which continues for more than 2 years, except that (i) absence in excess of 2 years due to compensable disability incurred during course of employment shall not break continuous service, provided the participant is returned to work within 30 days after final payment of statutory compensation for such disability; and (ii) if a person absent on account of layoff or disability in excess of 2 years returns to work with the Company within the period during which he retains his accumulated continuous service in accordance with the seniority provisions of the Basic Agreement, the break in continuous service shall be removed;

provided, however, that continuous service shall not be considered to be broken by absence of any participant who subsequent to May 1, 1940, entered the service of the United States, naval or merchant marine service of the United States, and who has reemployment rights under the law and complies with requirements of law as to reemployment and is reemployed. Continuous service shall include service in the employment of any company whose stocks and properties shall have been heretofore acquired. Continuous service shall include service in the employ of any company whose stocks or properties may be acquired hereafter only if and to the extent that credit for continuous service for the purpose of pension benefits shall be granted by the Company.

## 6. REEMPLOYMENT AFTER ATTAINMENT OF PENSION ELIGIBILITY

6.1 *Applicability of Other Sections*

Except as otherwise provided in this Section 6, the provisions of all other sections of this Agreement shall be applicable to any participant

47

ADMIN REC-0036

SECTION 6—REEMPLOYMENT AFTER ATTAINMENT OF PENSION ELIGIBILITY

his retirement shall be considered to be the date of retirement which would upon application for pension have been applicable to the deferred vested pension for which he was eligible prior to such reemployment.

## 7. APPEALS PROCEDURE

### Disputes as to Eligibility or Amount

7.1 If any difference shall arise between the Company and any participant who shall be an applicant for a pension, or to whom a pension shall be payable, as to such participant's right to a pension or the amount of his pension and agreement cannot be reached between the Company and a representative of the International Union, such question shall be referred to Arbitration established under the Basic Agreement applicable to production and maintenance employees in the basic steel operations of the Company. The Arbitrator shall have authority only to decide the question pursuant to the provisions of this Agreement applicable to the question but he shall not have authority in any way to alter, add to or subtract from any of such provisions. The decision of the Arbitrator on any such question shall be binding on the Company, the Union and the participant. If any difference shall arise between the Company and any person who shall be or claims to be a co-pensioner or a surviving spouse, as to such person's right to a benefit under this Agreement or the amount of such benefit, such difference shall be resolved by the Company and a representative of the International Union. If such difference is not so resolved, it may, by agreement of the Company and the Union, be referred to the Arbitrator described above, who shall have authority as described

### Special Rules as to Amount of Pension

6.7 Special payment shall not be made in any case where a special payment was made to the participant for a prior retirement under this or any prior Agreement between the parties.

6.8 The amount of regular pension for reinstated 70/80 retirement shall be determined the same as a regular pension for 70/80 retirement.

6.9 For purposes only of paragraph 3.16, reference therein to a 70/80 retirement shall be deemed to include a reinstated 70/80 retirement.

SECTION 7—APPEALS PROCEDURE

above with respect to such difference, and if it is so referred, the decision of the Arbitrator shall be binding on the Company, the Union and such person.

### Disputes as to Permanent Incapacity

7.2 If any difference shall arise between the Company and any participant as to whether such participant is or continues permanently incapacitated within the meaning of paragraph 2.4, such difference shall be resolved as follows:

The participant shall be examined by a physician appointed for the purpose by the Company and by a physician appointed for the purpose by a duly authorized representative of the International Union. If they shall disagree concerning whether the participant is permanently incapacitated, that question shall be submitted to a third physician selected by such two physicians. The medical opinion of the third physician, after examination of the participant and consultation with the other two physicians, shall decide such question. The fees and expenses of the third physician shall be shared equally by the Company and the Union.

## 8. TRUST

8.1 For the purpose of supplying the benefits herein provided, the Company may establish or cause to be established a pension trust or trusts or may utilize any existing trust or trusts heretofore established by or on behalf of the Company. The Company is free to determine the manner and means of making provision for funding and paying the benefits set forth in this Agreement; provided, however, that the aggregate of the amount of monies, for the benefit of participants, that shall have been paid into any pension trust or trusts established in accordance with the provisions of the Pension Plan of Youngstown Sheet and Tube Company dated and effective as of March 1, 1950, as amended and as it shall be further amended in accordance with the provisions of this Agreement, for any year during the term of this Agreement and of the monies that were paid into such trust or trusts for previous years shall not be less than an amount which on a sound actuarial basis shall be estimated to be sufficient to pay the pensions which shall have been granted under such Pension Plan during such year and during such previous years.

ADMIN REC-0037

ENCLOSURE 2



# Youngstown ⚙ Steel

For exempt and non-union, non-exempt employees of the following divisions and subsidiaries of Youngstown Sheet and Tube Company:

## DIVISIONS

Steel Division
Continental - Emsco Company
Continental - Emsco Company - International Division
Fibercast Company
Youngstown Metal Products Company

## SUBSIDIARIES

The Youngstown Steel Products Company
The Continental Supply Company
Continental - Emsco Company C.A.
The Buckeye Coal Company
The Youngstown Mines Corporation
Nemacolin Supply Company

## Salaried Non-Union Employees



ADMIN REC-0038

# TABLE OF CONTENTS

|  | Section | Page |
|---|---|---|

**Part A.    DEFINITIONS** .................... A-1.01-25    3-7

**Part B.    NON-CONTRIBUTORY PART**

Article I    Non-Contributory Benefits

  General Eligibility .............. B-1.01    8
  Normal Retirement .............. B-1.02    8
  Special Payment ................ B-1.03    8
  Monthly Pension ................ B-1.04    9
  Deductions—Pension

  Payments ..................... B-1.05    10
  Early Retirement ............... B-1.06    11
  30 Year Retirement ............ B-1.07    13
  Disability Retirement ........... B-1.08    13
  Deferred Vested Retirement .... B-1.09    14
  Supplemental Payment—Other Early

  and Disability Retirements ... B-1.10    15
  Time of Payment of Pension ... B-1.11    15
  Part Time Employees .......... B-1.12    17
  Options ....................... B-1.13    17

Article II    General

  Continuation of Employment

  Beyond Normal

  Retirement Date .......... B-2.01    20
  Re-employment after

  Retirement ................. B-2.02    20
  Duplication ................... B-2.03    20

Article III    Surviving Spouse's Benefit

  Eligibility ..................... B-3.01    21
  Minimum Amount of Benefit .. B-3.02    21
  Amount of Benefit ............ B-3.03    21
  Age 65 ........................ B-3.04    23
  Commencement and

  Termination of Benefit ..... B-3.05    23
  Determination of Status as

  Surviving Spouse .......... B-3.06    24
  Surviving Spouse

  to be Informed ............ B-3.07    24
  Surviving Spouse of Part-time

  Employee ................... B-3.08    24

i

ADMIN REC-0039

| | | Section | Page |
|---|---|---|---|
| **Part C.** | **CONTRIBUTORY PART** | | |
| Article I | Participation in Contributory Part of Plan | | |
| | General Eligibility | C-1.01 | 25 |
| | Terms of Eligibility | C-1.02 | 25 |
| | Entry Date | C-1.03 | 25 |
| | Election to Participate | C-1.04 | 25 |
| | Subsequent Eligibility Only on General Reopening | C-1.05 | 26 |
| Article II | Eligibility for Contributory Benefits | | |
| | Normal Retirement Date | C-2.01 | 26 |
| | Early Retirement | C-2.02 | 26 |
| | 30 Year Retirement | C-2.03 | 26 |
| | Disability Retirement | C-2.04 | 27 |
| | Vested Deferred Limited Pension Rights | C-2.05 | 27 |
| | Minimum Special Pension | C-2.06 | 28 |
| Article III | Amount of Pensions | | |
| | Pension Payable Upon Attainment of Normal Retirement Date | C-3.01 | 28 |
| | Early Retirement Pension | C-3.02 | 30 |
| | 30 Year Retirement Pension | C-3.03 | 30 |
| | Disability Retirement Pension | C-3.04 | 30 |
| | Vested Deferred Limited Pension | C-3.05 | 31 |
| | Options | C-3.06 | 31 |
| Article IV | Payment of Pensions | | |
| | Normal Retirement Pension | C-4.01 | 31 |
| | Early and 30 Year Retirements | C-4.02 | 32 |
| | Disability Retirement | C-4.03 | 32 |
| | Vested Deferred Limited Pension | C-4.04 | 32 |
| | Minimum Special Pension | C-4.05 | 33 |
| | Pension Payment to Co-Pensioners | C-4.06 | 33 |
| | Date of Payment | C-4.07 | 33 |
| | Pension Payments Under Options | C-4.08 | 33 |
| | Application Required | C-4.09 | 33 |

ii

| | | Section | Page |
|---|---|---|---|
| **Part C.** | **CONTRIBUTORY PART (Cont.)** | | |
| Article V | Death Benefits | | |
| | Ten-Year Certain Benefits | C-5.01 | 34 |
| | Ten-Year Certain Equivalent Total Amount Certain if Minimum Special Pension is Payable | C-5.02 | 34 |
| | Designation of Beneficiary | C-5.03-4 | 34-35 |
| | Death of Beneficiary or Co-Pensioner | C-5.05 | 35 |
| | Expiration of Term Certain | C-5.06 | 35 |
| Article VI | Contributions | | |
| | Contributions by Contributory Participant | C-6.01 | 36 |
| Article VII | Withdrawal and Return of Contributions | | |
| | Termination of Employment | C-7.01 | 37 |
| | Discontinuance of Contributions | C-7.02 | 37 |
| | Death of Contributory Participant Prior to Retirement | C-7.03 | 38 |
| Article VIII | General | | |
| | Continuation of Employment Beyond Normal Retirement Date | C-8.01 | 38 |
| | Preservation of Contributory Participant Status | C-8.02 | 39 |
| | Re-employment after Retirement | C-8.03 | 39 |
| | Duplication | C-8.04 | 40 |
| **Part D.** | **GENERAL PROVISIONS** | | |
| Article I | Administration of the Plan | | |
| | Pension Board | D-1.01 | 40 |
| | Pension Board's Rules | D-1.02 | 40 |
| | Pension Board's Determinations | D-1.03 | 40 |
| | Filing Required Information | D-1.04 | 40 |
| | Adjustment of Average Monthly Compensation | D-1.05 | 40 |
| | Adjustment of Continuous Service | D-1.05 | 40 |
| | Limitation of Adjustments | D-1.06 | 41 |
| | Computation of Years of Continuous Service and | D-1.07 | 41 |

iii

ADMIN REC-0040

lieu of all other monthly pension benefits under the Revised Retirement Plan. Retirement benefits under the Contributory Part are conditioned upon the employee's executing an election to participate in it and continuing or commencing to make contributions. The rate of the employee's contribution is to be the same as under the retirement program as it existed prior to October 1, 1964. This consists of approximately 5% of the employee's compensation in excess of $250 per month, payable monthly by payroll deduction. The Company also will make substantial contributions to the Contributory Part of the Revised Retirement Plan, which together with the employee's contributions shall be used to provide the contributory benefits.

2

# THE PLAN

## Part A

## Definitions

A-1.01  **"Plan"** shall mean the Revised Retirement Plan for Salaried, Non-Union Employees of the Company, as described herein or as hereafter amended.

A-1.02  **"Program"** shall mean the Company's former program to provide retirement pensions for salaried non-union employees as it existed prior to October 1, 1964.

A-1.03  **"Effective Date of the Plan"** shall mean May 31, 1973. The original Revised Retirement Plan became effective as of October 1, 1964 and was thereafter revised effective July 31, 1966, July 31, 1969, and December 31, 1972. Certain further amendments thereto were authorized to become effective May 31, 1973. These further amendments have been incorporated into the original Plan, as heretofore revised, and the revised and amended Plan is effective as of May 31, 1973.

A-1.04  **"Company"** shall mean Youngstown Sheet and Tube Company, and all its divisions, subsidiary companies, and associated companies heretofore covered by the Program and/or Plan (except Continental-Emsco Company Limited), and all divisions, subsidiary companies, and associated companies designated by the Board of Directors to be covered by the Plan after its effective date. "Subsidiary Company" shall mean any corporation at least 80% of whose capital stock of each class is owned, directly or indirectly, by the Company. "Associated Company" shall mean any corporation less than 80% of whose capital stock of each class is owned, directly or indirectly, by the Company.

A-1.05  **"Board of Directors"** shall mean the Board of Directors of Youngstown Sheet and Tube Company.

A-1.06  **"Trustee"** shall mean one or more trustees by whom funds of the Plan are held as provided in Article II of Part D.

3

ADMIN REC-0041

A-1.07  "Pension Board" shall mean the Pension Board as provided in Article I of Part D.

A-1.08  "Employee" shall mean any person receiving a salary who is not included in a collective bargaining unit and is employed on a regular basis either by the Company or as a qualified citizen-employee by a foreign subsidiary.

A-1.09  A "qualified citizen-employee" is a United States citizen employed by a foreign subsidiary of the Company who qualifies for inclusion in the coverage of the Plan under Section 406 of the Internal Revenue Code of 1954, as amended.

A-1.10  "Contributory Participant" shall mean any eligible Employee who has elected to participate in and is covered by the Contributory Part of the Plan.

A-1.11  "Compensation" shall mean the remuneration paid an Employee for services rendered to the Company including amounts of cash remuneration paid to an Employee in addition to his regular base salary, such as overtime pay, shift differentials and production and year-end cash bonuses. For the pension purposes under the Plan, an Employee's compensation shall be computed as it was computed for pension purposes under the Program. Notwithstanding anything herein to the contrary, Compensation, as defined herein, shall not include any amounts of cash remuneration paid to an Employee which are designated by the Company as cost of living allowance.

A-1.12  "Continuous service" shall mean service by an Employee in the employment of the Company prior to retirement. It includes the periods of service rendered by an Employee in connection with properties or businesses at any time owned by the Company prior to the Effective Date of the Plan, rendered prior to the acquisition of such properties or businesses by the Company. It shall be calculated from the Employee's last hiring date to the date of retirement. Continuous service shall be broken by quit, discharge, termination for any other reason, or by layoff or absence which continues beyond the period authorized by the Company,

4

The continuous service of an Employee who shall have been absent in military service for the United States of America or who shall have been absent on leave for other service to the United States of America or for military or other service to any subdivision thereof shall not be affected by his absence; provided, however, that if after October 1, 1964, such Employee shall voluntarily enlist or re-enlist in any service at the time when the United States of America is not actively engaged in military hostilities with another country, his continuous service shall, if permitted by law, be broken at the time of his enlistment or re-enlistment.

A-1.13  "Contributory service" shall mean any period of continuous service rendered by a Contributory Participant while making contributions, which have not been withdrawn, under either the Program or Plan, or both.

A-1.14  "Accumulated contributions" shall mean the sum of the contributions made by a person as a member under the Program or as a Contributory Participant under the Plan, plus the interest thereon. The rate or rates of interest paid on a Contributory Participant's contributions at the time of withdrawal or death will be determined from time to time by the Company.

The terms "retired" or "retirement" relate to a person, who, as of the last day of his continuous service, is eligible for a pension under the Plan, and retirement occurs:

(a)  In the case of an Employee who applies for a pension prior to a break in continuous service, on the date he specifies as the date he wishes to retire, which shall be a date on or after the latest of:

(1)  the date of his request for retirement,

(2)  the date of his attainment of eligibility for pension under the Plan, or

(3)  the last day for which he earns compensation from the Company,

but not later than the last day of his continuous service;

5

## Part B
## Non-Contributory Part
### Article I
### Non-Contributory Benefits

**B-1.01** **General Eligibility.** Every Employee of the Company is eligible to participate in the Non-Contributory Part of the Plan in accordance with its terms, irrespective of whether he participates in the Contributory Part of the Plan.

**B-1.02** **Normal Retirement.** Any Employee who shall have had at least 15 years of continuous service and shall have attained the age of 65 years shall, upon his retirement, be entitled to a pension which shall consist of:

(a) A special initial pension amount (herein called "Special Payment") as provided in Section B-1.03 below, except in the case of (1) any Employee who shall have received a Special Payment with respect to prior retirement, or (2) any Employee whose Company group life insurance is more than $30,000; and

(b) A monthly pension amount as provided in Section B-1.04 below, payable for life in monthly installments, except that if the installments are less than certain amounts, payment may be made on a quarterly basis or in a lump sum as provided in Section D-1.08 (b);

**B-1.03** **Special Payment.** The Special Payment shall be an amount equivalent to 13 weeks of vacation pay computed:

(a) In the case of an Employee entitled to a regular vacation in the year of retirement, at the rate of pay for such regular vacation (exclusive of cost of living allowance) reduced by the amount of regular vacation pay (exclusive of cost of living allowance) received for the year of retirement;

(b) In the case of an Employee who would have been entitled to a regular vacation in the year of retirement but did not take it, at the rate (exclusive of cost of living allowance) which would have been applicable if

8

he had taken a regular vacation which terminated on the date of retirement; or

(c) In the case of an Employee not in any event entitled to a regular vacation in the year of retirement, at the rate of pay (exclusive of cost of living allowance) applicable to the last regular vacation to which he was entitled, reduced by the amount of regular vacation pay (exclusive of cost of living allowance) received for the year for which he was last entitled to a regular vacation.

**B-1.04** **Monthly Pension.** The monthly installment of a pension under Section B-1.02 (b). ("Normal Retirement") shall be computed in accordance with (a) or (b) below, whichever is greater:

(a) A monthly amount (herein called "percent pension") equal to the average monthly compensation of the Employee during the last 120 full calendar months of continuous service prior to retirement, multiplied by:

(1) for an Employee with more than 30 years of continuous service, 33% plus a percent determined by multiplying 1.2% by the number of years (and fractions thereof calculated to the nearest month) of his continuous service in excess of 30 years, or

(2) for an Employee with 30 years or less of continuous service, 1.1% multiplied by the number of years (and fractions thereof calculated to the nearest month) of his continuous service,

but in either case subject to the deductions applicable under Section B-1.05; or

(b) A monthly amount (herein called "minimum regular pension") equal to:

(1) for an Employee with more than 30 years of continuous service, $265 plus an amount determined by multiplying $10 by the number of years (and fractions thereof calculated to the nearest month) of his continuous service in excess of 30 years, or

(2) for an Employee with 30 years or less of continuous service, $120 plus an amount determined

9

ADMIN REC-0043

by multiplying $9 by the number of years (and fractions thereof calculated to the nearest month) of his continuous service in excess of 15 years, but in either case subject to the deductions applicable under Section B-1.05.

B-1.05  **Deductions — Pension Payments.**

(a) Deductions from any monthly pension for Public Pension shall be made in accordance with the following provisions:

(1) No deduction from any monthly pension shall be made for Public Pension related to the Social Security Act;

(2) In the event that for any month an Employee is eligible for Public Pension not related to the Social Security Act, or a similar act or provision of law provided by nations other than the United States, there shall be a deduction for such Public Pension from any percent pension or any minimum regular pension otherwise payable for such month. The amount of such deduction shall be the amount of Public Pension paid or payable to the Employee, or that would upon application become payable to him for such month, without regard to any offset, suspension or reduction imposed by law (including any reduction by reason of commencement of such Public Pension prior to the age at which it is first provided under law without such a reduction); provided such deduction shall be limited to the amount, to the extent reasonably determinable, of such Public Pension attributable to employment by the Company;

(3) After a deduction for Public Pension first becomes applicable, it shall not be changed to reflect any increase of such Public Pension resulting from

(i) amendment of the law under which such Public Pension is provided, if the effective date of such increase occurs after the first

10

month with respect to which a deduction for such Public Pension became applicable, or

(ii) subsequent employment by other than the Company.

(b) Any pension computed under any provisions of Part B payable to a pensioner or co-pensioner whose only benefits under Part C are provided under Section C-2.05 (a) shall be reduced by that portion of the Section C-2.05 (a) pension that is paid for by the Company through its contributions to the Group Annuity Contract or otherwise for any month in which the pensioner or co-pensioner receives, or upon timely application would be entitled to receive, such retirement annuity.

(c) Any pension computed under any provision of Part B shall also be reduced by the Pension Board by all or part of the amount of any severance allowance (except that severance allowance will not be deducted from a deferred vested pension) and/or Workmen's Compensation or Occupational Disease Act awards, under uniform rules adopted by the Pension Board. Any amount payable under a Supplemental Unemployment Benefit Plan, a Revised Savings and Vacation Plan or a Deferred Savings and Vacation Allowance Plan of the Company shall not be considered a severance allowance for the purposes of this subsection (c).

B-1.06  **Early Retirement**

(a) Age 60 and 15 Years Continuous Service. Any Employee who shall have at least 15 years of continuous service and shall have attained the age of 60 shall be eligible to retire at his sole election and shall, upon his retirement, be entitled to receive a pension which shall consist of a Special Payment, as provided for and subject to the exceptions stated in Section B-1.02 (a), and either:

(1) A deferred monthly pension, commencing after his normal retirement date, computed in the same

11

ADMIN REC-0044

manner as under Section B-1.04 above ("Monthly Pension"), but based only on continuous service to the date of early retirement, and, with respect to Section B-1.04 (a), on average monthly compensation during the last 120 full calendar months of continuous service prior to early retirement; or

(2) An immediate monthly pension, commencing at the time of early retirement in a reduced amount which is the equivalent actuarial value of the deferred pension under (1) above.

(b) **Other Early Retirement.** Any employee who shall have had at least 15 years of continuous service and (i) shall have attained the age of 55 years and whose combined age and years of continuous service shall equal 70 or more, or (ii) whose combined age and years of continuous service shall equal 80 or more, and

(1) Whose continuous service is terminated by reason of lack of work or by reason of a permanent shut-down of a plant, department or subdivision thereof, or by reason of a physical disability; or

(2) Whose continuous service is not terminated, and who is absent from work by reason of physical disability or by reason of lack of work, and whose return to active employment is declared unlikely by the Company; or

(3) Who considers it would be in his interest to retire, and in the judgment of the Company such retirement would likewise be in its interest, and the Company approves an application for retirement under mutually satisfactory conditions,

shall be eligible to retire and receive a pension consisting of the same types of payment, computed in the same manner, and subject to the same exceptions and deductions as provided in (a) and (b) of Section B-1.02 ("Normal Retirement").

Notwithstanding anything to the contrary contained in this Plan, no pension (including any Special Payment)

12

granted pursuant to this subsection (b) shall be payable for any month earlier than the month following the month in which the Employee was last eligible to receive sickness or accident benefits provided under a Company program or non-occupational disability benefits provided under law.

B-1.07 **30 Year Retirement.** Upon 90 days written notice to the Company any Employee who shall have had at least 30 years continuous service shall be eligible to retire and shall upon his retirement be eligible to receive a pension which shall consist of a Special Payment, as provided for and subject to the exceptions stated in Section B-1.02 (a) and a monthly pension payable as provided in Section B-1.04 ("Monthly Pension") as though at the date of his retirement he had attained age 65 and became eligible for Public Pension.

B-1.08 **Disability Retirement.** Any Employee who shall have at least 15 years of continuous service and who shall have become through some unavoidable cause permanently incapacitated shall be eligible to retire and shall, upon his retirement, be entitled to a monthly pension computed as follows:

(a) Prior to normal retirement date, the greater of:

(1) $150 per month, subject to the applicable deductions provided for under Section B-1.05 ("Deductions"); or

(2) An amount per month computed in the same manner as under Section B-1.04 above ("Monthly Pension"), but based only on continuous service to the date of retirement for disability, and, with respect to Section B-1.04 (a), on average monthly compensation during the last 120 full calendar months of continuous service prior to such retirement.

(b) After normal retirement date, such monthly pension shall be the amount computed in the same manner as under Section B-1.04 ("Monthly Pension"), but based only on continuous service to the date of retirement

13

ADMIN REC-0045

for disability, and, with respect to Section B-1.04 (a), on average monthly compensation during the last 120 full calendar months of continuous service prior to such retirement.

An Employee retiring under this Section B-1.08 shall not be entitled to a Special Payment.

B-1.09

An Employee shall be deemed to be permanently incapacitated (as the term "permanently incapacitated" is used herein) only (1) if he has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in any occupation or employment with the Company in the nature of his prior employment and (2) after such total disability shall have continued for a period of six consecutive months and, in the opinion of one or more physicians acceptable to the Company, it will be permanent and continuous during the remainder of his life. A pension shall not be granted under the provisions of this Section B-1.08 for the purpose of providing any Employee relief from unemployment or on account of any condition other than permanent incapacity for medical reasons. In-capacity contracted, suffered or incurred while the Employee was engaged in, or resulting from his engaging in, a criminal enterprise, or resulting from future service in the Armed Forces and which prevents him from returning to employment with the Company and for which he receives a military pension, shall not entitle an Employee to a pension under this Section B-1.08. Prior to the pensioner's normal retirement date, such pension for permanent incapacity shall continue only so long as he shall be permanently incapacitated. The Company may at any reasonable time or times prior to the date on which the pensioner shall reach 65 years of age verify his continued incapacity by examination of him by a physician designated by the Company.

Deferred Vested Retirement. Any Employee not eligible to receive a pension under any of the foregoing provisions of this Article I whose employment shall be terminated as a result of a permanent shutdown of a plant, department or subdivision thereof, or as a result of lack of work or

14

physical disability and who at the date of his termination shall have attained the age of 40 and at such time have at least 15 years of continuous service, shall be eligible to receive a deferred monthly pension payable as provided in Section B-1.11 (c), as the Employee shall elect in his application for pension, commencing after attainment of age 65 in an amount computed in the same manner as under B-1.04 ("Monthly Pension"), or commencing prior to attainment of age 65 but after attainment of age 60 in an amount computed in the same manner as under B-1.04 reduced to its equivalent actuarial value, provided, however, that he makes application therefor not earlier than 90 days prior to the first day of the month for which the first installment of pension is payable under B-1.11 (c) and not later than his seventieth birthday. No deferred vested pension shall be paid if application therefor has not been made within the period of time herein specified. An Employee retiring under this Section B-1.09 shall not be entitled to a Special Payment.

B-1.10 Supplemental Payment — Other Early and Disability Retirements.

The monthly pension amount for an Employee retiring under the provisions of Section B-1.06 (b) or B-1.08 shall, prior to any reduction pursuant to Section B-1.05 (b) and (c), be increased by $105; provided, however that such increase shall not be applicable with respect to such a pension payable for any month for which the pensioner is eligible for an unreduced Public Pension.

B-1.11 Time of Payment of Pension.

(a) A Special Payment, if payable, shall cover the three-calendar-month period next after the month of retirement and shall become payable in a lump sum in the first of such three calendar months, provided, however, that a written pension application (which includes application for both the Special Payment, if payable, and the monthly pension installment), together with such appropriate data as the Pension Board may require, is filed by the Employee before the end of the

15

ADMIN REC-0046

able for the month following the month in which the Employee shall die, and the last installment shall be payable for the month in which the surviving spouse shall die, provided, however, that a surviving spouse's benefit shall not be payable for any month for which a Special Payment was payable to the Employee. No surviving spouse's benefit is payable for any month earlier than 12 months before the month in which the surviving spouse files an application for the benefit. In connection with the application, the Company may require the surviving spouse to grant any authorization necessary to receive relevant records from the agency administering the law referred to in Section B-3.03 (e).

B-3.06 **Determination of Status as Surviving Spouse.** A person shall be considered a surviving spouse for the purpose of this Article III, only if, immediately after an Employee's death, such person is a widow or widower of such Employee within the provisions of the Social Security Act, except that where such Act requires reference to the law of the District of Columbia, the applicable law shall be that of the State of Ohio.

B-3.07 **Surviving Spouse to be Informed.** The Company shall make reasonable effort, by an appropriate method or methods, to inform the surviving spouse of an eligible Employee of the existence of this benefit.

B-3.08 **Surviving Spouse of Part-time Employee.** In the case of a surviving spouse of a deceased part-time Employee, notwithstanding the provisions of Section B-3.02, the amounts set forth in such Section B-3.02 shall be reduced on the same basis as is provided in Section B-1.12 for the reduction of the minimum regular pension of a part-time Employee, whether or not the minimum regular pension was applicable to such deceased part-time Employee.

24

# Part C
# Contributory Part

## Article I

## Participation in Contributory

## Part of Plan

C-1.01 **General Eligibility.** Every Employee with one year of continuous service whose compensation is $250 per month or greater may participate in the Contributory Part of the Plan in accordance with the terms of the Plan by complying with the requirements in this Part, which includes a monthly contribution of approximately 5% of his compensation in excess of $250.

C-1.02 **Terms of Eligibility.** Each Employee who was a Contributory Participant on the Effective Date of the Plan shall continue as and be a participant in the Contributory Part of the Plan. Any other Employee shall be eligible to elect to become a participant in the Contributory Part of the Plan as of the first applicable entry date occurring on or after the date he has both (1) completed at least one year of service with the Company, and (2) attained a rate of monthly compensation in excess of $250, provided, however, his age at his birthday nearest to that entry date is not greater than 64.

C-1.03 **Entry Date.** The entry date referred to in Section C-1.02 above shall be April 1 and October 1 of each succeeding year.

C-1.04 **Election to Participate.** In order to become a participant in the Contributory Part of the Plan, an eligible Employee must exercise his election to do so, and must authorize the payroll deduction of his contributions under the Plan, by executing and filing with the Company an appropriate form, as provided by it for this purpose, within the

25

ADMIN REC-0047

applicable time indicated below:

(a) Any Employee becoming thus eligible after the Effective Date of the Plan shall file such form on or before the entry date on which he becomes eligible.

(b) However, any Employee on approved leave of absence when his election would otherwise have to be filed may file it within 30 days after he returns to the active service of the Company.

An Employee who elects to become a Contributory Participant as provided in this Section C-1.04 shall become a Contributory Participant as of the first day he becomes eligible therefor.

C-1.05 **Subsequent Eligibility Only on General Reopening.** Any Employee who elects not to become a Contributory Participant, or who fails to elect to become a Contributory Participant, as provided in Section C-1.04, may later become a Contributory Participant only in accordance with a general reopening of contributory participation as may, under rules uniformly applicable to all persons similarly situated, be set by the Company.

## Article II

## Eligibility for Contributory Benefits

C-2.01 **Normal Retirement Date.** A Contributory Participant shall become eligible for a pension under the Contributory Part upon attaining his normal retirement date.

C-2.02 **Early Retirement.** Upon retirement under ... types of early retirement provided in Su... Contributory Participant shall become eligib... under the Contributory Part.

C-2.03 **30 Year Retirement.** Upon retirement under the 30 year retirement provided in Section B-1.07, a Contributory Participant shall become eligible for a pension under the Contributory Part.

26

C-2.04 **Disability Retirement.** Upon retirement because of a permanent disability as provided in Section B-1.08, a Contributory Participant shall become eligible for a pension under the Contributory Part.

C-2.05 **Vested Deferred Limited Pension Rights.**

(a) Under the Program a contributory member who had completed 10 or more years of continuous service acquired a right to receive a monthly pension under the Group Annuity Contract upon attaining his normal retirement date whether or not he continued as an Employee, or continued to contribute, or withdrew his own contributions. Any such person who completed 10 or more years of continuous service before October 1, 1964 shall continue to be eligible for monthly pension in accordance with such provisions of the Group Annuity Contract unless he becomes eligible for a larger pension under the other provisions of the Plan. His pension shall be computed under the provisions of the Group Annuity Contract and shall be based upon, either (1) the sum of his own unwithdrawn contributions and those made on his behalf by the Company prior to October 1, 1964, or (2) those made on his behalf by the Company prior to October 1, 1964 if he has withdrawn or withdraws his own contributions prior to retirement.

(b) Any person who ceases to be a Contributory Participant as a result of termination of employment or involuntary loss of eligibility after completing 10 or more years of contributory service, and who, after October 1, 1964, does not, prior to his normal retirement date, withdraw his own contributions, if any, made under the Program and those made under the Plan, shall be eligible for a monthly pension based upon his own and the Company's contributions upon his attainment of his normal retirement date in accordance with the terms of Section C-3.05 (b). If he withdraws any of his own contributions, he shall receive only such pension under this Part C as he may become eligible for under Section (a) above.

27

ADMIN REC-004



# *APPEALS MEMORANDUM*

Date: Feb-09-2005

TO:      DMC

FROM:    Appeals Board, PEAD (ext. 4090)

SUBJECT: Appeal File Closing/Appeals Board Decision

This is to notify you that the following appeal file has been closed for the following reason:

**Appellant  MONTGOMERY, LEROY**          **Appeal #:  05-0049**

**SSN:** ███████████              **Case:  195240**

**Plan:  LTV STEEL HOURLY PENSION PLAN**

[X] **Decided On Procedural Grounds**

   [X] Action Required: None

Report: /apps/cognos/cer3/data/pead/PEAD-ACCS/apps/Closing Memo to I

**ADMIN REC-0049**



# APPEALS MEMORANDUM

**TO:**        DMC                                    Date: May-16-05

**FROM:**      Appeals Board, PEAD (ext. 4090)

**SUBJECT: Previously Closed Appeal**

Attached is a copy of correspondence received after the Appeal was closed
with regard to:

**Appellant: LEROY MONTGOMERY**        **SSN:** ███████

**Case: 195240**        **Appeal No.   2005-0049**

**Plan:  LTV STEEL HOURLY PENSION PLAN**

## Action Requested:

[ ]        **Other**

Report: J:\ACCSimp5\Memos\Previously Closed Appeal li

ADMIN REC-0050

RECEIVE PBGC

2005 MAY 10  PM 12: 50

PEAD-APPEALS BD.

May 6th 2005

PBDC

Mr. Ellis

Appeal 2005-0049  Case Number 195240

After much discussion with you by phone. I have chosen to send to you paper work on my rights to my pension. I have been trying for about 14 years to resolve this issue

At this time I am apply for the Mutie employer Pension plan, please note your records I am sending copy of this letter and paper work to Mr. James B Lockhart III.

I will waite to hear from your Advisory Committee!

Thank You!

Leroy Montgomery

cc: Director James B. Lockhart III

**ADMIN REC-0051**



# *FACTS*

Pension Benefit
Guaranty Corporation
2020 K Street, N.W.
Washington, D.C. 20006-1860

## THE PENSION BENEFIT GUARANTY CORPORATION

**PURPOSE AND BACKGROUND:** The Pension Benefit Guaranty Corporation (PBGC) protects the retirement incomes of nearly 40 million participants in more than 95,000 private-sector defined benefit pension plans.

The PBGC was established by Title IV of the Employee Retirement Income Security Act of 1974 (ERISA), and is financed through (1) premiums collected from pension plans it insures; (2) investment return on PBGC assets; and (3) employer liability payments, which are moneys owed by employers to the PBGC with respect to plans terminated with unfunded guaranteed benefits.

The PBGC currently pays monthly retirement benefits to about 112,550 retirees in about 1,570 terminated plans. Another 95,500 workers will be paid when they reach retirement age, and an additional 138,000 participants are in plans that are in the proces of terminating, requiring PBGC trusteeship. The amount of the guaranteed monthly benefit is set by law.

**PROGRAMS:** The PBGC administers two pension insurance programs: the single-employer program and the multiemployer program.

The *single-employer* insurance program protects about 31 million participants in about 93,000 single-employer pension plans. Under this program, a company can voluntarily terminate its plan using either a standard termination procedure or a distress termination procedure. In addition, the PBGC may seek termination of a plan when necessary to protect the interests of the plan participants, of the plan, or of the PBGC. The PBGC must seek plan termination when a plan cannot pay current benefits.

In a "standard termination," the PBGC makes sure the plan has enough money to pay all benefits, both vested and nonvested, promised by the plan and earned by the participants, including benefits guaranteed by the PBGC. A plan that does not have enough money to pay all these benefits can only be terminated as a "distress termination," if the employer meets one of four tests for financial distress.

If a terminated plan does not have enough money to pay at least the PBGC-guaranteed benefits, the PBGC uses its own funds to ensure that qualified participants and beneficiaries receive at least part of their earned pensions.

Guaranteed benefits usually cover a large portion of the total benefits earned. Under recent provisions of the law, employers are liable for all benefits under the plan, including vested and nonvested amounts.

The *multiemployer* insurance program protects about 8.4 million participants in about 2,300 plans. Multiemployer pension plans are maintained under collectively-bargained agreements between employee representatives and two or more unrelated employers. If a PBGC-insured multiemployer plan becomes insolvent, it receives financial assistance from the PBGC, thus enabling the plan to pay participants their guaranteed benefits.

**PREMIUMS:** Premiums for the insurance program are paid annually by plan administrators or employers. The two-part single-employer premium consists of a $19.00 per participant plus an additional charge of $9.00 per $1,000 of unfunded vested benefits up to a maximum total premium of $72.00 per participant. The multiemployer premium is $2.60 per participant per year. An increase in the premium rates for either program requires Congressional approval.

**ORGANIZATION:** The PBGC's Board of Directors consists of the Secretaries of Labor, Treasury, and Commerce, with the Secretary of Labor serving as Chairman. The Corporation is aided by a seven-member Advisory Committee appointed by the President. Members of the committee represent labor, management, and the general public.

The PBGC's Executive Director is James B. Lockhart III.

**INQUIRIES:** Additional information about the PBGC can be obtained by writing to the Coverage & Inquiries Branch, Insurance Operations Department, Pension Benefit Guaranty Corporation, 2020 K Street, N.W., Washington, D.C. 20006-1860; or telephone (202) 778-8800. (This is not a toll free number and we cannot accept collect calls.)

ADMIN REC-0052

C91112

# Social Security Administration
# Retirement, Survivors and Disability Insurance
Notice of Award

Southeastern Program Service Center
2001 Twelfth Avenue, North
Birmingham, Alabama 35285

LEROY MONTGOMERY

Date: May 06, 1991
Claim Number: ███████ HA

We are writing to let you know that you are entitled to monthly disability benefits from Social Security beginning June 1991.

Shortly after July 03, 1991, you will receive your first payment which will include all benefits due you through June 1991. After that, a payment for $███████ will be sent each month.

The following chart shows your benefit amount(s) before any deductions or rounding. The amount you actually receive may differ from your full benefit amount. When we figure how much to pay you, we must deduct certain amounts, such as Medicare premiums and worker's compensation offset. We must also round down to the nearest dollar.

| Beginning Date | Benefit Amount | Reason |
|---|---|---|
| June 1991 | $ ███████ | Entitlement began |

In addition to your earnings we used your active military service to figure the amount of your Social Security benefits. Let us know if you qualify for any other Federal benefit (except a Veteran's Administration benefit) based on this military service. Qualification for any other Federal benefit could affect the amount of your Social Security benefit.

We have determined that you became disabled on December 07, 1990. However, before you can receive benefits, you have to be disabled for 5 full calendar months in a row and continue to meet all of the requirements for disability benefits.

Doctors and other trained staff decided that you are disabled under our rules. But, this decision must be reviewed at least once every 3 years. We will send you a letter before we start the review. Based on that review, your benefits will continue if you are still disabled, but will end if you are no longer disabled.

A state vocational rehabilitation agency may contact you. This

SSA-L30
C

ADMIN REC-0053

**PBGC**

# $75 million awaits those who are owed pensions

*Pennsylvania is among five states with the most people owed pension benefits.*

NEW YORK (AP) — The government is holding some $75 million in unclaimed pension benefits for thousands of Americans.

The Pension Benefit Guaranty Corp., which insures private-sector pensions, said Thursday that its registry currently lists some 26,000 people eligible for benefits averaging about $3,675.

In most cases, the pension money went to the PBGC when companies went bankrupt, especially in distressed industries such as steel, airlines, transportation and machinery.

**Check for names**

Americans who believe they may be eligible for pension money should check for their names on the PBGC site at www.pbgc.gov/search.

"We urge everyone to check the pension search directory ... to see if they, a friend or a relative are missing any pension dollars earned during their working years," said the agency's executive director, Bradley D. Belt.

People can use the Web site to search by their name, the company's name or the state in which the company was based, the PBGC said. Some 5,500 company names are on the registry.

In many cases, they are companies that closed down their pension plans and distributed benefits but couldn't find all their former workers. Or the companies failed and their underfunded plans were taken over by the PBGC.

People who find their names on the directory will be asked for additional information that will be checked by the agency before benefits are distributed.

**Top states**

The states with the most missing pension participants are California, New York, New Jersey, Pennsylvania and Texas. The unclaimed benefits range from $1 to $264,548. Others are Florida, Illinois, Massachusetts, Michigan and Ohio.

The PBGC said that since the search directory was set up eight years ago, more than 19,000 people have reclaimed more than $75 million in pension money.

People who don't find their names on the PBGC list but are still missing pensions — mainly because former employers have moved or merged — can get a copy of the agency's booklet "Finding a Lost Pension" for tips on how to search for them.

The booklet is available on the PBGC Web site www.pbgc.gov or by writing the PBGC Communications and Public Affairs Department, 1200 K St. NW, Washington, DC 20005-4026.

**ADMIN REC-0054**



CA8 Mo) 593 F2d 307, 1 EBC 1191, 52 ALR Fed 504.

29 USCS § 1053 only protects against forfeiture benefits of those who are in employee status on January 1, 1976, or thereafter and applicability of § 1053 is not being determined by date of forfeiture; this is so even though voluntary termination agreement states that company would retain employee, who resigned prior to effective date, at current salary rate through January 1, 1976; employee, however, has rights in pension plan after effective date, despite claim that employee's rights were lost before effective date when employee committed act of theft within scope of plan's forfeiture provision and employee is not estopped from relying on § 1053 on theory that if he had disclosed thefts when they occurred, his plan benefits would very likely have been forfeited before section became effective. Fremont v McGraw-Edison Co. (1979, CA7 Ill) 606 F2d 752, 1 EBC 2072, cert den 445 US 951, 63 L Ed 2d 786, 100 S Ct 1599 and (disagreed with by Whitfield v Lindemann (CA5 Tex) 853 F2d 1298, 9 EBC 2657, cert den (US) 104 L Ed 2d 986, 109 S Ct 2428, 10 EBC 2664).

Congress did not intend to exclude pension plan participant who was not only working for participating employer on date 29 USCS § 1053 became effective with respect to his plan, but who also acquired vested pension rights on that date, from all benefits of § 1053. Smith v CMTA-IAM Pension Trust (1981, CA9 Cal) 654 F2d 650, 2 EBC 1817, later proceeding (CA9 Cal) 746 F2d 587, 5 EBC 2428.

Vesting standards of 29 USCS 1053(a) do not apply to persons who terminated employment prior to ERISA's effective date. Cohen v Martin's (1982, CA2 NY) 694 F2d 296, 3 EBC 2481.

Trial court did not err in denying claim for pension benefits denied by plan under bad boy clause, where employee was terminated after ERISA's enactment but before 29 USCS § 1053 was in effect. Flynn v Aetna Casualty & Surety Co. (1983, CA5 Tex) 698 F2d 758, 4 EBC 1229.

Plan participant whose rights vested under pre-ERISA state law could not thereafter have those rights altered or destroyed by amendment to plan without violating ERISA. Terpinas v Seafarer's International Union, Pacific Dist. (1984, CA9 Cal) 722 F2d 1445, 99 CCH LC ¶10678.

Pension plan's 15-year vesting requirement is unreasonable, despite fact that it was adopted prior to enactment of ERISA, where effect is to deny pension plan participation to 96 percent of potentially covered participants. Ponce v Construction Laborers Pension Trust (1985, CA9 Cal) 774 F2d 1401, 6 EBC 2468, 120 BNA LRRM 3055, cert den 479 US 890, 93 L Ed 2d ___, 107 S Ct 289, 7 EBC 2152.

In action by former employee against former employer to recover vested benefits under profit-sharing plan which employer claimed employee had forfeited by working for another employer in direct competition, plan adopted in 1969 and in existence on January 1, 1974 was not covered by nonforfeitability provisions of ERISA. Keller v Graphic Systems of Akron, Inc., Employees Profitsharing Plan (1976, ND Ohio) 422 F Supp 1005.

Prohibition of forfeiture contained in 29 USCS § 1053, effective January 1, 1976, can not be predated to January 1, 1975, effective date of 29 USCS § 1144; during interim between January 1, 1975, and January 1, 1976, declarations of forfeiture of vested pension rights are subject to judicial scrutiny according to reasonableness test which, as consequence of public policy expressed in ERISA includes presumption of unreasonableness in forfeiture provisions and places burden of proof on those who wish to apply them. Amory v Boyden Associates, Inc. (1976, SD NY) 434 F Supp 671, 1 EBC 1002.

Since 29 USCS § 1053 is applicable in case of plan years beginning after December 31, 1975, participant whose employment continued into 1976 came within aegis of Act, but employee whose employment (and participation in plan) was terminated before effective date of § 1053 was not covered; § 1053's prohibition against forfeitures did not become applicable merely because official recognition of forfeiture took place after January 1, 1976; if claimant's interest in plan is determined as of date prior to January 1, 1976, § 1053 is inapplicable; employer could not avoid minimum vesting requirement of ERISA for employees whose employment continued beyond January 1, 1976, by contending that forfeiture occurred as of date employee first engaged in acts of theft against employer; ERISA does not protect against exercise of "bad boy" forfeiture of interest in pension plan where plan provided for more generous vesting schedule than required by ERISA. Fremont v McGraw-Edison Co. (1978, ND Ill) 460 F Supp 599, affd in part and revd in part on other grounds (CA7 Ill) 606 F2d 752, 1 EBC 2072, cert den 445 US 951, 63 L Ed 2d 786, 100 S Ct 1599 and (disagreed with by Whitfield v Lindemann (CA5 Tex) 853 F2d 1298, 9 EBC 2657, cert den (US) 104 L Ed 2d 986, 109 S Ct 2428, 10 EBC 2664).

Provision of ERISA (29 USCS §§ 1001 et seq.) requiring trustees of pension fund to take into consideration all years worked by employees in determining what portions of their accrued benefits are vested does not apply to persons who had already lost their rights in pension fund before

3

**29 USCS § 1053, n 5**                                              LABOR

**5. Vesting requirements**

29 USCS § 1053(a) imposes 2 distinct vesting requirements, one linked to age without regard to length of service and the other depending on length of service without regard to age; plan not only must provide for vesting upon completion of certain period of service but also must provide for vesting at certain time regardless of employee's years of service; as for the vesting at a certain time, Congress intended that employee's pension rights would vest, irrespective of length of his service, at "normal retirement age," that is, either on his 65th birthday or on 10th anniversary of his joining plan whichever occurred later, unless plan itself allowed earlier vesting, and employee's 19 month break in service does not affect such vesting. Duchow v New York State Teamsters Conference Pension & Retirement Fund (1982, CA2 NY) 691 F2d 74, 3 EBC 2312, cert den (1983) 461 US 918, 77 L Ed 2d 289, 103 S Ct 1902.

**6. Normal retirement age**

Plaintiff, who had taken early retirement, failed to state claim under 29 USCS § 1053(a) for suspension of his pension benefits where he had not reached "normal retirement age" when his pension benefits were suspended in that, under fund's plan, normal retirement age was 65, but plaintiff was not 65 during period he suffered suspension of benefits. Hum v Retirement Fund Trust of Plumbing, Heating & Piping Industry (1981, CA9 Cal) 648 F2d 1252, 2 EBC 1622, 108 BNA LRRM 2094, 91 CCH LC ¶ 12851, 31 FR Serv 2d 1433.

Trial court erred in determining that "normal retirement age" for purposes of 29 USCS § 1053(a) was age at which employee's right vests to receive normal retirement benefits through construction of plan's substantive provisions, since issue is controlled by definition in 29 USCS § 1002(24). Johnson v Franco (1984, CA5 La) 727 F2d 442, 5 EBC 1368, 115 BNA LRRM 3669, 100 CCH LC ¶ 10867.

No suspension of benefits received by pensioner is limited by 29 USCS § 1053(a) unless and until pensioner has attained normal retirement age. Hum v Retirement Fund Trust of Plumbing, Heating & Piping Industry (1978, CD Cal) 460 F Supp 112, affd (1981, CA9 Cal) 648 F2d 1252, 2 EBC 1622, 108 BNA LRRM 2094, 91 CCH LC ¶ 12851, 31 FR Serv 2d 1433.

**7. Accrued benefit**

Reduction in monthly pension benefits occasioned by inclusion of strike time in formula is not impermissible forfeiture of pension rights; ERISA does not guarantee particular amount or method of calculation of monthly benefit. Edwards v Wilkes-Barre Pub. Co. Pension Trust (1985, CA3 Pa) 757 F2d 52, 6 EBC 1395, cert den (1985) 474 US 843, 88 L Ed 2d 107, 106 S Ct 130, 6 EBC 2288.

**8. Computation of period of service**

Plan can disregard service performed by participant before ERISA (29 USCS §§ 1001 et seq.) vesting provisions became effective for plan if such service would have been disregarded under plan rules in effect at time of break since 29 USCS § 1053 does not require that pension plans specifically incorporate break-in-service rules of pre-ERISA plans but permits plan to apply those rules in post-ERISA context. Redmond v Burlington N. R. Co. Pension Plan (1987, CA8 Minn) 821 F2d 461.

Employee who terminated his employment before break-in-service became 100 percent vested in account balance where under plan terms he was participant until break-in-service or receipt of vested account balance with his written consent since although balance was zero, he did not consent to receipt. Bouchard v Crystal Coin Shop, Inc. (1988, CA1 Mass) 843 F2d 10, 9 EBC 1836.

Trustee properly determined that year in which former employee terminated employment should not be counted as year of participation for purposes of allocation of contribution, notwithstanding employee's contention that he accumulated 1000 hours in year, where plan requires both accumulation of hours and that employee be working at end of plan year. Budwig v Natelson's, Inc. Profit Sharing Retirement Plan (1982, DC Neb) 576 F Supp 661, affd (1983, CA8 Neb) 720 F2d 977.

Treasury regulations which authorize pension plans to use "elapsed time method" for computing creditable service for vesting do not conflict with vesting provisions of 29 USCS § 1053. Swaida v IBM Retirement Plan (1983, SD NY) 570 F Supp 482, 4 EBC 2017, affd (1984, CA2 NY) 728 F2d 159, 5 EBC 1121, cert den (1984) 469 US 874, 83 L Ed 2d 161, 105 S Ct 232, 5 EBC 2192.

Congress did not intend that ERISA be applied retroactively, and employee's years of service credited prior to enactment of ERISA cannot be aggregated with years of service credited after enactment of ERISA for purposes of vesting rights in post-ERISA plan where break in service prior to ERISA prevented vesting under terms of pre-ERISA plan. Danks v Continental Copper & Steel Industries, Inc. (1984, DC NJ) 583 F Supp 1218.

Pension plan trustees' assessment of 55 percent forfeiture against terminated employee was unlawful because it violated § 1053 and because it was arbitrary and capricious, where old plan was terminated August 30, 1977 since old plan was predecessor plan of new plan, meaning years of participation in new plan must be interpreted to mean years of service with employer rather than years of service under new plan only. Ricciardi v Ricciardi Profit Sharing Plan (1986, DC NJ) 630 F Supp 914, 7 EBC 1470, amd on other grounds (1986, DC NJ) 7 EBC 1672.

Employees are entitled to credit for service performed for employer prior to affiliation with union

242

ADMIN REC-0056

(ii) the number of years (not in excess of 33 ¹/₃ ) of his participation in the plan.

In the case of a plan providing retirement benefits based on compensation during any period, the normal retirement benefit to which a participant would be entitled shall be determined as if he continued to earn annually the average rate of compensation which he earned during consecutive years of service, not in excess of 10, for which his compensation was the highest. For purposes of this subparagraph, social security benefits and all other relevant factors used to compute benefits shall be treated as remaining constant as of the current year for all years after such current year.

(B) A defined benefit plan satisfies the requirements of this paragraph of a particular plan year if under the plan the accrued benefit payable at the normal retirement age is equal to the normal retirement benefit and the annual rate at which any individual who is or could be a participant can accrue the retirement benefits payable at normal retirement age under the plan for any later plan year is not more than 133 ¹/₃ percent of the annual rate at which he can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year. For purposes of this subparagraph—

(i) any amendment to the plan which is in effect for the current year shall be treated as in effect for all other plan years;

(ii) any change in an accrual rate which does not apply to any individual who is or could be a participant in the current year shall be disregarded;

(iii) the fact that benefits under the plan may be payable to certain employees before normal retirement age shall be disregarded; and

(iv) social security benefits and all other relevant factors used to compute benefits shall be treated as remaining constant as of the current year for all years after the current year.

(C) A defined benefit plan satisfies the requirements of this paragraph if the accrued benefit to which any participant is entitled upon his separation from the service is not less than a fraction of the annual benefit commencing at normal retirement age to which he would be entitled under the plan as in effect on the date of his separation if he continued to earn annually until normal retirement age the same rate of compensation upon which his normal retirement benefit would be computed under the plan, determined as if he had attained normal retirement age on the date any such determination is made (but taking into account no more than the 10 years of service immediately preceding his separation from service). Such fraction shall be a fraction, not exceeding 1, the numerator of which is the total number of his years of participation in the plan (as of the date of his separation from the service) and the denominator of which is the total number of years he would have participated in the plan if he separated from the service at the normal retirement age. For purposes of this subparagraph, social security benefits and all other relevant factors used to compute benefits shall be treated as remaining constant as of the current year for all years after such current year.

251

ADMIN REC-0057



**PBGC** **Pension Benefit Guaranty Corporation**
1200 K Street, N.W., Washington, D.C. 20005-4026
www.pbgc.gov

Mr. Leroy Montgomery                                    May 13, 2005

███████████████████████████

          Re:   Appeal 2005-0049, Case Number 195240
                LTV Steel Hourly Pension Plan (the "Plan")[1]

Dear Mr. Montgomery:

     We are responding to your May 6, 2005 letter following our
May 5, 2005 telephone conversation.  We discussed our February 4,
2005 decision denying your appeal.  You also told me you stopped
working at LTV because you found the working environment was
unhealthy.   You stated the LTV working environment ultimately
caused lung cancer your doctors discovered in a 1988 x-ray.

     With your May 6, 2005 letter, you enclosed the following
documents:

• A PBGC Facts sheet stating PBGC ensures pension plan
  participants are paid guaranteed benefits.

  We found you have no guaranteed benefit because you did not
  satisfy the Plan's requirements.  Please see Enclosure 1.

• A copy of a 1991 Social Security Disability Insurance Award.

  We explained in our February 4, 2005 letter the 1991 Social
  Security award does not entitle you to a Plan benefit because:

          (i) Your 13 9/12 years of continuous service are less
          than the 15 years the Plan required , and

          (ii) You did not satisfy the disability requirement when
          your continuous service was broken March 17, 1973.

• A newspaper article explaining PBGC is holding $75 million in
  unclaimed pension benefits for thousands of Americans.

  Because we have determined you are not entitled to a Plan
  benefit, that article does not apply to you.

• A summary of a court decision stating:

---

     [1] successor to the Pension Plan for Hourly Employees of
Youngstown Sheet and Tube Company and Affiliates (the "Youngstown
Plan")

- 2 -

      Pension plan's 15-year vesting requirement is unreasonable, despite the fact that it was adopted prior to enactment of ERISA, where effect is to deny pension plan participation to 96 per cent of potentially covered participants.

That case does not provide you a basis for relief because it was decided based on its particular facts, involving the Labor Relations Act. We've seen no evidence that the Plan's vesting rules adversely affected percentages of employees comparable to 96 per cent. Therefore, the court decision you cite does not appear to be relevant to the Plan's vesting rules.

• You enclosed a published explanation that the law requires vesting either on a participant's "65th birthday or on the 10th anniversary of his joining the plan whichever occurred later, unless plan itself allowed earlier vesting, an employees 19th month break in service does not affect such vesting."

The legal explanation you enclosed describes the requirement of the Employee Retirement Income Security Act of 1974 ("ERISA"). The ERISA rules do not apply to you because your continuous service ended in 1973.

• An explanation of ERISA-permitted rules for accruing benefits.

Those rules do not apply to vesting and also do not apply to you because your continuous service ended in 1973, before ERISA's effective date.

Our February 4, 2005 letter concluded your administrative remedies with respect to PBGC's October 5, 2004 determination. As we stated, you may, if you wish, seek court review of PBGC's determination with respect to the issues you raised.

Sincerely,

*William D. Ellis*

William D. Ellis
Appeals Board Member

Enclosures:

   1) Copy of our February 4, 2005 decision (21 pages, including Enclosures)

ADMIN REC-0059

 **Pension Benefit Guaranty Corporation**
1200 K Street, N.W., Washington, D.C. 20005-4026

Ms. Vikki Montgomery                                    February 4, 2005

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

        Re:  Leroy Montgomery, Appeal 2005-0049, Case Number 195240
             LTV Steel Hourly Pension Plan (the "Plan")[1]

Dear Ms. Montgomery:

     We have reviewed the appeal you filed on behalf of your
father, Mr. Leroy Montgomery. On October 5, 2004, PBGC determined
your father is not entitled to a benefit. PBGC found your father
earned only 13 9/12 years of service instead of the 15 years the
Plan required. As explained below, we are denying your appeal.

<u>Your Appeal</u>

     In your November 8, 2004 appeal:

- You noted that under current law, your father's service is
  enough to become vested in a benefit.

  You did not dispute that your father earned 13 9/12 years of
  service, from May 19, 1959 until March 17, 1973. Because his
  service totaled less than 15 years, the Plan does not provide
  him a benefit. Please see Enclosure 1.

  The 29 USC 1053(a) minimum vesting rules you cite were enacted
  by the Employee Retirement Income Security Act of 1974
  ("ERISA"), as amended. The ERISA minimum vesting rules do not
  apply to participants such as your father whose service ended
  before 1974. Thus, the law does not require changing PBGC's
  determination.

- You stated your father's overtime hours increase his service
  to the required 15 years.

  The Plan measures continuous service from hire date until
  continuous service is broken, regardless of how many hours are
  worked. Please see Enclosure 1 pages 46-47. Therefore,
  overtime may not be used to increase your father's service.

---

     [1] successor to the Pension Plan for Hourly Employees of
Youngstown Sheet and Tube Company and Affiliates (the "Youngstown
Plan")

**ADMIN REC-0060**

- 2 -

- You stated your father served in the U.S. Military from 1950-1953 and in the reserves from 1953 to 1959. He was discharged in November 1959.

Veteran's reemployment laws may allow a person to earn pension rights for time in military service if, among other conditions:[2]

> (i) He leaves a position (other than a temporary position) with an employer to join the Armed Services of the United States, and

> (ii) He is honorably discharged, and

> (iii) He makes application for reemployment within a prescribed period after discharge.

Your father's 1950-1959 military service does not meet condition (i) - his military service began before, instead of after, his YS&T service began. Therefore, the law does *not* require the Plan to increase your father's service for time in the military.

The Plan similarly includes military service in pension service only when military service would otherwise interrupt pension service. Please see Enclosure 1 page 47. Therefore, the Plan does not increase your father's 13 9/12 years pension service with his military service.

- You stated your father retired on disability in 1990, before reaching age 65.

A disabled participant with 15 years of service could start receiving a regular pension under the Plan's Permanent Incapacity Retirement. Retirement may occur no later than when continuous service is broken. Please see Enclosure 1 pages 28 and 29. Thus, your father fails to qualify for a Permanent Incapacity Retirement for two reasons:

> (i) His 13 9/12 years of service are less than the required 15 years, and

---

[2] For example, the Veterans Reemployment Rights Act ("VRRA") was in effect in 1973. The VRRA has been replaced with the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). See 38 USC §§ 4301-4333.

ADMIN REC-0061

- 3 -

> (ii) Your father did not satisfy the disability requirement when his continuous service was broken March 17, 1973.

- You stated others who worked at LTV fewer years than your father are receiving pensions.

Plan provisions are complicated and have varying effective dates. For example, with only 5 years of service a Plan participant who worked after 1988 could earn a vested benefit. Thus, seemingly similarly-situated participants may be affected by different Plan provisions. Therefore, other participants receiving a benefit with less service than your father do not show your father is entitled to a benefit.

### *Where to Submit Any New Evidence*

PBGC will always, even after an appeal is closed, consider any new, specific evidence that you may be entitled to a different benefit. If you obtain any such evidence, please call PBGC's Customer Contact Center at 1-800-400-7242.

### Decision

Having applied the Law and the Plan provisions to the facts in this case, we must deny your appeal. This letter concludes your administrative remedies with respect to PBGC's October 5, 2004 determination. You may, if you wish, seek court review of PBGC's determination with respect to the issues you raised. Thank you for your patience during our careful review of your appeal.

Sincerely,

*William D. Ellis*

William D. Ellis
Appeals Board Member

Enclosures:
1) Relevant pages from the July 31, 1972 USW-YS&T Pension Agreement (7 pages)
2) Comparable pages from YS&T's May 31, 1973 Salaried Non-Union Employees Revised Retirement Plan (11 pages)

Cc: Mr. Leroy Montgomery