ENCLOSURE 1

# PENSION AGREEMENT

*As Amended Effective July 31, 1972*

*For Employees of*

## Youngstown Sheet and Tube Company

AND

## Youngstown Metal Products Company Division

*Pursuant to Agreement with*

## United Steelworkers of America

ADMIN REC-0063

# TABLE OF CONTENTS

| | Paragraph | Page |
|---|---|---|
| **1. INTRODUCTION** | | |
| Definitions | 1.1 | 27 |
| When Retirement Occurs | 1.2 | 28 |
| Provision of Benefits | 1.3 | 28 |
| **2. ELIGIBILITY FOR PENSION** | | |
| Normal Retirement | 2.1 | 29 |
| 30 Year Retirement | 2.2 | 29 |
| 60/15 Retirement | 2.3 | 29 |
| Permanent Incapacity Retirement | 2.4 | 29 |
| 70/80 Retirement | 2.5 | 30 |
| Deferred Vested Pension | 2.6 | 31 |
| **3. AMOUNT OF PENSION** | | |
| Types of Pension Payments | 3.1 | 31 |
| Special Payment | 3.2 | 31 |
| Regular Pension—Normal, 30 Year and 70/80 | 3.3 | 32 |
| Regular Pension—60/15 | 3.4 | 34 |
| Regular Pension—Permanent Incapacity | 3.5 | 35 |
| Regular Pension—Deferred Vested | 3.6 | 35 |
| Increased Regular Pensions— Permanent Incapacity, 70/80 | 3.7 | 35 |
| Regular Pension—Part-time Participants | 3.8 | 36 |
| Deduction for Public Pension | 3.9 | 36 |
| Deduction for Other Pension | 3.10 | 37 |
| Deduction for Severance Allowance | 3.11 | 37 |
| Deduction for Disability Payments | 3.12 | 38 |
| Pension Application | 3.13 | 38 |
| Commencement of Regular Pensions | 3.14 | 39 |
| Termination of Regular Pensions | 3.15 | 39 |
| Survivor Options | 3.16 | 40 |
| **4. SURVIVING SPOUSE'S BENEFIT** | | |
| Eligibility | 4.1 | 43 |
| Amount of Benefit | 4.2 | 43 |
| Commencement and Termination of Benefit | 4.5 | 45 |
| Determination of Status as Surviving Spouse | 4.6 | 45 |
| Surviving Spouse of Part-time Participant | 4.8 | 46 |

ADMIN REC-0064

| | Paragraph | Page |
|---|---|---|
| 5. DETERMINATION OF CONTINUOUS SERVICE . . | 5.1 | 46 |
| 6. REEMPLOYMENT AFTER ATTAINMENT OF PENSION ELIGIBILITY | | |
| Applicability of Other Sections . . . . . . . . . . . | 6.1 | 47 |
| Effect on Pension . . . . . . . . . . . . . . . . . | 6.2 | 48 |
| Continuous Service of Reemployed Participant . . . | 6.3 | 48 |
| Special Pension Eligibility After Reemployment . . . . | 6.5 | 49 |
| Special Rules as to Amount of Pension . . . | 6.7 | 50 |
| 7. APPEALS PROCEDURE | | |
| Disputes as to Eligibility or Amount . . . . . . . | 7.1 | 50 |
| Disputes as to Permanent Incapacity . . . . . . . . | 7.2 | 51 |
| 8. TRUST . . . . . . . . . . . . . . . . . . . . . | 8.1 | 51 |
| 9. REPORTS . . . . . . . . . . . . . . . . . . . . | 9.1 | 52 |
| 10. APPLICABILITY OF AGREEMENT TO PARTICIPANTS UNDER PRIOR AGREEMENT . . . | 10.1 | 52 |
| 11. GENERAL PROVISIONS | | |
| Administration . . . . . . . . . . . . . . . . . | 11.1 | 52 |
| Continuation of Benefits . . . . . . . . . . . | 11.1 | 52 |
| Nonalienation . . . . . . . . . . . . . . . . . | 11.2 | 53 |
| Deduction for Insurance Premiums and Overpayments | 11.3 | 53 |
| Rights of Participants . . . . . . . . . . . | 11.4 | 53 |
| Distribution of Agreement . . . . . . . . . . . | 11.5 | 53 |
| Tax and Corporate Approvals . . . . . . . . . . . | 11.6 | 54 |
| Actuarial Value Percentages . . . . . . . . . | 11.7 | 54 |
| Term of Agreement . . . . . . . . . . . . . . | 11.8 | 54 |
| | 11.9 | 55 |
| EXHIBIT A—BARGAINING UNITS COVERED . . . . | | 55 |
| EXHIBIT B—SURVIVOR OPTION PERCENTAGES . . . | | 56 |
| | | 57 |

# Pension Agreement

Agreement dated August 1, 1971 (effective July 31, 1972) between Youngstown Sheet and Tube Company (hereinafter the "Company") and United Steelworkers of America (hereinafter the "Union").

## 1. INTRODUCTION

1.1 *Definitions*

Wherever used herein

(a) "Basic Agreement" means a labor agreement between the Company and the Union covering rates of pay, hours of work, and other basic terms and conditions of employment, which is in effect during the term of this Pension Agreement and is applicable to a bargaining unit listed in Exhibit A, attached hereto and made a part hereof; and where used with respect to a participant means the Basic Agreement applicable to him;

(b) "Employee" means any employee who, from time to time during the period in which this Agreement is effective, is covered by a Basic Agreement;

(c) "participant" means any Employee who, from time to time during the period in which this Agreement is effective, is accruing continuous service; where so indicated in the context, "participant" also refers to a person who is no longer accruing continuous service but who had attained pension eligibility under this Agreement at the date he ceased to accrue continuous service, including a person who is retired and is receiving or is entitled to receive pension benefits under this Agreement;

(d) "continuous service" means continuous service determined pursuant to Section 5;

(e) "Public Pension" means a benefit in the nature of an annuity, pension or payment of similar kind

(i) under Title II of the Social Security Act or its successor (hereinafter "Social Security Act"), or

(ii) under the Railroad Retirement Act or its successor, or under a provision of law hereafter established, if as to such benefit the Company has contributed directly or indirectly by tax or otherwise with respect to employment of the participant by the Company;

(f) "eligible for Public Pension" is used with respect to a participant when he is eligible to receive, or would upon application be eligible

ADMIN REC-0065

# SECTION I—INTRODUCTION

to receive, a Public Pension, or would be so eligible except for a reduction, offset or suspension imposed by law, provided that with respect to a Public Pension which is reduced by reason of its commencement prior to the age at which it is first provided under law without such a reduction, the participant shall be considered not eligible for a Public Pension until he has attained such age;

(g) "average monthly earnings" means the average monthly earnings of the participant paid by the Company during the last 120 full calendar months of continuous service prior to retirement, subject to adjustment as provided in paragraph 3.3(b).

## 1.2 When Retirement Occurs

For purposes of this Agreement, retirement shall be considered to occur:

(a) in the case of a participant who applies for pension prior to a break in continuous service, on the date the specifies as the date he wishes to retire, which shall be a date on or after the latest of

(1) the date of his request for retirement,

(2) the date of his attainment of eligibility for a pension under this Agreement, or

(3) the last day for which he earned wages from the Company, but not later than the last day of his continuous service;

(b) in the case of a participant who applies for pension after a break in continuous service, on the last day of his continuous service, provided that on such last day he was eligible for an immediate or deferred pension under this Agreement.

## 1.3 Provision of Benefits

Subject to the corporate action required to provide the benefits and to the Company's obtaining and/or retaining approval of Internal Revenue of the trust or trusts heretofore or hereafter established under the pension plan of Youngstown Sheet and Tube Company, as changed to provide the benefits set forth in this Agreement, as exempt under the applicable provisions of the Internal Revenue Code or successors to them, the following benefits shall be provided by the Company or caused to be provided by the Company for the participants.

28

# 2. ELIGIBILITY FOR PENSION

## Normal Retirement

2.1 Any participant who shall have had at least 15 years continuous service and shall have attained the age of 65 years shall be eligible to retire on or after July 31, 1972 and shall upon his retirement (hereinafter "normal retirement") be eligible for a pension.

## 30 Year Retirement

2.2 Any participant who shall have had at least 30 years continuous service shall be eligible to retire on or after July 31, 1972 and shall upon his retirement (hereinafter "30 year retirement") be eligible for a pension.

## 60/15 Retirement

2.3 Any participant who shall have had at least 15 but less than 30 years continuous service and shall have attained the age of 60 years shall be eligible to retire on or after July 31, 1972 and shall upon his retirement (hereinafter "60/15 retirement") be eligible for a pension.

## Permanent Incapacity Retirement

2.4 Any participant who shall have had at least 15 years continuous service and who shall have become permanently incapacitated shall be eligible to retire on or after July 31, 1972 and shall upon his retirement (hereinafter "permanent incapacity retirement") be eligible for a pension. A participant shall be considered to be permanently incapacitated (as "permanently incapacitated" is used herein) only (a) if he has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in any employment of the type covered by the Basic Agreement, and (b) after such total disability shall have continued for a period of six consecutive months and, in the opinion of a qualified physician, it will be permanent and continuous during the remainder of his life. A pension shall not be granted under the provisions of this paragraph of this Agreement to a participant relief from unemployment or on account of any condition other than permanent incapacity for medical reasons. Incapacity contracted, suffered or incurred while the participant was engaged in, a criminal enterprise, or which

29

ADMIN REC-0066

shall have been directly incurred in and shall be due solely to the future military service of such employee which prevents him from returning to employment with the Company and for which he receives a military pension, shall not entitle a participant to a pension under this paragraph. Such pension shall be discontinued if such participant shall cease to be permanently incapacitated prior to age 65. The Company may at any reasonable time prior to the date on which such pensioner shall reach the age of 65 years verify the continued incapacity of such pensioner by examination of him by a physician designated by the Company.

2.5 *70/80 Retirement*

Any participant who shall have had at least 15 years continuous service and (i) shall have attained the age of 55 years and whose combined age and years of continuous service shall equal 70 or more, or (ii) whose combined age and years of continuous service shall equal 80 or more, and

(a) whose continuous service is broken by reason of a permanent shutdown of a plant, department or subdivision thereof or by reason of a layoff or physical disability, or

(b) whose continuous service is not broken and who is absent from work by reason of

(1) a layoff resulting from his election to be placed on layoff status pursuant to the provisions of the Basic Agreement applicable in the event of a permanent shutdown, or

(2) a physical disability or a layoff other than a layoff resulting from an election referred to above and whose return to active employment is declared unlikely by his Company, or

(c) whose continuous service is not broken and who, while on layoff status by reason of his election to be placed on such status pursuant to the provisions of the Basic Agreement applicable in the event of a permanent shutdown, accepts a job with the Company and, prior to the expiration of 90 consecutive calendar days from the first day worked on such job, elects to retire, or

(d) who considers that it would be in his interest to retire and his Company considers that such retirement would likewise be in its interest and it approves an application for retirement under mutually satisfactory conditions,

shall be eligible to retire on or after July 31, 1972 and shall upon his retirement (hereinafter "70/80 retirement") be eligible for a pension.

2.6 *Deferred Vested Pension*

Any participant not eligible to receive a pension under any other provision of this Section 2 whose continuous service is broken on or after July 31, 1972 for any reason other than discharge and who, at the time of such break in continuous service, shall have had at least 15 years continuous service and shall have attained the age of 40 years shall be eligible for a pension (hereinafter "deferred vested pension"), subject to the provisions relating to application set forth in paragraph 3.13(c). At the time of such break in continuous service, the Company shall furnish such a participant an appropriate written notice of the eligibility requirements and his relevant employment data.

2.7 Notwithstanding anything to the contrary contained in this Agreement, no pension (including any special payment) shall be payable for any month with respect to which the participant claims is eligible for sickness or accident benefits provided under a Company program or similar benefits provided under law.

# 3. AMOUNT OF PENSION

3.1 *Types of Pension Payments*

(a) A pension granted pursuant to Section 2 shall consist of

a special initial pension amount (hereinafter "special payment"), except in the case of any participant eligible for a pension for permanent incapacity retirement or a deferred vested pension as provided in paragraph 6.7), and

(b) a regular pension amount (hereinafter "regular pension"), payable in monthly installments except as otherwise provided in paragraph 3.15,

provided in accordance with the provisions of this Section 3.

3.2 *Special Payment*

(a) The special payment shall be an amount equivalent to 13 weeks of vacation pay

ADMIN REC-0067

SECTION 4—SURVIVING SPOUSE'S BENEFIT

person is a widow or widower of such participant within the provisions of the Social Security Act, except that where such Act requires reference to the law of the District of Columbia, the applicable law shall be that of the state of Ohio.

4.7 The Company shall make reasonable effort, by an appropriate method or methods, to inform the surviving spouse of the existence of this benefit.

4.8 *Surviving Spouse of Part-time Participant*

In the case of a surviving spouse of a deceased part-time participant, notwithstanding the provisions of paragraph 4.2, the amounts set forth in such paragraph 4.2 shall be reduced on the same basis as is provided in paragraph 3.8 for the reduction of the minimum pension of a part-time participant, whether or not the minimum pension was applicable to such deceased part-time participant.

## 5. DETERMINATION OF CONTINUOUS SERVICE

5.1 The term "continuous service" as used in this Agreement means service prior to retirement calculated from the participant's last hiring date (this means in the case of a break in continuous service, continuous service shall be calculated from the date of reemployment following the last unremoved break in continuous service) in accordance with the following provisions; provided, however, that the last hiring date prior to the date of this Agreement shall be based on the practices in effect at the time the break occurred:

(a) There shall be no deduction for any time lost which does not constitute a break in continuous service, except that in determining length of continuous service for pension purposes that portion of any absence which continues beyond two years from commencement of absence due to a layoff or physical disability, shall not be creditable as continuous service; provided, however, that absence in excess of two years due to a compensable disability incurred during course of employment shall be creditable as continuous service, if the participant is returned to work within 30 days after final payment of statutory compensation for such disability;

(b) Continuous service shall be broken by:

46

SECTION 5—DETERMINATION OF CONTINUOUS SERVICE

(1) Resignation (quit)

(2) Discharge, provided that if the participant is retired within 6 months the break in continuous service shall be removed.

(3) Absence exceeding period for which leave of absence has been granted.

(4) Termination (when termination occurs pursuant to the Basic Agreement) due to (i) permanent shutdown of a plant, department or subdivision thereof, or (ii) failure to report for work within five working days after written notice to report.

(5) Absence which continues for more than 2 years, except that (i) absence in excess of 2 years due to compensable disability incurred during course of employment shall not break continuous service, provided the participant is returned to work within 30 days after final payment of statutory compensation for such disability; and (ii) if a person absent on account of layoff or disability in excess of 2 years returns to work with the Company within the period during which he retains his accumulated continuous service in accordance with the seniority provisions of the Basic Agreement, the break in continuous service shall be removed;

provided, however, that continuous service shall not be considered to be broken by absence of any participant who subsequent to May 1, 1940, entered the military, naval or merchant marine service of the United States, and who has reemployment rights under the law and complies with requirements of law as to reemployment and is reemployed. Continuous service shall include service in the employment of any company whose stocks and properties shall have been heretofore acquired. Continuous service shall include service in the employ of any company whose stocks or properties may be acquired hereafter only if and to the extent that credit for continuous service for the purpose of pension benefits shall be granted by the Company.

## 6. REEMPLOYMENT AFTER ATTAINMENT OF PENSION ELIGIBILITY

6.1 *Applicability of Other Sections*

Except as otherwise provided in this Section 6, the provisions of all other sections of this Agreement shall be applicable to any participant

47

ADMIN REC-0068

his retirement shall be considered to be the date of retirement which would upon application for pension have been applicable to the deferred vested pension for which he was eligible prior to such re-employment.

### Special Rules as to Amount of Pension

6.7 Special payment shall not be made in any case where a special payment was made to the participant for a prior retirement under this or any prior Agreement between the parties.

6.8 The amount of regular pension for reinstated 70/80 retirement shall be determined the same as a regular pension for 70/80 retirement.

6.9 For purposes only of paragraph 3.16, reference therein to a 70/80 retirement shall be deemed to include a reinstated 70/80 retirement.

## 7. APPEALS PROCEDURE

### Disputes as to Eligibility or Amount

7.1 If any difference shall arise between the Company and any participant who shall be an applicant for a pension, or to whom a pension shall be payable, as to such participant's right to a pension or the amount of his pension and agreement cannot be reached between the Company and a representative of the International Union, such question shall be referred to Arbitration established under the Basic Agreement applicable to production and maintenance employees in the basic steel operations of the Company. The Arbitrator shall have authority only to decide the question pursuant to the provisions of this Agreement applicable to the question but he shall not have authority in any way to alter, add to or subtract from any of such provisions. The decision of the Arbitrator on any such question shall be binding on the Company, the Union and the participant. If any difference shall arise between the Company and any pers n who shall be or claims to be a co-pensioner or a surviving spouse, as to such person's right to a benefit under this Agreement or the amount of such benefit, such difference shall be resolved by the Company and a representative of the International Union. If such difference is not so resolved, it may, by agreement of the Company and the Union, be referred to the Arbitrator described above, who shall have authority as described

above with respect to such difference, and if it is so referred, the decision of the Arbitrator shall be binding on the Company, the Union and such person.

### Disputes as to Permanent Incapacity

7.2 If any difference shall arise between the Company and any participant as to whether such participant is or continues permanently incapacitated within the meaning of paragraph 2.4, such difference shall be resolved as follows:

The participant shall be examined by a physician appointed for the purpose by the Company and by a physician appointed for the purpose by a duly authorized representative of the International Union.

If they shall disagree concerning whether the participant is permanently incapacitated, that question shall be submitted to a third physician selected by such two physicians. The medical opinion of the third physician, after examination of the participant and consultation with the other two physicians, shall decide such question. The fees and expenses of the third physician shall be shared equally by the Company and the Union.

## 8. TRUST

8.1 For the purpose of supplying the benefits herein provided, the Company may establish or cause to be established a pension trust or trusts or may utilize any existing trust or trusts heretofore established by or on behalf of the Company. The Company is free to determine the manner and means of making provision for funding and paying the benefits set forth in this Agreement; provided, however, that the aggregate of the amount of monies for the benefit of participants, that shall have been paid into any pension trust or trusts established in accordance with the provisions of the Pension Plan of Youngstown Sheet and Tube Company dated and effective as of March 1, 1950, as amended and as it shall be further amended in accordance with the provisions of this Agreement, for any year during the term of this Agreement and of the monies that were paid into such trust or trusts for previous years shall not be less than an amount which on a sound actuarial basis shall be estimated to be sufficient to pay the pensions which shall have been granted under such Pension Plan during such year and during such previous years.

ADMIN REC-0069

ENCLOSURE 2

**Youngstown Steel**

For exempt and non-union, non-exempt employees of the following divisions and subsidiaries of Youngstown Sheet and Tube Company:

**DIVISIONS**

Steel Division
Continental - Emsco Company
Continental - Emsco Company - International Division
Fibercast Company
Youngstown Metal Products Company

**SUBSIDIARIES**

The Youngstown Steel Products Company
The Continental Supply Company
Continental - Emsco Company C.A.
The Buckeye Coal Company
The Youngstown Mines Corporation
Nemacolin Supply Company

# Salaried Non-Union Employees



ADMIN REC-0070

# TABLE OF CONTENTS

| | | Section | Page |
|---|---|---|---|
| Part A. | DEFINITIONS | A-1.01-25 | 3-7 |
| Part B. | NON-CONTRIBUTORY PART | | |
| Article I | Non-Contributory Benefits | | 8 |
| | General Eligibility | B-1.01 | 8 |
| | Normal Retirement | B-1.02 | 8 |
| | Special Payment | B-1.03 | 8 |
| | Monthly Pension | B-1.04 | 9 |
| | Deductions—Pension | B-1.04 | 9 |
| | Payments | B-1.05 | 10 |
| | Early Retirement | B-1.06 | 11 |
| | 30 Year Retirement | B-1.07 | 13 |
| | Disability Retirement | B-1.08 | 13 |
| | Deferred Vested Retirement | B-1.09 | 14 |
| | Supplemental Payment—Other Early | | |
| | and Disability Retirements | B-1.10 | 15 |
| | Time of Payment of Pension | B-1.11 | 15 |
| | Part Time Employees | B-1.12 | 17 |
| | Options | B-1.13 | 17 |
| Article II | General | | |
| | Continuation of Employment | | |
| | Beyond Normal | | |
| | Retirement Date | | |
| | Re-employment after | | |
| | Retirement | B-2.01 | 20 |
| | Duplication | B-2.02 | 20 |
| | | B-2.03 | 20 |
| Article III | Surviving Spouse's Benefit | | |
| | Eligibility | B-3.01 | 21 |
| | Minimum Amount of Benefit | B-3.02 | 21 |
| | Amount of Benefit | B-3.03 | 21 |
| | Age 65 | B-3.04 | 23 |
| | Commencement and | | |
| | Termination of Benefit | B-3.05 | 23 |
| | Determination of Status as | | |
| | Surviving Spouse | B-3.06 | 24 |
| | Surviving Spouse | | |
| | to be Informed | B-3.07 | 24 |
| | Surviving Spouse of Part-time | | |
| | Employee | B-3.08 | 24 |

ADMIN REC-0071

|  |  |  | Section | Page |
|---|---|---|---|---|
| **Part C.** | | **CONTRIBUTORY PART** | | |
| Article I | | Participation in Contributory Part of Plan | | |
| | | General Eligibility ................ | C-1.01 | 25 |
| | | Terms of Eligibility .............. | C-1.02 | 25 |
| | | Entry Date ....................... | C-1.03 | 25 |
| | | Election to Participate ........... | C-1.04 | 25 |
| | | Subsequent Eligibility Only on General Reopening ......... | C-1.05 | 26 |
| Article II | | Eligibility for Contributory Benefits | | |
| | | Normal Retirement Date ......... | C-2.01 | 26 |
| | | Early Retirement ................ | C-2.02 | 26 |
| | | 30 Year Retirement .............. | C-2.03 | 26 |
| | | Disability Retirement ............ | C-2.04 | 27 |
| | | Vested Deferred Limited Pension Rights ............... | C-2.05 | 27 |
| | | Minimum Special Pension ......... | C-2.06 | 28 |
| Article III | | Amount of Pensions | | |
| | | Pension Payable Upon Attainment of Normal Retirement Date ........... | C-3.01 | 28 |
| | | Early Retirement Pension ........ | C-3.02 | 30 |
| | | 30 Year Retirement Pension ..... | C-3.03 | 30 |
| | | Disability Retirement Pension ... | C-3.04 | 30 |
| | | Vested Deferred Limited Pension ...................... | C-3.05 | 31 |
| | | Options ......................... | C-3.06 | 31 |
| Article IV | | Payment of Pensions | | |
| | | Normal Retirement Pension ...... | C-4.01 | 31 |
| | | Early and 30 Year Retirements ... | C-4.02 | 32 |
| | | Disability Retirement ............ | C-4.03 | 32 |
| | | Vested Deferred Limited Pension .......................... | C-4.04 | 32 |
| | | Minimum Special Pension ........ | C-4.05 | 33 |
| | | Pension Payment to Co-Pensioners ............... | C-4.06 | 33 |
| | | Date of Payment ................ | C-4.07 | 33 |
| | | Pension Payments Under Options | C-4.08 | 33 |
| | | Application Required ............. | C-4.09 | 33 |

ii

|  |  |  | Section | Page |
|---|---|---|---|---|
| **Part C.** | | **CONTRIBUTORY PART (Cont.)** | | |
| Article V | | Death Benefits | | |
| | | Ten-Year Certain Benefits ....... | C-5.01 | 34 |
| | | Ten-Year Certain Equivalent ..... | C-5.02 | 34 |
| | | Total Amount Certain if Minimum Special Pension is Payable ................ | C-5.03-4 | 34-35 |
| | | Designation of Beneficiary ....... | C-5.05 | 35 |
| | | Death of Beneficiary or Co-Pensioner Before Expiration of Term Certain ..... | C-5.06 | 35 |
| Article VI | | Contributions | | |
| | | Contributions by Contributory Participant .......... | C-6.01 | 36 |
| Article VII | | Withdrawal and Return of Contributions | | |
| | | Termination of Employment ...... | C-7.01 | 37 |
| | | Discontinuance of Contributions ... | C-7.02 | 37 |
| | | Death of Contributory Participant Prior to Retirement ........... | C-7.03 | 38 |
| Article VIII | | General | | |
| | | Continuation of Employment Beyond Normal Retirement Date ........... | C-8.01 | 38 |
| | | Preservation of Contributory Participant Status ........... | C-8.02 | 39 |
| | | Re-employment after Retirement ... | C-8.03 | 39 |
| | | Duplication ...................... | C-8.04 | 40 |
| **Part D.** | | **GENERAL PROVISIONS** | | |
| Article I | | Administration of the Plan | | |
| | | Pension Board ................... | D-1.01 | 40 |
| | | Pension Board's Rules ........... | D-1.02 | 40 |
| | | Pension Board's Determinations ... | D-1.03 | 40 |
| | | Filing Required Information ...... | D-1.04 | 40 |
| | | Adjustment of Average Monthly Compensation ...... | D-1.05 | 40 |
| | | Adjustment of Continuous Service | D-1.06 | 41 |
| | | Limitation of Adjustments ....... | D-1.06 | 41 |
| | | Computation of Years of Continuous Service and | D-1.07 | 41 |

iii

**ADMIN REC-0072**

lieu of all other monthly pension benefits under the Revised Retirement Plan. Retirement benefits under the Contributory Part are conditioned upon the employee's executing an election to participate in it and continuing or commencing to make contributions. The rate of the employee's contribution is to be the same as under the retirement program as it existed prior to October 1, 1964. This consists of approximately 5% of the employee's compensation in excess of $250 per month, payable monthly by payroll deduction. The Company also will make substantial contributions to the Contributory Part of the Revised Retirement Plan, which together with the employee's contributions shall be used to provide the contributory benefits.

2

# THE PLAN

## Part A

## Definitions

A-1.01    "Plan" shall mean the Revised Retirement Plan for Salaried, Non-Union Employees of the Company, as described herein or as hereafter amended.

A-1.02    "Program" shall mean the Company's former program to provide retirement pensions for salaried non-union employees as it existed prior to October 1, 1964.

A-1.03    "Effective Date of the Plan" shall mean May 31, 1973. The original Revised Retirement Plan became effective as of October 1, 1964 and was thereafter revised effective July 31, 1966, July 31, 1969, and December 31, 1972. Certain further amendments thereto were authorized to become effective May 31, 1973. These further amendments have been incorporated into the original Plan, as heretofore revised, and the revised and amended Plan is effective as of May 31, 1973.

A-1.04    "Company" shall mean Youngstown Sheet and Tube Company, and all its divisions, subsidiary companies, and associated companies heretofore covered by the Program and/or Plan (except Continental-Emsco Company Limited), and all divisions, subsidiary companies, and associated companies designated by the Board of Directors to be covered by the Plan after its effective date. "Subsidiary Company" shall mean any corporation at least 80% of whose capital stock of each class is owned, directly or indirectly, by the Company. "Associated Company" shall mean any corporation less than 80% of whose capital stock of each class is owned, directly or indirectly, by the Company.

A-1.05    "Board of Directors" shall mean the Board of Directors of Youngstown Sheet and Tube Company.

A-1.06    "Trustee" shall mean one or more trustees by whom funds of the Plan are held as provided in Article II of Part D.

3

ADMIN REC-0073

A-1.07 "**Pension Board**" shall mean the Pension Board as provided in Article I of Part D.

A-1.08 "**Employee**" shall mean any person receiving a salary who is not included in a collective bargaining unit and is employed on a regular basis either by the Company or as a qualified citizen-employee by a foreign subsidiary.

A "**qualified citizen-employee**" is a United States citizen employed by a foreign subsidiary of the Company who qualifies for inclusion in the coverage of the Plan under Section 406 of the Internal Revenue Code of 1954, as amended.

A-1.09 "**Contributory Participant**" shall mean any eligible Employee who has elected to participate in and is covered by the Contributory Part of the Plan.

A-1.10 "**Compensation**" shall mean the remuneration paid an Employee for services rendered to the Company including amounts of cash remuneration paid to an Employee in addition to his regular base salary, such as overtime pay, shift differentials and production and year-end cash bonuses. For the pension purposes under the Plan, an Employee's compensation shall be computed as it was computed for pension purposes under the Program. Notwithstanding anything herein to the contrary, Compensation, as defined herein, shall not include any amounts of cash remuneration paid to an Employee which are designated by the Company as cost of living allowance.

A-1.11 "**Continuous service**" shall mean service by an Employee in the employment of the Company prior to retirement. It includes the periods of service rendered by an Employee in connection with properties or businesses at any time owned by the Company prior to the Effective Date of the Plan, rendered prior to the acquisition of such properties or businesses by the Company. It shall be calculated from the Employee's last hiring date to the date of retirement. Continuous service shall be broken by quit, discharge, termination for any other reason, or by layoff or absence which continues beyond the period authorized by the Company.

The continuous service of an Employee who shall have been absent in military service for the United States of America or who shall have been absent on leave for other service to the United States of America or for military or other service to any subdivision thereof shall not be affected by his absence; provided, however, that if after October 1, 1964, such Employee shall voluntarily enlist or re-enlist in any service at the time when the United States of America is not actively engaged in military hostilities with another country, his continuous service shall, if permitted by law, be broken at the time of his enlistment or re-enlistment.

A-1.12 "**Continuous service**" shall mean any period of continuous service rendered by a Contributory Participant while making contributions, which have not been withdrawn, under either the Program or Plan, or both.

A-1.13 "**Accumulated contributions**" shall mean the sum of the contributions made by a person as a member under the Program or as a Contributory Participant under the Plan, plus the interest thereon. The rate or rates of interest paid on a Contributory Participant's contributions at the time of withdrawal or death will be determined from time to time by the Company.

A-1.14 The terms "**retired**" or "**retirement**" relate to a person, who, as of the last day of his continuous service, is eligible for a pension under the Plan, and retirement occurs:

(a) In the case of an Employee who applies for a pension prior to a break in continuous service, on the date he specifies as the date he wishes to retire, which shall be a date on or after the latest of:

    (1) the date of his request for retirement,

    (2) the date of his attainment of eligibility for pension under the Plan, or

    (3) the last day for which he earns compensation from the Company,

    but not later than the last day of his continuous service;

**ADMIN REC-0074**

# Part B
## Non-Contributory Part
### Article I
### Non-Contributory Benefits

**B-1.01** **General Eligibility.** Every Employee of the Company is eligible to participate in the Non-Contributory Part of the Plan in accordance with its terms, irrespective of whether he participates in the Contributory Part of the Plan.

**B-1.02** **Normal Retirement.** Any Employee who shall have had at least 15 years of continuous service and shall have attained the age of 65 years shall, upon his retirement, be entitled to a pension which shall consist of:

(a) A special initial pension amount (herein called "Special Payment") as provided in Section B-1.03 below, except in the case of (1) any Employee who shall have received a Special Payment with respect to prior retirement, or (2) any Employee whose Company group life insurance is more than $30,000; and

(b) A monthly pension amount as provided in Section B-1.04 below, payable for life in monthly installments, except that if the installments are less than certain amounts, payment may be made on a quarterly basis or in a lump sum as provided in Section D-1.08 (b);

all in accordance with the provisions of this Article I.

**B-1.03** **Special Payment.** The Special Payment shall be an amount equivalent to 13 weeks of vacation pay computed:

(a) In the case of an Employee entitled to a regular vacation in the year of retirement, at the rate of pay for such regular vacation (exclusive of cost of living allowance) reduced by the amount of regular vacation pay (exclusive of cost of living allowance) received for the year of retirement;

(b) In the case of an Employee who would have been entitled to a regular vacation in the year of retirement but did not take it, at the rate (exclusive of cost of living allowance) which would have been applicable if

8

he had taken a regular vacation which terminated on the date of retirement; or

(c) In the case of an Employee not in any event entitled to a regular vacation in the year of retirement, at the rate of pay (exclusive of cost of living allowance) applicable to the last regular vacation to which he was entitled, reduced by the amount of regular vacation pay (exclusive of cost of living allowance) received for the year for which he was last entitled to a regular vacation.

**B-1.04** **Monthly Pension.** The monthly installment of a pension under Section B-1.02 (b) ("Normal Retirement") shall be computed in accordance with (a) or (b) below, whichever is greater:

(a) A monthly amount (herein called "percent pension") equal to the average monthly compensation of the Employee during the last 120 full calendar months of continuous service prior to retirement, multiplied by:

(1) for an Employee with more than 30 years of continuous service, 33% plus a percent determined by multiplying 1.2% by the number of years (and fractions thereof calculated to the nearest month) of his continuous service in excess of 30 years, or

(2) for an Employee with 30 years or less of continuous service, 1.1% multiplied by the number of years (and fractions thereof calculated to the nearest month) of his continuous service, multiplied;

but in either case subject to the deductions applicable under Section B-1.05; or

(b) A monthly amount (herein called "minimum regular pension") equal to:

(1) for an Employee with more than 30 years of continuous service, $255 plus an amount determined by multiplying $10 by the number of years (and fractions thereof calculated to the nearest month) of his continuous service in excess of 30 years, or

(2) for an Employee with 30 years or less of continuous service, $120 plus an amount determined

9

ADMIN REC-0075

by multiplying $9 by the number of years (and fractions thereof calculated to the nearest month) of his continuous service in excess of 15 years, but in either case subject to the deductions applicable under Section B-1.05.

B-1.05 **Deductions — Pension Payments.**

(a) Deductions from any monthly pension for Public Pension shall be made in accordance with the following provisions:

(1) No deduction from any monthly pension shall be made for Public Pension related to the Social Security Act;

(2) In the event that for any month an Employee is eligible for Public Pension not related to the Social Security Act, or a similar act or provision of law provided by nations other than the United States, there shall be a deduction for such Public Pension from any percent pension or any minimum regular pension otherwise payable for such month. The amount of such deduction shall be the amount of Public Pension paid or payable to the Employee, or that would upon application become payable to him for such month, without regard to any offset, suspension or reduction imposed by law (including any reduction by reason of commencement of such Public Pension prior to the age at which it is first provided under law without such a reduction); provided such deduction shall be limited to the amount, to the extent reasonably determinable, of such Public Pension attributable to employment by the Company;

(3) After a deduction for Public Pension first becomes applicable, it shall not be changed to reflect any increase of such Public Pension resulting from

(i) amendment of the law under which such Public Pension is provided, if the effective date of such increase occurs after the first

10

month with respect to which a deduction for such Public Pension became applicable, or

(ii) subsequent employment by other than the Company.

(b) Any pension computed under any provisions of Part B payable to a pensioner or co-pensioner whose only benefits under Part C are provided under Section C-2.05. Section C-2.05 (a) shall be reduced by that portion of the Section C-2.05 (a) pension that is paid for by the Company through its contributions to the Group Annuity Contract or otherwise for any month in which the pensioner or co-pensioner receive, or upon timely application would be entitled to receive, such retirement annuity.

(c) Any pension computed under any provision of Part B shall also be reduced by the Pension Board by all or part of the amount of any severance allowance (except that severance allowance will not be deducted from a deferred vested pension) and/or Workmen's Compensation or Occupational Disease Act awards, under uniform rules adopted by the Pension Board. Any amount payable under a Supplemental Unemployment Benefit Plan, a Revised Savings and Vacation Plan or a Deferred Savings and Vacation Allowance Plan of the Company shall not be considered a severance allowance for the purposes of this subsection (c).

B-1.06 **Early Retirement**

(a) Age 60 and 15 Years Continuous Service. Any Employee who shall have attained the age of 60 and 15 years of continuous service and shall have attained the age of 60 shall be eligible to retire at his sole election and shall, upon his retirement, be entitled to receive a pension which shall consist of a Special Payment, as provided for and subject to the exceptions stated in Section B-1.02 (a); and either:

(1) A deferred monthly pension, commencing after his normal retirement date, computed in the same

11

ADMIN REC-0076

manner as under Section B-1.04 above ("Monthly Pension"), but based only on continuous service to the date of early retirement, and, with respect to Section B-1.04 (a), on average monthly compensation during the last 120 full calendar months of continuous service prior to early retirement; or

(2) An immediate monthly pension commencing at the time of early retirement in a reduced amount which is the equivalent actuarial value of the deferred pension under (1) above.

(b) **Other Early Retirement.** Any employee who shall have had at least 15 years of continuous service and (i) shall have attained the age of 55 years and whose combined age and years of continuous service shall equal 70 or more, or (ii) whose combined age and years of continuous service shall equal 80 or more, and

(1) Whose continuous service is terminated by reason of lack of work or by reason of a permanent shut-down of a plant, department or subdivision thereof, or by reason of a physical disability; or

(2) Whose continuous service is not terminated, and who is absent from work by reason of physical disability or by reason of lack of work, and whose return to active employment is declared unlikely by the Company; or

(3) Who considers it would be in his interest to retire, and in the judgment of the Company such retirement would likewise be in its interest, and the Company approves an application for retirement under mutually satisfactory conditions,

shall be eligible to retire and receive a pension consisting of the same types of payment, computed in the same manner, and subject to the same exceptions and deductions as provided in (a) and (b) of Section B-1.02 ("Normal Retirement").

Notwithstanding anything to the contrary contained in this Plan, no pension (including any Special Payment)

12

---

granted pursuant to this subsection (b) shall be payable for any month earlier than the month following the month in which the Employee was last eligible to receive sickness or accident benefits provided under a Company program or non-occupational disability benefits provided under law.

B-1.07 **30 Year Retirement.** Upon 90 days written notice to the Company any Employee who shall have had at least 30 years continuous service shall be eligible to retire and shall upon his retirement be eligible to receive a pension which shall consist of a Special Payment, as provided for and subject to the exceptions stated in Section B-1.02 (a) and a monthly pension payable as provided in Section B-1.04 ("Monthly Pension") as though at the date of his retirement he had attained age 65 and became eligible for Public Pension.

B-1.08 **Disability Retirement.** Any Employee who shall have at least 15 years of continuous service and who shall have become through some unavoidable cause permanently incapacitated shall be eligible to retire and shall, upon his retirement, be entitled to a monthly pension computed as follows:

(a) Prior to normal retirement date, the greater of:

(1) $150 per month, subject to the applicable deductions provided for under Section B-1.05 ("Deductions"); or

(2) An amount per month computed in the same manner as under Section B-1.04 above ("Monthly Pension"), but based only on continuous service to the date of retirement for disability, and, with respect to Section B-1.04 (a), on average monthly compensation during the last 120 full calendar months of continuous service prior to such retirement.

(b) After normal retirement date, such monthly pension shall be the amount computed in the same manner as under Section B-1.04 ("Monthly Pension"), but based only on continuous service to the date of retirement

13

ADMIN REC-0077

Case 1:07-cv-02234-EGS    Document ...    Filed ...    Page ...

for disability, and, with respect to Section B-1.04 (a), on average monthly compensation during the last 120 full calendar months of continuous service prior to such retirement.

An Employee retiring under this Section B-1.08 shall not be entitled to a Special Payment.

An Employee shall be deemed to be permanently incapacitated (as the term "permanently incapacitated" is used herein) only (1) if he has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in any occupation or employment with the Company in the nature of his prior employment and (2) after such total disability shall have continued for a period of six consecutive months and, in the opinion of one or more physicians acceptable to the Company, it will be permanent and continuous during the remainder of his life. A pension shall not be granted under the provisions of this Section B-1.08 for the purpose of providing any Employee relief from unemployment or on account of any condition other than permanent incapacity for medical reasons. Incapacity contracted, suffered or incurred while the Employee was engaged in, or resulted from his engaging in, a criminal enterprise, or resulting from returning from future service in the Armed Forces and which prevents him from returning to employment with the Company and for which he receives a military pension, shall not entitle an Employee to a pension under this Section B-1.08. Prior to the pensioner's normal retirement date, such pension for permanent incapacity shall continue only so long as he shall be permanently incapacitated. The Company may at any reasonable time or times prior to the date on which the pensioner shall reach 65 years of age verify his continued incapacity by examination of him by a physician designated by the Company.

B-1.09 **Deferred Vested Retirement.** Any Employee not eligible to receive a pension under any of the foregoing provisions of this Article I whose employment shall be terminated as a result of a permanent shutdown of a plant, department or subdivision thereof, or as a result of lack of work or

physical disability and who at the date of his termination shall have attained the age of 40 and at such time have at least 15 years of continuous service, shall be eligible to receive a deferred monthly pension payable as provided in Section B-1.11 (c), as the Employee shall elect in his application for pension, commencing after attainment of age 65 in an amount computed in the same manner as under B-1.04 ("Monthly Pension"), or commencing prior to attainment of age 65 but after attainment of age 60 in an amount computed in the same manner as under B-1.04, reduced to its equivalent actuarial value, provided, however, that he makes application therefor not earlier than 90 days prior to the first day of the month for which the first installment of pension is payable under B-1.11 (c) and not later than his seventieth birthday. No deferred vested pension shall be paid if application therefor has not been made within the period of time herein specified. An Employee retiring under this Section B-1.09 shall not be entitled to a Special Payment.

B-1.10 **Supplemental Payment — Other Early and Disability Retirements.**

The monthly pension amount for an Employee retiring under the provisions of Section B-1.06 (b) or B-1.08 shall, prior to any reduction pursuant to Section B-1.05 (b) and (c), be increased by $105; provided, however that such increase shall not be applicable with respect to such a pension payable for any month for which the pensioner is eligible for an unreduced Public Pension.

B-1.11 **Time of Payment of Pension.**

(a) A Special Payment, if payable, shall cover the three-calendar-month period next after the month of retirement and shall become payable in a lump sum in the first of such three calendar months, provided, however, that a written pension application (which includes application for both the Special Payment, if payable, and the monthly pension installment), together with such appropriate data as the Pension Board may require, is filed by the Employee before the end of the

ADMIN REC-0078

able for the month following the month in which the
Employee shall die, and the last installment shall be payable
for the month in which the surviving spouse shall die, pro-
vided, however, that a surviving spouse's benefit shall not
be payable for any month for which a Special Payment was
payable to the Employee. No surviving spouse's benefit is
payable for any month earlier than 12 months before the
month in which the surviving spouse files an application for
the benefit. In connection with the application, the Com-
pany may require the surviving spouse to grant any authori-
zation necessary to receive relevant records from the agency
administering the law referred to in Section B-3.03 (e).

**B-3.06**    **Determination of Status as Surviving Spouse.** A person shall
be considered a surviving spouse for the purpose of this
Article III, only if, immediately after an Employee's death,
such person is a widow or widower of such Employee
within the provisions of the Social Security Act, except
that where such Act requires reference to the law of the
District of Columbia, the applicable law shall be that of the
State of Ohio.

**B-3.07**    **Surviving Spouse to be Informed.** The Company shall make
reasonable effort, by an appropriate method or methods, to
inform the surviving spouse of an eligible Employee of the
existence of this benefit.

**B-3.08**    **Surviving Spouse of Part-time Employee.** In the case of a
surviving spouse of a deceased part-time Employee, not-
withstanding the provisions of Section B-3.02, the amounts
set forth in such Section B-3.02 shall be reduced on the
same basis as is provided in Section B-1.12 for the reduc-
tion of the minimum regular pension of a part-time
Employee, whether or not the minimum regular pension
was applicable to such deceased part-time Employee.

24

# Part C
# Contributory Part

## Article I

## Participation in Contributory
## Part of Plan

**C-1.01**    **General Eligibility.** Every Employee with one year of
continuous service whose compensation is $250 per month
or greater may participate in the Contributory Part of the
Plan in accordance with the terms of the Plan by comply-
ing with the requirements in this Part, which includes a month-
ly contribution of approximately 5% of his compensation
in excess of $250.

**C-1.02**    **Terms of Eligibility.** Each Employee who was a Contribu-
tory Participant on the Effective Date of the Plan shall
continue as and be a participant in the Contributory Part of
the Plan. Any other Employee shall be eligible to elect to
become a participant in the Contributory Part of the Plan
as of the first applicable entry date occurring on or after
the date he has both (1) completed at least one year of
service with the Company, and (2) attained a rate of
monthly compensation in excess of $250, provided, how-
ever, his age at his birthday nearest to that entry date is not
greater than 64.

**C-1.03**    **Entry Date.** The entry date referred to in Section C-1.02
above shall be April 1 and October 1 of each succeeding
year.

**C-1.04**    **Election to Participate.** In order to become a participant in
the Contributory Part of the Plan, an eligible Employee
must exercise his election to do so, and must authorize the
payroll deduction of his contributions under the Plan, by
executing and filing with the Company an appropriate
form, as provided by it for this purpose, within the

25

ADMIN REC-0079

applicable time indicated below:

(a) Any Employee becoming thus eligible after the Effective Date of the Plan shall file such form on or before the entry date on which he becomes eligible.

(b) However, any Employee on approved leave of absence when his election would otherwise have to be filed may file it within 30 days after he returns to the active service of the Company.

An Employee who elects to become a Contributory Participant as provided in this Section C-1.04 shall become a Contributory Participant as of the first day he becomes eligible therefor.

C-1.05 Subsequent Eligibility Only on General Reopening. Any Employee who elects not to become a Contributory Participant, or who fails to elect to become a Contributory Participant, as provided in Section C-1.04, may later become a Contributory Participant only in accordance with a general reopening of contributory participation as may, under rules uniformly applicable to all persons similarly situated, be set by the Company.

# Article II

## Eligibility for Contributory Benefits

C-2.01 Normal Retirement Date. A Contributory Participant shall become eligible for a pension under the Contributory Part upon attaining his normal retirement date.

C-2.02 Early Retirement. Upon retirement under any one of the types of early retirement provided in Section B-1.06, a Contributory Participant shall become eligible for a pension under the Contributory Part.

C-2.03 30 Year Retirement. Upon retirement under the 30 year retirement provided in Section B-1.07, a Contributory Participant shall become eligible for a pension under the Contributory Part.

26

C-2.04 Disability Retirement. Upon retirement because of a permanent disability as provided in Section B-1.08, a Contributory Participant shall become eligible for a pension under the Contributory Part.

C-2.05 Vested Deferred Limited Pension Rights.

(a) Under the Program a contributory member who had completed 10 or more years of continuous service acquired a right to receive a monthly pension under the Group Annuity Contract upon attaining his normal retirement date whether or not he continued as an Employee, or continued to contribute, or withdrew his own contributions. Any such person who completed 10 or more years of continuous service before October 1, 1964 shall continue to be eligible for monthly pension in accordance with such provisions of the Group Annuity Contract unless he becomes eligible for a larger pension under the other provisions of the Plan. His pension shall be computed under the provisions of the Group Annuity Contract and shall be based upon, either (1) the sum of his own unwithdrawn contributions and those made on his behalf by the Company prior to October 1, 1964, or (2) those made on his behalf by the Company prior to October 1, 1964 if he has withdrawn or withdraws his own contributions prior to retirement.

(b) Any person who ceases to be a Contributory Participant as a result of termination of employment or involuntary loss of eligibility after completing 10 or more years of contributory service, and who, after October 1, 1964, does not, prior to his normal retirement date, withdraw his own contributions, if any, made under the Program and those made under the Plan, shall be eligible for a monthly pension based upon his own and the Company's contributions upon his attainment of his normal retirement date in accordance with the terms of Section C-3.05 (b). If he withdraws any of his own contributions, he shall receive only such pension under this Part C as he may become eligible for under Section (a) above.

27

ADMIN REC-0080

**Pull Tab To Open**



U.S. POSTAGE
PAID
NEW CASTLE.PA
16103
MAY 22 08
AMOUNT
$4.88
0006294407

0000    20005

CERTIFIED MAIL

7005 1820 0004 0390 7981

From: ▮▮▮▮

To: Atth. William Ellis
% Pension Benefit
Guaranty Corp
1200 K St. N.W.
Washington D.C. 20005-4026

114062



The Shipping Standard™

UNITED STATES
POSTAL SERVICE.

ADMIN REC-0081

MAy 22- 2006

SOCIAL AWARD   JUNE 1991
I BecAme     disAbled,

My 4.S.+T    ApplicAtioN For DeNisal
got MisPlAce   JuNe 30. 1991

2-yrs. Mos.1 DAys.12
              15 yrs.

Leroy Montgomery

ADMIN REC-0082

Form W-2254 (Rev. 5/73)    YOUNGSTOWN SHEET AND TUBE COMPANY AND CERTAIN SUBSIDIARY COMPANIES

# APPLICATION FOR PENSION

| LTV Steel Company  (YS&T) | Campbell Works | | |
|---|---|---|---|
| Company | Works or Office | | Pension Number |

TO THE CHAIRMAN, GENERAL PENSION BOARD
    GENERAL OFFICE
       YOUNGSTOWN, OHIO

**March 31, 1973**
Effective Date of Retirement

**June 30, 1991**
Effective Date of Pension

I hereby make application for pension, in accordance with the rules and regulations set forth in the Pension Agreement effective July 31, 1972, and submit the following record as a basis for such pension.

**June 30, 1991**
Effective Date of Special Payment

Effective Date of Regular Monthly Pension Payment

(1) FULL NAME ...... **Leroy Montgomery** .......... PAYROLL NO. ......... ▮▮▮ SOC. SEC. NO. ▮▮▮▮▮

(2) ADDRESS ...... ▮▮▮▮▮▮▮▮▮▮▮

(3) DATE OF BIRTH ...... ▮▮▮▮▮▮    Age at Pension    **61.417**

(4) PRESENT OCCUPATION   **Coupling Grinder**    AGE AT RETIREMENT   **43.167**    DECIMAL YEARS.

DEPARTMENT   Coupling

(5) DATE EMPLOYED   **May 19, 1959**    DATE LAST WORKED   **March 17, 1973**

(6) ELIGIBLE FOR: Public Pension ...........(Yes or No)    VACATION PAID FROM ............... TO ...............
            Other Pension ...........(Yes or No)               FROM ............... TO ...............

(7) INSURANCE DEDUCTION AUTHORIZATION .............(Yes or No)    FROM ............... TO ...............

(8) TYPE OF PENSION  ( ) Normal  ( ) 30 Year  ( ) 60/*15  ( ) 70/80  ( ) Permanent Incapacity  ( X ) Deferred Vested

## RECORD OF EMPLOYMENT

| COMPANY | INCLUSIVE DATES | | | | | | TOTAL PERIOD | | | Annual earnings for 12 120 full calendar month employment prior to date of retirement. |
|---|---|---|---|---|---|---|---|---|---|---|
| | FROM | | | TO | | | | | | |
| | Mo. | Day | Yr. | Mo. | Day | Yr. | Yrs. | Mos. | Days | |
| LTV (YS&T) | 5 | 19 | 59 | 4 | 13 | 64 | 4 | 10 | 25 | |
| LTV (YS&T) | 5 | 26 | 64 | 3 | 31 | 73 | 8 | 10 | 6 | From: |
| | | | | | | | | | | |
| | | | | | | | | | | To: |
| (Explain all absences appearing on employment record on reverse side) TOTAL SERVICE AND EARNINGS | | | | | | | 13 | 9 | 1 | $ |
| AVERAGE MONTHLY EARNINGS  (Divide total earnings shown by ............... months) | | | | | | | | | | $ |

Date and Title of Document Establishing Date of Birth:      Continuous Service Certified Correct:      **6-10-9**

..........................      Supervisor of Employment     Date

..........................      **Admin. - Employment Programs**

**SPECIAL PAYMENT**

  Gross $ ...........    Less Vacation Payment Received $ ...............    Net $ ...............

## COMPUTATION OF MONTHLY PENSION

| | PERCENT | MONTHLY PENSION |
|---|---|---|
| (1) THE PERCENT PENSION | | |
| Decimal Years of Service (Not to exceed 30 Years)   x 1.1% | % | |
| Decimal Years of Service (Exceeding 30 Years)   x 1.2% | % | |
| Total Decimal Years of Service | Total Percent   % | |
| Average Monthly Earnings $   x Percent | Total % | $ |
| (2) THE MINIMUM PENSION | | |
| Decimal Years of Service (Not to exceed 15 Years)   x $8.00 | | |
| (Exceeding 15 Years but) Decimal Years of Service (not to exceed 30 Years)   x $9.00 | | |
| Decimal Years of Service (Exceeding 30 Years)   x $10.00 | | |
| Total Decimal Years of Service | Total | |

**AUTHORIZATION OF GENERAL PENSION BOARD**

Monthly Amount Payable to Pensioner   $

Date Effective

Month Reported to Trustee

Monthly Amount Payable to Co-pensioner   $

Date Effective

Month Reported to Trustee

PERMANENT INCAPACITY PENSION WHEN DISABILITY SOCIAL SECURITY IS DENIED ......................

Pension Amount Applicable - Greatest of $150.00, (1) and (2) ...............

**PENSION AMOUNT APPLICABLE - Greatest of (1), (2) and (3)** ...............

dd   Supplemental Agreement

ADMIN REC-0083

State of ~~Ohio~~ Pennsylvania                    **AFFIDAVIT OF EMPLOYEE**

County of ~~Mahoning~~ Lawrence            SS:

_____ Leroy Montgomery _____ being duly sworn deposes and says that he is the employee of
                    Name of Employee

_____ LTV (YS&T) _____ named and described in the Application for a Pension appearing on the reverse side
                    Company

of this form, that he has carefully read the answers to the questions set forth in lines (1) through (8), that he is familiar with the information given in said

application and that the said answers and information in lines (1) through (8) are true and correct to his best knowledge and belief:

                                        x  _Leroy Montgomery_
                                                Signature of Employee

Subscribed and sworn to before me
This _____ day of __June__ 19__    May   2006

_____
        (NOTARY PUBLIC)

My commission expires _____ 19___

[SEAL: OFFICIAL SEAL / JANET L. KALAJAINEN / REGISTER & RECORDER / LAWRENCE COUNTY, PA / My commission expires first Monday in Jan. 2008]

---

Absences appearing on Employment Records of one calendar month or more:

| REASON | INCLUSIVE DATE | | | | | | TOTAL PERIOD | | | REASON | INCLUSIVE DATE | | | | | | TOTAL PERIOD | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | FROM | | | TO | | | | | | | FROM | | | TO | | | | | |
| | Mo. | Day | Yr. | Mo. | Day | Yr. | Yrs. | Mos. | Days | | Mo. | Day | Yr. | Mo. | Day | Yr. | Yrs. | Mos. | Days |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |

Calendar months to be deducted when computing average monthly earnings _____

Continuous Absences appearing on Employment Records of more than two years:

| REASON | INCLUSIVE DATE | | | | | | TOTAL PERIOD | | |
|---|---|---|---|---|---|---|---|---|---|
| | FROM | | | TO | | | | | |
| | Mo. | Day | Yr. | Mo. | Day | Yr. | Yrs. | Mos. | Day |
| LTV (YS&T) | 4 | 14 | 62 | 5 | 25 | 64 | 2 | 1 | 12 |
| | | | | | | | | | |
| | | | | | | | | | |

---

**WORKMEN'S COMPENSATION PAYMENTS**

Is the applicant either receiving Workmen's Compensation payments or is his claim for such payments pending? _____ No _____ (Yes or N)

If yes, attach a letter from the Workmen's Compensation Department that gives complete details concerning the background, payments and status of t
Workmen's Compensation claim.

**REMARKS**

Remarks (If Pension is subject to revision, state when and why) _____

ADMIN REC-0084

C91112 2

# Social Security Administration
# Retirement, Survivors and Disability Insurance
Notice of Award

Southeastern Program Service Center
2001 Twelfth Avenue, North
Birmingham, Alabama 35285

Date: May 06, 1991
Claim Number: ███████ HA

LEROY MONTGOMERY
███████

We are writing to let you know that you are entitled to monthly disability benefits from Social Security beginning June 1991.

Shortly after July 03, 1991, you will receive your first payment which will include all benefits due you through June 1991. After that, a payment for $████ will be sent each month.

The following chart shows your benefit amount(s) before any deductions or rounding. The amount you actually receive may differ from your full benefit amount. When we figure how much to pay you, we must deduct certain amounts, such as Medicare premiums and worker's compensation offset. We must also round down to the nearest dollar.

| Beginning Date | Benefit Amount | Reason |
|---|---|---|
| June 1991 | $ ████ | Entitlement began |

In addition to your earnings we used your active military service to figure the amount of your Social Security benefits. Let us know if you qualify for any other Federal benefit (except a Veteran's Administration benefit) based on this military service. Qualification for any other Federal benefit could affect the amount of your Social Security benefit.

We have determined that you became disabled on December 07, 1990. However, before you can receive benefits, you have to be disabled for 5 full calendar months in a row and continue to meet all of the requirements for disability benefits.

Doctors and other trained staff decided that you are disabled under our rules. But, this decision must be reviewed at least once every 3 years. We will send you a letter before we start the review. Based on that review, your benefits will continue if you are still disabled, but will end if you are no longer disabled.

A state vocational rehabilitation agency may contact you. This

SSA-L30
C

ADMIN REC-0085

C91112

# Social Security Administration
# Retirement, Survivors and Disability Insurance
Notice of Award

Southeastern Program Service Center
2001 Twelfth Avenue, North
Birmingham, Alabama 35285

LEROY MONTGOMERY

Date: May 06, 1991
Claim Number: ███████ HA

We are writing to let you know that you are entitled to monthly disability benefits from Social Security beginning June 1991.

Shortly after July 03, 1991, you will receive your first payment which will include all benefits due you through June 1991. After that, a payment for $████ will be sent each month.

The following chart shows your benefit amount(s) before any deductions or rounding. The amount you actually receive may differ from your full benefit amount. When we figure how much to pay you, we must deduct certain amounts, such as Medicare premiums and worker's compensation offset. We must also round down to the nearest dollar.

| Beginning Date | Benefit Amount | Reason |
|---|---|---|
| June 1991 | $ ████ | Entitlement began |

In addition to your earnings we used your active military service to figure the amount of your Social Security benefits. Let us know if you qualify for any other Federal benefit (except a Veteran's Administration benefit) based on this military service. Qualification for any other Federal benefit could affect the amount of your Social Security benefit.

We have determined that you became disabled on December 07, 1990. However, before you can receive benefits, you have to be disabled for 5 full calendar months in a row and continue to meet all of the requirements for disability benefits.

Doctors and other trained staff decided that you are disabled under our rules. But, this decision must be reviewed at least once every 3 years. We will send you a letter before we start the review. Based on that review, your benefits will continue if you are still disabled, but will end if you are no longer disabled.

A state vocational rehabilitation agency may contact you. This

SSA-L30
C

**ADMIN REC-0086**

C91112    C

█████████████ HA

May 06, 1991

agency provides counseling, training and other services that may help you to return to work. If they offer you any services, you must accept the services to keep getting disability benefits. This is true unless we decide you have a good reason for not accepting.

If this agency has not contacted you yet, and you feel that you need these services, you may contact the nearest state vocational rehabilitation office.

The benefit described in this letter is the only one you can receive from Social Security. If you think you may qualify for another kind of Social Security benefit in the future, you will have to file another application.

The decisions we made on your claim are based on information you gave us. If this information changes, it could affect your benefits. For this reason, it is important that you report changes to us right away.

We have enclosed a pamphlet, "Your Social Security Rights and Responsibilities--Disability Benefits." It will tell you what must be reported and how to report. Please be sure to read the parts of the pamphlet which explain what to do if you go to work or if your health improves.

If you think we are wrong, you have the right to appeal. A person who did not make the first decision will decide your case. We will correct any mistakes. We will review those parts of the decision which you believe are wrong and will look at any new facts you have. We may also review those parts which you believe are correct and may make them unfavorable or less favorable to you.

- You have 60 days to ask for an appeal.

- The 60 days start the day after you receive this letter.

- You must have a good reason if you wait more than 60 days to ask for an appeal.

You can have a friend, lawyer or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal.

If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it. And if you hire a lawyer, we will withhold up to 25 percent of any past due benefits to pay toward the fee.

If you have any questions, call us toll free at 1-800-234-5772. We can answer most questions over the phone. You can also write or visit any Social Security office. The office that serves your area

SSA-L30

ADMIN REC-0087

C91112    C

███████ HA

Page 03

May 06, 1991

is located at:

> DISTRICT OFFICE
> 104 MARGARET STREET
> NEW CASTLE, PA 16101

If you do call or visit an office, please have this letter with you.
It will help us answer your questions.

*Gwendolyn S. King*

Gwendolyn S. King
Commissioner
of Social Security

Enclosure:
SSA-10153

SSA-L30

ADMIN REC-0088

IN THE COURT OF COMMON PLEAS OF THE 59th JUDICIAL DISTRICT OF PENNSYLVANIA
COUNTY BRANCH - CAMERON

██████████████████        )        CIVIL ACTION - LAW
        Plaintiff        )
                     )        CASE NO:   86-3859
    vs.        )
                     )
LEROY MONTGOMERY        )        IN DIVORCE
       Defendant        )

## DECREE

AND NOW, _____ _February 25_, 19_87_,
it is ordered and decreed that ████████████████,
plaintiff, and _____ LEROY MONTGOMERY _____,
defendant, are divorced from the bonds of matrimony.

The court retains jurisdiction of the following claims which
have been raised of record in this action for which a final
order has not yet been entered:
                         None

BY THE COURT:

_[signature]_
PRESIDENT JUDGE

True and Correct Copy
certified from the
Records of Cameron Co.,
Penna.

_[signature]_
Prothonotary

**ADMIN REC-0089**



# APPEALS MEMORANDUM



TO:          DMC                              Date: Jun-19-06

FROM:     PEAD, INTAKE GROUP (ext. 4090)

SUBJECT:  Participant Correspondence - PEAD's File Closed

**Attached is a copy of PEAD's response to participant:**

Appellant: LEROY MONTGOMERY            SSN: ██████

Plan: LTV STEEL HOURLY PENSION PLAN            Case: 195240

## IOD ACTION :

[ ]    **Continue Regular Processing - Implement BDL**

[X]    NONE

RECEIVED IOD
DOC. MGT. CNTR
ALEXANDRIA, VA
2006 JUN 20  P 12: 1

Report: J:\ACCSimp5\Memos\Intake PEAD Responded Fi

**ADMIN REC-0090**



**PBGC**
Protecting America's Pensions

## Pension Benefit Guaranty Corporation
1200 K Street, N.W., Washington, D.C. 20005-4026

♯ 27146 D5

JUN 1 9 2006

Leroy Montgomery
█████████████

Re:   ACIN:  26582; (formerly Appeal No. 2005-0049);
      Case No. 195240; LTV Steel Hourly Pension Plan

Dear Mr. Montgomery:

This is in reply to your May 22, 2006 letter to the Appeals Board concerning your entitlement to a regular or disability benefit under the Plan.

With your letter you enclosed the following documents:

- A copy of a 1991 Social Security Disability Insurance Award,

- A Youngstown Sheet and Tube Company Application for Pension; and

- A February 25, 1987 Divorce Decree from the Court of Common Pleas of the 59th Judicial District of Pennsylvania.

The disability and credited service issues you raised in your May 22nd letter are the same issues you raised in your November 8, 2004 appeal and May 6, 2005 letter. The Appeals Board's February 4, 2005 decision letter and Mr. William Ellis' May 13, 2005 letter included a detailed explanation of why you are not entitled to a regular or disability benefit from PBGC.  See Enclosures.

Please note, you have already exhausted your administrative remedies with respect to this matter.  In summary, your appeal is closed and no further action will be taken by the Appeals Board.  However, you may, if you wish, seek court review of the Board's February 4, 2005 decision.

**ADMIN REC-0091**

-2-

#27146005

This is the Appeals Board's **final** response to you concerning your entitlement to a PBGC pension.  Meanwhile, if you need other information from PBGC, please call 1-800-400-7242 and ask to speak to PBGC's authorized representative for the Plan.

Sincerely,

Eric J. Rofel
for The Appeal Board

Enclosures (2)

ADMIN REC-0092

*Enclosure 1*
*# 2158517*

*# 2714005*



# Pension Benefit Guaranty Corporation
**1200 K Street, N.W., Washington, D.C. 20005-4026**

Ms. Vikki Montgomery                                February 4, 2005

████████████████████

> Re: Leroy Montgomery, Appeal 2005-0049, Case Number 195240
> LTV Steel Hourly Pension Plan (the "Plan")[1]

Dear Ms. Montgomery:

We have reviewed the appeal you filed on behalf of your father, Mr. Leroy Montgomery. On October 5, 2004, PBGC determined your father is not entitled to a benefit. PBGC found your father earned only 13 9/12 years of service instead of the 15 years the Plan required. As explained below, we are denying your appeal.

<u>Your Appeal</u>

In your November 8, 2004 appeal:

• You noted that under current law, your father's service is enough to become vested in a benefit.

You did not dispute that your father earned 13 9/12 years of service, from May 19, 1959 until March 17, 1973. Because his service totaled less than 15 years, the Plan does not provide him a benefit. Please see Enclosure 1.

The 29 USC 1053(a) minimum vesting rules you cite were enacted by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended. The ERISA minimum vesting rules do not apply to participants such as your father whose service ended before 1974. Thus, the law does not require changing PBGC's determination.

• You stated your father's overtime hours increase his service to the required 15 years.

The Plan measures continuous service from hire date until continuous service is broken, regardless of how many hours are worked. Please see Enclosure 1 pages 46-47. Therefore, overtime may not be used to increase your father's service.

---

[1] successor to the Pension Plan for Hourly Employees of Youngstown Sheet and Tube Company and Affiliates (the "Youngstown Plan")

**ADMIN REC-0093**

- 2 -

- You stated your father served in the U.S. Military from 1950-1953 and in the reserves from 1953 to 1959. He was discharged in November 1959.

Veteran's reemployment laws may allow a person to earn pension rights for time in military service if, among other conditions:[2]

>    (i) He leaves a position (other than a temporary position) with an employer to join the Armed Services of the United States, and

>    (ii) He is honorably discharged, and

>    (iii) He makes application for reemployment within a prescribed period after discharge.

Your father's 1950-1959 military service does not meet condition (i) - his military service began before, instead of after, his YS&T service began. Therefore, the law does not require the Plan to increase your father's service for time in the military.

The Plan similarly includes military service in pension service only when military service would otherwise interrupt pension service. Please see Enclosure 1 page 47. Therefore, the Plan does not increase your father's 13 9/12 years pension service with his military service.

- You stated your father retired on disability in 1990, before reaching age 65.

A disabled participant with 15 years of service could start receiving a regular pension under the Plan's Permanent Incapacity Retirement. Retirement may occur no later than when continuous service is broken. Please see Enclosure 1 pages 28 and 29. Thus, your father fails to qualify for a Permanent Incapacity Retirement for two reasons:

>    (i) His 13 9/12 years of service are less than the required 15 years, and

---

[2] For example, the Veterans Reemployment Rights Act ("VRRA") was in effect in 1973. The VRRA has been replaced with the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). See 38 USC §§ 4301-4333.

**ADMIN REC-0094**

\# 2158517

27141605

- 3 -

(ii) Your father did not satisfy the disability requirement when his continuous service was broken March 17, 1973.

- You stated others who worked at LTV fewer years than your father are receiving pensions.

Plan provisions are complicated and have varying effective dates. For example, with only 5 years of service a Plan participant who worked after 1988 could earn a vested benefit. Thus, seemingly similarly-situated participants may be affected by different Plan provisions. Therefore, other participants receiving a benefit with less service than your father do not show your father is entitled to a benefit.

*Where to Submit Any New Evidence*

PBGC will always, even after an appeal is closed, consider any new, specific evidence that you may be entitled to a different benefit. If you obtain any such evidence, please call PBGC's Customer Contact Center at 1-800-400-7242.

Decision

Having applied the Law and the Plan provisions to the facts in this case, we must deny your appeal. This letter concludes your administrative remedies with respect to PBGC's October 5, 2004 determination. You may, if you wish, seek court review of PBGC's determination with respect to the issues you raised. Thank you for your patience during our careful review of your appeal.

Sincerely,

*William D. Ellis*
William D. Ellis
Appeals Board Member

Enclosures:
1) Relevant pages from the July 31, 1972 USW-YS&T Pension Agreement (7 pages)
2) Comparable pages from YS&T's May 31, 1973 Salaried Non-Union Employees Revised Retirement Plan (11 pages)

Cc: Mr. Leroy Montgomery

**ADMIN REC-0095**

*ENClosure 2*

*#2158571*

*#-271clleD5*



## Pension Benefit Guaranty Corporation
1200 K Street, N.W., Washington, D.C. 20005-4026
www.pbgc.gov

Mr. Leroy Montgomery

May 13, 2005

        Re:  Appeal 2005-0049, Case Number 195240
             LTV Steel Hourly Pension Plan (the "Plan")[1]

Dear Mr. Montgomery:

     We are responding to your May 6, 2005 letter following our
May 5, 2005 telephone conversation. We discussed our February 4,
2005 decision denying your appeal. You also told me you stopped
working at LTV because you found the working environment was
unhealthy.  You stated the LTV working environment ultimately
caused lung cancer your doctors discovered in a 1988 x-ray.

     With your May 6, 2005 letter, you enclosed the following
documents:

- A PBGC Facts sheet stating PBGC ensures pension plan
  participants are paid guaranteed benefits.

  We found you have no guaranteed benefit because you did not
  satisfy the Plan's requirements. Please see Enclosure 1.

- A copy of a 1991 Social Security Disability Insurance Award.

  We explained in our February 4, 2005 letter the 1991 Social
  Security award does not entitle you to a Plan benefit because:

        (i) Your 13 9/12 years of continuous service are less
        than the 15 years the Plan required , and

        (ii) You did not satisfy the disability requirement when
        your continuous service was broken March 17, 1973.

- A newspaper article explaining PBGC is holding $75 million in
  unclaimed pension benefits for thousands of Americans.

  Because we have determined you are not entitled to a Plan
  benefit, that article does not apply to you.

- A summary of a court decision stating:

---

    [1] successor to the Pension Plan for Hourly Employees of
Youngstown Sheet and Tube Company and Affiliates (the "Youngstown
Plan")

**ADMIN REC-0096**

#2758577

#2714460L

- 2 -

> Pension plan's 15-year vesting requirement is
> unreasonable, despite the fact that it was
> adopted prior to enactment of ERISA, where
> effect is to deny pension plan participation
> to 96 per cent of potentially covered
> participants.

That case does not provide you a basis for relief because it
was decided based on its particular facts, involving the Labor
Relations Act. We've seen no evidence that the Plan's vesting
rules adversely affected percentages of employees comparable
to 96 per cent. Therefore, the court decision you cite does
not appear to be relevant to the Plan's vesting rules.

- You enclosed a published explanation that the law requires
  vesting either on a participant's "65th birthday or on the
  10th anniversary of his joining the plan whichever occurred
  later," unless plan itself allowed earlier vesting, an
  employees 19th month break in service does not affect such
  vesting."

The legal explanation you enclosed describes the requirement
of the Employee Retirement Income Security Act of 1974
("ERISA"). The ERISA rules do not apply to you because your
continuous service ended in 1973.

- An explanation of ERISA-permitted rules for accruing benefits.

Those rules do not apply to vesting and also do not apply to
you because your continuous service ended in 1973, before
ERISA's effective date.

Our February 4, 2005 letter concluded your administrative
remedies with respect to PBGC's October 5, 2004 determination. As
we stated, you may, if you wish, seek court review of PBGC's
determination with respect to the issues you raised.


Sincerely,

William D. Ellis
Appeals Board Member

Enclosures:

1) Copy of our February 4, 2005 decision (21 pages, including
   Enclosures)



U.S. POSTAGE
PAID
NEW CASTLE PA
18101 US
OCT AMOUNT
**$4.64**
00034D8-18

20005

0080

7005 1820 0004 0193 1917

Appeal Division
Pension Benefit Guaranty Corp.

1200 K. ST N.W.

Washington D.C. 20005-4026

20005+4026-99 C

RETURN RECEIPT
REQUESTED

ADMIN REC-0098

Form W-2254 (Rev. 5/73)    YOUNGSTOWN SHEET AND TUBE COMPANY AND CERTAIN SUBSIDIARY COMPANIES

## APPLICATION FOR PENSION

**LTV Steel Company  (YS&T)**    **Campbell Works**
_____Company_____    _____Works or Office_____    _____Pension Number_____

TO THE CHAIRMAN, GENERAL PENSION BOARD
GENERAL OFFICE
YOUNGSTOWN, OHIO

I hereby make application for pension in accordance with the rules and regulations set forth in the Pension Agreement effective July 31, 1972, and submit the following record as a basis for such pension.

**March 31, 1973**
Effective Date of Retirement

**June 30, 1991**
Effective Date of Pension

**June 30, 1991**
Effective Date of Special Payment

Effective Date of Regular Monthly Pension Payment

(1) FULL NAME ......... **Leroy Montgomery**        PAYROLL NO. ▮▮▮▮        SOC. SEC. NO. ▮▮▮▮

(2) ADDRESS ......... ▮▮▮▮        **Age at Pension    61.417**

(3) DATE OF BIRTH ......... ▮▮▮▮        AGE AT RETIREMENT ....... **43.167** ....... DECIMAL YEARS.

(4) PRESENT OCCUPATION  **Coupling Grinder**        DEPARTMENT    **Coupling**

(5) DATE EMPLOYED .........  **May 19, 1959**        DATE LAST WORKED    **March 17, 1973**

(6) ELIGIBLE FOR: Public Pension ..........(Yes or No)    VACATION PAID FROM .................... TO ...............
    Other Pension ............(Yes or No)    FROM .................... TO ...............

(7) INSURANCE DEDUCTION AUTHORIZATION ..........(Yes or No)    FROM .................... TO ...............

(8) TYPE OF PENSION  ( ) Normal  ( ) 30 Year  ( ) 60/'5  ( ) 70/80  ( ) Permanent Incapacity  (X Deferred Vested

### RECORD OF EMPLOYMENT

| COMPANY | FROM Mo. | FROM Day | FROM Yr. | TO Mo. | TO Day | TO Yr. | Yrs. | Mos. | Days | Annual earnings for last 120 full calendar months employment prior to date of retirement. |
|---|---|---|---|---|---|---|---|---|---|---|
| LTV (YS&T) | 5 | 19 | 59 | 4 | 13 | 64 | 4 | 10 | 25 | |
| LTV (YS&T) | 5 | 26 | 64 | 3 | 31 | 73 | 8 | 10 | 6 | From: |
| | | | | | | | | | | To: |
| (Explain all absences appearing on employment record on reverse side) TOTAL SERVICE AND EARNINGS | | | | | | | 13 | 9 | 1 | $ |

AVERAGE MONTHLY EARNINGS  (Divide total earnings shown by ................ months)    $

Date and Title of Document Establishing Date of Birth:        Continuous Service Certified Correct:    **6-10-91**
        Supervisor of Employment        Date
        **Admin. - Employment Programs**

SPECIAL PAYMENT
    Gross $ ..........    Less Vacation Payment Received $ ..........    Net $ ..........

### COMPUTATION OF MONTHLY PENSION

| | PERCENT | MONTHLY PENSION | |
|---|---|---|---|
| 1) THE PERCENT PENSION | | | **AUTHORIZATION OF GENERAL PENSION BOARD** |
| Decimal Years of Service (Not to exceed 30 Years)  x 1.1% | % | | |
| Decimal Years of Service (Exceeding 30 Years)  x 1.2% | % | | Monthly Amount Payable to Pensioner  $ |
| Total Decimal Years of Service  Total Percent | % | | |
| Average Monthly Earnings $  x Percent | % | $ | Date Effective |
| ) THE MINIMUM PENSION | | | Month Reported to Trustee |
| Decimal Years of Service (Not to exceed 15 Years)  x $8.00 | | | Monthly Amount Payable to Co-pensioner  $ |
| (Exceeding 15 Years but) Decimal Years of Service (not to exceed 30 Years)  x $9.00 | | | |
| Decimal Years of Service (Exceeding 30 Years)  x $10.00 | | | Date Effective |
| Total Decimal Years of Service  Total | | | Month Reported to Trustee |
| PERMANENT INCAPACITY PENSION WHEN DISABILITY SOCIAL SECURITY IS DENIED | | | |
| Pension Amount Applicable – Greatest of $150.00, (1) and (2) | | | |

ADMIN REC-0099

*2*

**AFFIDAVIT OF EMPLOYEE**

State of .......... ~~Ohio~~ Pennsylvania

County of .......... Mahoning Lawrence    SS:

Leroy Montgomery ................................................ being duly sworn deposes and says that he is the employee of
Name of Employee

LTV (YS&T) ................................................ named and described in the Application for a Pension appearing on the reverse side
Company

of this form, that he has carefully read the answers to the questions set forth in lines (1) through (8), that he is familiar with the information given in said

application and that the said answers and information in lines (1) through (8) are true and correct to his best knowledge and belief:

x *Leroy Montgomery*
(Signature of Employee)

Subscribed and sworn to before me ~~May~~ 2006
This 22nd day of June 19 91

*Janet L. Kalejaian*
(NOTARY PUBLIC)

My commission expires ........................ 19 ....

OFFICIAL SEAL
JANET L. KALAJAIAN
REGISTER & RECORDER
LAWRENCE COUNTY, PA
My commission expires last Monday in Jan. 2000

Absences appearing on Employment Records of one calendar month or more:

| REASON | INCLUSIVE DATE | | | | | | TOTAL PERIOD | | | REASON | INCLUSIVE DATE | | | | | | TOTAL PERIOD | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | FROM | | | TO | | | | | | | FROM | | | TO | | | | | |
| | Mo. | Day | Yr. | Mo. | Day | Yr. | Yrs. | Mos. | Days | | Mo. | Day | Yr. | Mo. | Day | Yr. | Yrs. | Mos. | Days |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |

Calendar months to be deducted when computing average monthly earnings ........................

Continuous Absences appearing on Employment Records of more than two years:

| REASON | INCLUSIVE DATE | | | | | | TOTAL PERIOD | | |
|---|---|---|---|---|---|---|---|---|---|
| | FROM | | | TO | | | | | |
| | Mo. | Day | Yr. | Mo. | Day | Yr. | Yrs. | Mos. | Days |
| LTV (YS&T) | 4 | 14 | 62 | 5 | 25 | 64 | 2 | 1 | 12 |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

### WORKMEN'S COMPENSATION PAYMENTS

Is the applicant either receiving Workmen's Compensation payments or is his claim for such payments pending? ........ No ........................ (Yes or No)

If yes, attach a letter from the Workmen's Compensation Department that gives complete details concerning the background, payments and status of the
Workmen's Compensation claim.

### REMARKS

Remarks (If Pension is subject to revision, state when and why) ........................................................................

**ADMIN REC-0100**

(ii) the number of years (not in excess of 33 $1/3$ ) of his participation in the plan.

In the case of a plan providing retirement benefits based on compensation during any period, the normal retirement benefit to which a participant would be entitled shall be determined as if he continued to earn annually the average rate of compensation which he earned during consecutive years of service, not in excess of 10, for which his compensation was the highest. For purposes of this subparagraph, social security benefits and all other relevant factors used to compute benefits shall be treated as remaining constant as of the current year for all years after such current year.

(B) A defined benefit plan satisfies the requirements of this paragraph of a particular plan year if under the plan the accrued benefit payable at the normal retirement age is equal to the normal retirement benefit and the annual rate at which any individual who is or could be a participant can accrue the retirement benefits payable at normal retirement age under the plan for any later plan year is not more than 133 $1/3$ percent of the annual rate at which he can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year. For purposes of this subparagraph—

(i) any amendment to the plan which is in effect for the current year shall be treated as in effect for all other plan years;

(ii) any change in an accrual rate which does not apply to any individual who is or could be a participant in the current year shall be disregarded;

(iii) the fact that benefits under the plan may be payable to certain employees before normal retirement age shall be disregarded; and

(iv) social security benefits and all other relevant factors used to compute benefits shall be treated as remaining constant as of the current year for all years after the current year.

(C) A defined benefit plan satisfies the requirements of this paragraph if the accrued benefit to which any participant is entitled upon his separation from the service is not less than a fraction of the annual benefit commencing at normal retirement age to which he would be entitled under the plan as in effect on the date of his separation if he continued to earn annually until normal retirement age the same rate of compensation upon which his normal retirement benefit would be computed under the plan, determined as if he had attained normal retirement age on the date any such determination is made (but taking into account no more than the 10 years of service immediately preceding his separation from service). Such fraction shall be a fraction, not exceeding 1, the numerator of which is the total number of his years of participation in the plan (as of the date of his separation from the service) and the denominator of which is the total number of years he would have participated in the plan if he separated from the service at the normal retirement age. For purposes of this subparagraph, social security benefits and all other relevant factors used to compute benefits shall be treated as remaining constant as of the current year for all years after such current year.

**ADMIN REC-0101**

PRIVACY ACT DATA



# Customer Communication Network System
# Customer Service Center Call Log Report

**Call ID:** 2641156

## CUSTOMER DATA

| | | |
|---|---|---|
| **Customer SSN:** ███ | **Address:** | |
| **First Name:** LEROY | | |
| **Last Name:** MONTGOMERY | | |
| **DOB:** | **City:** | |
| **DOH:** | **State:** | |
| **DOTE:** | **Customer Type:** | |
| **CCN DOD:** | **Pay Status:** | |
| | **Evening Phone:** | |
| | **Daytime Phone:** ███ | |

**Represented By:**
**Callback phone:**

## CALL DATA

**Start Time:** 08/30/2004 11:02     **End Time:** 08/30/2004 11:14     **Duration:** 12.07 minutes
**CSR Name:** Burton Powell                                             **Call Close Out:** 08/30/2004 11:49
**Call Follow-up:** Action Required

## CHECK ACTION REQUEST DATES

Check Action Request: 00/00/0000
Check Action Request: 00/00/0000
Check Action Request: 00/00/0000
Check Action Request: 00/00/0000

## CASE DATA

**Case Number:** 20196000
**Plan Name:** LTV STEEL SUPPLEMENTAL PENSION PLAN FOR FORMER REPUBLIC RETIREMENT PLAN PARTICIPANTS
**POC:** Michele Jackson

| Teammember | Teammember Name | Extension | Division Name |
|---|---|---|---|
| Auditor | Jill Berko | 3280 | Trusteeship Processing Division 3 |
| Auditor | Robert Snyder | 3805 | Trusteeship Processing Division 3 |
| Contract Supervisor | Michael Fordham | 4925 | Trusteeship Processing Division 3 |
| FBA Manager | Karen Anderson | | Benefit Svcs Unlimited, Inc. |
| FBA Manager | Terri Evans | | Benefit Svcs Unlimited, Inc. |
| FBA Manager | William Platt | 1000 | Benefit Svcs Unlimited, Inc. |
| FBA Manager | Deborah Trentacosta | 1098 | Benefit Svcs Unlimited, Inc. |
| FBA Pension Benefit Analyst | Eileen Farmer | | Benefit Svcs Unlimited, Inc. |
| FBA Pension Benefit Analyst | Bradford Gunther | 1043 | Benefit Svcs Unlimited, Inc. |
| FBA Pension Benefit Analyst | Michele Jackson | | Benefit Svcs Unlimited, Inc. |
| FBA Pension Benefit Analyst | Alexander Jordan | 1000 | Benefit Svcs Unlimited, Inc. |
| FBA Pension Benefit Analyst | Kathleen Mauger | | Benefit Svcs Unlimited, Inc. |
| FBA Pension Benefit Analyst | Season McCants | 1000 | Benefit Svcs Unlimited, Inc. |
| Pension Benefit Analyst | Debra Murray | 6877 | Trusteeship Processing Division 3 |
| Pension Law Specialist | Darlene McManus | 3520 | Trusteeship Processing Division 3 |
| Pension Law Specialist | Barbara Robinson | 3152 | Trusteeship Processing Division 3 |

**ADMIN REC-0102**

PRIVACY ACT DATA

 **Customer Communication Network System**
**Customer Service Center Call Log Report**

## CASE DATA

**Case Number:** 20196000

**Plan Name:** LTV STEEL SUPPLEMENTAL PENSION PLAN FOR FORMER REPUBLIC RETIREMENT PLAN PARTICIPANTS

**POC:** Michele Jackson

| Teammember | Teammember Name | Extension | Division Name |
|---|---|---|---|
| TPD1 Division Manager | Bill House | 3895 | Trusteeship Processing Division 3 |
| Team Leader | Bruce Hartzler | 3217 | Trusteeship Processing Division 3 |
| Team Leader | Myrna Mahabir | 3917 | Trusteeship Processing Division 3 |

## DISPOSITION

*"Am I Entitled?" Question*

*No Record Found ON SSN Search (Not In PRISM D/B)*

*Participant Benefit Calculation*

*Transfer Call to FBA*

*Unlocated Participant*

## COMMENT

*Part called to find out how to apply for benefits – had difficulty collecting, no records prior to today; DOB:* ▮▮▮▮ *DOH: 05/19/1959; DOTE: 03/1973; Trans call to FBA Tanya.*

**ADMIN REC-0103**

PRIVACY ACT DATA



# Customer Communication Network System
# Call Action Report

## Customer Call Information

| Case | Customer SSN | Call Start Time | Last Name | First Name | POC | Callback Target |
|------|-------------|-----------------|-----------|------------|-----|-----------------|
| 20196000 | ▮▮▮▮▮ | 08/30/2004 11:02 | MONTGOMERY | LEROY | Michele Jackson | 09/21/2004 18:45 |

Extended Callback Target Date 1: 00/00/0000 00:00    Date 2: 00/00/0000 00:00    Date 3: 00/00/0000 00:00

## Call Action Information

| Action ID | Action Date | Action Initiator |
|-----------|-------------|------------------|
| 1 | 08/30/2004 | Tanyell Howard-Atley |

## Action Dispositions

Close Out Call
Entitlement/Research Issues

## Action Comments

par clld wnt to know if he would be entitled to ltv plan 195240, advsd I was nt familiar w/plan but would try to help him to the best of my ability, par is 74 and upset, reviewed file, par only has 2 docs loaded, reviewed ccn notes, prev rep advsd par in 2003 par was not entitled because he needed 15 years of service and he only had 13 years with 9 months, clld ext 2300 spk w/lisa, she said plan required 15 years,advsd par, par still was not receptive, explained to par the best I could, par wanted to spk with someone who handled that plan, advsd him I would transfer him to ext 2300, transferred par to steve, spk to steve, steve said plan had 40/15 rule and par did not meet criteria, transferred par to steve to further assist.

Pr    **ADMIN REC-0104**

D L SKULLY & ASSOCIATES

## Service Request Details For SR Number 456626

### Participant Details

| | |
|---|---|
| SSN | ███████ |
| Name | ELROY MONTGOMERY |
| Phone | ███████ |
| Email | |

Home Address ███████

### Caller Details

| | |
|---|---|
| SSN | 6385A |
| Caller Name | Mr. VIKKI MONTGOMERY |
| Phone | ███████ |
| Email | |

Address ███████

### Service Request Details

| | | | |
|---|---|---|---|
| SR Number | 456626 | Origin | Phone (Incoming) |
| Plan Number | 19524000 | Plan Name | LTV STEEL HOURLY PENSION PLAN |
| Type | Woodwork | Problem Code | General Inquiry |
| Status | Closed | Owner | Leone, Linda |
| Respond By | 01-OCT-2004 16:39:07 | Responded on | |
| Resolution By | 05-OCT-2004 17:00:00 | Resolved on | |
| BET (Benefit Estimate Tool) Used? | No | | |

### Problem Summary

CALLER REQUESTS TO SPEAK ABOUT APPEAL LETTER THAT SHE WROTE ABOUT

### Resolution Summary

Sent a BDL-NV letter

### Service Request Notes (in descending Creation Date order)

| | |
|---|---|
| Note Type | General Note |
| Created by | ███████ - Linda Leone |
| Created on | 05-OCT-2004 13:42:43 |
| Note | |

Sent a Benefit Determination Letter - Not Vested - to participant's address on file. Indicated he is lacking yrs of service. He can appeal the correct way - enclosed a pamphlet.

| | |
|---|---|
| Note Type | General Note |
| Created by | ███████ - Linda Leone |
| Created on | 01-OCT-2004 14:53:21 |
| Note | |

This part is not eligible for pension from LTV Steel. He needed 15 yrs of service and to be age 40. He was 43 but only have 13+ yrs of service. He is not in Prism and a non-vested letter has to be drafted not using ALG.

| | |
|---|---|
| Note Type | General Note |

ADMIN REC-0105

**Created by** ▮▮▮▮▮ - Linda Leone
**Created on** 01-OCT-2004 09:04:04
**Note**

Part's daughter had sent a letter to Board of Appeals in WA, but she put the wrong case number on it. She had 196603 (Bethlehem Steel?), and it should have been LTV 195240. The part is not in our system. Daughter mentions in the letter that a Jason told part he is not eligible for pension because he stopped working before 1975 and even though he was over 40 yrs old, he only had 13 yos and needed 15 yos.

**Note Type** General Note
**Created by** ▮▮▮▮▮ - Emery Pickering
**Created on** 30-SEP-2004 16:43:17
**Note**

PART'S PENSION

## Sub-Tasks (in ascending Number order)

## Related Objects (in ascending Number order)

## Logs and Notes - All

```
*** 05-OCT-2004 13:42:43 Audit: Leone, Linda ▮▮▮▮▮
     Status: ------------  Pending --> Closed
     Resolution date: ---  19-NOV-04 --> 05-OCT-04
*** 05-OCT-2004 13:42:43 Interaction: 360219 Leone, Linda ▮▮▮▮▮ Service
     request updated
*** 05-OCT-2004 13:42:43 Interaction: 360219 Leone, Linda ▮▮▮▮▮ Service
     request updated
*** 05-OCT-2004 13:42:43 Notes: Leone, Linda ▮▮▮▮▮
General Note: Sent a Benefit Determination Letter - Not Vested - to participar
     address on file. Indicated he is lacking yrs of service. He can appeal t
*** 01-OCT-2004 14:53:22 Interaction: 358638 Leone, Linda ▮▮▮▮▮ Service
     request updated
*** 01-OCT-2004 14:53:21 Interaction: 358638 Leone, Linda ▮▮▮▮▮ Service
     request updated
*** 01-OCT-2004 14:53:21 Notes: Leone, Linda ▮▮▮▮▮
General Note: This part is not eligible for pension from LTV Steel. He
     needed 15 yrs of service and to be age 40. He was 43 but only have 13+ y
*** 01-OCT-2004 09:04:04 Interaction: 358191 Leone, Linda ▮▮▮▮▮ Service
     request updated
*** 01-OCT-2004 09:04:04 Interaction: 358191 Leone, Linda ▮▮▮▮▮ Service
     request updated
*** 01-OCT-2004 09:04:04 Notes: Leone, Linda ▮▮▮▮▮
General Note: Part's daughter had sent a letter to Board of Appeals in
     WA, but she put the wrong case number on it. She had 196603 (Bethlehem S
*** 01-OCT-2004 09:04:04 Audit: Leone, Linda ▮▮▮▮▮
     Status: ------------  Open --> Pending
     Resolution date: ---    --> 19-NOV-04
*** 30-SEP-2004 16:43:17 Notes: Pickering, Emery ▮▮▮▮▮
     General Note: PART'S PENSION
*** 30-SEP-2004 16:43:17 Audit: Pickering, Emery ▮▮▮▮▮
     Urgency: -----------  --> Phone (Incoming)
     Type: -------------  --> Woodwork
     Status: ------------  --> Open
     Severity: ----------  --> Normal
```

ADMIN REC-0106

```
Owner: -------------     --> Leone Linda
Owner type: --------     --> Employee Resource
Group: -------------     --> 19524000
Group Type: --------     --> Group Resource
```

ADMIN REC-0107

05/20/2008 15:03 FAA 215 2895836          D L SKULLY & ASSOCIATES

# Service Request Details For SR Number null

## Participant Details

| | | | |
|---|---|---|---|
| SSN | null | Home Address | null |
| Name | null | | |
| Phone | null | | null |
| Email | null | | |

## Caller Details

| | | |
|---|---|---|
| SSN | | Address |
| Caller Name | | |
| Phone | | |
| Email | | |

## Service Request Details

| | | | |
|---|---|---|---|
| SR Number | null | Origin | null |
| Plan Number | null | Plan Name | |
| Type | null | Problem Code | null |
| Status | null | Owner | null |
| Respond By | null | Responded on | null |
| Resolution By | null | Resolved on | null |
| BET (Benefit Estimate Tool) Used? | No | | |

## Problem Summary

## Resolution Summary

## Service Request Notes (in descending Creation Date order)

| | |
|---|---|
| Note Type | General Note |
| Created by | ███████ - Michelle Flynn |
| Created on | 05-NOV-2004 10:35:36 |
| Note | |

P's daughter sent in an appeal letter on 9/26/04. Appeal was premature. Before we responded to her letter IOD issued a BD (10/5/04). I called P's daughter to inform her that original appeal was premature and that if Mr. Montgomery still did not agree with PBGC's decision he will need to send in another appeal letter and it will be reveiwed.

## Sub-Tasks (in ascending Number order)

## Related Objects (in ascending Number order)

## Logs and Notes - All

\*\*\* 08-NOV-2004 08:57:31 Interaction: 591505 Flynn, Michelle ████████
        Service request updated
\*\*\* 05-NOV-2004 10:35:36 Notes: Flynn, Michelle ████████
General Note: P's daughter sent in an appeal letter on 9/26/04. Appeal
        was premature. Before we responded to her letter IOD issued a BD (10/5/0
\*\*\* 05-NOV-2004 10:35:36 Interaction: 590718 Flynn, Michelle ████████
        Service request created
\*\*\* 05-NOV-2004 10:35:36 Interaction: 590718 Flynn, Michelle ████████

http://crm.corp.pbgc.gov:8050/OA_HTML/RF.jsp?function_id=10122&resp_id=50282&r.

ADMIN REC-0108

```
            Service request updated
    *** 05-NOV-2004 10:35:35 Audit: Flynn, Michelle ▮▮▮▮▮
        Urgency: -----------     --> Phone (Outgoing)
        Type: -------------      --> Appeals
        Status: ------------     --> Closed
        Severity: ----------     --> Normal
        Group Type: --------     --> Group Resource
```

ADMIN REC-0109

## Service Request Details For SR Number 2606384

### Participant Details

| | | | |
|---|---|---|---|
| **SSN** | ████████ | **Home Address** | ████████ |
| **Name** | ELROY MONTGOMERY | | |
| **Phone** | ████████ | | |
| **Email** | | | |

### Caller Details

| | | |
|---|---|---|
| **SSN** | | **Address** |
| **Caller Name** | | |
| **Phone** | | |
| **Email** | | |

### Service Request Details

| | | | |
|---|---|---|---|
| **SR Number** | 2606384 | **Origin** | Phone (Incoming) |
| **Plan Number** | 19524000 | **Plan Name** | LTV STEEL HOURLY PENSION PLAN |
| **Type** | Woodwork | **Problem Code** | General Inquiry |
| **Status** | Closed | **Owner** | Leone, Linda |
| **Respond By** | 06-MAY-2005 13:20:30 | **Responded on** | |
| **Resolution By** | 05-MAY-2005 17:00:00 | **Resolved on** | |
| **BET (Benefit Estimate Tool) Used?** | No | | |

### Problem Summary

part wanted to speak to mr ellis. no such person there.

### Resolution Summary

Part is not vested - BDL appeal was denied

### Service Request Notes (in descending Creation Date order)

| | |
|---|---|
| **Note Type** | General Note |
| **Created by** | ████████ - Linda Leone |
| **Created on** | 05-MAY-2005 16:49:02 |
| **Notes** | |

Part's BDL appeal was denied. He was very upset because he says PBGC is wrong in their determination. He will not stop calling until he speaks to William Ellis at the appeals board. I forwarded an email to Mr. Ellis today, and he did call the part. Bill (Ellis) asked Dina to speak to part because PBGC is not going to send him an application - he is not vested. See CRM#2606680 for B.Ellis comments.

### Sub-Tasks (in ascending Number order)

### Related Objects (in ascending Number order)

### Logs and Notes - All

\*\*\* 05-MAY-2005 16:49:02 Interaction: 1989219 Leone, Linda (FBRBHA26) Service request updated

http://crm.corp.pbgc.gov:8050/OA_HTML/RF.jsp?function_id=10122&resp_id=50282&r..

ADMIN REC-0110

```
*** 05-MAY-2005 16:49:02 Interaction: 1989219 Leone, Linda ██████ Service
       request updated
*** 05-MAY-2005 16:49:02 Notes: Leone, Linda ██████
General Note: Part's BDL appeal was denied. He was very upset because
       he says PBGC is wrong in their determination. He will not stop calling ▮
*** 05-MAY-2005 16:49:01 Audit: Leone, Linda ██████
       Status: ----------- Open --> Closed
       Resolution date: ---   --> 05-MAY-05
*** 05-MAY-2005 13:23:28 Audit: Brown, Betty ██████
       Urgency: -----------    --> Phone (Incoming)
       Type: -------------     --> Woodwork
       Status: ------------    --> Open
       Severity: ----------    --> Normal
       Owner: -------------    --> Leone Linda
       Owner type: --------    --> Employee Resource
       Group: -------------    --> 19524000
       Group Type: --------    --> Group Resource
*** 05-MAY-2005 13:23:28 Interaction: 1988656 Brown, Betty ██████ Created
```

ADMIN REC-0111

D L SKULLY & ASSOCIATES

@004
Page 1 of 2

## Service Request Details For SR Number 2606490

**Participant Details**

| | |
|---|---|
| SSN | ███████ |
| Name | ELROY MONTGOMERY |
| Phone | |
| Email | |

Home Address ████████████

**Caller Details**

| | |
|---|---|
| SSN | |
| Caller Name | |
| Phone | |
| Email | |

Address

**Service Request Details**

| | | | |
|---|---|---|---|
| SR Number | 2606490 | Origin | Phone (Incoming) |
| Plan Number | 19524000 | Plan Name | LTV STEEL HOURLY PENSION PLAN |
| Type | Woodwork | Problem Code | General Inquiry |
| Status | Closed | Owner | |
| Respond By | 06-MAY-2005 13:54:32 | Responded on | |
| Resolution By | 05-MAY-2005 17:00:00 | Resolved on | |
| BET (Benefit Estimate Tool) Used? | No | | |

**Problem Summary**

Part request to speak with Bill Ellis

**Resolution Summary**

See CRM#2606384

**Service Request Notes (in descending Creation Date order)**

| | |
|---|---|
| Note Type | General Note |
| Created by | ██████ - Linda Leone |
| Created on | 05-MAY-2005 16:50:19 |
| Note | Duplicate call - see CRM#2606384 |

**Sub-Tasks (in ascending Number order)**

**Related Objects (in ascending Number order)**

**Logs and Notes - All**

```
*** 05-MAY-2005 16:50:19 Audit: Leone, Linda ██████
    Status: ----------- Open --> Closed
    Resolution date: ---   --> 05-MAY-05
*** 05-MAY-2005 16:50:19 Interaction: 1989224 Leone, Linda ██████ Service
    request updated
*** 05-MAY-2005 16:50:19 Notes: Leone, Linda ██████
    General Note: Duplicate call - see CRM#2606384
*** 05-MAY-2005 16:50:19 Interaction: 1989224 Leone, Linda ██████ Service
```

ADMIN REC-0112

```
        request updated
*** 05-MAY-2005 14:07:04 Interaction: 1988723 Allen, Le Roy (IOTSF70) Created

*** 05-MAY-2005 14:07:04 Audit: Allen, Le Roy ▓▓▓▓▓▓
    Urgency: -----------    --> Phone (Incoming)
    Type: -------------     --> Woodwork
    Status: ------------    --> Open
    Severity: ----------    --> Normal
    Group: -------------    --> 19524000
    Group Type: --------    --> Group Resource
```

ADMIN REC-0113

## Service Request Details For SR Number 2606680

### Participant Details

| | | | |
|---|---|---|---|
| **SSN** | ████████ | **Home Address** | |
| **Name** | ELROY MONTGOMERY | | |
| **Phone** | ████████ | | ████████ |
| **Email** | | | |

### Caller Details

| | | |
|---|---|---|
| **SSN** | | **Address** |
| **Caller Name** | | |
| **Phone** | | |
| **Email** | | |

### Service Request Details

| | | | |
|---|---|---|---|
| **SR Number** | 2606680 | **Origin** | Phone (Incoming) |
| **Plan Number** | 19524000 | **Plan Name** | LTV STEEL HOURLY PENSION PLAN |
| **Type** | Woodwork | **Problem Code** | General Inquiry |
| **Status** | Closed | **Owner** | Jerinic, Dina |
| **Respond By** | 06-MAY-2005 15:12:07 | **Responded on** | |
| **Resolution By** | 06-MAY-2005 17:00:00 | **Resolved on** | |
| **BET (Benefit Estimate Tool) Used?** | No | | |

### Problem Summary

Disputed 2/4/05 appeal decision and requested PBGC Application for Benefits

### Resolution Summary

tried to explain the appeals boards decision- he thinks we are lieing

### Service Request Notes (in descending Creation Date order)

| | |
|---|---|
| **Note Type** | General Note |
| **Created by** | ████████ - Dina Jerinic |
| **Created on** | 06-MAY-2005 14:26:08 |
| **Note** | |

explained I will not forward an application since he is not entitled to a benefit. He is not Vested, he appealed and the appeals board agreed he did not meet the vesting criteria at the time he quit working at LTV. He does not understand and insists we are breaking the law by not giving him a pension. Told him I could not help him. He is going to contact a lawyer.

| | |
|---|---|
| **Note Type** | General Note |
| **Created by** | ████████ - William Ellis |
| **Created on** | 05-MAY-2005 15:16:44 |
| **Note** | |

I agreed to forward his request when he explained he'd already spent too much time talking to PBGC on the phone. He also stated he stopped working at LT V after he found the working environment was unhealthy and ultimately caused the lung cancer his doctors discovered

ADMIN REC-0114

in a 1988 x-ray. He asked me to apply ERISA vesting rules which I
explained do not apply because his employment ended in 1973. I also
explained the Appeals Board had already denied his appeal (2005-0049)
and any remaining remedy may be found only in federal court.
Nevertheless, he wants a PBGC Application. - Bill Ellis

## Sub-Tasks (In ascending Number order)

## Related Objects (In ascending Number order)

## Logs and Notes - All

*** 06-MAY-2005 14:26:08 Interaction: 1990285 Jerinic, Dina [REDACTED]    Service
    request updated
*** 06-MAY-2005 14:26:08 Interaction: 1990285 Jerinic, Dina [REDACTED]    Service
    request updated
*** 06-MAY-2005 14:26:08 Audit: Jerinic, Dina [REDACTED]
    Status: ------------  Pending --> Closed
*** 06-MAY-2005 14:26:08 Notes: Jerinic, Dina [REDACTED]
General Note: explained I will not forward an application since he is not
    entitled to a benefit. He is not Vested, he appealed and the appeals boa
*** 06-MAY-2005 08:55:43 Audit: Rybak, Lorraine [REDACTED]
    Status: ------------  Open --> Pending
    Resolution date: ---  --> 06-MAY-05
    Owner: -------------  --> Jerinic Dina
    Owner type: --------  --> Employee Resource
*** 06-MAY-2005 08:55:43 Interaction: 1989542 Rybak, Lorraine [REDACTED]
    Service request updated
*** 05-MAY-2005 15:16:44 Notes: Ellis, William [REDACTED]
General Note: I agreed to forward his request when he explained he'd already
    spent too much time talking to PBGC on the phone. He also stated he stop
*** 05-MAY-2005 15:16:40 Audit: Ellis, William [REDACTED]
    Urgency: -----------  --> Phone (Incoming)
    Type: --------------  --> Woodwork
    Status: ------------  --> Open
    Severity: ----------  --> Normal
    Group: -------------  --> 19524000
    Group Type: --------  --> Group Resource

ADMIN REC-0115

**Service Request Details For SR Number 6431778**

**Participant Details**

| | | | |
|---|---|---|---|
| SSN | ████████ | Home Address | ████████ |
| Name | ELROY MONTGOMERY | | |
| Phone | ████████ | | |
| Email | | | |

**Caller Details**

| | | |
|---|---|---|
| SSN | | Address |
| Caller Name | | |
| Phone | | |
| Email | | |

**Service Request Details**

| | | | |
|---|---|---|---|
| SR Number | 6431778 | Origin | Phone (Incoming) |
| Plan Number | 19524000 | Plan Name | LTV STEEL HOURLY PENSION PLAN |
| Type | Woodwork | Problem Code | General Inquiry |
| Status | Closed | Owner | Hoch, Suzanne |
| Respond By | 22-JUN-2006 18:45:00 | Responded on | |
| Resolution By | 30-JUN-2006 23:00:00 | Resolved on | |
| BET (Benefit Estimate Tool) Used? | No | | |

**Problem Summary**

part is calling due to he ;was denied his benefits dont know why this is coming up as a woodwork because he's in the system and

**Resolution Summary**

Part will call the Appeals Board directly to discuss this 6-19-06letter

**Service Request Notes (In descending Creation Date order)**

| | |
|---|---|
| Note Type | General Note |
| Created by | ████████ - Suzanne Hoch |
| Created on | 21-JUN-2006 16:14:15 |
| Note | Part had received a letter from the Appeals Board stating that the letter was his final decision. he would have to seek a court order to change his no eligibility decision. The letter referenced the inital appeals decision of 2-4-2005. I suggested that he call back on the 800# and ask to speak to the Appeals Board. he can then talk directly to the Board or if they do not answer, leave a number for a return phone call. he wanted me to write a letter to the appeals board for him. |

**Sub-Tasks (in ascending Number order)**

**Related Objects (in ascending Number order)**

**Logs and Notes - All**

ADMIN REC-0116

```
*** 21-JUN-2006 16:14:15 Interaction: 4790621 Hoch, Suzanne          Service
          request updated
*** 21-JUN-2006 16:14:15 Interaction: 4790621 Hoch, Suzanne          Service
          request updated
*** 21-JUN-2006 16:14:15  Notes: Hoch, Suzanne
General Note: Part had received a letter from the Appeals Board stating
          that the letter was his final decision. he would have to seek a court o
*** 21-JUN-2006 16:14:14 Audit: Hoch, Suzanne
          Status: -----------  Open --> Closed
          Resolution date: ---  --> 30-JUN-06
*** 21-JUN-2006 14:09:16 Audit: James, Andrel
          Urgency: -----------  --> Phone (Incoming)
          Type: -------------  --> Woodwork
          Status: -----------  --> Open
          Severity: ----------  --> Normal
          Owner: ------------  --> Hoch Suzanne
          Owner type: --------  --> Employee Resource
          Group: -------------  --> 19524000
          Group Type: --------  --> Group Resource
*** 21-JUN-2006 14:09:16 Interaction: 4789885 James, Andrel          Created
```

ADMIN REC-0117

## Service Request Details For SR Number 6436114

### Participant Details

**SSN** ▮▮▮

**Name** ELROY
MONTGOMERY

**Phone** ▮▮▮

**Email**

**Home Address** ▮▮▮

### Caller Details

**SSN**

**Caller Name**

**Phone**

**Email**

**Address**

### Service Request Details

| | | | |
|---|---|---|---|
| **SR Number** | 6436114 | **Origin** | Phone (Incoming) |
| **Plan Number** | 19524000 | **Plan Name** | LTV STEEL HOURLY PENSION PLAN |
| **Type** | Woodwork | **Problem Code** | General Inquiry |
| **Status** | Closed | **Owner** | Hoch, Suzanne |
| **Respond By** | 27-JUN-2006 18:45:00 | **Responded on** | |
| **Resolution By** | 30-JUN-2006 23:00:00 | **Resolved on** | |
| **BET (Benefit Estimate Tool) Used?** | No | | |

### Problem Summary

Appeal Process - Worked with company 15 years

### Resolution Summary

Wil not forward to Appeal Board to return call to Mr. Montgomery.

### Service Request Notes (in descending Creation Date order)

**Note Type** General Note

**Created by** ▮▮▮ - Suzanne Hoch

**Created on** 27-JUN-2006 08:07:12

**Note**

Upon review by supervisors, the message to have the Appeals Board call Mr. Montogemry has been cancelled. The file from the Appeals Board is very specific as to the reason for the denial of the benfit and final. Offered to have Mr Montogemry to speak to Dina, supervisor if necessary. He will leave message on her voice mail to return call.

**Note Type** General Note

**Created by** ▮▮▮ - Lillie Brown

**Created on** 26-JUN-2006 19:11:15

**Note**

CSR: Asihah

### Sub-Tasks (in ascending Number order)

### Related Objects (in ascending Number order)

ADMIN REC-0118

## Logs and Notes - All

```
*** 27-JUN-2006 08:07:12 Interaction: 4800067 Hoch, Suzanne ███████ Service
    request updated
*** 27-JUN-2006 08:07:12 Notes: Hoch, Suzanne ███████
General Note: Upon review by supervisors, the message to have the Appeals
    Board call Mr. Montogemry has been cancelled. The file from the Appeals
*** 27-JUN-2006 08:07:12 Interaction: 4800067 Hoch, Suzanne ███████ Service
    request updated
*** 27-JUN-2006 08:07:11 Audit: Hoch, Suzanne ███████
    Status: -----------  Open --> Closed
    Resolution date: ---    --> 30-JUN-06
*** 26-JUN-2006 19:11:16 Audit: Brown, Lillie ███████
    Urgency: -----------  --> Phone (Incoming)
    Type: -------------  --> Woodwork
    Status: -----------  --> Open
    Severity: ----------  --> Normal
    Owner: -------------  --> Hoch Suzanne
    Owner type: --------  --> Employee Resource
    Group: -------------  --> 19524000
    Group Type: --------  --> Group Resource
*** 26-JUN-2006 19:11:16 Interaction: 4799698 Brown, Lillie ███████ Created

*** 26-JUN-2006 19:11:15 Notes: Brown, Lillie ███████
    General Note: CSR: Asibah
```

ADMIN REC-0119

## Service Request Details For SR Number 6436280

### Participant Details

| | |
|---|---|
| SSN | |
| Name | ELROY MONTGOMERY |
| Phone | |
| Email | |

Home Address

### Caller Details

| | |
|---|---|
| SSN | |
| Caller Name | |
| Phone | |
| Email | |

Address

### Service Request Details

| | | | |
|---|---|---|---|
| SR Number | 6436280 | Origin | Phone (Incoming) |
| Plan Number | 19524000 | Plan Name | LTV STEEL HOURLY PENSION PLAN |
| Type | Woodwork | Problem Code | General Inquiry |
| Status | Closed | Owner | Hoch, Suzanne |
| Respond By | 28-JUN-2006 18:45:00 | Responded on | |
| Resolution By | 30-JUN-2006 23:00:00 | Resolved on | |
| BET (Benefit Estimate Tool) Used? | No | | |

### Problem Summary

part requested to speak to suzanne

### Resolution Summary

Supervisor will call back

### Service Request Notes (In descending Creation Date order)

| | |
|---|---|
| Note Type | General Note |
| Created by | ▓▓▓ - Suzanne Hoch |
| Created on | 27-JUN-2006 16:16:46 |
| Note | Supervisor had spoken to Mr. Montogomery several days ago. She (Dina) will call him back. |

### Sub-Tasks (in ascending Number order)

### Related Objects (In ascending Number order)

### Logs and Notes - All

```
*** 27-JUN-2006 16:16:47 Interaction: 4803679 Hoch, Suzanne       Service
    request updated
*** 27-JUN-2006 16:16:47 Interaction: 4803679 Hoch, Suzanne       Service
    request updated
*** 27-JUN-2006 16:16:46  Notes: Hoch, Suzanne
General Note: Supervisor had spoken to Mr. Montogomery several days ago.
    She (Dina) will call him back.
```

ADMIN REC-0120

```
*** 27-JUN-2006 16:16:46 Audit: Hoch, Suzanne ████████
      Status: -----------  Open  --> Closed
      Resolution date: ---    --> 30-JUN-06
*** 27-JUN-2006 08:54:31 Audit: Kara, Oluyemisi ████████
      Urgency: -----------     --> Phone (Incoming)
      Type: -------------     --> Woodwork
      Status: -----------     --> Open
      Severity: ----------    --> Normal
      Owner: ------------     --> Hoch Suzanne
      Owner type: --------    --> Employee Resource
      Group: ------------     --> 19524000
      Group Type: --------    --> Group Resource
*** 27-JUN-2006 08:54:31 Interaction: 4800262 Kara, Oluyemisi ████████
      Created
```

ADMIN REC-0121

# PENSION AGREEMENT

*As Amended Effective July 31, 1972*

*For Employees of*

## Youngstown Sheet and Tube Company

AND

## Youngstown Metal Products Company Division

*Pursuant to Agreement with*

## United Steelworkers of America

*WITH DESCRIPTION OF PRINCIPAL PROVISIONS*



ADMIN REC-0122

# FOREWORD

This booklet contains the Pension Agreement between Youngstown Sheet and Tube Company (including Youngstown Metal Products Company Division) and United Steelworkers of America which is dated August 1, 1971, and is effective July 31, 1972. The Pension Agreement continues until December 31, 1974 and thereafter subject to negotiations between the Company and the Union which may take place no earlier than mid-1974. The booklet also contains a description of the principal provisions of that agreement (referred to in the description as "1972 Pension Agreement"). The 1972 Pension Agreement covers employees in bargaining units to which it applies. Such a covered employee is referred to in both the 1972 Pension Agreement and the description as a "participant."

The description (pages 5 through 22) is designed to explain to a participant the highlights of the 1972 Pension Agreement (pages 23 through 61). THE 1972 PENSION AGREEMENT IS THE ONLY GOVERNING DOCUMENT. The description is not a part of the 1972 Pension Agreement and does not modify it or serve as an agreed interpretation of any provision of the 1972 Pension Agreement. The description was developed with reference to the circumstances applicable to most participants, and does not fully cover less usual circumstances. For example, the 1972 Pension Agreement provides for the deduction from regular pension of certain Railroad Retirement pension benefits, but this is not specified in the description because relatively few participants become eligible for benefits under the Railroad Retirement Act.

Pension and surviving spouse benefits are provided under the 1972 Pension Agreement only with respect to participants accruing continuous service on or after July 31, 1972, except as stated in the next sentence. The pension and surviving spouse benefit provisions applicable to retirements or deaths prior to that date are governed by earlier pension agreements, the latest of which was the pension agreement dated August 1, 1968, except that regular pension or surviving spouse benefits after July 1, 1972, with respect to participants who were accruing continuous service on July 31, 1971, will be determined under the provisions of the 1972 Pension Agreement instead of under the provisions of the prior Agreement.

ADMIN REC-0123

# TABLE OF CONTENTS

## DESCRIPTION OF PRINCIPAL PROVISIONS OF 1972 PENSION AGREEMENT

| | Page |
|---|---|
| **GENERAL PROVISIONS** | |
| Types of Retirement on Pension | 5 |
| Surviving Spouse's Benefit | 5 |
| Types of Pension Payments | 6 |
| Eligibility for Social Security Disability Benefit | 7 |
| Average Monthly Earnings | 9 |
| Possible Deductions | 9 |
| **BASIC PENSION REQUIREMENTS** | |
| Retirement Date | 10 |
| Continuous Service | 10 |
| **ELIGIBILITY AND AMOUNT OF PENSION** | |
| Normal Retirement | 12 |
| 30 Year Retirement | 12 |
| 60/15 Retirement | 13 |
| Permanent Incapacity Retirement | 13 |
| 70/80 Retirement | 13 |
| Deferred Vested Pension | 14 |
| **MISCELLANEOUS PROVISIONS** | |
| Application for Pension | 15 |
| Commencement and Termination of Pension | 15 |
| Survivor Options | 15 |
| Appeals Procedure | 16 |
| **SURVIVING SPOUSE'S BENEFIT** | |
| Eligibility | 16 |
| Amount of Benefit | 17 |
| Commencement and Termination of Benefits | 17 |
| **EXAMPLES OF PENSION AND RETIREMENT INCOME AND SURVIVING SPOUSE'S BENEFIT** | 18 |

## PENSION AGREEMENT

| | |
|---|---|
| TABLE OF CONTENTS | 25 |
| AGREEMENT | 27 |

4

---

# Description of Principal Provisions of 1972 Pension Agreement

## GENERAL PROVISIONS

### *Types of Retirement on Pension*

Pensions are provided for six types of retirement; to qualify for any type, THE PARTICIPANT MUST HAVE AT LEAST 15 YEARS OF CONTINUOUS SERVICE and for some types more continuous service is required.

*Normal*

Age 65 or over.

*30 Year*

Before age 65—at least 30 years of continuous service.

*60/15*

Age 60 to 65—less than 30 years of continuous service.

*Permanent Incapacity*

Before age 65—permanent and total incapacity.

*70/80*

Age 55 or over with age plus continuous service equaling at least 70, or age plus continuous service equaling at least 80—special circumstances such as permanent shutdown or prolonged layoff or disability.

*Deferred Vested*

Age 40 or over—continuous service broken for any reason other than discharge and not eligible for other pension.

Each type of retirement is described in more detail under "Eligibility and Amount of Pension" beginning on page 12.

### *Surviving Spouse's Benefit*

A benefit is payable to the surviving spouse of a participant with at least 15 years of continuous service who dies on or after July

5

ADMIN REC-0124

31, 1972 at or after age 55 and either (i) before retirement or (ii) after retirement but before age 65, if he retired on or after July 31, 1972 and after attaining age 50. This benefit is described in more detail on page 16.

## Types of Pension Payments

Pension amounts and the periods for which they are payable are determined as follows:

### Special Payment

The Special Payment is the first three calendar months of pension, but it does not apply in the case of a permanent incapacity retirement or a deferred vested pension. It is a lump sum equal to 13 weeks of vacation pay, reduced by any regular vacation pay received for the year of retirement or for an earlier year if the participant is not entitled to vacation in the year of retirement. Under the basic labor agreement a participant entitled to vacation which he has not taken by the time of retirement does not receive that vacation or vacation pay if he is eligible for the Special Payment, but no deduction will be made from the Special Payment for such vacation.

For each month to which the Special Payment does not apply the pension is the Regular Pension.

### Regular Pension

The Regular Pension is a monthly payment equal to the higher of the Percent Pension or the Minimum Pension determined as follows:

#### The Percent Pension

An amount equal to the participant's average monthly earnings multiplied by:

(1) For a participant with more than 30 years of continuous service,

33% plus a percent determined by multiplying 1.2% by his years of continuous service in excess of 30 years, and

(2) for a participant with 30 or less years of continuous service, 1.1% multiplied by his years of continuous service.

6

(See table on page 8 for the calculation of the applicable percent for all years of service up to 50.)

#### The Minimum Pension

An amount equal to:

(1) For a participant with more than 30 years of continuous service,

$255, plus $10 multiplied by his years of continuous service in excess of 30 years, and

(2) for a participant with 30 or less years of continuous service,

$120, plus $9 multiplied by his years of continuous service in excess of 15 years.

(See table on page 8 for the total minimum monthly pension for all years of service up to 50.)

*The Company computes the percent pension amount and the minimum pension amount in every case and the higher of the two is payable. On request by the participant the Company will explain to him the calculations made in his case.*

#### The $105 Addition

A $105 addition to the pension determined by the percent or minimum formula is payable until age 65 for a 70/80 or permanent incapacity retirement but only for any month for which the participant is not eligible for Social Security disability benefits.

### Eligibility for Social Security Disability Benefits

It is important for a participant who is receiving the $105 addition described above to inform the Company promptly if he becomes eligible for a disability benefit under the Social Security Act, since the amount of Regular Pension is affected by such eligibility. Payment of the Regular Pension is subject to suspension if a retroactive adjustment is required because the participant had been improperly

7

ADMIN REC-0125

Table of Minimum Monthly Pension Amounts and the Applicable Percentage Used to Determine the Monthly Pension Amount under the Percent Formula

| Total Years of Service* | Monthly Pension under Minimum Formula | Applicable Percentage under Percent Formula |
|---|---|---|
| 15 | $120 | 16.5% |
| 16 | 129 | 17.6 |
| 17 | 138 | 18.7 |
| 18 | 147 | 19.8 |
| 19 | 156 | 20.9 |
| 20 | 165 | 22.0 |
| 21 | 174 | 23.1 |
| 22 | 183 | 24.2 |
| 23 | 192 | 25.3 |
| 24 | 201 | 26.4 |
| 25 | 210 | 27.5 |
| 26 | 219 | 28.6 |
| 27 | 228 | 29.7 |
| 28 | 237 | 30.8 |
| 29 | 246 | 31.9 |
| 30 | 255 | 33.0 |
| 31 | 265 | 34.2 |
| 32 | 275 | 35.4 |
| 33 | 285 | 36.6 |
| 34 | 295 | 37.8 |
| 35 | 305 | 39.0 |
| 36 | 315 | 40.2 |
| 37 | 325 | 41.4 |
| 38 | 335 | 42.6 |
| 39 | 345 | 43.8 |
| 40 | 355 | 45.0 |
| 41 | 365 | 46.2 |
| 42 | 375 | 47.4 |
| 43 | 385 | 48.6 |
| 44 | 395 | 49.8 |
| 45 | 405 | 51.0 |
| 46 | 415 | 52.2 |
| 47 | 425 | 53.4 |
| 48 | 435 | 54.6 |
| 49 | 445 | 55.8 |
| 50 | 455 | 57.0 |

*Service is adjusted for fractions of year calculated to the nearest month.

receiving the $105 addition for a period for which it is determined that he was eligible for a Social Security disability benefit. Therefore, failure to give prompt notice may result in extending the number of months for which the Regular Pension is subject to suspension.

## Average Monthly Earnings

The average monthly earnings for pension purposes are determined by totaling the participant's earnings* during the last 10 years before retirement and dividing by 120. The 120 may be reduced, as described below, to reflect months during the last 10 years in which the participant did not receive pay because of layoff or disability:

(1) In the case of permanent incapacity retirement only, first subtract from 120 the number of months without pay because of disability in the last six months before retirement;

(2) In all cases the 120 is reduced—or further reduced for other months without pay if (1) applies—by the greater of the number of months without pay:

(a) in excess of three, during each absence, or

(b) in excess of 12.

Months deducted under (1) are not counted as months of absence under (2).

## Possible Deductions

Under some circumstances the Regular Pension is subject to reduction because of other benefit payments such as workmen's compensation, severance allowance, and payments in the nature of pension benefits from certain other sources.

*A participant may estimate his retirement income by referring to the examples beginning on page 18.*

*The Basic Labor Agreement provides that the cost-of-living adjustment, first payable as of August 1, 1972, shall not be used in the calculation of any benefit; therefore, it is not included in the calculation of pension.

ADMIN REC-0126

# BASIC PENSION REQUIREMENTS

## Retirement Date

In order for a participant to qualify for a pension under the 1972 Pension Agreement, he must retire on or after July 31, 1972* under the conditions of eligibility established by the 1972 Pension Agreement. The date of retirement for a participant who applies for pension prior to a break in continuous service is specified by him but it must be on or after:

- the date he requests retirement,
- the date he first becomes eligible to retire on pension, or
- the last day for which he earns pay,

whichever is latest, but not later than the last day of his continuous service.

A participant who applies for pension after a break in continuous service is considered to have retired on the last day of his continuous service—thus, a participant cannot accrue any additional eligibility with respect to either age or continuous service after a break in his continuous service (except in the case of reemployment under certain circumstances).

## Continuous Service

The length of continuous service is an essential factor in determining eligibility for and the amount of pension. The rules for determining continuous service for pension purposes are contained in the 1972 Pension Agreement, and they may or may not produce the same length of continuous service as the rules used to determine continuous service for seniority and other purposes. For example, continuous service for pension purposes breaks at the end of two years' absence because of layoff or disability, whereas continuous service for seniority purposes may remain unbroken for up to five years of such absence.

*For retirements before this date, but on or after July 31, 1971, Regular Pension for months after July, 1972 is determined under the provisions of the 1972 Pension Agreement instead of under the provisions of the prior Agreement.

10

Briefly summarized, the continuous service provisions in the 1972 Pension Agreement give credit for continuous service prior to retirement in the employment of Youngstown Sheet and Tube Company, unless such service was broken and the break was not removed. The provisions as to breaks in continuous service have changed from time to time and whatever provisions were in effect at a given time determine whether or not a break then occurred. Among the provisions contained in the 1972 Pension Agreement relating to breaks in continuous service, those with the most frequent application are that continuous service breaks when a participant quits, is discharged or accepts severance pay, or when he has been absent because of layoff, disability or for other reasons for more than two years.

A break in continuous service resulting from discharge is removed if the participant is reemployed within six months. A break in continuous service resulting from absence on layoff or disability is removed if the participant returns to employment while he is still his continuous service, but in such case no continuous service for pension purposes is credited for the period of absence beyond two years.

Special rules may provide greater continuous service credit than above in cases of absence because of occupational disability. There are also special rules for determining continuous service credit for a participant who is reemployed after he has started to receive a pension or after he has attained eligibility for a deferred pension.

11

# ELIGIBILITY AND AMOUNT OF PENSION

## Normal Retirement

A PARTICIPANT MAY RETIRE WHEN HE HAS REACHED AGE 65 WITH AT LEAST 15 YEARS OF CONTINUOUS SERVICE, and receive a Special Payment and Regular Pension as described under "Types of Pension Payments" on page 6.

## 30 Year Retirement

A PARTICIPANT MAY RETIRE BEFORE REACHING AGE 65, IF HE HAS COMPLETED AT LEAST 30 YEARS OF CONTINUOUS SERVICE, and receive a Special Payment and a Regular Pension calculated as though at the date of his retirement he had reached age 65.

## 60/15 Retirement

A PARTICIPANT MAY RETIRE WHEN HE IS BETWEEN THE AGES OF 60 AND 65 IF HE HAS AT LEAST 15 BUT LESS THAN 30 YEARS OF CONTINUOUS SERVICE. The Special Payment will be made following retirement. The participant may elect to have his Regular Pension start in the fourth month after he reaches age 65, or he may elect to have a lower Regular Pension start with the fourth month after retirement. In the latter case, he will receive a reduced Regular Pension calculated by applying the appropriate percentage shown in the following table to the Regular Pension which would otherwise begin after he reaches age 65.

| Age at Start of Pension | Percentage |
| --- | --- |
| 60 | 65.42% |
| 61 | 70.84% |
| 62 | 76.91% |
| 63 | 83.70% |
| 64 | 91.35% |

The above percentages will be adjusted for the participant's age to the nearest month.

## Permanent Incapacity Retirement

A PARTICIPANT WITH AT LEAST 15 YEARS OF CONTINUOUS SERVICE WHO HAS BECOME PERMANENTLY AND TOTALLY INCAPACITATED MAY RETIRE BEFORE AGE 65 AFTER HE HAS BEEN SO INCAPACITATED FOR AT LEAST SIX CONSECUTIVE MONTHS. He will receive a Regular Pension so long as he remains totally incapacitated. A Special Payment is not made.

If such participant is not eligible for Social Security disability benefits, his Regular Pension will be the percent pension or the minimum pension, whichever is higher, plus the $105 addition described on page 7. When he attains age 65 or becomes eligible for Social Security disability benefits before age 65, the $105 addition will cease to apply.

The Company assumes that a participant retired for permanent incapacity is eligible for Social Security disability benefits unless he informs the Company that he has applied for and been denied such disability benefits.

## 70/80 Retirement

UNDER CERTAIN CIRCUMSTANCES, A PARTICIPANT WHO HAS AT LEAST 15 YEARS OF CONTINUOUS SERVICE MAY RETIRE BEFORE HE HAS REACHED AGE 65, and receive a Special Payment and a Regular Pension if:

• he has reached age 55 and the total of his age and continuous service equals at least 70 (Rule of 70), or

• the total of his age and continuous service equals at least 80 (Rule of 80).

THE CIRCUMSTANCES UNDER WHICH A PARTICIPANT MAY RETIRE UNDER THE RULE OF 70 OR THE RULE OF 80 ARE:

• when his continuous service has broken because of a layoff or disability, or because of a permanent shutdown, or

• during a layoff elected at the time of such a shutdown, or during the first 90 days on a job with the Company taken while on such layoff; or

12

ADMIN REC-0128

# MISCELLANEOUS PROVISIONS

## Application for Pension

An application for pension must be made in writing on a form provided by the Company. The application form can be secured from a personnel representative of the Company, preferably at the location where the participant is or was last employed before retirement. The application may be made at any time prior or subsequent to retirement, except as indicated on page 14 in the case of a deferred vested pension.

## Commencement and Termination of Pension

A Regular Pension starts with the month following the three months for which any Special Payment is made. If no Special Payment is payable, the Regular Pension starts with the first month following retirement. However, neither the Special Payment nor the Regular Pension is payable for any month earlier than the month in which application is made. The last installment of Regular Pension is payable for the month in which death of the participant occurs. However, a reduced pension may be payable thereafter to a co-pensioner designated under a survivor option election, or a surviving spouse's benefit may be payable. Special rules are applicable to the commencement of any deferred vested pension (see 60/15 retirement, page 12, and deferred vested pension, page 14).

## Survivor Options

A surviving spouse's benefit as described on page 16 applies only in the event of death of a participant before retirement or after retirement and before attainment of age 65. If a participant desires to provide pension benefits after his death following retirement and attainment of age 65 for a co-pensioner named by him, he may do so by making timely election to receive a reduced Regular Pension. The time when such election must be made varies with respect to the different types of retirement but it will in all cases be valid if made prior to age 60 or prior to retirement, whichever is earlier, or at any age prior to retirement, upon submission of evidence of good health. Therefore, each participant should consider, as he approaches age 60 or at the time of retirement prior to age 60, whether he may desire to elect an option. If he is interested and has not received an explanation of the rules relating to the options

15

---

- when he is absent due to disability or layoff and the Company determines that his return to active employment is unlikely; or

- when he and the Company agree it is in their mutual interest for him to retire.

If such participant is not eligible for Social Security disability benefits, his Regular Pension will be the percent pension or the minimum pension, whichever is higher, plus the $105 addition described on page 7. When he attains age 65 or becomes eligible for Social Security disability benefits before age 65, the $105 addition will cease to apply.

## Deferred Vested Pension

A PARTICIPANT WHO IS NOT ELIGIBLE TO RETIRE ON PENSION UNDER ANY OTHER PROVISION OF THE 1972 PENSION AGREEMENT BECOMES ELIGIBLE FOR A DEFERRED VESTED PENSION IF HE IS AT LEAST 40 YEARS OF AGE AND HAS AT LEAST 15 YEARS OF CONTINUOUS SERVICE AT THE TIME HIS CONTINUOUS SERVICE BREAKS FOR ANY REASON OTHER THAN DISCHARGE. The Company will give him written notice of eligibility to apply for a deferred vested pension to begin with the month following the month in which he attains age 65 or, if he desires, a deferred vested pension starting between ages 60 and 65, reduced from the amount which would be payable at age 65 by applying the percentages shown in the table on page 12 for a reduced 60/15 pension.

Application for a deferred vested pension can be made not earlier than 90 days before the month the participant wants the pension to start, within the period described above. The pension will begin as specified by the participant, but not sooner than the month in which application is made. It is important to note that no deferred vested pension will be payable if application is made after the participant's 70th birthday.

A Special Payment is not made in the case of a deferred vested pension, and the Regular Pension is determined on the basis of continuous service and earnings prior to the break in continuous service.

14

ADMIN REC-0129

by such time, he should request an explanation from a personnel representative at the location where he is or last was employed.

## Appeals Procedure

The 1972 Pension Agreement contains provisions for the resolution of disputes between the Company and a participant, or between the Company and the Union, as to a participant's eligibility for pension or the amount of pension. If necessary, such a dispute can be submitted to arbitration. Any dispute concerning a co-pensioner or surviving spouse is also to be resolved by the Company and the Union, or the Company and the Union may submit it to arbitration.

There is also a procedure in the 1972 Pension Agreement for resolution of any dispute as to whether a participant is permanently incapacitated. Under this procedure if a doctor selected by the Union and a doctor selected by the Company disagree, a third doctor is selected and his determination as to whether the participant is permanently incapacitated is binding.

## SURVIVING SPOUSE'S BENEFIT

### Eligibility

The surviving spouse of a participant who dies on or after July 31, 1972* and after attaining age 55 is eligible for a monthly benefit if death occurs:

• before retirement and the participant had at least 15 years of continuous service, or

• after retirement and prior to age 65 and the participant had retired on or after July 31, 1972*, after attaining age 50, on a 30 year, 60/15, permanent incapacity or 70/80 retirement.

*If a participant dies or retires on or after July 31, 1971, any surviving spouse's benefit for months after July, 1972 is determined under the provisions of the 1972 Pension Agreement instead of under the provisions of the prior Agreement.

16

## Amount of Benefit

A surviving spouse's benefit is payable for the life of an eligible surviving spouse in the following amount:

• For each month until the surviving spouse reaches age 62, $100 or, if higher, 50%* of the participant's Regular Pension.

• For each month after the surviving spouse reaches age 62, $50 or, if higher, 50%* of the participant's Regular Pension less 50% of the amount of widow's (or widower's) Social Security benefit.

*If the surviving spouse is under age 50 at the time the benefit starts, 1/2% is subtracted from this 50% for each year under age 50.

As used above, "participant's Regular Pension" means:

• In the case of a participant who dies before retirement, his Regular Pension (before any deduction) had he retired on the date of his death and then been age 65.

• In the case of a participant who dies after retirement, his Regular Pension (before any deduction as described on page 9 but not including the $105 addition described on page 7).

## Commencement and Termination of Benefits

Provided timely application is made, the first installment is payable for the month following the month in which the participant dies but not for any month for which a special payment was payable to the participant. The last installment is payable for the month in which the surviving spouse dies.

17

ADMIN REC-0130

## EXAMPLES SHOWING A PARTICIPANT HOW TO ESTIMATE HIS PENSION

### NORMAL RETIREMENT

#### AMOUNT OF SPECIAL PAYMENT
*(Pension for first three months after retirement)*

| | Example #1 | Example #2 | Participant's Estimate |
|---|---|---|---|
| a. Weekly rate of regular vacation pay | $115 | $ 230 | $ |
| b. Amount above amount by 13 | $ 210 | 2,990 not taken | |
| c. Subtract vacation pay, if received | −680 | | |
| d. Special Payment is | $1,530 | $2,990 | $ |

#### AMOUNT OF MONTHLY MINIMUM PENSION
*(Starting with fourth month after retirement)*

| | Example #1 | Example #2 | Participant's Estimate |
|---|---|---|---|
| 1. Years of continuous service at retirement | 30.25 | 40.50 | |
| 2. Amount for first 15 years of continuous service | $120.00 | $120.00 | $120.00 |
| 3. Multiply each year of service: | | | |
| (a) during second 15 years of continuous service by $9 | $135.00 | $135.00 | $120.00 |
| (b) In excess of 30 years of continuous service by $10 | 2.50 | 105.00 | |
| 4. Minimum pension (item 2 plus item 3) | $257.50 | $360.00 | $ |
| 5. Average monthly earnings | $625.00 | $825.00 | $ |
| 6. Multiply each year of service during first 30 years of continuous service by 1.1% | 33.00% | 33.00% | |
| (b) In excess of 30 years of continuous service by 1.2% | .30 | 12.60 | |
| 7. Item 6(a) plus 6(b) | 33.30% | 45.60% | |
| 8. Item 5 multiplied by item 7. THIS AMOUNT IS PAYABLE MONTHLY IF IT IS HIGHER THAN THE AMOUNT SHOWN IN ITEM 4 | $208.13 | $376.20 | $ |

THE ABOVE AMOUNT IS PAYABLE UNLESS THE FOLLOWING CALCULATION RESULTS IN A HIGHER AMOUNT

#### TOTAL MONTHLY RETIREMENT INCOME

| | Example #1 | Example #2 | Participant's Estimate |
|---|---|---|---|
| A. Monthly pension (item 4 or 8, whichever is higher) | $257.50 | $376.20 | $ |
| B. Estimated monthly Social Security Old Age benefit (based on benefits for retirement on July 31, 1972) | 213.10 | 216.10 | |
| C. Participant's estimated monthly retirement income | $470.60 | $592.30 | $ |
| D. Wife's estimated monthly retirement benefit at age 65 | 106.60 | 108.10 | |
| E. Total estimated family monthly retirement income | $577.20 | $700.40 | $ |

18

## 70/80 RETIREMENT

#### AMOUNT OF MONTHLY MINIMUM PENSION
*(Starting with fourth month after retirement. See preceding page for example of Special Payment calculation.)*

| | Example #3 — Before age 65, not eligible for Soc. Sec. disab. ben. | After age 65, or eligible for Soc. Sec. disab. ben. | Participant's Estimate — Before age 65, not eligible for Soc. Sec. disab. ben. | After age 65, or eligible for Soc. Sec. disab. ben. |
|---|---|---|---|---|
| 1. Years of continuous service at retirement | 31 | 31 | | |
| 2. Amount for first 15 years of continuous service | $120.00 | $120.00 | $120.00 | $120.00 |
| 3. Multiply each year of service: | | | | |
| (a) during second 15 years of continuous service by $9 | 135.00 | 135.00 | | |
| (b) In excess of 30 years of continuous service by $10 | 10.00 | 10.00 | | |
| 4. Add $105 where shown | $265.00 +105.00 | $265.00 | | +105.00 |
| 5. MINIMUM pension | $370.00 | $265.00 | $ | +105.00 |

THE ABOVE AMOUNT IS PAYABLE UNLESS THE FOLLOWING CALCULATION RESULTS IN A HIGHER AMOUNT

| | | | | |
|---|---|---|---|---|
| 6. Average monthly earnings | $700.00 | $700.00 | $ | |
| 7. Multiply each year of service: | | | | |
| (a) during first 30 years of continuous service by 11% | 33.00% | 33.00% | | |
| (b) In excess of 30 years of continuous service by 1.2% | 1.20 | 1.20 | | |
| 8. Item 7(a) plus 7(b) | 34.20% | 34.20% | | |
| 9. Item 6 multiplied by item 8 | $239.40 | $239.40 | | |
| 10. Add $105 where shown | +105.00 | none | | |
| 11. Item 9 plus item 10. THIS AMOUNT IS PAYABLE MONTHLY IF IT IS HIGHER THAN THE AMOUNT SHOWN IN ITEM 5 | $344.40 | $239.40 | $ | |

#### TOTAL MONTHLY RETIREMENT INCOME

| | Before age 65 | After age 65 | Before age 65 | After age 65 |
|---|---|---|---|---|
| A. Monthly pension (item 5 or 11, whichever is higher) | $370.00 | $265.00 | $ | |
| B. Estimated monthly Social Security Old Age benefit, beginning at age 65, assuming no earnings after retirement on July 31, 1972 at age 60) | none | 204.50 | | |
| C. Participant's estimated monthly retirement income | $370.00 | $469.50 | $ | |
| D. Wife's estimated Social Security benefit at age 65 | none | 102.30 | | |
| E. Total estimated family monthly retirement income | $370.00 | $571.80 | $ | |

19

EXAMPLES (Continued)

## 30 YEAR RETIREMENT
### AMOUNT OF SPECIAL PAYMENT AND MONTHLY PENSION

In the case of a pension for 30 year retirement the participant will receive a Special Payment calculated in the manner shown for normal retirement on Page 18.

Starting with the fourth month after retirement, such a participant having the same earnings and service used in Example #3 on Page 19, will receive the same Regular Pension ($265.00) as shown under the second column of Example #3, since there is no $105.00 addition. Thus, his total monthly retirement income will be $265.00 until he reaches age 65, when his estimated monthly retirement income will become $469.50 and his total estimated family monthly retirement income will be $571.80.

## 60/15 RETIREMENT
### AMOUNT OF SPECIAL PAYMENT AND MONTHLY PENSION

In the case of a pension for 60/15 retirement, the participant will receive a Special Payment calculated in the manner shown for normal retirement on Page 18.

If the participant elects to have his Regular Pension start with the fourth month after he attains age 65, and he has 28 years of continuous service and average monthly earnings of $700.00, his percent pension will be 1.1% x 28 x $700.00, or $215.60. His minimum pension will be $120, plus 13 x $9.00, or $237.00. Therefore, his Regular Pension will be $237.00. If he elects to have his Regular Pension start with the month following the three-month period to which the Special Payment applies, the $237.00 will be reduced by applying the appropriate percentage from the table shown on Page 12. For instance, if he is exactly 62 years old when his pension starts, his Regular Pension will be 76.91% of $237.00 or $182.28, and such amount will continue without change thereafter.

20

EXAMPLES (Continued)

## PERMANENT INCAPACITY RETIREMENT
### AMOUNT OF MONTHLY PENSION

A participant receiving a pension for permanent incapacity retirement, having the same earnings and service used in Example #3 on Page 19, will receive the same Regular Pension as the participant in that example but it will start with the first month after retirement since he will receive no Special Payment.

## SURVIVING SPOUSE'S BENEFIT

*The example below shows the monthly benefit payable if a 55 year old participant dies prior to retirement leaving a surviving spouse then 48 years old.*

Assuming the participant had 25 years of service and $700 average monthly earnings preceding death, the minimum pension would be $120, plus $9.00 x 10, or $210.00 and the percent pension would be 1.1% x 25 x $700, or $192.50. Therefore his Regular Pension, had he retired on the date of his death and then been age 65, would have been $210.00.

| | Example | |
| --- | --- | --- |
| | Until Spouse Reaches Age 62 | After Spouse Reaches Age 62 |
| 1. Estimated Regular Pension of participant | $210.00 | $210.00 |
| 2. 49%* of Item 1 | 102.90 | 102.90 |
| 3. Estimated widow's Social Security benefit | none | 173.90 |
| 4. 50% of Item 3 | none | 86.95 |
| 5. 50% benefit (Item 2 minus Item 4) | 102.90 | 15.95 |
| 6. Minimum benefit | 100.00 | 50.00 |
| 7. Monthly spouse's benefit (Item 5 or 6, whichever is higher) | 102.90 | 50.00 |
| 8. Total of Social Security and spouse's benefit (Item 3 plus Item 7) | 102.90 | 223.90 |

*50% less ½% for each year that spouse is under age 50.

21

**ADMIN REC-0132**

**EXAMPLES (Continued)**

*The example below shows the monthly benefit payable if a 60 year old participant dies after retirement on a 70/80 pension, leaving a surviving spouse then 55 years old, and the participant was receiving a monthly pension of $350.00 which included the $105.00 addition described on page 7.*

| | Example | |
| --- | --- | --- |
| | Until Spouse Reaches Age 62 | After Spouse Reaches Age 62 |
| 1. Amount of participant's monthly pension | $350.00 | $350.00 |
| 2. Less $105.00 addition | −105.00 | −105.00 |
| 3. Balance of participant's monthly pension | $245.00 | $245.00 |
| 4. 50% of Item 3 | 122.50 | 122.50 |
| 5. Estimated widow's Social Security benefit | none | 173.90 |
| 6. 50% of Item 5 | none | 86.95 |
| 7. 50% benefit (Item 4 minus Item 6) | 122.50 | 35.55 |
| 8. Minimum benefit | 100.00 | 50.00 |
| 9. Monthly spouse's benefit (Item 7 or 8, whichever is higher) | 122.50 | 50.00 |
| 10. Total of Social Security and spouse's benefit (Item 5 plus Item 9) | $122.50 | $223.90 |

22

# PENSION AGREEMENT

**As Amended Effective July 31, 1972**

**For Employees of**

## Youngstown Sheet and Tube Company

AND

## Youngstown Metal Products Company Division

**Pursuant to Agreement with**

## United Steelworkers of America

# TABLE OF CONTENTS

|  | Paragraph | Page |
|---|---|---|
| **1. INTRODUCTION** | | |
| Definitions | 1.1 | 27 |
| When Retirement Occurs | 1.2 | 28 |
| Provision of Benefits | 1.3 | 28 |
| **2. ELIGIBILITY FOR PENSION** | | |
| Normal Retirement | 2.1 | 29 |
| 30 Year Retirement | 2.2 | 29 |
| 60/15 Retirement | 2.3 | 29 |
| Permanent Incapacity Retirement | 2.4 | 29 |
| 70/80 Retirement | 2.5 | 30 |
| Deferred Vested Pension | 2.6 | 31 |
| **3. AMOUNT OF PENSION** | | |
| Types of Pension Payments | 3.1 | 31 |
| Special Payment | 3.2 | 31 |
| Regular Pensions—Normal, 30 Year and 70/80 | 3.3 | 32 |
| Regular Pension—60/15 | 3.4 | 34 |
| Regular Pension—Permanent Incapacity | 3.5 | 35 |
| Regular Pension—Deferred Vested | 3.6 | 35 |
| Increased Regular Pensions— | | |
| Permanent Incapacity, 70/80 | 3.7 | 35 |
| Regular Pension—Part-time Participants | 3.8 | 36 |
| Deduction for Public Pension | 3.9 | 36 |
| Deduction for Other Pension | 3.10 | 37 |
| Deduction for Severance Allowance | 3.11 | 37 |
| Deduction for Disability Payments | 3.12 | 38 |
| Pension Application | 3.13 | 39 |
| Commencement of Regular Pensions | 3.14 | 39 |
| Termination of Regular Pensions | 3.15 | 40 |
| Survivor Options | 3.16 | 40 |
| **4. SURVIVING SPOUSE'S BENEFIT** | | |
| Eligibility | 4.1 | 43 |
| Amount of Benefit | 4.2 | 43 |
| Commencement and Termination of Benefit | 4.5 | 45 |
| Determination of Status as Surviving Spouse | 4.6 | 45 |
| Surviving Spouse of Part-time Participant | 4.8 | 46 |

ADMIN REC-0134

| | Paragraph | Page |
|---|---|---|
| 5. DETERMINATION OF CONTINUOUS SERVICE ... | 5.1 | 46 |
| 6. REEMPLOYMENT AFTER ATTAINMENT OF PENSION ELIGIBILITY | | |
| Applicability of Other Sections ............. | 6.1 | 47 |
| Effect on Pension ........................ | 6.2 | 48 |
| Continuous Service of Reemployed Participant ..... | 6.3 | 48 |
| Special Pension Eligibility After Reemployment ..... | 6.5 | 49 |
| Special Rules as to Amount of Pension ......... | 6.7 | 50 |
| 7. APPEALS PROCEDURE | | |
| Disputes as to Eligibility or Amount ......... | 7.1 | 50 |
| Disputes as to Permanent Incapacity ......... | 7.2 | 51 |
| 8. TRUST ................................ | 8.1 | 51 |
| 9. REPORTS ............................. | 9.1 | 52 |
| 10. APPLICABILITY OF AGREEMENT TO PARTICIPANTS UNDER PRIOR AGREEMENT .... | 10.1 | 52 |
| 11. GENERAL PROVISIONS | | |
| Administration ........................ | 11.1 | 52 |
| Continuation of Benefits ................. | 11.1 | 52 |
| Nonalienation ......................... | 11.2 | 53 |
| Deduction for Insurance Premiums and Overpayments | 11.4 | 53 |
| Rights of Participants ................... | 11.5 | 53 |
| Distribution of Agreement ................ | 11.6 | 54 |
| Tax and Corporate Approvals .............. | 11.7 | 54 |
| Actuarial Value Percentages .............. | 11.8 | 54 |
| Term of Agreement ..................... | 11.9 | 55 |
| EXHIBIT A—BARGAINING UNITS COVERED............ | | 56 |
| EXHIBIT B—SURVIVOR OPTION PERCENTAGES ............ | | 57 |

# Pension Agreement

Agreement dated August 1, 1971 (effective July 31, 1972) between Youngstown Sheet and Tube Company (hereinafter the "Company") and United Steelworkers of America (hereinafter the "Union").

## 1. INTRODUCTION

**1.1**

### Definitions

Wherever used herein

(a) "Basic Agreement" means a labor agreement between the Company and the Union covering rates of pay, hours of work, and other basic terms and conditions of employment, which is in effect during the term of this Pension Agreement and is applicable to a bargaining unit listed in Exhibit A, attached hereto and made a part hereof, and where used with respect to a participant means the Basic Agreement applicable to him;

(b) "Employee" means any employee who, from time to time during the period in which this Agreement is effective, is covered by a Basic Agreement;

(c) "participant" means any Employee who, from time to time during the period in which this Agreement is effective, is accruing continuous service; where so indicated in the context, "participant" also refers to a person who is no longer accruing continuous service but who had attained pension eligibility under this Agreement at the date he ceased to accrue continuous service, including a person who is retired and is receiving or is entitled to receive pension benefits under this Agreement;

(d) "continuous service" means continuous service determined pursuant to Section 5;

(e) "Public Pension" means a benefit in the nature of an annuity, pension or payment of similar kind

(i) under Title II of the Social Security Act or its successor (hereinafter "Social Security Act"), or

(ii) under the Railroad Retirement Act or its successor, or under a provision of law hereafter established, if as to such benefit the Company has contributed directly or indirectly by tax or otherwise with respect to employment of the participant by the Company;

(f) "eligible for Public Pension" is used with respect to a participant when he is eligible to receive, or would upon application be eligible

ADMIN REC-0135

SECTION 1—INTRODUCTION

to receive, a Public Pension, or would be so eligible except for a reduction, offset or suspension imposed by law; provided that with respect to a Public Pension which is reduced by reason of its commencement prior to the age at which it is first provided under law without such a reduction, the participant shall be considered not eligible for a Public Pension until he has attained such age;

(g) "average monthly earnings" means the average monthly earnings of the participant paid by the Company for services rendered during the last 120 full calendar months of continuous service prior to retirement, subject to adjustment as provided in paragraph 3.3(b).

### 1.2 When Retirement Occurs

For purposes of this Agreement, retirement shall be considered to occur:

(a) in the case of a participant who applies for pension prior to a break in continuous service, on the date he specifies as the date he wishes to retire, which shall be a date on or after the latest of

  (1) the date of his request for retirement,

  (2) the date of his attainment of eligibility for a pension under this Agreement, or

  (3) the last day for which he earned wages from the Company, but not later than the last day of his continuous service;

(b) in the case of a participant who applies for pension after a break in continuous service, on the last day of his continuous service, provided that on such last day he was eligible for an immediate or deferred pension under this Agreement.

### 1.3 Provision of Benefits

Subject to the corporate action required to provide the benefits and to the Company's obtaining and/or retaining approval by the Commissioner of Internal Revenue of the trust or trusts heretofore or hereafter established under the pension plan of Youngstown Sheet and Tube Company, as changed to provide the benefits set forth in this Agreement as exempt under the applicable provisions of the Internal Revenue Code or successors to them, the following benefits shall be provided by the Company or caused to be provided by the Company for the participants.

28

# 2. ELIGIBILITY FOR PENSION

### Normal Retirement

**2.1** Any participant who shall have had at least 15 years continuous service and shall have attained the age of 65 years shall be eligible to retire on or after July 31, 1972 and shall upon his retirement (hereinafter "normal retirement") be eligible for a pension.

### 30 Year Retirement

**2.2** Any participant who shall have had at least 30 years continuous service shall be eligible to retire on or after July 31, 1972 and shall upon his retirement (hereinafter "30 year retirement") be eligible for a pension.

### 60/15 Retirement

**2.3** Any participant who shall have had at least 15 but less than 30 years continuous service and shall have attained the age of 60 years shall be eligible to retire on or after July 31, 1972 and shall upon his retirement (hereinafter "60/15 retirement") be eligible for a pension.

### Permanent Incapacity Retirement

**2.4** Any participant who shall have had at least 15 years continuous service and who shall have become permanently incapacitated shall be eligible to retire on or after July 31, 1972 and shall upon his retirement (hereinafter "permanent incapacity retirement") be eligible for a pension. A participant shall be considered to be permanently incapacitated (as "permanently incapacitated" is used herein) only (a) if he has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in any employment of the type covered by the Basic Agreement, and (b) after such total disability shall have continued for a period of six consecutive months and, in the opinion of a qualified physician, it will be permanent and continuous during the remainder of his life A pension shall not be granted under the provisions of this paragraph of this Agreement for the purpose of providing a participant relief from unemployment or on account of any condition other than permanent incapacity for medical reasons. Incapacity contracted, suffered or incurred while the participant was engaged in, or resulted from his having engaged in, a criminal enterprise, or which

29

ADMIN REC-0136

SECTION 2—ELIGIBILITY FOR PENSION

shall have been directly incurred in and shall be due solely to the future military service of such employee which prevents him from returning to employment with the Company and for which he receives a military pension, shall not entitle a participant to a pension under this paragraph. Such pension shall be discontinued if such participant shall cease to be permanently incapacitated prior to age 65. The Company may at any reasonable time prior to the date on which such pensioner shall reach the age of 65 years verify the continued incapacity of such pensioner by examination of him by a physician designated by the Company.

2.5 70/80 Retirement

Any participant who shall have had at least 15 years continuous service and (i) shall have attained the age of 55 years and whose combined age and years of continuous service shall equal 70 or more, or (ii) whose combined age and years of continuous service shall equal 80 or more, and

(a) whose continuous service is broken by reason of a permanent shutdown of a plant, department or subdivision thereof or by reason of a layoff or physical disability, or

(b) whose continuous service is not broken and who is absent from work by reason of

(1) a layoff resulting from his election to be placed on layoff status pursuant to the provisions of the Basic Agreement applicable in the event of a permanent shutdown, or

(2) a physical disability or a layoff other than a layoff resulting from an election referred to above and whose return to active employment is declared unlikely by his Company, or

(c) whose continuous service is not broken and who, while on layoff status by reason of his election to be placed on such status pursuant to the provisions of the Basic Agreement applicable in the event of a permanent shutdown, accepts a job with the Company and, prior to the expiration of 90 consecutive calendar days from the first day worked on such job, elects to retire, or

(d) who considers that it would be in his interest to retire and his Company considers that such retirement would likewise be in its interest and it approves an application for retirement under mutually satisfactory conditions,

30

SECTION 2—ELIGIBILITY FOR PENSIO

shall be eligible to retire on or after July 31, 1972 and shall upon h retirement (hereinafter "70/80 retirement") be eligible for a pension

2.6 Deferred Vested Pension

Any participant not eligible to receive a pension under any other pro vision of this Section 2 whose continuous service is broken on or at the July 31, 1972 for any reason other than discharge and who, at th time of such break in continuous service, shall have had at least 1 years continuous service and shall have attained the age of 40 year subject to the provisions relating to application set forth in paragraph 3.13(c). At the time of such break in continuous service, the Company shall furnish such a participant an appropriate written notice of the eligibility requirements and his relevant employment data.

2.7 Notwithstanding anything to the contrary contained in this Agreement, no pension (including any special payment) shall be payable for any month with respect to which the participant claims and is eligible for sickness or accident benefits provided under a Company program or similar benefits provided under law.

3. AMOUNT OF PENSION

3.1 Types of Pension Payments

A pension granted pursuant to Section 2 shall consist of

(a) a special initial pension amount (hereinafter "special payment"), except in the case of any participant eligible for pension for permanent incapacity retirement or a deferred vested pension, as provided in paragraph 6.7), and

(b) a regular pension amount (hereinafter "regular pension"), payable in monthly installments except as otherwise provided in paragraph 3.15,

provided in accordance with the provisions of this Section 3.

3.2 Special Payment

(a) The special payment shall be an amount equivalent to 13 weeks of vacation pay

31

ADMIN REC-0137

## SECTION 3—AMOUNT OF PENSION

(1) in the case of a participant entitled to a vacation in the year of retirement, at the rate of pay for such vacation, reduced by the amount of vacation pay received for the year of retirement;

(2) in the case of a participant who would have been entitled to a vacation in the year of retirement except for such retirement, at the rate which would have been applicable if he had taken a vacation which terminated on the date of retirement;

(3) in the case of a participant not in any event entitled to a vacation in the year of retirement, at the rate of pay applicable to the last vacation to which he was entitled, reduced by the amount of vacation pay received for the year for which he was last entitled to a vacation.

(b) The special payment shall be payable for the first three calendar months following the month in which retirement occurs if application for pension is made not later than the close of the first month of such three month period; otherwise, it shall be payable for the first three full calendar months commencing with the first day of any subsequent calendar month in which application for pension is made. Such special payment shall be made in a lump sum within the first full calendar month following the month in which retirement occurs, or within the month following the month in which application for pension is made, whichever is later.

(c) With respect to any participant referred to in paragraph 3.3(b)(2), if any such participant makes application for pension in a year in which he is not in any event entitled to vacation, for the purpose of determining the amount of his special payment the vacation pay to which he would have been entitled had he not been on leave of absence shall be used for determination of the rate to be used in calculating the special payment and the amount deductible therefrom for vacation.

(d) As used in this Agreement, the words "vacation" and "vacation pay" mean the vacation and vacation pay provided under the vacation section of the Basic Agreement.

### 3.3 Regular Pensions—Normal, 30 Year and 70/80

(a) The amount of any regular pension for normal, 30 year or 70/80 retirement shall be (subject to the provisions of paragraph

32

## SECTION 3—AMOUNT OF PENSION

3.7) be determined for each month in accordance with (1) or (2) below, whichever, after being reduced by the deductions applicable to each as provided for under paragraphs 3.9, 3.10, 3.11 and 3.12, is higher:

(1) a monthly amount (hereinafter "percent pension") equal to the participant's average monthly earnings multiplied by:

(i) for a participant with more than 30 years of continuous service,

35% plus a percent determined by multiplying 1.2% by the number of years (and fractions thereof calculated to the nearest month) of his continuous service in excess of 30 years; and

(ii) for a participant with 30 or less years of continuous service,

1.1% multiplied by the number of years (and fractions thereof calculated to the nearest month) of his continuous service; or

(2) a monthly amount (hereinafter "minimum pension") equal to:

(i) for a participant with more than 30 years of continuous service,

$255 plus an amount determined by multiplying $10 by the number of years (and fractions thereof calculated to the nearest month) of his continuous service in excess of 30 years, and

(ii) for a participant with 30 or less years of continuous service,

$120 plus an amount determined by multiplying $9 by the number of years (and fractions thereof calculated to the nearest month) of his continuous service in excess of 15 years.

(b) In the computation of a percent pension if, during the one hundred and twenty calendar months prior to retirement, a participant shall have been absent from work without pay because of disability or layoff, there shall be deducted from the total

33

ADMIN REC-0138

### SECTION 3—AMOUNT OF PENSION

number of months which shall be used in so computing his average monthly earnings the greater of the aggregate of the full calendar months:

(i) in excess of three in each separate period of such absence, or

(ii) in excess of twelve:

provided, however, that, in the case of permanent incapacity retirement, before making the foregoing deduction, there shall be deducted each full calendar month that the participant shall have been absent without pay because of total disability during the last six calendar months of such one hundred and twenty calendar month period; months deducted under this proviso shall not be counted as months of absence under (i) and (ii) above;

(2) shall have served as a member of the Grievance Committee, Safety Committee, Incentive Committee, or Job Classification Committee (not to exceed the number specified in the Basic Agreement at any time at any plant) or as a President, Vice President, Recording Secretary, Financial Secretary and/or Treasurer of a local of the Union, or shall have been absent from work because of leave of absence granted upon the request of the Union to any participant who shall be appointed or elected to any other office in the Union at the plant or works at which he shall then have been employed, and for that reason shall have been absent from work in accordance with the terms of the Basic Agreement during that period, his average monthly earnings for each month in which he shall have thus served shall, for the purposes of computing his pension only, be adjusted so as to be fairly representative of his normal earnings had he not been so absent.

### Regular Pension—60/15

**3.4** The amount of any regular pension for 60/15 retirement shall be either of the following as the participant shall elect in his application for pension:

(a) a deferred regular pension, commencing after attainment of age 65, computed under the provisions of paragraph 3.3; or

### SECTION 3—AMOUNT OF PENSION

(b) an immediate regular pension, equal to the deferred regular pension to which he would have been eligible under (a) above had he so elected, reduced to its equivalent actuarial value in accordance with paragraph 11.8.

### Regular Pension—Permanent Incapacity

**3.5** The amount of any regular pension for permanent incapacity retirement shall (subject to the provisions of paragraph 3.7) be determined for each month as follows:

(a) Before the participant becomes eligible for Public Pension, such amount shall be the greater of

(1) $150 per month, subject to all deductions provided for under paragraphs 3.10, 3.11 and 3.12, or

(2) an amount computed under the provisions of paragraph 3.3;

(b) After the participant becomes eligible for Public Pension such amount shall be the amount computed under the provisions of paragraph 3.3.

### Regular Pension—Deferred Vested

**3.6** The amount of any deferred vested pension shall be either of the following as the participant shall elect in his application for pension:

(a) a regular pension, commencing after attainment of age 65, computed under the provisions of paragraph 3.3; or

(b) a regular pension, commencing prior to attainment of age 65 but after attainment of age 60, in accordance with the provisions of paragraph 3.14 (b) (2), equal to the regular pension to which he would have been eligible under (a) above had he so elected, reduced to its equivalent actuarial value in accordance with paragraph 11.8.

### Increased Regular Pension—Permanent Incapacity, 70/80

**3.7** In the determination of the amount of any regular pension for permanent incapacity or 70/80 retirement, the monthly pension amounts otherwise applicable in making such determination shall, prior to any reductions pursuant to paragraphs 3.10, 3.11 and 3.12, be increased by $105; provided, however, that such increase shall not be applicable with respect to such a regular pension payable for any month for which the participant is eligible for Public Pension.

ADMIN REC-0139

3.8 *Regular Pension—Part-time Participants*

Notwithstanding anything to the contrary contained in the foregoing provisions of this Section 3, the amount of the minimum pension otherwise applicable shall, in the case of any participant the Company finds to be a part-time participant, be reduced to an amount equitably related to the hours worked by him in comparison to hours worked by other participants but not less than the amount which would have been payable if he had retired under the Pension Agreement in effect immediately prior to July 31, 1966. The Company shall not find a participant to be a part-time participant unless for the mutual convenience of the participant and the Company he was, in the 120 months preceding his retirement, regularly scheduled to work fewer hours than the straight-time schedule of full-time participants.

3.9 *Deduction for Public Pension*

(a) Deductions from any regular pension for Public Pension shall be made in accordance with the following provisions:

(b) In the event that for any month a participant is eligible for Public Pension not related to the Social Security Act, there shall be a deduction for such Public Pension from any percent or minimum pension otherwise payable for such month. The amount of such deduction shall be the amount of Public Pension paid or payable to the participant, or that would upon application become payable to him for such month, without regard to any offset, suspension or reduction imposed by law (including any reduction by reason of commencement of such Public Pension prior to the age at which it is first provided under law without such a reduction); provided such deduction shall be limited to the amount, to the extent reasonably determinable, of such Public Pension attributable to employment by the Company:

(c) After a deduction for Public Pension first becomes applicable, it shall not be changed to reflect any increase of such Public Pension resulting from

(1) amendment of the law under which such Public Pension is provided, if the effective date of such increase occurs after

the first month with respect to which a deduction for such Public Pension became applicable, or

(2) subsequent employment by other than the Company.

3.10 *Deduction for Other Pension*

If any participant entitled to pension benefits pursuant to this Agreement is or shall become, or upon application would become, entitled to any other pension or payment in the nature of a pension (other than a payment covered by paragraph 3.12, a benefit in the nature of an annuity, pension or payment of similar kind by reason of any law, a payment made pursuant to this Agreement) from any source or fund to which the Company shall have directly or indirectly contributed (any such other pension or payment hereinafter "Other Pension"), then the amount of the regular pension otherwise payable to such participant for any period shall be reduced by the amount of any such Other Pension paid or payable to him or that would upon application become payable to him for the corresponding period; provided, however, that if such participant shall have contributed to such source or fund, then the amount by which the regular pension would otherwise be reduced in accordance with the foregoing provisions of this paragraph 3.10 shall be decreased by the amount of that part of such Other Pension which shall be attributable to the contributions which such participant shall have made to such source or fund.

3.11 *Deduction for Severance Allowance*

(a) If any participant is or shall become entitled to or shall be paid any discharge, liquidation or dismissal or severance allowance or payment of similar kind (hereinafter "severance allowance") by reason of any plan of the Company, or in respect of which any of them shall have directly or indirectly contributed, or by reason of any law, then the total amount of such severance allowance paid or payable to him may, in the discretion of the Company, be deducted from the amount of any regular pension otherwise payable to such participant under this Agreement upon retirement; provided, however, that (i) such severance allowance shall not be deducted from or charged against any deferred vested pension, and (ii) if such participant shall have contributed to the source or fund out of which such severance allowance shall be paid or

ADMIN REC-0140

become payable, then the amount which may, in the discretion of the Company, be deducted from or charged against the amount of any such pension in accordance with the foregoing provisions of this paragraph 3.11 shall be decreased by the amount of that part of such severance allowance which shall be attributable to the contributions which such participant shall have made to such source or fund.

(b) If any participant becomes entitled under the Basic Agreement to severance allowance which may be deducted from regular pension under (a), he may waive payment of the severance allowance and, for the purposes of the Basic Agreement, be considered to have received it. Such waiver must be in writing on a form provided by the Company. If the participant waives such severance allowance the total amount of regular pension paid to or on behalf of him and his co-pensioner (if any) shall not be less than the amount of such severance allowance.

### 3.12 Deduction for Disability Payments

Any amount paid to or on behalf of any participant on account of injury or occupational disease incurred in the course of his employment by the Company or any other employer causing disability in the nature of a permanent disability, whether pursuant to Workmen's Compensation, Occupational Disease or similar statutory law (except fixed statutory payments for the loss of, or 100% loss of use of, any bodily member or a benefit in the nature of an annuity, pension or payment of similar kind by reason of any law), shall be deducted from or charged against any regular pension otherwise payable under this Agreement; provided, however, that any such deduction or charge shall be adjusted to take into account expenses such as reasonable lawyers' fees and medical expenses incurred by the participant in processing claim for such payment, and that any payments received by the participant under such laws shall not be deducted from any regular pension for permanent incapacity retirement payable prior to age 65 or from the $105 increase in regular pension provided by paragraph 3.7. If any amount which is to be deducted from or charged against any regular pension pursuant to this paragraph is determined with respect to a period of time, such deduction or charge shall be made only with respect to a period of time. If any such amount is not determined with respect to a period of time, the Com-

38

pany shall apportion the amount to a period of time under procedures reasonably designed to result in deduction or charge comparable to that which would be made if the amount had been determined with respect to a period of time.

### 3.13 Pension Application

(a) Each application for a pension shall be in writing on a form provided by the Company. The Company may require any applicant for a pension to furnish to it such information as may reasonably be required.

(b) Except as provided in (c) below, a participant may make application for pension at any time prior or subsequent to his retirement.

(c) A participant may make application for a deferred vested pension not earlier than 90 days prior to the first day of the month for which the first installment of pension is payable as provided in paragraph 3.14(b), and no such pension shall be payable at any time unless application therefor is made on or prior to the participant's 70th birthday.

### 3.14 Commencement of Regular Pensions

The first installment of any regular pension payable to a participant, (i) if he is entitled to a special payment, shall be payable for the first full calendar month following the three months for which the special payment is made, or (ii) if he is not entitled to a special payment, shall be payable for the first full calendar month following the month in which retirement occurs or for the calendar month in which application for pension is made, whichever is later; provided, however, that notwithstanding the foregoing:

(a) the first installment of any deferred regular pension for 60/15 retirement shall be payable for the fourth calendar month following the month in which the participant attains age 65;

(b) the first installment of any deferred vested pension,
(1) commencing after attainment of age 65 as provided for under paragraph 3.6(a), shall be payable for the later of (i) the calendar month next following the participant's 65th birthday, or (ii) the calendar month in which application for such pension is made as provided in paragraph 3.13(c); or
(2) commencing prior to attainment of age 65 as provided for under paragraph 3.6(b), shall be payable for the later of (i)

39

SECTION 3—AMOUNT OF PENSION

the calendar month specified by the participant in his application for pension (provided such month is subsequent to the month in which he attains age 60), or (ii) the calendar month in which application for such pension is made as provided in paragraph 3.13(c).

### Termination of Regular Pensions

3.15 The last installment of any regular pension shall be payable for the month in which the death of the participant shall occur. The Company may adopt such procedures as it shall find convenient with respect to the payment of pensions; where any regular pension payable, after deductions, is less than six hundred dollars ($600.00) per year, it may pay such pensions quarterly; where such amount, after deductions, is less than one hundred fifty dollars ($150.00) per year, it may make a lump sum payment which shall be the equivalent actuarial value of the regular pension otherwise payable based on such tables and interest rates as may be adopted from time to time by the Company.

### Survivor Options

3.16 (a) Any participant may under the conditions set forth in (b) below, by written notice duly filed with the Company,

(1) elect to convert the net regular pension otherwise payable to him under this Agreement upon retirement, or upon attainment of age 65, whichever is later, into a reduced net regular pension, in accordance with Option A or Option B described below, having an actuarial value as of the date of his retirement or his 65th birthday, whichever be later, equal to the actuarial value at that date of such net regular pension otherwise payable, or

(2) revoke any such election previously made, in which event he shall be treated as if he had not made such election, or

(3) change any such election from one to the other of such options and/or change the person previously named as his co-pensioner.

OPTION A. A reduced net regular pension payable during his life, with the provision that after his death such reduced net amount shall continue during the life of and shall be paid to such person, to be known as his "co-pensioner," as he shall have nominated by written designation duly filed with the Company.

40

SECTION 3—AMOUNT OF PENSION

OPTION B. A reduced net regular pension payable during his life, with the provision that after his death one-half of such reduced net amount shall be continued during the life of and shall be paid to such person, to be known as his "co-pensioner," as he shall have nominated by written designation duly filed with the Company.

(b) Any participant may in accordance with the provisions of (a) above elect an option, revoke an option election or change an option election and/or co-pensioner

(1) without submission of any evidence of good health,

(i) with respect to a regular pension for 30 year, 60/15 or permanent incapacity retirement, provided any such action is taken prior to his retirement and prior to his 60th birthday, or

(ii) with respect to a regular pension for normal or 70/80 retirement or a deferred vested pension, provided any such action is taken prior to his 63rd birthday, whether before or after his retirement, or

(2) upon submission of satisfactory evidence of good health of himself and/or his co-pensioner, whichever may be requested by the Company,

(i) with respect to a regular pension for 30 year, 60/15 or permanent incapacity retirement, if any such action is taken prior to his retirement and after his 60th birthday, or

(ii) with respect to a regular pension for normal or 70/80 retirement or a deferred vested pension, if any such action is taken either before or after his retirement and after his 63rd birthday but prior to his 65th birthday, or prior to his retirement and after his 65th birthday, or

(3) in any case, prior to the later of retirement or attainment of age 65, with the consent of the Company.

(c) The first installment of reduced net regular pension that shall be payable to a participant who shall have elected one of the options specified above shall be payable for the month for which he is first entitled under paragraph 3.14 to receive a regular pension or the month following the month in which his 65th birthday occurs, whichever is later; and the last installment of such reduced net regular pension that shall be payable to the participant shall be payable for the month in which his death shall occur. The first

41

ADMIN REC-0142

SECTION 3—AMOUNT OF PENSION

(d) Any election or revocation of an option, or change of an option election and/or co-pensioner pursuant to this paragraph 3.16 shall be executed on a form prescribed for the purpose by the Company and shall be deemed to be duly filed when it shall have been received by the Company. Satisfactory proof of age of the named co-pensioner will be required prior to the payment of reduced net regular pension installments under an elected option.

(e) No consent shall be required of the person designated as co-pensioner in any election under Options A or B in order to revoke such election or to change the co-pensioner and/or the option elected.

(f) If any participant shall have elected an option under this paragraph 3.16 and shall die (i) prior to his retirement or (ii) after his retirement and prior to attaining the age of 65 years, such election shall cease to be of any effect, and the co-pensioner shall not be entitled to any payments by reason of the election of such option.

(g) If any participant shall have elected an option under this paragraph 3.16 and his co-pensioner shall die after such participant shall have retired and attained the age of 65 years, but prior to the death of such participant, such participant shall continue to receive reduced net regular pension installments in accordance with such option.

(h) If any participant shall have elected an option under this paragraph 3.16 and his co-pensioner shall die before such participant shall have retired or attained the age of 65 years, whichever is later, then the participant shall be treated the same as if he had not made such election.

(i) Notwithstanding anything to the contrary contained in this paragraph 3.16, if after the retirement of a participant, who shall have

monthly payment that shall be payable to his co-pensioner shall be payable for the month following the month in which such participant's death shall occur, but not for any month prior to the month for which the participant would have first been entitled to receive a reduced net regular pension, and the last monthly payment that shall be payable to such co-pensioner shall be payable for the month in which such co-pensioner shall die; provided, however, that any monthly installments payable to such participant and remaining unpaid at the time of his death may be paid to his co-pensioner, if then surviving.

(i) The tables of percentages which shall be used to calculate the reduced net regular pensions payable under options as specified in this paragraph 3.16 are attached as Exhibit B.

SECTION 3—AMOUNT OF PENSION

elected either Option A or B, the amount of regular pension which would have been payable to him under this Agreement had he not elected an option, is subject to any further deduction, change, offset or correction, then the amount payable under an elected option to such participant and/or his co-pensioner shall be adjusted by the Company to reflect any such further deduction, change, offset or correction.

## 4. SURVIVING SPOUSE'S BENEFIT

### Eligibility

4.1 With respect to any participant who dies on or after July 31, 1972, after attainment of age 55, and either

(a) at a time (i) when he is accruing continuous service and after he has completed at least 15 years continuous service, or (ii) before application for pension and after a break in continuous service which occurred on or after July 31, 1972, after attainment of age 50 and under conditions of eligibility for immediate pension, or

(b) after 30 year, 60/15, permanent incapacity, or 70/80 retirement and before attainment of age 65, if he retired on or after July 31, 1972 and after attainment of age 50,

his surviving spouse, if any, shall be eligible for a monthly benefit (hereinafter "surviving spouse's benefit"), as set forth below.

### Amount of Benefit

4.2 Unless the provisions of paragraph 4.3 result in a higher amount, the amount of any surviving spouse's benefit payable shall be $100 for any month before the month in which the surviving spouse reaches age 62 and $50 for any month thereafter.

4.3 Unless the provisions of paragraph 4.2 result in a higher amount, the amount of any surviving spouse's benefit payable shall be determined in accordance with the following:

(a) If eligibility for such a participant's benefit arises by reason of the death of a participant covered by paragraph 4.1(a), the monthly amount of the benefit, subject to the provisions of (d), (e) and (f) below, shall be equal to 50% of the amount of regular pension, calculated under the provisions of para-

ADMIN REC-0143

## SECTION 4—SURVIVING SPOUSE'S BENEFIT

graph 3.3 as though the participant had retired on the date of his death and, in the case of a participant who died prior to attainment of age 65, as though he had been age 65 on the date of his death.

(b) If eligibility for such a benefit arises by reason of the death of a participant covered by paragraph 4.1(b), the monthly amount of the benefit, subject to the provisions of (c), (d), (e) and (f) below, shall be equal to 50% of the amount of regular pension that was payable to the participant (disregarding any increase provided by paragraph 3.7 and before any reduction other than an applicable actuarial reduction).

(c) In the case of a participant who dies after 60/15 retirement and who had elected to defer the commencement of regular pension until after attainment of age 65, the regular pension payable to the participant shall, for the purposes of applying the provisions of (b) above, be deemed to be the amount of regular pension which would have been payable if, under the provisions of this Agreement, he had been permitted to and had elected to receive an immediate regular pension commencing with the first month for which the surviving spouse's benefit is payable.

(d) The 50% rate referred to in (a) and (b) above shall be reduced by deducting therefrom ½% multiplied by the number of years (and fraction thereof calculated to the nearest month) that the surviving spouse is under age 50 as of the first day of the first month for which a surviving spouse's benefit is payable to such surviving spouse.

(e) Commencing with the first surviving spouse's benefit payable after the surviving spouse attains age 62, the amount of the surviving spouse's benefit otherwise payable for any month shall be reduced by 50% of the amount of the widow's or widower's benefit to which the surviving spouse is, or upon application would be, entitled for such month under a law referred to in paragraph 1.1(g) (without regard to any offset, suspension or reduction imposed by such law, including a reduction by reason of commencement of the widow's or widower's benefit prior to the age at which it is first provided under law without such a reduction). If the surviving spouse is not eligible for such a widow's or widower's benefit for such month, the amount of the reduction shall be equal to 50% of the amount of the widow's or widower's benefit that could have become payable to the surviv-

44

## SECTION 4—SURVIVING SPOUSE'S BENEFIT

ing spouse for such month, based on the participant's wages, if the surviving spouse had been eligible and had applied for such a benefit. After the reduction for a widow's or widower's benefit first becomes applicable, it shall not be changed to reflect any increase in the amount of such law, if the effective date of the increase occurs after the first month as to which such a reduction becomes applicable.

(f) If the surviving spouse receives, or upon application would be entitled to receive, any payment derived from rights acquired by the participant, which would if received by the participant have been subject to deduction under paragraph 3.10 from any regular pension otherwise payable to the participant (except any such payment received by the surviving spouse by reason of an election by the participant to receive a reduced payment), the amount of such payment not attributable to the contributions of the participant shall be deducted from the surviving spouse's benefit otherwise determined under this paragraph 4.3.

4.4 If the law referred to in paragraph 4.3 first provides widow's or widower's benefits without reduction by reason of age at an age other than 62, "age 62" wherever used in this Section 4 shall be changed to the age at which such benefit is first provided without reduction by reason of age under such law as most recently amended.

4.5 Commencement and Termination of Benefit
The first installment of any surviving spouse's benefit shall be payable for the month following the month in which the participant shall die, and the last installment shall be payable for the month in which the surviving spouse shall die, provided, however, that a surviving spouse's benefit shall not be payable for any month for which a special payment was payable to the participant. No surviving spouse's benefit is payable for any month earlier than 12 months before the month in which the surviving spouse files an application for the benefit. In connection with the application, the Company may require the surviving spouse to grant any authorization necessary to receive relevant records from the agency administering the law referred to in paragraph 4.3(e).

4.6 Determination of Status as Surviving Spouse
A person shall be considered a surviving spouse for the purposes of this Section 4, only if, immediately after a participant's death, such

45

ADMIN REC 0144

person is a widow or widower of such participant within the provisions of the Social Security Act, except that where such Act requires reference to the law of the District of Columbia, the applicable law shall be that of the state of Ohio.

4.7 The Company shall make reasonable effort, by an appropriate method or methods, to inform the surviving spouse of an eligible participant of the existence of this benefit.

### 4.8 *Surviving Spouse of Part-time Participant*

In the case of a surviving spouse of a deceased part-time participant, notwithstanding the provisions of paragraph 4.2, the amount set forth in such paragraph 4.2 shall be reduced on the same basis as is provided in paragraph 3.8 for the reduction of the minimum pension applicable to such deceased part-time participant.

## 5. DETERMINATION OF CONTINUOUS SERVICE

5.1 The term "continuous service" as used in this Agreement means service prior to retirement calculated from the participant's last hiring date (this means in the case of a break in continuous service, continuous service shall be calculated from the date of reemployment following the last unremoved break in continuous service) in accordance with the following provisions; provided, however, that the last hiring date prior to the date of this Agreement shall be based on the practices in effect at the time the break occurred:

(a) There shall be no deduction for any time lost which does not constitute a break in continuous service, except that in determining length of continuous service for pension purposes that portion of any absence which continues beyond two years from commencement of absence due to a layoff or physical disability, shall not be creditable as continuous service; provided, however, that absence in excess of two years due to a compensable disability incurred during course of employment shall be creditable as continuous service, if the participant is returned to work within 30 days after final payment of statutory compensation for such disability.

(b) Continuous service shall be broken by:

---

(1) Resignation (quit)

(2) Discharge, provided that if the participant is rehired within 6 months the break in continuous service shall be removed.

(3) Absence exceeding period for which leave of absence has been granted.

(4) Termination (when termination occurs pursuant to the Basic Agreement) due to (i) permanent shutdown of a plant, department or subdivision thereof; or (ii) failure to report for work within five working days after written notice to report.

(5) Absence which continues for more than 2 years, except that (i) absence in excess of 2 years due to compensable disability incurred during course of employment shall not break continuous service, provided the participant is returned to work within 30 days after final payment of statutory compensation for such disability; and (ii) if a person absent on account of layoff or disability in excess of 2 years returns to work with the Company within the period during which he retains his accumulated continuous service in accordance with the seniority provisions of the Basic Agreement, the break in continuous service shall be removed;

provided, however, that continuous service shall not be considered to be broken by absence of any participant who subsequent to May 1, 1940, entered the military, naval or merchant marine service of the United States, and who has reemployment rights under the law and complies with requirements of law as to reemployment and is reemployed. Continuous service shall include service in the employment of any company whose stocks and properties shall have been heretofore acquired. Continuous service shall include service in the employ of any company whose stocks or properties may be acquired hereafter, only if and to the extent that credit for continuous service for the purpose of pension benefits shall be granted by the Company.

## 6. REEMPLOYMENT AFTER ATTAINMENT OF PENSION ELIGIBILITY

### 6.1 *Applicability of Other Sections*

Except as otherwise provided in this Section 6, the provisions of all other sections of this Agreement shall be applicable to any participant

ADMIN REC. 0145

SECTION 5—DETERMINATION OF CONTINUOUS SERVICE

who is reemployed after having been retired and receiving a pension or after having attained eligibility for a deferred pension under this or a prior Agreement between the parties.

6.2 **Effect on Pension**

Any participant who has been retired and receiving a pension under this or a prior Agreement between the parties shall upon reemployment have his pension discontinued.

6.3 **Continuous Service of Reemployed Participant**

Any participant who has been retired and receiving a pension under this or a prior Agreement between the parties and who shall be reemployed, shall be credited with his continuous service as at the date of his prior retirement plus his continuous service applicable to such reemployment for the purposes of calculating any subsequent pension benefits to which he may become entitled; provided, however, nothing provided in paragraph 5.1(b)(4), provided further, however, that in the case of a participant who after termination of continuous service as following a 70/80 retirement under this Agreement or a similar retirement under a prior agreement between the parties is eligible only for a deferred vested pension as provided in paragraph 6.5(b), continuous service accrued after such reemployment shall not be credited for the purpose of calculating the amount of such pension.

6.4 Any participant eligible for a deferred vested pension under the provisions of this Agreement or similar provisions of a prior agreement between the parties who shall be reemployed by the Company prior to his application for such deferred vested pension shall be credited with his continuous service applicable to such deferred vested pension plus his continuous service accruing after reemployment for the purposes of calculating any subsequent pension benefits to which he may become entitled; provided, however, that in the case of a participant who after termination of such reemployment is eligible only for the deferred vested pension to which he was eligible prior to reemployment as provided in paragraph 6.6, continuous service accrued after such reemployment shall not be credited for the purpose of calculating the amount of such pension.

48

SECTION 6—REEMPLOYMENT AFTER ATTAINMENT OF PENSION ELIGIBILITY

6.5 **Special Pension Eligibility after Reemployment**

Notwithstanding anything to the contrary contained in this Agreement, any participant who has been retired and receiving a pension pursuant to the provisions of this Agreement for 70/80 retirement or similar provisions of a prior agreement between the parties and is subsequently reemployed by the Company

(a) shall upon ceasing work after reemployment and prior to age 65 by reason of a permanent shutdown of a plant, department or subdivision thereof or by reason of a layoff or physical disability be eligible to retire on or after July 31, 1972 and shall upon his retirement (hereinafter "reinstated 70/80 retirement".) be eligible for a pension commencing with the later of the month following the month in which retirement occurs or the month in which application for pension is made; provided, however, that such participant shall not be eligible under the provisions of this paragraph 6.5(a) to retire during a period of absence from work due to a physical disability until such disability shall have continued for a period of six consecutive full calendar months, or

(b) whose continuous service is broken after reemployment and at the time of the break is not eligible for a pension under (a) of this paragraph 6.5 or under any provision of Section 2 shall thereupon be considered to be eligible for a deferred vested pension pursuant to the provisions relating to a deferred vested pension of the agreement which was applicable to him at the date of his last retirement prior to such reemployment and upon application for pension the date of his retirement shall be considered to be the date of such last retirement. At the time of such break in continuous service following reemployment, the Company shall furnish such a participant an appropriate written notice of the eligibility requirements and his relevant employment data.

6.6 Any participant reemployed by the Company after attainment of eligibility for a deferred vested pension under this or a prior Agreement between the parties whose continuous service is broken after such reemployment and who at the time of the break is not eligible for a pension under any provision of Section 2, notwithstanding anything to the contrary contained in this Agreement, shall be considered to be eligible for the deferred vested pension for which he was eligible prior to such reemployment and upon application for pension the date of

49

ADMIN REC-0146

his retirement shall be considered to be the date of retirement which would upon application for pension have been applicable to the deferred vested pension for which he was eligible prior to such reemployment.

### 6.7 Special Rules as to Amount of Pension

Special payment shall not be made in any case where a special payment was made to the participant for a prior retirement under this or any prior Agreement between the parties.

6.8 The amount of regular pension for reinstated 70/80 retirement shall be determined the same as a regular pension for 70/80 retirement.

6.9 For purposes only of paragraph 3.16, reference therein to a 70/80 retirement shall be deemed to include a reinstated 70/80 retirement.

## 7. APPEALS PROCEDURE

### 7.1 Disputes as to Eligibility or Amount

If any difference shall arise between the Company and any participant who shall be an applicant for a pension, or to whom a pension shall be payable, as to such participant's right to a pension or the amount of his pension and agreement cannot be reached between the Company and a representative of the International Union, such question shall be referred to Arbitration established under the Basic Agreement applicable to production and maintenance employees in the basic steel operations of the Company. The Arbitrator shall have authority only to decide the question pursuant to the provisions of this Agreement applicable to the question but he shall not have authority in any way to alter, add to or subtract from any of such provisions. The decision of the Arbitrator on any such question shall be binding on the Company, the Union and the participant. If any difference shall arise between the Company and any person who shall be or claims to be a co-pensioner or a surviving spouse, as to such person's right to a benefit under this Agreement or the amount of such benefit, such difference shall be resolved by the Company and a representative of the International Union. If such difference is not so resolved, it may, by agreement of the Company and the Union, be referred to the Arbitrator described above, who shall have authority as described

above with respect to such difference, and if it is so referred, the decision of the Arbitrator shall be binding on the Company, the Union and such person.

### 7.2 Disputes as to Permanent Incapacity

If any difference shall arise between the Company and any participant as to whether such participant is or continues permanently incapacitated within the meaning of paragraph 2.4, such difference shall be resolved as follows:

The participant shall be examined by a physician appointed for the purpose by the Company and by a physician appointed for the purpose by a duly authorized representative of the International Union. If they shall disagree concerning whether the participant is permanently incapacitated, that question shall be submitted to a third physician selected by such two physicians. The medical opinion of the third physician, after examination of the participant and consultation with the other two physicians, shall decide such question. The fees and expenses of the third physician shall be shared equally by the Company and the Union.

## 8. TRUST

8.1 For the purpose of supplying the benefits herein provided, the Company may establish or cause to be established a pension trust or trusts or may utilize any existing trust or trusts heretofore established by or on behalf of the Company. The Company is free to determine the manner and means of making provision for funding and paying the benefits set forth in this Agreement; provided, however, that the aggregate of the amount of monies, for the benefit of participants, that shall have been paid into any pension trust or trusts established in accordance with the provisions of the Pension Plan of Youngstown Sheet and Tube Company dated and effective as of March 1, 1950, as amended and as it shall be further amended in accordance with the provisions of this Agreement, for any year during the term of this Agreement and of the monies that were paid into such trust or trusts for previous years shall not be less than an amount which on a sound actuarial basis shall be estimated to be sufficient to pay the pensions which shall have been granted under such Pension Plan during such year and during such previous years.

ADMIN REC-0147

## 9. REPORTS

9.1 The Union shall be furnished annually a report regarding the operation of the benefits insofar as they affect participants. From time to time during the term of this Agreement, the Union shall be furnished such additional information as shall be reasonably required for the purpose of enabling it to be properly informed concerning the operation of the benefits insofar as they affect the participants.

## 10. APPLICABILITY OF AGREEMENT TO PARTICIPANTS UNDER PRIOR AGREEMENT

10.1 Notwithstanding anything to the contrary contained in this Agreement, any participant under the prior Agreement between the parties (effective July 31, 1966) who applied for a pension for retirement on or after July 31, 1971, and prior to July 31, 1972, under such prior Agreement (or any such participant who has not applied for a pension, but whose continuous service was broken during such period under conditions of eligibility for an immediate or a deferred vested pension pursuant to such prior Agreement) shall, commencing with the month of August 1972, or, if later, the month for which he would have been first entitled to receive a regular pension under such prior Agreement, be eligible for a regular pension computed under the provisions of Section 3 of this Agreement in lieu of any pension under such prior Agreement, and the surviving spouse of any participant under the prior Agreement (effective July 31, 1969) who was accruing continuous service on July 31, 1971 shall, commencing with the month of August 1972, or if later, the month for which the surviving spouse would have been first entitled to receive a surviving spouse's benefit computed under such prior Agreement, be eligible for a surviving spouse's benefit computed under the provisions of Section 4 of this Agreement in lieu of any surviving spouse's benefit under such prior Agreement.

## 11. GENERAL PROVISIONS

*Administration*

11.1 The Company, through its designated management representatives, shall be responsible for the administration of the benefits set forth in this Agreement.

52

*Continuation of Benefits*

11.2 Any benefit properly payable pursuant to this Agreement shall continue to be payable, notwithstanding the termination or expiration of this Agreement.

*Nonalienation*

11.3 No benefit payable under this Agreement shall be subject in any way to alienation, sale, transfer, assignment, pledge, attachment, garnishment, execution, or encumbrance of any kind, and any attempt to accomplish the same shall be void.

11.4 If the Company shall find that such an attempt has been made with respect to any benefit payment due or to become due to any person (participant, co-pensioner or surviving spouse), the Company in its sole discretion may terminate the interest of such person in such payment, and in such case shall apply the amount of such payment to or for the benefit of such person, his spouse, children, or other relatives or dependents, as the Company may determine, and any such application shall be a complete discharge of all liability with respect to such payment.

*Deduction for Insurance Premiums and Overpayments*

11.5 Upon authorization by a participant, on a form approved by the Company, the amount of premium payable by him for hospitalization and physicians' services coverage upon retirement, as provided under the Insurance Agreement, or the amount of any overpayments made to the participant by the Company or its insurer in the course of paying any benefits provided by the Program of Insurance Benefits established by contract between the Company and the Union, shall be deducted from any pension payable under this Agreement.

*Rights of Participants*

No participant prior to his retirement under conditions of eligibility for pension benefits shall have any right or interest in or to any portion of any funds which may be paid into any pension trust or trusts heretofore or hereafter established for the purpose of paying pensions and no participant or co-pensioner shall have any right to pension benefits except to the extent provided in this Agreement. Employment rights shall not be affected by reason of this Agreement.

53

ADMIN REC-0148

SECTION 11—GENERAL PROVISIONS

### Distribution of Agreement

11.6 The Company will distribute this Agreement to participants who are actively at work, to participants not actively at work as they return to work, and to new participants; the Company will furnish each participant who retires, at the time of delivery of his first pension check, a notice to the effect that his pension is pursuant to this Agreement between the Company and the Union.

### Tax and Corporate Approvals

11.7 In the event of absence of or loss of approval of the Commissioner of Internal Revenue as described in this Agreement, or if all corporate approvals required to make this Agreement effective have not been made prior to July 31, 1972, then in either of such events and upon failure of the parties to reach mutually satisfactory alternate arrangements within thirty days thereafter, or such subsequent date to which they may agree, all arrangements and agreements between the parties with respect to pensions shall cease and the Union shall thereafter be free to strike with respect to matters relating to pensions only, notwithstanding the provisions of any other agreements between the parties.

### Actuarial Value Percentages

11.8 The following percentages shall be used to determine the amount of reduced regular pension payable pursuant to the provisions of paragraphs 3.4(b) and 3.6(b):

| Age at Start of Pension | Percentage |
|---|---|
| 60 | 65.42% |
| 61 | 70.84% |
| 62 | 76.91% |
| 63 | 83.70% |
| 64 | 91.35% |
| 65 | 100.00% |

The above percentages shall be adjusted for the participant's age to the nearest month.

54

SECTION 11—GENERAL PROVISIONS

### Term of Agreement

11.9 The Pension Agreement dated August 1, 1968, shall remain in effect through July 30, 1972. This Agreement shall become effective as of July 31, 1972, and shall remain in effect until December 31, 1974, and thereafter subject to the right of either party on 120 days written notice served on or after September 3, 1974, to terminate this Agreement.

YOUNGSTOWN SHEET AND TUBE COMPANY

Dated 5-26-72

Vice President - Industrial Relations

UNITED STEELWORKERS OF AMERICA

Dated 6-1-72

55

ADMIN REC-0149

# EXHIBIT A

Bargaining Units of Youngstown Sheet and Tube Company and Youngstown Metal Products Company Division

As to which the Pension Agreement Has Been Made Applicable.

Bargaining Units of Youngstown Sheet and Tube Company and Youngstown Metal Products Company Division Represented by the United Steelworkers of America

Bargaining Units of production and maintenance employees of the Company at its steel plants at Brier Hill (which includes Youngstown Metal Products Company Division), Struthers, and Campbell, Ohio, in the Youngstown District and at its steel plants at South Chicago, Illinois, and East Chicago, Indiana, in the Chicago District.

Bargaining Units of clerical employees of the Company at its Campbell (including Struthers) and Brier Hill plants in Ohio and at its plants at East Chicago, (Indiana Harbor) Indiana, and South Chicago, Illinois.

Bargaining Units of property protection employees of the Company at the Company's plants at Campbell, Brier Hill and Coalburg Lake property in Ohio, and at Indiana Harbor (East Chicago), Indiana, and at South Chicago, Illinois.

56

# EXHIBIT B

## Youngstown Sheet and Tube Company Pension Plan

### OPTION A

OPTIONAL PENSION PAYMENTS — SAME AMOUNT TO PENSIONER AND BENEFICIARY

Table of Percentages to be Applied Against Net Company Pension at Retirement at Age 65, Whichever is Later, to Determine Amount of Optional Pension Payments Payable to Pensioner and Beneficiary



57

ADMIN REC-0150

EXHIBIT B (Continued)

## OPTION B

## Youngstown Sheet and Tube Company Pension Plan

Table of Percentages to be Applied Against Net Company Pension at Retirement at or at Age 65, Whichever is Later, to Determine the Amount of Optional Pension Payments Payable to Pensioner and Beneficiary

**OPTIONAL PENSION PAYMENT— 50% OF OPTIONAL PAYMENT TO BENEFICIARY**

*(table of actuarial percentage values by age of beneficiary and age of retired employee)*

58

---

August 1, 1971

Mr. I. W. Abel, President
United Steelworkers of America
1500 Commonwealth Building
Pittsburgh, Pennsylvania 15222

Dear Mr. Abel:

The Company assures the Union that the trustee of the Company's pension plan trust from which benefits are provided pursuant to the pension agreement between the Company and United Steelworkers of America has always acted and will continue to act in accordance with commonly accepted standards of fiduciary conduct, including the "prudent man" rule. Accordingly, the Company believes that the trustee already adheres to the standards of fiduciary responsibility which may at some time be imposed on all pension trustees by federal legislation.

Very truly yours,

*[signature]*

Vice President – Industrial Relations

59

ADMIN REC-0151

# Salaried Non-Union Employees

# Revised Retirement Plan

As Revised Effective May 31, 1973

ADMIN REC-0152

# TABLE OF CONTENTS

|  |  | Section | Page |
|---|---|---|---|
| Part A. | DEFINITIONS | A-1.01-25 | 3-7 |
| Part B. | NON-CONTRIBUTORY PART | | |
| Article I | Non-Contributory Benefits | B-1.01 | 8 |
|  | General Eligibility | B-1.02 | 8 |
|  | Normal Retirement | B-1.03 | 8 |
|  | Special Payment | B-1.04 | 9 |
|  | Monthly Pension | | |
|  | Deductions—Pension | | |
|  | Payments | B-1.05 | 10 |
|  | Early Retirement | B-1.06 | 11 |
|  | 30 Year Retirement | B-1.07 | 13 |
|  | Disability Retirement | B-1.08 | 13 |
|  | Deferred Vested Retirement | B-1.09 | 14 |
|  | Supplemental Payment—Other Early | | |
|  | and Disability Retirements | B-1.10 | 15 |
|  | Time of Payment of Pension | B-1.11 | 15 |
|  | Part Time Employees | B-1.12 | 17 |
|  | Options | B-1.13 | 17 |
| Article II | General | | |
|  | Continuation of Employment | | |
|  | Beyond Normal | | |
|  | Retirement Date | B-2.01 | 20 |
|  | Re-employment after | | |
|  | Retirement | B-2.02 | 20 |
|  | Duplication | B-2.03 | 20 |
| Article III | Surviving Spouse's Benefit | | |
|  | Eligibility | B-3.01 | 21 |
|  | Minimum Amount of Benefit | B-3.02 | 21 |
|  | Amount of Benefit | B-3.03 | 21 |
|  | Age 65 | B-3.04 | 23 |
|  | Commencement and | | |
|  | Termination of Benefit | B-3.05 | 23 |
|  | Determination of Status as | | |
|  | Surviving Spouse | B-3.06 | 24 |
|  | Surviving Spouse | | |
|  | to be Informed | B-3.07 | 24 |
|  | Surviving Spouse of Part-time | | |
|  | Employee | B-3.08 | 24 |

ADMIN REC-0153

| | Section | Page |
|---|---|---|
| **Part C.** | **CONTRIBUTORY PART** | | |
| **Article I** | **Participation in Contributory Part of Plan** | | |
| | General Eligibility .......... | C-1.01 | 25 |
| | Terms of Eligibility .......... | C-1.02 | 25 |
| | Entry Date .......... | C-1.03 | 25 |
| | Election to Participate .......... | C-1.04 | 25 |
| | Subsequent Eligibility Only on General Reopening .......... | C-1.05 | 26 |
| **Article II** | **Eligibility for Contributory Benefits** | | 26 |
| | Normal Retirement Date .......... | C-2.01 | 26 |
| | Early Retirement Pension .......... | C-2.02 | 26 |
| | 30 Year Retirement .......... | C-2.03 | 26 |
| | Disability Retirement .......... | C-2.04 | 27 |
| | Vested Deferred Limited Pension Rights .......... | C-2.05 | 27 |
| | Minimum Special Pension .......... | C-2.06 | 28 |
| **Article III** | **Amount of Pensions** | | |
| | Pension Payable Upon Attainment of Normal Retirement Date .......... | C-3.01 | 28 |
| | Early Retirement Pension .......... | C-3.02 | 30 |
| | 30 Year Retirement Pension .......... | C-3.03 | 30 |
| | Disability Retirement Pension .......... | C-3.04 | 30 |
| | Vested Deferred Limited Pension .......... | C-3.05 | 31 |
| | Options .......... | C-3.06 | 31 |
| **Article IV** | **Payment of Pensions** | | |
| | Normal Retirement Pension .......... | C-4.01 | 31 |
| | Early and 30 Year Retirements .......... | C-4.02 | 32 |
| | Disability Retirement .......... | C-4.03 | 32 |
| | Vested Deferred Limited Pension .......... | C-4.04 | 32 |
| | Minimum Special Pension .......... | C-4.05 | 33 |
| | Pension Payment to Co-Pensioners .......... | C-4.06 | 33 |
| | Date of Payment .......... | C-4.07 | 33 |
| | Pension Payments Under Options .......... | C-4.08 | 33 |
| | Application Required .......... | C-4.09 | 33 |
| | | Section | Page |
| **Part C.** | **CONTRIBUTORY PART (Cont.)** | | |
| **Article V** | **Death Benefits** | | |
| | Ten-Year Certain Benefits .......... | C-5.01 | 34 |
| | Ten-Year Certain Equivalent .......... | C-5.02 | 34 |
| | Total Amount Certain if Minimum Special Pension is Payable .......... | C-5.03 | 34-35 |
| | Designation of Beneficiary .......... | C-5.03-4 | 34-35 |
| | Death of Beneficiary or Co-Pensioner Before Expiration of Term Certain .......... | C-5.05 | 35 |
| | Death of Contributory Participant Prior to Retirement .......... | C-5.06 | 35 |
| **Article VI** | **Contributions** | | |
| | Contributions by Contributory Participant .......... | C-6.01 | 36 |
| **Article VII** | **Withdrawal and Return of Contributions** | | |
| | Termination of Employment .......... | C-7.01 | 37 |
| | Discontinuance of Contributions .......... | C-7.02 | 37 |
| | Death of Contributory Participant Prior to Retirement .......... | C-7.03 | 38 |
| **Article VIII** | **General Continuation of Employment Beyond Normal Retirement Date .......... | C-8.01 | 38 |
| | Preservation of Contributory Participant Status .......... | C-8.02 | 39 |
| | Re-employment after Retirement .......... | C-8.03 | 39 |
| | Duplication .......... | C-8.04 | 40 |
| **Part D.** | **GENERAL PROVISIONS** | | |
| **Article I** | **Administration of the Plan** | | |
| | Pension Board .......... | D-1.01 | 40 |
| | Pension Board's Rules .......... | D-1.02 | 40 |
| | Pension Board's Determinations .......... | D-1.03 | 40 |
| | Filing Required Information .......... | D-1.04 | 40 |
| | Adjustment of Average Monthly Compensation .......... | D-1.05 | 40 |
| | Adjustment of Continuous Service .......... | D-1.06 | 41 |
| | Limitation of Adjustments .......... | D-1.07 | 41 |
| | Computation of Years of Continuous Service and | | |

ADMIN REC-0154

| | Section | Page |
|---|---|---|
| **Part D.  GENERAL PROVISIONS (Cont.)** | | |
| Lump Sum Payment of Monthly Pensions | D-1.08 | 41 |
| Notification of Pension Rights | D-1.09 | 42 |
| **Article II**  Financing and Source of Payment of Pension Benefits | | |
| Source of Payment of Benefits | D-2.01 | 42 |
| Employee Rights or Interest in Trust | D-2.02 | 43 |
| Forfeitures from Termination | D-2.03 | 43 |
| **Article III**  Termination, Amendment, Modification and | | |
| Rights of Board of Directors | D-3.01 | 44 |
| Termination of Plan | D-3.02 | 44 |
| Vested Rights | D-3.03 | 47 |
| Withdrawal from Trust by Board Action | D-3.04 | 47 |
| **Article IV**  Certain Rights and Limitations | | |
| Provision for 25 Highest Paid Employees | D-4.01 | 48 |
| Plan Not a Contract of Employment | D-4.02 | 49 |
| Benefits Not Subject to Transfer | D-4.03 | 49 |
| Pension Board May Direct Payment to Legal Representative | D-4.04 | 50 |
| **Article V**  Construction and Interpretation | | |
| Applicability of Part D | D-5.01 | 50 |
| Eligibility for Benefits | D-5.02 | 50 |
| Terms of Annuity Contract May Differ from Plan | D-5.03 | 51 |
| Laws of Ohio Regulate Plan | D-5.04 | 51 |
| Use of Masculine Pronoun | D-5.05 | 51 |
| Headings Not Part of Plan | D-5.06 | 51 |
| **Part E.  PRIOR PENSIONS** | | |
| Former Employee Rights | E-1.01 | 51 |
| No Reduction in Benefits | E-1.02 | 51 |
| Pension Increases to Former Employees | E-1.03 | 52 |
| Guarantee of Eligibility | E-1.04 | 53 |
| Internal Revenue Service Qualifications | E-1.05 | 53 |

# Foreword

Since 1943, the Company has maintained a formal program to provide retirement pensions for salaried non-union employees. The Revised Retirement Plan was adopted as of October 1, 1964 and was an amendment to, and a modification of, the prior program. The Revised Retirement Plan has been further amended several times and as hereinafter set forth constitutes the program in effect on or after May 31, 1973.

Any and all benefits which become payable to or on account of any employee who is covered under the program on or after May 31, 1973 are described in the Revised Retirement Plan, irrespective of the source of payment for such benefits. Although the Revised Retirement Plan modifies the retirement program as it existed prior to October 1, 1964 in several respects, it also preserves certain accrued rights of employees under such program including any of which have become vested as of September 30, 1964.

In addition to those provisions which have general application, the Revised Retirement Plan has two separate and distinct parts. One relates to non-contributory benefits and the other to contributory benefits.

All salaried non-union employees become eligible for coverage with respect to retirement benefits under the Non-Contributory Part of the Revised Retirement Plan. These benefits are paid for solely by the Company.

Retirement benefits under the Contributory Part of the Revised Retirement Plan are separate from and in addition to benefits under the Non-Contributory Part, except that, in those cases where minimum benefits under Section C-3.01 (b) of the Contributory Part are applicable, such minimum benefits are in

ADMIN REC-0155

lieu of all other monthly pension benefits under the Revised Retirement Plan. Retirement benefits under the Contributory Part are conditioned upon the employee's executing an election to participate in it and continuing or commencing to make contributions. The rate of the employee's contribution is to be the same as under the retirement program as it existed prior to October 1, 1964. This consists of approximately 5% of the employee's compensation in excess of $250 per month, payable monthly by payroll deduction. The Company also will make substantial contributions to the Contributory Part of the Revised Retirement Plan, which together with the employee's contributions shall be used to provide the contributory benefits.

# THE PLAN

## Part A

## Definitions

A-1.01  "**Plan**" shall mean the Revised Retirement Plan for Salaried, Non-Union Employees of the Company, as described herein or as hereafter amended.

A-1.02  "**Program**" shall mean the Company's former program to provide retirement pensions for salaried non-union employees as it existed prior to October 1, 1964.

A-1.03  "**Effective Date of the Plan**" shall mean May 31, 1973. The original Revised Retirement Plan became effective as of October 1, 1964 and was thereafter revised effective July 31, 1966, July 31, 1969, and December 31, 1972. Certain further amendments thereto were authorized to become effective May 31, 1973. These further amendments have been incorporated into the original Plan, as heretofore revised, and the revised and amended Plan is effective as of May 31, 1973.

A-1.04  "**Company**" shall mean Youngstown Sheet and Tube Company, and all its divisions, subsidiary companies, and associated companies heretofore covered by the Program and/or Plan (except Continental-Emsco Company Limited), and all divisions, subsidiary companies, and associated companies designated by the Board of Directors to be covered by the Plan after its effective date. "Subsidiary Company" shall mean any corporation at least 80% of whose capital stock of each class is owned, directly or indirectly, by the Company. "Associated Company" shall mean any corporation less than 80% of whose capital stock of each class is owned, directly or indirectly, by the Company.

A-1.05  "**Board of Directors**" shall mean the Board of Directors of Youngstown Sheet and Tube Company.

A-1.06  "**Trustee**" shall mean one or more trustees by whom funds of the Plan are held as provided in Article II of Part D.

ADMIN REC-0156

A-1.07 **"Pension Board"** shall mean the Pension Board as provided in Article I of Part D.

A-1.08 **"Employee"** shall mean any person receiving a salary who is not included in a collective bargaining unit and is employed on a regular basis either by the Company or as a qualified citizen-employee by a foreign subsidiary.

A **"qualified citizen-employee"** is a United States citizen employed by a foreign subsidiary of the Company who qualifies for inclusion in the coverage of the Plan under Section 406 of the Internal Revenue Code of 1954, as amended.

A-1.09 **"Contributory Participant"** shall mean any eligible Employee who has elected to participate in and is covered by the Contributory Part of the Plan.

A-1.10 **"Compensation"** shall mean the remuneration paid an Employee for services rendered to the Company including amounts of cash remuneration paid to an Employee in addition to his regular base salary, such as overtime pay, shift differentials and production and year-end cash bonuses. For the pension purposes under the Plan, an Employee's compensation shall be computed as it was computed for pension purposes under the Program. Notwithstanding anything herein to the contrary, Compensation, as defined herein, shall not include any amounts of cash remuneration paid to an Employee which are designated by the Company as cost of living allowance.

A-1.11 **"Continuous service"** shall mean service by an Employee in the employment of the Company prior to retirement. It includes the periods of service rendered by an Employee in connection with properties or businesses at any time owned by the Company prior to the acquisition of such properties or businesses by the Company. It shall be calculated from the Employee's last hiring date to the date of retirement. Continuous service shall be broken by quit, discharge, termination for any other reason, or by layoff or absence which continues beyond the period authorized by the Company.

The continuous service of an Employee who shall have been absent in military service for the United States of America or who shall have been absent on leave for other service to the United States of America or for military or other service to any subdivision thereof shall not be affected by his absence; provided, however, that if after October 1, 1964, such Employee shall voluntarily enlist or re-enlist in any service at the time when the United States of America is not actively engaged in military hostilities with another country, his continuous service shall, if permitted by law, be broken at the time of his enlistment or re-enlistment.

A-1.12 **"Contributory service"** shall mean any period of continuous service rendered by a Contributory Participant while making contributions, which have not been withdrawn, under either the Program or Plan, or both.

A-1.13 **"Accumulated contributions"** shall mean the sum of the contributions made by a person as a member under the Program or as a Contributory Participant under the Plan, plus the interest thereon. The rate or rates of interest paid on a Contributory Participant's contributions at the time of withdrawal or death will be determined from time to time by the Company.

A-1.14 The terms **"retired"** or **"retirement"** relate to a person, who, as of the last day of his continuous service, is eligible for a pension under the Plan, and retirement occurs:

(a) In the case of an Employee who applies for a pension prior to a break in continuous service, on the date he specifies as the date he wishes to retire, which shall be a date on or after the latest of:

(1) the date of his request for retirement,

(2) the date of his attainment of eligibility for pension under the Plan, or

(3) the last day for which he earns compensation from the Company,

but not later than the last day of his continuous service;

ADMIN REC-0157

(b) In the case of a person who applies for a pension after a break in continuous service, on the last day of his continuous service.

A-1.15 The "normal retirement date" for any person shall mean the last day of the calendar month in which the 65th anniversary of his birth occurs.

"Pension" shall mean, according to the context in which it is used in the Plan, the dollar amount of the retirement benefit (regardless of the source of payment) determined under the provisions of either Part B or C of the Plan. Thus, when the term "pension" is used under Part B it means only the dollar amount of the benefits determined and payable under that Part of the Plan, and when used under Part C it means only the dollar amount of the retirement benefits determined and payable under that Part of the Plan. A person who qualifies for a pension computed under Part C in addition to the pension computed under Part B, except that, in those cases where monthly minimum special pension benefits under Section C-3.01 (b) of the Contributory Part are applicable, such monthly minimum special pension benefits shall be in lieu of all other monthly pension benefits under the Plan.

A-1.16 "Pensioner" shall mean a person who is retired and is receiving or entitled to receive a pension pursuant to the Plan.

A-1.17 "Co-pensioner" shall mean a person designated to receive, receiving or entitled to receive benefits under the Plan pursuant to an option under Section B-1.13 and/or C-3.06.

A-1.18 "Beneficiary" shall mean a person or persons designated as a beneficiary or as successor beneficiaries, if any, to receive or who is entitled to receive a payment under any of the following Sections: B-2.01, C-5.01, C-5.02, C-5.03, C-7.03, C-8.01 (e), D-4.03 or D-4.04.

A-1.19 "Equivalent actuarial value" shall mean a benefit of equal value computed in accordance with actuarial tables and rates of interest adopted by the Pension Board.

6

A-1.20 "Equitable" shall mean The Equitable Life Assurance Society of the United States.

A-1.21 "Group Annuity Contract" shall mean AC 466 issued by Equitable as in effect on September 30, 1964, or as thereafter amended. It shall also include GA 9000 issued by the Prudential Insurance Company of America (covering persons who were employees of Emsco Manufacturing Company), which is referred to in AC 466, as in effect on September 30, 1964, or as thereafter amended.

A-1.22 "Deposit Administration Contract" shall mean AC 1852A issued by Equitable to the Company or as thereafter amended.

A-1.23 "The Non-Contributory Pension Trust" shall mean the trust established pursuant to a trust agreement between the Company and The Chase Manhattan Bank for the purpose of paying benefits under Part B of the Plan.

A-1.24 "The Contributory Pension Trust" shall mean the trust established pursuant to a trust agreement between the Company and The National City Bank of Cleveland for the purpose of paying benefits under Part C of the Plan.

A-1.25 "Public Pension" shall mean a benefit in the nature of an annuity, pension or payment of similar kind,
(i) under Title II of the Social Security Act or its successor (hereinafter "Social Security Act"), or
(ii) under the Railroad Retirement Act or its successor, or
(iii) under a provision of law hereafter established, if as to such benefit the Company has contributed directly or indirectly by tax or otherwise with respect to employment of the participant by the Company, or
(iv) under similar acts or provisions of law provided by nations other than the United States.

7

ADMIN REC-0158

# Part B
# Non-Contributory Part
## Article I
## Non-Contributory Benefits

**B-1.01** **General Eligibility.** Every Employee of the Company is eligible to participate in the Non-Contributory Part of the Plan in accordance with its terms, irrespective of whether he participates in the Contributory Part of the Plan.

**B-1.02** **Normal Retirement.** Any Employee who shall have had at least 15 years of continuous service and shall have attained the age of 65 years shall, upon his retirement, be entitled to a pension which shall consist of:

(a) A special initial pension amount (herein called "Special Payment") as provided in Section B-1.03 below, except in the case of (1) any Employee who shall have received a Special Payment with respect to prior retirement, or (2) any Employee whose Company group life insurance is more than $30,000; and

(b) A monthly pension amount as provided in Section B-1.04 below, payable for life in monthly installments, except that if the installments are less than certain amounts, payment may be made on a quarterly basis or in a lump sum as provided in Section D-1.08 (b);

all in accordance with the provisions of this Article I.

**B-1.03** **Special Payment.** The Special Payment shall be an amount equivalent to 13 weeks of vacation pay computed:

(a) In the case of an Employee entitled to a regular vacation in the year of retirement, at the rate of pay for such regular vacation (exclusive of cost of living allowance) reduced by the amount of regular vacation pay (exclusive of cost of living allowance) received for the year of retirement.

(b) In the case of an Employee who would have been entitled to a regular vacation in the year of retirement but did not take it, at the rate (exclusive of cost of living allowance) which would have been applicable if

he had taken a regular vacation which terminated on the date of retirement; or

(c) In the case of an Employee not in any event entitled to a regular vacation in the year of retirement, at the rate of pay (exclusive of cost of living allowance) applicable to the last regular vacation to which he was entitled, reduced by the amount of regular vacation pay (exclusive of cost of living allowance) received for the year for which he was last entitled to a regular vacation.

**B-1.04** **Monthly Pension.** The monthly installment of a pension under Section B-1.02 (b) ("Normal Retirement") shall be computed in accordance with (a) or (b) below, whichever is greater:

(a) A monthly amount (herein called "percent pension") equal to the average monthly compensation of the Employee during the last 120 full calendar months of continuous service prior to retirement, multiplied by:

(1) for an Employee with more than 30 years of continuous service, 33% plus a percent determined by multiplying 1.2% by the number of years (and fractions thereof calculated to the nearest month) of his continuous service in excess of 30 years, or

(2) for an Employee with 30 years or less of continuous service, 1.1% multiplied by the number of years (and fractions thereof calculated to the nearest month) of his continuous service,

but in either case subject to the deductions applicable under Section B-1.05; or

(b) A monthly amount (herein called "minimum regular pension") equal to:

(1) for an Employee with more than 30 years of continuous service, $255 plus an amount determined by multiplying $10 by the number of years (and fractions thereof calculated to the nearest month) of his continuous service in excess of 30 years, or

(2) for an Employee with 30 years or less of continuous service, $120 plus an amount determined

9

ADMIN REC-0159

by multiplying $9 by the number of years (and fractions thereof calculated to the nearest month) of his continuous service in excess of 15 years,

but in either case subject to the deductions applicable under Section B-1.05.

**B-1.05 Deductions — Pension Payments.**

(a) Deductions from any monthly pension for Public Pension shall be made in accordance with the following provisions:

(1) No deduction from any monthly pension shall be made for Public Pension related to the Social Security Act;

(2) In the event that for any month an Employee is eligible for Public Pension not related to the Social Security Act, or a similar act or provision of law provided by nations other than the United States, there shall be a deduction for such Public Pension from any percent pension or any minimum regular pension otherwise payable for such month. The amount of such deduction shall be the amount of Public Pension paid or payable to the Employee, or that would upon application become payable to him for such month, without regard to any offset, suspension or reduction imposed by law (including any reduction by reason of commencement of such Public Pension prior to the age at which it is first provided under law without such a reduction); provided such deduction shall be limited to the amount, to the extent reasonably determinable, of such Public Pension attributable to employment by the Company;

(3) After a deduction for Public Pension first becomes applicable, it shall not be changed to reflect any increase of such Public Pension resulting from

(i) amendment of the law under which such Public Pension is provided, if the effective date of such increase occurs after the first

month with respect to which a deduction for such Public Pension became applicable, or

(ii) subsequent employment by other than the Company.

(b) Any pension computed under any provisions of Part B payable to a pensioner or co-pensioner whose only benefits under Part C are provided under Section C-2.05 (a) shall be reduced by that portion of the Section C-2.05 (a) pension that is paid for by the Company through its contributions to the Group Annuity Contract or otherwise for any month in which the pensioner or co-pensioner receives, or upon timely application would be entitled to receive, such retirement annuity.

(c) Any pension computed under any provision of Part B shall also be reduced by the Pension Board by all or part of the amount of any severance allowance (except that severance allowance will not be deducted from a deferred vested pension) and/or Workmen's Compensation or Occupational Disease Act awards, under uniform rules adopted by the Pension Board. Any amount payable under a Supplemental Unemployment Benefit Plan, a Revised Savings and Vacation Plan or a Deferred Savings and Vacation Allowance Plan of the Company shall not be considered a severance allowance for the purposes of this subsection (c).

**B-1.06 Early Retirement**

(a) **Age 60 and 15 Years Continuous Service.** Any Employee who shall have at least 15 years of continuous service and shall have attained the age of 60 shall be eligible to retire at his sole election and shall, upon his retirement, be entitled to receive a pension which shall consist of a Special Payment, as provided for and subject to the exceptions stated in Section B-1.02 (a) and either:

(1) A deferred monthly pension, commencing after his normal retirement date, computed in the same

11

manner as under Section B-1.04 above ("Monthly Pension"), but based only on continuous service to the date of early retirement, and, with respect to Section B-1.04 (a), on average monthly compensation during the last 120 full calendar months of continuous service prior to early retirement; or

(2) An immediate monthly pension commencing at the time of early retirement in a reduced amount which is the equivalent actuarial value of the deferred pension under (1) above.

(b) **Other Early Retirement.** Any employee who shall have had at least 15 years of continuous service and (i) shall have attained the age of 55 years and whose combined age and years of continuous service shall equal 70 or more, or (ii) whose combined age and years of continuous service shall equal 80 or more, and

(1) Whose continuous service is terminated by reason of lack of work or by reason of a permanent shutdown of a plant, department or subdivision thereof, or by reason of a physical disability; or

(2) Whose continuous service is not terminated, and who is absent from work by reason of physical disability or by reason of lack of work, and whose return to active employment is declared unlikely by the Company; or

(3) Who considers it would be in his interest to retire, and in the judgment of the Company such retirement would likewise be in its interest, and the Company approves an application for retirement under mutually satisfactory conditions,

shall be eligible to retire and receive a pension consisting of the same types of payment, computed in the same manner, and subject to the same exceptions and deductions as provided in (a) and (b) of Section B-1.02 ("Normal Retirement").

Notwithstanding anything to the contrary contained in this Plan, no pension (including any Special Payment)

granted pursuant to this subsection (b) shall be payable for any month earlier than the month following the month in which the Employee was last eligible to receive sickness or accident benefits provided under a Company program or non-occupational disability benefits provided under law.

B-1.07  **30 Year Retirement.** Upon 90 days written notice to the Company any Employee who shall have had at least 30 years continuous service shall be eligible to retire and shall upon his retirement be eligible to receive a pension which shall consist of a Special Payment, as provided for and subject to the exceptions stated in Section B-1.02 (a) and a monthly pension payable as provided in Section B-1.04 ("Monthly Pension") as though at the date of his retirement he had attained age 65 and became eligible for Public Pension.

B-1.08  **Disability Retirement.** Any Employee who shall have at least 15 years of continuous service and who shall have become through some unavoidable cause permanently incapacitated shall be eligible to retire and shall, upon his retirement, be entitled to a monthly pension computed as follows:

(a) Prior to normal retirement date, the greater of:

(1) $150 per month, subject to the applicable deductions provided for under Section B-1.05 ("Deductions"); or

(2) An amount per month computed in the same manner as under Section B-1.04 above ("Monthly Pension"), but based only on continuous service to the date of retirement for disability, and, with respect to Section B-1.04 (a), on average monthly compensation during the last 120 full calendar months of continuous service prior to such retirement.

(b) After normal retirement date, such monthly pension shall be the amount computed in the same manner as under Section B-1.04 ("Monthly Pension"), but based only on continuous service to the date of retirement

ADMIN REC-0161

for disability, and, with respect to Section B-1.04 (a), on average monthly compensation during the last 120 full calendar months of continuous service prior to such retirement.

An Employee retiring under this Section B-1.08 shall not be entitled to a Special Payment.

An Employee shall be deemed to be permanently incapacitated (as the term "permanently incapacitated" is used herein) only (1) if he has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in any occupation or employment with the Company in the nature of his prior employment and (2) after such total disability shall have continued for a period of six consecutive months and, in the opinion of one or more physicians acceptable to the Company, it will be permanent and continuous during the remainder of his life. A pension shall not be granted under the provisions of this Section B-1.08 for the purpose of providing any Employee relief from unemployment or on account of any condition other than permanent incapacity for medical reasons. Incapacity contracted, suffered or incurred while the Employee was engaged in, or resulted from his engaging in, a criminal enterprise, or resulting from future service in the Armed Forces and which prevents him from returning to employment with the Company and for which he receives a military pension, shall not entitle an Employee to a pension under this Section B-1.08. Prior to the pensioner's normal retirement date, such pension for permanent incapacity shall continue only so long as he shall be permanently incapacitated. The Company may at any reasonable time or times prior to the date on which the pensioner shall reach 65 years of age verify his continued incapacity by examination of him by a physician designated by the Company.

**B-1.09   Deferred Vested Retirement.** Any Employee not eligible to receive a pension under any of the foregoing provisions of this Article I whose employment shall be terminated as a result of a permanent shutdown of a plant, department or subdivision thereof, or as a result of lack of work or

physical disability and who at the date of his termination shall have attained the age of 40 and at such time have at least 15 years of continuous service, shall be eligible to receive a deferred monthly pension payable as provided in Section B-1.11 (c), as the Employee shall elect in his application for pension, commencing after attainment of age 65 in an amount computed in the same manner as under B-1.04 ("Monthly Pension"), or commencing prior to attainment of age 65 but after attainment of age 60 in an amount computed in the same manner as under B-1.04 reduced to its equivalent actuarial value, provided, however, that he makes application therefor not earlier than 90 days prior to the first day of the month for which the first installment of pension is payable under B-1.11 (c) and not later than his seventieth birthday. No deferred vested pension shall be paid if application therefor has not been made within the period of time herein specified. An Employee retiring under this Section B-1.09 shall not be entitled to a Special Payment.

**B-1.10   Supplemental Payment — Other Early and Disability Retirements.**

The monthly pension amount for an Employee retiring under the provisions of Section B-1.06 (b) or B-1.08 shall, prior to any reduction pursuant to Section B-1.05 (b) or (c), be increased by $105; provided, however that such increase shall not be applicable with respect to such a pension payable for any month for which the pensioner is eligible for an unreduced Public Pension.

**B-1.11   Time of Payment of Pension.**

(a) A Special Payment, if payable, shall cover the three-calendar-month period next after the month of retirement and shall become payable in a lump sum in the first of such three calendar months, provided, however, that a written pension application (which includes application for both the Special Payment, if payable, and the monthly pension installment), together with such appropriate data as the Pension Board may require, is filed by the Employee before the end of the

ADMIN REC-0162

month preceding the month of retirement.

(b) If the Employee is entitled to a Special Payment, the first installment of the monthly pension shall become payable in the first calendar month following the three-calendar-month period for which the Special Payment is made, except that it shall become payable in the fourth calendar month following the month in which the normal retirement date occurs for an Employee who retires under Section B-1.06 (a) ("Early Retirement") and who elects to take a deferred pension under Section B-1.06 (a) (1).

(c) If the Employee is not entitled to a Special Payment, the first installment of the monthly pension shall, upon due application, become payable in the first month following the month in which retirement occurs, except that it shall become payable in the first month following the month in which the normal retirement date occurs for an Employee who retires under the provisions of Section B-1.06 (a) ("Early Retirement") and elects to take a deferred pension under Section B-1.06 (a) (1). Upon due application, the first installment of the monthly pension for an Employee granted a pension under B-1.09 ("Deferred Vested Retirement") commencing after attainment of age 65 shall be payable for the later of the month following the month in which the normal retirement date occurs or the calendar month in which application is made, and if commencing prior to attainment of age 65, shall be payable for the later of the calendar month specified by the Employee in his application for pension (provided such month is subsequent to the calendar month in which he attains age 60) or the calendar month in which such application is made. Due application for a pension payable under this Section B-1.11 (c) shall mean the filing of a written application for a pension, together with such appropriate data as the Pension Board may require, before the end of the calendar month preceding the month in which the first monthly installment would become payable.

(d) If written application together with the required data is not filed before the end of the calendar month required under the above provisions, then the calendar month or months in which the Special Payment, if any, and the first monthly installment, respectively, shall become payable shall be postponed by the same number of calendar months as the number of calendar months the application and data are late.

(e) Any monthly pension payable to a co-pensioner under Section B-1.13 ("Options") shall commence in the month following the month in which the pensioner's death occurs, or if he dies prior to the receipt of his first monthly pension installment, it shall commence in the month he would have received such payment if he had survived.

(f) The Special Payment and each installment of any monthly pension shall be paid on or before the last day of the month in which each becomes payable. The last installment of any pension shall be payable to the pensioner or a co-pensioner for the month in which the death of the pensioner or co-pensioner, respectively, occurs. If the last monthly pension installment has not been actually paid to the pensioner prior to his death, it shall be paid to his co-pensioner, if any, or to his widow or other dependents.

B-1.12 Part Time Employees. The amount of the monthly pension determined under Section B-1.04 (b) in the case of one who is determined by the Company to be a part time Employee, shall be reduced to an amount equitably related to the hours worked by him in comparison to hours worked by regular full time Employees.

B-1.13 Options.

(a) On or before the sixtieth day prior to the date of his retirement, any Employee may elect to convert his monthly pension in accordance with one of the options specified below, provided, however, a person entitled to a pension (1) under Section C-2.05 (a), may elect

**ADMIN REC-0163**

such an option in accordance with the Group Annuity Contract, or (2) under Section C-2.05 (b), may elect such an option on or before the sixtieth day prior to his normal retirement date. The last permissible date for any such election is referred to in the Plan as the "Option Election Date."

OPTION A. A reduced pension payable during his life, with the provision that after his death one-half of such reduced amount shall be continued during the life of and shall be paid to his co-pensioner.

OPTION B. A reduced pension payable during his life, with the provision that after his death such reduced amount shall continue during the life of and shall be paid to his co-pensioner.

OPTION C. Some other similar schedule of benefits approved by the Pension Board.

If an option under the provisions of this Section B-1.13 shall become effective, the monthly pension otherwise payable to the pensioner shall be converted into a monthly pension of an equivalent actuarial value as of optionee's normal retirement date.

(b) On or before the sixtieth day prior to his normal retirement date, referred to in the Plan as the "Option Effective Date", any optionee may elect by written notice duly filed with the representative designated by the Company:

(1) To revoke an election previously made under any of the options specified in Section B-1.13 (a), or

(2) To change his election from one to another of such options, and/or

(3) To change the co-pensioner previously designated as his co-pensioner.

No consent shall be required of the person designated as a co-pensioner in any election under the options specified in Section B-1.13 (a) in order to revoke such

election or to change the co-pensioner and/or the option elected.

(c) An optionee may change or revoke his option or his designated co-pensioner after his Option Effective Date with the written consent of the Pension Board. Evidence satisfactory to the Pension Board of the good health of the person requesting the change and of the survival and good health of the co-pensioner may be required before such consent is given. The consent of the co-pensioner shall not be required for any change or revocation.

(d) An election, change or revocation of an option pursuant to this Section B-1.13 shall be on a form or forms prescribed by the Company. An election of an option shall be signed by the Employee, and shall specify which option he thereby elects, and shall name his co-pensioner, if any. Such election shall be deemed to be made when received by the representative designated by the Company. Satisfactory proof of age of a named co-pensioner may be required prior to the payment of reduced pension installments under an election option.

(e) If any person who shall have elected an option under this Section B-1.13 shall die prior to his Option Effective Date, such election shall cease to be of any effect, and the co-pensioner, if any, shall not be entitled to any payments by reason of the election of such option. If any person who shall have elected an option under this Section B-1.13 shall die on or after his Option Effective Date but before his retirement, the option shall become effective as though he had died on his normal retirement date or the date used as his retirement date for determination of benefits pursuant to Section B-2.01 and Section C-8.01 (e), if applicable, whichever occurs later.

(f) If a co-pensioner shall die before the person who elected the option naming him shall have attained his Option Effective Date, then the person shall be treated

ADMIN REC-0164

as though his option election had not been made.

(g) If after the retirement of an Employee who shall have elected any option the amount of pension which would have been payable to him had he not so elected is subject to any further deduction, change, offset or correction, then the amount payable under the options shall be adjusted by the Pension Board to reflect any such further deduction, change, offset or correction.

(h) The provisions of this Section B-1.13 shall not be applicable to the Special Payment or pensions payable under Section B-1.09 ("Deferred Vested Retirement").

## Article II

## General

B-2.01 **Continuation of Employment Beyond Normal Retirement Date.** If an Employee continues in the employment of the Company after his normal retirement date at the Company's request and dies prior to retirement, his estate, beneficiary or co-pensioner shall be entitled to receive payment of the benefits they respectively would have been eligible to receive (including the Special Payment if it would have been otherwise payable to the Employee upon his retirement) under Part B, had such Employee retired on the day before the date of his death.

B-2.02 **Re-employment After Retirement.** If any pensioner is re-employed by the Company after his retirement, his pension may be suspended subject to restoration upon his subsequent retirement in accordance with uniform rules adopted by the Pension Board.

B-2.03 **Duplication.** No pensioner shall be entitled to receive a pension under any provision of the Non-Contributory Part of the Plan for any period if he shall receive a pension for the same period under any other provision of the Non-Contributory Part of the Plan.

20

## Article III

## Surviving Spouse's Benefit

B-3.01 **Eligibility.** With respect to any Employee who dies on or after the Effective Date of the Plan, after attainment of age 55, and either

(a) at a time (i) when he is accruing continuous service and after he has completed at least 15 years continuous service, or (ii) before application for pension and after a break in continuous service which occurred on or after the Effective Date of the Plan, after attainment of age 50 and under conditions of eligibility for retirement on immediate pension, or

(b) after retirement under the provisions of Section B-1.06, B-1.07 or B-1.08 of the Plan and before attainment of age 65, if he retired on or after the Effective Date of the Plan and after attainment of age 50,

his surviving spouse, if any, shall be eligible for a monthly benefit (hereinafter "surviving spouse's benefit"), as set forth below.

B-3.02 **Minimum Amount of Benefit.** Unless the provisions of Section B-3.03 result in a higher amount, the amount of any surviving spouse's benefit payable shall be $100 for any month before the month in which the surviving spouse reaches age 65 and $50 for any month thereafter.

B-3.03 **Amount of Benefit.** Unless the provisions of Section B-3.02 result in a higher amount, the amount of any surviving spouse's benefit payable shall be determined in accordance with the following:

(a) If eligibility for such a benefit arises by reason of the death of an Employee covered by Section B-3.01 (a), the monthly amount of the benefit, subject to the provisions of (d), (e) and (f) below, shall be equal to 50% of the amount of monthly pension, before any reduction, calculated under the provisions of Section B-1.04 as though the Employee had retired on the date of his

21

ADMIN REC-0165

death and, in the case of an Employee who died prior to attainment of age 65, as though he had been age 65 on the date of his death.

(b) If eligibility for such a benefit arises by reason of the death of an Employee covered by Section B-3.01 (b), the monthly amount of the benefit, subject to the provisions of (c), (d), (e) and (f) below, shall be equal to 50% of the amount of monthly pension that was payable to the Employee (disregarding any increase provided by Section B-1.10 and before any reduction other than an applicable actuarial reduction).

(c) In the case of an Employee who dies after retirement under the provisions of Section B-1.06 (a) and who had elected to defer the commencement of monthly pension until after attainment of age 65, the monthly pension payable to the Employee shall, for the purposes of applying the provisions of (b) above, be deemed to be the amount of monthly pension which would have been payable if, under the provisions of this Plan, he had been permitted to and had elected to receive an immediate monthly pension commencing with the first month for which the surviving spouse's benefit is payable.

(d) The 50% rate referred to in (a) and (b) above shall be reduced by deducting therefrom ½% multiplied by the number of years (and fraction thereof calculated to the nearest month) that the surviving spouse is under age 50 as of the first day of the first month for which a surviving spouse's benefit is payable to such surviving spouse.

(e) Commencing with the first surviving spouse's benefit payable after the surviving spouse attains age 65, the amount of the surviving spouse's benefit otherwise payable for any month shall be reduced by 50% of the amount of the widow's or widower's benefit to which the surviving spouse is, or upon application would be, entitled for such month under a law referred to in Section A-1.25 (without regard to any offset, sus-

pension or reduction imposed by any such law, excluding a reduction by reason of commencement of the widow's or widower's benefit prior to the age at which it is first provided under law without such a reduction). If the surviving spouse is not eligible for such a widow's or widower's benefit for such month, the amount of the reduction shall be equal to 50% of the amount of the widow's or widower's benefit that could have become payable to the surviving spouse for such month, based on the Employee's wages, if the surviving spouse had been eligible and had applied for such a benefit. After the reduction for a widow's or widower's benefit first becomes applicable, it shall not be changed to reflect any increase in the amount of widow's or widower's benefit resulting from amendment of any such law, if the effective date of the increase occurs after the first month as to which such a reduction becomes applicable.

(f) If the surviving spouse receives, or upon application would be entitled to receive, any payment derived from rights acquired by the Employee, which would if received by the Employee have been subject to deduction under Section B-1.05 (b) from any monthly pension otherwise payable to the Employee (except any such payment received by the surviving spouse by reason of an election by the Employee to receive a reduced payment), the amount of such payment not attributable to the contributions of the Employee shall be deducted from the surviving spouse's benefit otherwise determined under this Section B-3.03.

B-3.04   **Age 65.** If the law referred to in Section B-3.03 (e) first provides widow's or widower's benefits without reduction by reason of age at an age other than 65, "age 65" wherever used in this Article III shall be changed to the age at which such benefit is first provided without reduction by reason of age under such law as most recently amended.

B-3.05   **Commencement and Termination of Benefit.** The first installment of any surviving spouse's benefit shall be pay-

ADMIN REC-0166

able for the month following the month in which the Employee shall die, and the last installment shall be payable for the month in which the surviving spouse shall die, provided, however, that a surviving spouse's benefit shall not be payable for any month for which a Special Payment was payable to the Employee. No surviving spouse's benefit is payable for any month earlier than 12 months before the month in which the surviving spouse files an application for the benefit. In connection with the application, the Company may require the surviving spouse to grant any authorization necessary to receive relevant records from the agency administering the law referred to in Section B-3.03 (e).

B-3.06 **Determination of Status as Surviving Spouse.** A person shall be considered a surviving spouse for the purpose of this Article III, only if, immediately after an Employee's death, such person is a widow or widower of such Employee within the provisions of the Social Security Act, except that where such Act requires reference to the law of the District of Columbia, the applicable law shall be that of the State of Ohio.

B-3.07 **Surviving Spouse to be Informed.** The Company shall make reasonable effort, by an appropriate method or methods, to inform the surviving spouse of an eligible Employee of the existence of this benefit.

B-3.08 **Surviving Spouse of Part-time Employee.** In the case of a surviving spouse of a deceased part-time Employee, notwithstanding the provisions of Section B-3.02, the amounts set forth in such Section B-3.02 shall be reduced on the same basis as is provided in Section B-1.12 for the reduction of the minimum regular pension of a part-time Employee, whether or not the minimum regular pension was applicable to such deceased part-time Employee.

# Part C
# Contributory Part

## Article I
## Participation in Contributory
## Part of Plan

C-1.01 **General Eligibility.** Every Employee with one year of continuous service whose compensation is $250 per month or greater may participate in the Contributory Part of the Plan in accordance with the terms of the Plan by complying with the requirements in this Part, which includes a monthly contribution of approximately 5% of his compensation in excess of $250.

C-1.02 **Terms of Eligibility.** Each Employee who was a Contributory Participant on the Effective Date of the Plan shall continue as and be a participant in the Contributory Part of the Plan. Any other Employee shall be eligible to elect to become a participant in the Contributory Part of the Plan as of the first applicable entry date occurring on or after the date he has both (1) completed at least one year of service with the Company, and (2) attained a rate of monthly compensation in excess of $250, provided, however, his age at his birthday nearest to that entry date is not greater than 64.

C-1.03 **Entry Date.** The entry date referred to in Section C-1.02 above shall be April 1 and October 1 of each succeeding year.

C-1.04 **Election to Participate.** In order to become a participant in the Contributory Part of the Plan, an eligible Employee must exercise his election to do so, and must authorize the payroll deduction of his contributions under the Plan, by executing and filing with the Company an appropriate form, as provided by it for this purpose, within the

ADMIN REC-0167

applicable time indicated below:

(a) Any Employee becoming thus eligible after the Effective Date of the Plan shall file such form on or before the entry date on which he becomes eligible.

(b) However, any Employee on approved leave of absence when his election would otherwise have to be filed may file it within 30 days after he returns to the active service of the Company.

C-1.05 An Employee who elects to become a Contributory Participant as provided in this Section C-1.04 shall become a Contributory Participant as of the first day he becomes eligible therefor.

Subsequent Eligibility Only on General Reopening. Any Employee who elects not to become a Contributory Participant, or who fails to elect to become a Contributory Participant, as provided in Section C-1.04, may later become a Contributory Participant only in accordance with a general reopening of contributory participation as may, under rules uniformly applicable to all persons similarly situated, be set by the Company.

## Article II

## Eligibility for Contributory Benefits

C-2.01 Normal Retirement Date. A Contributory Participant shall become eligible for a pension under the Contributory Part upon attaining his normal retirement date.

C-2.02 Early Retirement. Upon retirement under any one of the types of early retirement provided in Section B-1.06, a Contributory Participant shall become eligible for a pension under the Contributory Part.

C-2.03 30 Year Retirement. Upon retirement under the 30 year retirement provided in Section B-1.07, a Contributory Participant shall become eligible for a pension under the Contributory Part.

C-2.04 Disability Retirement. Upon retirement because of a permanent disability as provided in Section B-1.08, a Contributory Participant shall become eligible for a pension under the Contributory Part.

C-2.05 Vested Deferred Limited Pension Rights.

(a) Under the Program a contributory member who had completed 10 or more years of continuous service acquired a right to receive a monthly pension under the Group Annuity Contract upon attaining his normal retirement date whether or not he continued as an Employee, or continued to contribute, or withdrew his own contributions. Any such person who completed 10 or more years of continuous service before October 1, 1964 shall continue to be eligible for monthly pension in accordance with such provisions of the Group Annuity Contract unless he becomes eligible for a larger pension under the other provisions of the Plan. His pension shall be computed under the provisions of the Group Annuity Contract and shall be based upon, either (1) the sum of his own unwithdrawn contributions and those made on his behalf by the Company prior to October 1, 1964, or (2) those made on his behalf by the Company prior to October 1, 1964 if he has withdrawn or withdraws his own contributions prior to retirement.

(b) Any person who ceases to be a Contributory Participant as a result of termination of employment or involuntary loss of eligibility after completing 10 or more years of contributory service, and who, after October 1, 1964, does not, prior to his normal retirement date, withdraw his own contributions, if any, made under the Program and those made under the Plan, shall be eligible for a monthly pension based upon his own and the Company's contributions upon his attainment of his normal retirement date in accordance with the terms of Section C-3.05 (b). If he withdraws any of his own contributions, he shall receive only such pension under this Part C as he may become eligible for under Section (a) above.

ADMIN REC-0168

(c) A person eligible for a pension under the provisions of this Section C-2.05 may name and change a beneficiary in the same manner as provided in Section C-5.05.

(d) A pension accruing under (a) or (b) of this Section C-2.05 shall be referred to in the Plan as a "Vested Deferred Limited Pension."

C-2.06 **Minimum Special Pension.** Upon retirement as provided in Section C-3.01 (b), a Qualified Contributory Participant shall become eligible for a pension under the Contributory Part.

## Article III

## Amount of Pensions

C-3.01 **Pension Payable Upon Attainment of Normal Retirement Date.**

(a) **Normal Pension.** The pension payable monthly under this Part C to a Contributory Participant upon his attaining his normal retirement date shall be equal to ½ of 1 per centum of the portion of his average monthly compensation in excess of $250 during the last prior 120 months of his contributory service, or during all 120 months of his contributory service if less than 120 months, his contributory service multiplied by the number of years of contributory service.

(b) **Minimum Special Pension.**

(1) A Contributory Participant who was contributing under the Program immediately prior to October 1, 1964 and who makes all the contributions he is eligible to make under the Plan prior to retirement is referred to in this Section C-3.01 (b) as a "Qualified Contributory Participant". A Qualified Contributory Participant shall, upon attaining age 55 and retiring at any time thereafter with the consent of the Company or under any provisions of the Plan, be entitled to receive a monthly minimum special pension under this Part of the Plan in accordance with this Section C-3.01 (b), and such pension shall be in lieu of all other monthly installments under the Plan.

(2) The monthly minimum special pension for a Qualified Contributory Participant with 15 or more years of continuous service shall be equal to a percentage (hereinafter referred to in this Section C-3.01 (b) as "Such Percentage") of his average monthly compensation in excess of $250. Such Percentage shall be the sum of (i) 26% plus (ii) 3/48ths of 1% multiplied by the number of months the Qualified Contributory Participant contributed under the Program and the Plan. "Average monthly compensation" for the purposes of this Section C-3.01 (b) (2) shall be the average monthly compensation for the Qualified Contributory Participant's contributory service.

(3) **Partial Participation.**

(i) If a Qualified Contributory Participant's number of years of continuous service is less than 15, Such Percentage shall be reduced to one which bears the same ratio to Such Percentage as the sum of the number of years of continuous service bears to 15.

(ii) For a Qualified Contributory Participant who first entered the Program after April 1, 1949, but did not enter when first eligible, and for a Qualified Contributory Participant whose contributions are suspended after his date of entry, Such Percentage shall be reduced (or further reduced if (i) above is also applicable) to one which bears the same ratio to Such Percentage as the sum of the number of months the Qualified Contributory Participant was included in the Program prior to April 1, 1949 plus the number of months he made contributions under the Program and the Plan after April 1, 1949 bears to the total

29

ADMIN REC-0169

number of months the Qualified Contributory Participant could have made contributions under the Program and the Plan.

(4) The monthly minimum special pension payable to a Qualified Contributory Participant who, having attained age 55, retires prior to his normal retirement date as provided in Section B-1.06 (a) or C-2.06, shall be a reduced amount which is the equivalent actuarial value of the amount he would have received at retirement on his normal retirement date.

(5) A Qualified Contributory Participant shall be entitled to a Special Payment as provided in Section B-1.03 if he otherwise qualifies therefor.

C-3.02 Early Retirement Pension. The amount of any monthly pension granted as provided in Section C-2.02 to a Contributory Participant who retires before his normal retirement date shall be either of the following, as the Contributory Participant may elect at the time of his retirement:

(a) A deferred pension, computed under Section C-3.01 (a) on the basis of his average monthly compensation and contributory service at the time of early retirement; or

(b) An immediate pension commencing at the time of early retirement in a reduced amount which has the equivalent actuarial value of the deferred pension under (a) above.

C-3.03 30 Year Retirement Pension. The amount of any pension granted as provided in Section C-2.03 to a Contributory Participant who retires before his normal retirement date shall be either of the pensions determined under Section C-3.02, as the Contributory Participant may elect at the time of his retirement.

C-3.04 Disability Retirement Pension. The amount of any monthly disability pension granted under this part of the Plan to a Contributory Participant shall be computed under the provisions of Section C-3.01 on the basis of the Contributory Participant's average monthly compensation and contributory service at the time of disability retirement. The amount of any compensation paid under a salary continuation program of the Company to a Contributory Participant who has been disabled and the period of time covered thereby shall be included in computing the benefits provided under this Section unless the pension would be greater without the inclusion of such amounts and period of time.

C-3.05 Vested Deferred Limited Pension.

(a) The amount of any Vested Deferred Limited Pension granted to a person entitled thereto under Section C-2.05 (a) shall be computed in accordance with the terms of the Group Annuity Contract.

(b) The amount of any Vested Deferred Limited Pension granted to a person entitled thereto under Section C-2.05 (b) shall be computed under Section C-3.01 (a) on the basis of his average monthly compensation and contributory service at the time of the termination of his contributions under the Contributory Part of the Plan.

C-3.06 Options. Any Contributory Participant may elect to convert his monthly pension under the Contributory Part of the Plan into optional benefits of equivalent actuarial value, in accordance with options and provisions the same as those set forth in Section B-1.13.

Article IV
Payment of Pensions

C-4.01 Normal Retirement Pension. The first installment of any pension shall be due and payable in the first calendar month following the month in which a Contributory Participant attains his normal retirement date, unless he continues in the employment of the Company beyond his normal retirement date and elects to defer receipt of his pension installments as provided in Section C-8.01.

ADMIN REC-0170

**C-4.02 Early and 30 Year Retirements.** The first installment of any pension for a Contributory Participant who retires before his normal retirement date pursuant to Section C-2.02 or C-2.03 shall be due and payable:

(a) In the first calendar month following the month of his retirement, if he has elected to take an immediate pension as provided in Section C-3.02 (b); or

(b) In the first calendar month following the month of his normal retirement date, if he has elected to take a deferred pension as provided in Section C-3.02 (a).

**C-4.03 Disability Retirement.** The first installment of any pension shall be due and payable for a Contributory Participant eligible for a disability pension upon the later of the date of the Contributory Participant's retirement and the first day of the month following a period of six months after he became disabled. Prior to his normal retirement date, such pension for permanent incapacity shall continue only so long as he shall be permanently incapacitated. The Company may at any reasonable time or times prior to the date on which pensioner shall reach 65 years of age verify his continued incapacity by examination of him by a physician designated by the Company. If a pensioner receiving a disability pension under the provisions of the Contributory Part prior to his normal retirement date refuses to have his disability verified as herein provided, the part of his disability pension provided by the Company contributions shall be discontinued until his withdrawal of such refusal, and should his refusal continue for a year, all rights in and to the disability pension shall cease, the election of an optional benefit if one has been elected shall be of no further effect, and any excess of his accumulated contributions at retirement over the sum of any pension payments he received shall be paid to him in one sum.

**C-4.04 Vested Deferred Limited Pension.** The first installment of any pension payable to a person eligible for Vested Deferred Limited Pension shall be due and payable in the first calendar month following the month in which he attains his normal retirement date.

**C-4.05 Minimum Special Pension.** The first installment of any pension under Section C-3.01 (b) shall become due and payable in the first calendar month following the month of retirement.

**C-4.06 Pension Payment to Co-Pensioners.** The first installment of any monthly pension to a co-pensioner shall become due and payable in the month following the month in which the death of the pensioner occurs.

**C-4.07 Date of Payment.** The first installment of any pension shall be paid on or before the last day of the month in which it is due and payable. The last installment of any pension shall be payable to the pensioner or a co-pensioner for the month in which death of the pensioner or co-pensioner, respectively, occurs. If the last monthly pension installment has not been actually paid to the pensioner prior to his death, it shall be paid to his co-pensioner, if any, or to his beneficiary.

**C-4.08 Pension Payments Under Options.** The provisions of any optional form of benefits or the payment thereof, or both, elected by a Contributory Participant under the provisions of the Plan which become effective shall apply in accordance with the option terms to the extent they differ from the provisions of this Article IV.

**C-4.09 Application Required.** No pension shall become payable under this Part C until due application has been made therefor. Due application for a pension shall mean the filing of a written application for a pension which may be combined with an application under Part B of the Plan, together with such appropriate data as the Pension Board may require, before the end of the calendar month preceding the month in which the first monthly installment would become payable. If written application together with the required data is not timely filed as specified in this Section C-4.09 then the calendar month in which the first monthly installment shall become payable shall be postponed by the same number of calendar months as the number of calendar months the application and data are late.

33

# Article V

# Death Benefits

**C-5.01    Ten-Year Certain Benefits.** Unless an option under Section C-3.06 shall become effective, any pension payable under this Part, other than one payable under Section C-3.01 (b) or Section C-3.05 (a), shall be paid for at least 120 months, notwithstanding death of the pensioner prior to completion of all of the 120 monthly pension installments, and, in event of such prior death, the balance of the 120 monthly pension installments not previously made shall continue to be paid monthly to his beneficiary until the total of 120 monthly pension installments shall have been made. If both the pensioner and his beneficiary die before the completion of the 120 monthly installments, the remaining payments shall be paid as provided in Section C-5.06.

**C-5.02    Ten-Year Certain Equivalent.** If an option under Section C-3.06 becomes effective, the total amount of the monthly pension installments payable under this Part, other than one payable under Section C-3.01 (b) or Section C-3.05 (a), shall be not less than the sum of the 120 monthly installments which would have been payable under Section C-5.01 had no option become effective, notwithstanding the death of the pensioner and his co-pensioner before all of such amount has been paid, unless the Contributory Participant has elected a monthly pension installment under an option in an amount which requires the waiver of his rights to the amount certain otherwise payable under this Section C-5.02. If both the pensioner and the co-pensioner die before they shall have received an amount equal to the 120 monthly installments which the pensioner would have received if he had not elected an option, and he did not waive his rights thereto, the remaining payments shall be paid as provided in Section C-5.06.

**C-5.03    Total Amount Certain if Minimum Special Pension is Payable.** The total amount of the monthly pension installments payable under Section C-3.01 (b) ("Minimum Special Pension"), whether or not an option under Section C-3.06

shall become effective, shall be not less than the total amount which would have been payable under Section C-5.01 had the monthly pension installments been determined under the formula specified in Section C-3.01 (a). If the pensioner and his beneficiary or co-pensioner, if any, die before the completion of the total amount due under this Section C-5.03, the remaining payments to be made shall be paid as provided in Section C-5.06.

(a)    The aggregate amount payable under this Part C shall be not less than the Contributory Participant's accumulated contributions as of the date of his retirement, and if required, the total number of assured monthly pension installments shall be increased from 120 to the number necessary to provide such minimum aggregate amount.

(b)    The total amount payable under any Section of this Article shall not be increased by the Contributory Participant's deferral of the receipt of any one or more monthly pension installments.

**C-5.05    Designation of Beneficiary.** A pensioner's beneficiary must have been designated by him in writing and duly filed with the representative designated by the Company. He may change his beneficiary at any time prior to his death by a similar written designation. Such change shall be deemed to be made when received by the representative designated by the Company. No consent shall be required of the person designated as a beneficiary in order to change the beneficiary.

**C-5.06    Death of Beneficiary or Co-Pensioner Before Expiration of Term Certain.** If an option has not been elected and no beneficiary survives the pensioner, or if the beneficiary survives the pensioner but dies prior to the time the total of the assured monthly payments shall have been made, any remaining payments which would otherwise be paid shall be paid in a lump sum to the estate of the last to die of the pensioner and his beneficiary. If an option has been elected and no co-pensioner survives the pensioner, or if the co-pensioner survives the pensioner but dies prior to the time

35

ADMIN REC-0172

the total amount of pension shall have been made, any remaining payments which would otherwise be made shall be paid in a lump sum to the estate of the last to die of the pensioner and his co-pensioner.

## Article VI
## Contributions

C-6.01  Contributions by Contributory Participant.

(a) Each Contributory Participant shall contribute to the Plan by payroll deduction each month an amount in accordance with his Compensation Class as shown in Column (c) of the following Table. As shown in the Table, the Contributory Participant's contributions on the average are equal to 5% of that portion of the compensation that is in excess of a rate of $250 per month.

**TABLE OF COMPENSATION CLASSES**
**AMOUNT OF EMPLOYEE CONTRIBUTIONS**
**FOR EACH COMPENSATION CLASS**

| (a) Class Number | (b) Annual Compensation Range | (c) Employee's Monthly Contributions |
|---|---|---|
| 1 | $3,000.01-$3,840.99 | $ 3.00 |
| 2 | 3,841.00- 4,080.99 | 4.00 |
| 3 | 4,081.00- 4,320.99 | 5.00 |
| 4 | 4,321.00- 4,560.99 | 6.00 |
| 5 | 4,561.00- 4,800.99 | 7.00 |
| 6 | 4,801.00- 5,040.99 | 8.00 |
| 7 | 5,041.00- 5,280.99 | 9.00 |
| 8 | 5,281.00- 5,520.99 | 10.00 |
| 9 | 5,521.00- 5,760.99 | 11.00 |
| 10 | 5,761.00- 6,000.99 | 12.00 |
| 11 | 6,001.00- 6,240.99 | 13.00 |
| etc. | increasing by $240 for each subsequent class | increasing by $1.00 for each subsequent class |

(b) The Company will determine the Compensation Class of each Contributory Participant as of April 1 each year. The Contributory Participant will contribute in accordance with his Class until the following April without regard to any interim changes in his rate of compensation.

(c) The Company shall transmit the sums so deducted to the Trustee of the Contributory Pension Trust.

## Article VII
## Withdrawal and Return of Contributions

C-7.01  Termination of Employment. Any Contributory Participant upon ceasing to be an Employee for any cause other than death or retirement under the Plan, shall receive in one sum within six months thereafter the amount of his accumulated contributions at the time he ceased to be an Employee.

C-7.02  Discontinuance of Contributions. Any Contributory Participant may elect, in accordance with such uniform rules as the Pension Board shall determine, to discontinue making the contributions required of him under the provisions of Article VI. In such event, the amount of his accumulated contributions shall be paid to him in one lump sum within six months thereafter; provided, however, if he was a member of the Program and had ten or more years of continuous service as of October 1, 1964, the disposition of his accumulated contributions made prior to October 1, 1964 shall be determined, regardless of the source of payment, in accordance with the Group Annuity Contract. He shall from and after such discontinuance cease to be a Contributory Participant and shall be entitled to no benefits under the Contributory Part other than those for which he qualifies under the provisions of C-2.05 (a). He shall not thereafter become a Contributory Participant except as otherwise provided in Section C-1.05.

ADMIN REC-0173

**C-7.03  Death of Contributory Participant Prior to Retirement.** Upon the death of a Contributory Participant prior to the date of his retirement, or prior to his Option Effective Date if he has elected an option, the amount of his accumulated contributions at the time of his death shall be payable in one sum to his beneficiary designated as provided in Section C-5.05, if living, otherwise to such Contributory Participant's legal representatives.

## Article  VIII
## General

**C-8.01  Continuation of Employment Beyond Normal Retirement Date.**

(a) A Contributory Participant who at the Company's request continues in its employment beyond his normal retirement date is referred to in Section C-8.01 as a "Senior Contributory Participant". A Senior Contributory Participant shall continue to have all the rights of a Contributory Participant.

(b) A Senior Contributory Participant may continue to make contributions until he retires, or, at his election, may discontinue his contributions immediately following the month in which his normal retirement date occurs or in any month thereafter prior to retirement. Such election shall be made in writing filed with the appropriate Company representative on or before the tenth day of the month of discontinuance. His pension shall then be determined on the basis of the period of contributory service ending with the month in which he made his last contribution.

(c) The monthly pension installment will, at the Senior Contributory Participant's election, either commence in the month following the month he makes his last contribution, or be deferred until the month following the month of his actual retirement from the employment of the Company at which time it will be paid at an increased rate, subject to the limitations specified in

Section C-5.04, in accordance with the actuarial tables and interest rate adopted by the Company.

(d) For the purposes of Section C-3.06 ("Options"), a Senior Contributory Participant's Option Election Date and his Option Effective Date shall be the sixtieth day prior to the end of the month in which he made his last contribution, and the equivalent actuarial value of the monthly pension otherwise payable shall be computed under the option selected as of the end of the month in which he made his last contribution.

(e) If a Senior Contributory Participant dies before retirement, the rights of his estate, beneficiary or co-pensioner, respectively, with respect to benefits payable under Part C, shall be determined as though the Senior Contributory Participant had retired the day before his death, provided, however, that if he had previously discontinued his contributions (either at or subsequent to normal retirement date) then such rights of his estate, beneficiary or co-pensioner, respectively, shall be determined as though he had retired at the end of the month next prior to the month of such discontinuance.

**C-8.02  Preservation of Contributory Participant Status.** The Pension Board may provide, pursuant to uniform rules, for the restoration, preservation or the continuation of a person's rights to participate in Part C if such person has involuntarily lost his status as a Contributory Participant as a result of some cause beyond his control, such as: loss of classification as a salaried employee; a transfer to a job in a collective bargaining unit of the Company; or a transfer to a noncovered division, subsidiary company or affiliated company.

**C-8.03  Re-employment After Retirement.** If any pensioner who was a Contributory Participant is re-employed after his retirement, his pension may be adjusted or suspended subject to restoration upon his subsequent retirement in accordance with uniform rules adopted by the Pension Board.

ADMIN REC-0174

C-8.04  Duplication. No pensioner shall be entitled to receive a pension under any provision of the Contributory Part of the Plan for any period if he shall receive a pension for the same period under any other provision of the Contributory Part of the Plan.

# Part D
# General Provisions

## Article I
## Administration of the Plan

D-1.01  Pension Board. The Pension Board shall administer the Plan, except for any investment functions, on behalf of the Company. It shall consist of not less than three members appointed by and to serve at the pleasure of the Board of Directors.

D-1.02  Pension Board's Rules. The Pension Board may adopt such rules and regulations as it may deem necessary or proper for the administration of the Plan; provided, however, such rules and regulations adopted by the Pension Board shall be uniformly applicable to all employees similarly situated.

D-1.03  Pension Board's Determinations. The Pension Board shall decide all questions arising out of and relating to the administration of the Plan, and its determination shall be final and conclusive. Any action by the Pension Board shall require the affirmative vote or written approval of a majority of its members.

D-1.04  Filing Required Information. Each person claiming rights or benefits under the Plan shall file with the Pension Board such information as the Board shall reasonably require before any amount shall be payable to him or on his account.

D-1.05  Adjustment of Average Monthly Compensation. If by reason of unusual conditions the average monthly compensation used in determining a person's pension under the

40

provisions of either Part B or Part C, or both, shall not be fairly representative of the normal compensation of such person in the judgment of the Pension Board, it may, for the purpose of calculating his pension, and under uniform rules, make such adjustments in his actual compensation for the period used as it shall deem equitable.

D-1.06  Adjustment of Continuous Service. The Pension Board, pursuant to uniform rules adopted by it, may for pension calculating purposes:

(a) Remove breaks in continuous service or join periods of continuous service together; or

(b) Include as continuous service the periods of service which were rendered by an Employee in other activities relating to or affecting the Company's interest or deemed by the Pension Board to be of benefit to the Company; or

(c) Include as continuous service the periods of service rendered by persons in connection with properties or businesses acquired by the Company after the Effective Date of the Plan and which was rendered prior to the acquisition of such properties or businesses by the Company.

D-1.07  Limitation on Adjustments. Adjustments under Section D-1.05 and D-1.06 (a) or (b) may be made only for a person who, at the time the adjustment is made, would be eligible for the Special Payment at the time of his retirement under the Plan. No adjustment will be made under Sections D-1.05 or D-1.06 which will diminish the amount of the pension otherwise payable.

D-1.08  Computation of Years of Continuous Service and Lump Sum Payment of Monthly Pensions.

(a) In computing years of continuous service and contributory service, fractions of years shall be computed to the nearest month.

(b) If the annual amount of any pension is less than $600 per year, it may be paid quarterly. If the annual amount of any pension is less than $150 per year, it

41

ADMIN REC-0175

may be paid by a lump sum payment which shall be of equivalent actuarial value to the pension otherwise payable.

D-1.09 **Notification of Pension Rights.** The Pension Board shall notify in writing any person eligible for a pension under Section B-1.09 ("Deferred Vested Retirement") of his eligibility therefor and the requirements he must fulfill to receive his pension. Such notice shall be given within approximately ninety days after his break in continuous service. A similar notice will be given to any person eligible for a pension under Section C-2.05 ("Vested Deferred Limited Pension Rights") within approximately ninety days after the involuntary termination of his contributions under Part C as a result of a break in continuous service or otherwise, as the case may be.

## Article II
## Financing and Source of Payment
## of Pension Benefits

D-2.01 **Source of Payment of Benefits.**

(a) The benefits under the Plan and under the Program shall be provided from any one or more of the following sources as determined by the Company. The sources for the payment of benefits are the Group Annuity Contract, the Deposit Administration Contract, the Non-Contributory Pension Trust and the Contributory Pension Trust.

(b) The Company shall make, or cause to be made, periodic payments to the Non-Contributory Pension Trust and the Contributory Pension Trust or to the Deposit Administration Contract in accordance with sound and accepted actuarial principles of pension financing which, together with the annuities under the

Group Annuity Contract, will be available for the payment of the benefits under the Plan and under the Program. Employee contributions shall be paid to the Contributory Pension Trust.

(c) The Company may, from time to time, establish one or more additional trusts to provide supplemental sources for the payment of the pension benefits provided by the Plan. Any additional trust shall be utilized as a supplement to either the Non-Contributory Pension Trust or the Contributory Pension Trust. If such trust supplements the Non-Contributory Pension Trust, it shall be utilized in the same manner and subject to the same restrictions as the Non-Contributory Pension Trust. If such trust supplements the Contributory Pension Trust, it shall be utilized in the same manner and subject to the same restrictions as the Contributory Pension Trust.

(d) The Company or any Trustee may provide for the payment of any pension benefits under the Plan or the Program through annuity contracts purchased from Equitable or some other reputable insurance company.

D-2.02 **Employee Rights or Interest in Trust.** No person shall have any interest in or right to any part of the earnings of the pension trust, of the Deposit Administration Contract or of the Group Annuity Contract, or any rights in or under any pension trust, the Deposit Administration Contract or the Group Annuity Contract, or any parts of the assets thereof, except as and to the extent expressly provided in the Plan or agreement or agreements establishing such pension trusts, Deposit Administration Contract or Group Annuity Contract, and the Company shall have no liability for the payment of benefits except as specifically provided in the Plan, nor for the administration of the funds paid over to the trustee or trustees or to Equitable.

D-2.03 **Forfeitures from Termination.** Forfeitures, if any, arising from termination of employment shall not be applied to increase the benefits any Employee would otherwise receive under the Plan.

ADMIN REC-0176

# Article III

## Amendment, Modification and Termination

**D-3.01 Rights of Board of Directors.** Upon the authorization of the Board of Directors, the Company shall have the right to modify, amend or terminate this Plan at any time; provided, however, no modification, amendment or termination shall be made by the Company which:

(a) Will impair or reduce the accumulated contributions of any Contributory Participant or the excess of the accumulated contributions as of the date of retirement of each pensioner who was a Contributory Participant over the sum of benefits received by such pensioner, his beneficiary or co-pensioner receiving a pension.

(b) Will impair or reduce the pension of any pensioner (or the rights of his co-pensioner, beneficiary or estate) or any co-pensioner which has been granted prior to the modification, amendment or termination.

(c) Will impair or reduce the pension payable upon retirement of any Employee (or the rights of his co-pensioner, beneficiary or estate) who, prior to the modification, amendment or termination, could retire at his own election and receive a pension under the provisions of the Plan.

(d) Will make it possible for any part of the funds of the Plan to be used for, or diverted to, purposes other than for the exclusive benefit of Employees, Contributory Participants, beneficiaries, pensioners and co-pensioners under the Plan, prior to the satisfaction of all liabilities with respect to them.

**D-3.02 Termination of Plan.**

(a) In the event of termination of the Plan, or upon complete discontinuance of contributions under the Plan, the funds of the Plan shall vest in and be used for the exclusive benefit of Employees, Contributory Participants, beneficiaries, pensioners and co-pensioners under the Plan as of the date of such termination except that any funds not required to satisfy all liabilities of the Plan for benefits because of erroneous actuarial calculations shall be returned to the Company. The Pension Board shall determine on the basis of sound actuarial valuation the share of the funds of the Plan allocable to each Employee, Contributory Participant, beneficiary, pensioner and co-pensioner under the provisions of this Article.

(b) The Company shall cause any funds representative of Employee contributions under the Deposit Administration Contract, subject to allocation under the provisions of such contract, to be allocated to the Contributory Pension Trust. The Company shall also cause any funds representative of Company contributions under the Deposit Administration Contract, subject to allocation under the provisions of such contract, to be allocated between the Non-Contributory Pension Trust and the Contributory Pension Trust. The allocation of such Company contributions between the Non-Contributory Pension Trust and the Contributory Pension Trust shall be made on the basis of the type of benefits intended to be funded when the contributions were initially made, if determinable from the records of the Company. If not so determinable, the allocation shall be made on the basis of the ratio that the average total annual contributions made by the Company to all funding sources to provide benefits under Part B bears to the average total annual contributions made by the Company to all funding sources to provide benefits under Part C, during the period from October 1, 1964 to the effective date of termination of the Plan.

(c) Upon completion of the allocation in (b) above, then, subject to the limitations of Section D-4.01;

(1) The assets of the Non-Contributory Pension Trust

45

ADMIN REC-0177

shall be allocated among the recipients in the following order:

First, each pensioner or co-pensioner receiving a pension, and each Employee covered by Section D-3.01 (c), shall be entitled to a share equal to the reserve computed to be required to pay his benefits under Part B;

Second, each other Employee shall be entitled to a share equal to the reserve computed to be required to pay his benefits under Part B;

Provided that if the funds are insufficient to satisfy in full the requirements of paragraph First, each share thereunder shall be reduced pro rata; and if the funds are insufficient to provide in full the shares under paragraph Second, after provisions for all shares under paragraph First, each share shall be reduced pro rata.

(2) The assets of the Contributory Pension Trust shall be allocated among the recipients in the following order:

First, each Contributory Participant not yet retired shall be entitled to a share equal to his accumulated contributions, and each pensioner who was a Contributory Participant, or his beneficiary or co-pensioner receiving a pension shall be entitled to a share equal to any excess of his accumulated contributions at the time of retirement over the sum of benefits received; and

Second, each pensioner, his beneficiary or co-pensioner receiving a pension, and each Contributory Participant covered by Section D-3.01 (c) shall be entitled to a share equal to the reserve computed to be required to pay his benefits, if any, under Part C, reduced by his share under the First above;

Third, each other Contributory Participant shall be entitled to a share equal to the reserve computed

46

to be required to pay his benefits, if any, under Part C, reduced by his share under First above;

Provided that if the funds are insufficient to satisfy in full the requirements of paragraph First, each share thereunder shall be reduced pro rata; and if the funds are insufficient to provide in full for the shares under paragraphs Second or Third, after provisions for all shares under previous paragraphs, each share under such paragraphs Second and Third, respectively, shall be reduced pro rata.

(3) Any balance remaining in the Contributory Pension Trust after satisfying all of the requirements of such trust shall be applied toward satisfying the deficiencies, if any, in the Non-Contributory Pension Trust. Any balance remaining in the Non-Contributory Pension Trust after satisfying all of the requirements of such trust shall be applied toward satisfying the deficiencies, if any, in the Contributory Pension Trust.

(d) Any share a recipient becomes eligible to receive under the provisions of either (1) or (2), or both, of Section D-3.02 (c) shall be reduced by the amount of the reserve computed to be required to pay the amount the recipient is eligible to receive directly under either the Group Annuity Contract or the Deposit Administration Contract or both.

D-3.03 Vested Rights. Any person eligible for Deferred Vested Pension benefits under Section B-1.09 or Vested Deferred Limited Pension benefits under Section C-2.05, or both, shall be considered an Employee or Contributory Participant, or both, respectively, as the case may be, for the purposes of this Article.

D-3.04 Withdrawal from Trust by Board Action. Subject to the provisions of the Pension Trusts, the Pension Board may require that the portion of any such shares which is held by a Trustee be withdrawn in cash, or in immediate or deferred annuities or other periodic payments as the Pension Board may determine.

47

ADMIN REC-0178

# Article IV

## Certain Rights and Limitations

**D-4.01** **Provision for 25 Highest Paid Employees.** The provisions of this Section D-4.01 shall apply to any one of the 25 highest paid Employees of the Company on any commencement date whose anticipated retirement pension provided under the Plan at normal retirement date by the Company contributions exceeds $1,500 per annum. The term "commencement date" shall mean the date participation of the Company's Employees in the Plan becomes effective or the effective date of any amendment to the Plan which increases the benefits. In the event that during the first 10 years following a commencement date the Plan is terminated with respect to the Company's Employees, the amount of the retirement pension provided under the Plan by the Company's contributions for any one of the aforesaid Employees shall not be greater than the amount of retirement pension that can be provided by the largest of the following amounts:

(a) The Company's contributions (or funds attributable thereto) which would have been applied to provide the retirement pension if the Plan as in effect on the day preceding such commencement date had been continued without change;

(b) $20,000; or

(c) The sum of (1) the Company's contributions (or funds attributable thereto) which would have been applied to provide benefits for the Employee if the Plan had been terminated on the day before such commencement date, plus (2) an amount computed by multiplying the smaller of $10,000 or 20 per centum of the average annual remuneration of such Employee during the last five years of service, by the number of years since such commencement date.

In the event that any time during the first 10 years follow-

ing a commencement date the full current costs under the Plan have not been met, then, until such costs have been met, the amount of retirement pension which shall be payable to any such Employee shall not exceed the amount thereof that would have been payable had the Plan been terminated when such costs were not met. Any excess reserves arising by application of the foregoing provisions shall be used and applied as provided in the Plan for the benefit of the other Employees or Contributory Participants, beneficiaries, pensioners and co-pensioners under the Plan.

In the event that it should subsequently be determined by statute, court decision, or ruling by the Internal Revenue Service, that the provisions of this Section D-4.01 are no longer necessary to qualify the Plan under the Internal Revenue Code, this Section D-4.01 shall be ineffective without the necessity of further amendment to the Plan.

**D-4.02** **Plan Not a Contract of Employment.** The establishment of the Plan shall not be deemed to constitute a contract of employment with the Company or to be a consideration for, or an inducement or condition of, the employment of any person. Nothing contained in this Plan shall be deemed to give any person the right to be retained in the service of the Company or to interfere with the right of the Company to discharge or retire any person employed by it at any time.

**D-4.03** **Benefits Not Subject to Transfer.** No benefit under the Plan shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, and any attempt so to do shall be void, nor shall any such benefit be in any manner liable for or subject to garnishment, attachment, execution or levy, or liable for or subject to the debts, contracts, liabilities, engagements or torts of the person entitled to such benefit; and in the event that the Pension Board shall find that any Employee, Contributory Participant, beneficiary, pensioner or co-pensioner under the Plan has become bankrupt or that any attempt has been made to anticipate, alienate, sell, transfer, assign,

49

ADMIN REC-0179

pledge, encumber or charge any of his benefits under the Plan, except as specifically provided in the Plan, then such benefit shall cease and terminate, and in that event the Pension Board shall apply the same to or for the benefit of such Employee, Contributory Participant, beneficiary, pensioner or co-pensioner, his spouse, children, parents or other blood relatives, or any of them.

**D-4.04    Pension Board May Direct Payment to Legal Representative.** Except as otherwise expressly provided in the Plan, in the event of the death of an Employee, Contributory Participant, beneficiary, pensioner or co-pensioner not survived by a person designated to receive any payment then due, or in the event that the Pension Board shall find that any person entitled to a benefit is unable to care for his affairs because of illness (physical and/or mental) or accident, or is a minor, the Pension Board may direct that any benefit payment due him, unless claim shall have been made therefor by a duly appointed legal representative, be paid to his spouse, a child, a parent or other blood relative, or to a person with whom he resides, and any such payment so made shall be a complete discharge of the liabilities of the Plan therefor.

## Article V

## Construction and Interpretation

**D-5.01    Applicability of Part D.** The provisions of Part D shall be applicable to all Parts of the Plan unless the context shall otherwise require.

**D-5.02    Eligibility for Benefits.** Except as otherwise specifically provided in the Plan:

(1) Eligibility for non-contributory benefits shall be determined solely from the provisions applicable to the Non-Contributory Part of the Plan without reference to the provisions pertaining to the Contributory Part; and

(2) Eligibility for contributory benefits shall be determined solely from the provisions applicable to the Contributory Part of the Plan without reference to the provisions pertaining to the Non-Contributory Part.

**D-5.03    Terms of Annuity Contract May Differ from Plan.** The terms and provisions of any annuity contract issued by an insurance company or of a certificate issued pursuant to a contract between the Company and an insurance company procured by the Company to pay the benefits provided by the Plan shall control to the extent that they may differ from the terms and provisions of the Plan.

**D-5.04    Laws of Ohio Regulate Plan.** The Plan shall be construed, regulated and administered under the laws of the State of Ohio.

**D-5.05    Use of Masculine Pronoun.** The masculine pronoun shall mean the feminine wherever appropriate.

**D-5.06    Headings Not Part of Plan.** The Article and Section headings and the quoted Section headings contained in parenthesis in the text of the Plan are for convenience only and are not to be construed as a part of the Plan.

## Part E

## Prior Pensions

**E-1.01    Former Employee Rights.** Any benefits being paid and pension rights accrued resulting from the retirement of a former Employee who retired prior to May 31, 1973 shall continue to be paid and determined in accordance with the pension plan or pension arrangements applicable to him as of the date of his retirement except as otherwise provided in Section E-1.02 and E-1.03.

**E-1.02    No Reduction in Benefits.** There shall be no reduction of any benefits being paid resulting from the retirement of a former Employee who retired prior to May 31, 1973 by

ADMIN REC-0180

reason of the revisions to the Plan effective on or after May 31, 1973.

**E-1.03   Pension Increases to Former Employees.**

(a)  The amount of the monthly pension resulting from the retirement of a former Employee who retired prior to July 31, 1966 shall be increased for each month commencing with August, 1966 as follows:

   (1)  Any pension which is not an actuarially reduced pension shall be increased by $15.

   (2)  Any actuarially reduced pension shall be increased by an amount resulting from the application to $15 of the percentage used to determine the actuarially reduced pension.

   (3)  A co-pensioner's pension shall be increased by an amount resulting from the application of the appropriate percentage (50% or 100%) to the amount of the increase the original pensioner would have received under (1) or (2) above had he been living on the effective date of the increase.

(b)  The amount of the monthly pension resulting from the retirement of a former Employee who retired on or after July 31, 1966 and before July 31, 1969 shall be recomputed under the provisions of Part B of the Plan, as it existed effective July 31, 1969 with the adjusted benefit to be effective for the month of August 1969.

(c)  The amount of the monthly pension resulting from the retirement of a former Employee who retired prior to July 31, 1966 shall be increased for each month commencing with August, 1969 as follows:

   (1)  Any pension which is not an actuarially reduced pension shall be increased by $10.

   (2)  Any actuarially reduced pension shall be increased by an amount resulting from the application to $10 of the percentage used to determine the actuarially reduced pension.

   (3)  A co-pensioner's pension shall be increased by an amount resulting from the application of the appropriate percentage (50% or 100%) to the amount of the increase the original pensioner would have received under (1) or (2) above had he been living on the effective date of the increase.

No such increase shall be applicable with respect to a person who is receiving or is eligible later to receive a deferred vested retirement pension.

**E-1.04   Guarantee of Eligibility.** If any participant in the Program did not become eligible to participate in the Plan as a result of his non-compliance with the initial condition of eligibility for participation in the Plan he shall, nevertheless, receive, upon his retirement, a monthly pension equal to a monthly annuity under the Group Annuity Contract based upon his own unwithdrawn contributions, if any, and the contributions made on his behalf by the Company under the Program.

**E-1.05   Internal Revenue Service Qualifications.** The Plan has been made effective prior to its approval as a qualified plan under the provisions of the Internal Revenue Code. Any and all provisions of the Plan are subject to change, modification or revision, retroactive to the Effective Date of the Plan if necessary or proper, as may be required to qualify the Plan, the Pension Trust Agreements, and the Deposit Administration Contract or any one of them under the applicable provisions of the Internal Revenue Code.

ADMIN REC-0181

19524000

## DECLARATION OF MERGER

Pursuant to authority delegated to me by the Compensation and Organization Committee of the Board of Directors of The LTV Corporation, effective October 31, 1999, the LTV Steel (J&L) Hourly Pension Plan, the 1992 LTV Steel (Republic) Hourly Pension Plan, and the 1992 LTV Steel (J&L) Hourly Pension Plan shall be merged into the LTV Steel (Republic) Hourly Pension Plan, and the resulting plan shall be renamed the LTV Steel Hourly Pension Plan. All accrued benefits under all plans shall be preserved in the merged plan, and the merger shall otherwise comply with all provisions of the Internal Revenue Code of 1986, including without limitation Sections 401(a)(12) and 414(l). This merger of plans shall be subject to the condition that the Internal Revenue Service shall issue a favorable determination letter that this merger adversely affects neither the continuing qualification of the LTV Steel Hourly Pension Plan under Section 401(a) of the Internal Revenue Code nor the tax exempt status of its related trust under section 501(a) of the Internal Revenue Code.

ATTEST:

H.C. Hedrick
Assistant Secretary

Frank E. Filipovitz
General Manager, Human Resources

LTV STEEL HOURLY PENSION PLAN
(AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

ADMIN REC-0183

# AMENDMENT AND RESTATEMENT
## OF THE
## LTV STEEL HOURLY PENSION PLAN

The LTV Steel Hourly Pension Plan is hereby amended and restated in the form attached hereto,

subject to the condition that the Internal Revenue Service shall issue a favorable letter of

determination that this Amendment and Restatement neither adversely affects the continuing

qualification of the Plan under Section 401(a), nor the tax exempt status of its related trust under

Section 501(a), of the Internal Revenue Code of 1986.  Upon such issuance, this Amendment and

Restatement shall become effective without further corporate action.

ATTEST:

_Nlen / More_

_____

THE LTV CORPORATION

By: _Frank G. Filipovitz_

    Frank E. Filipovitz
    General Manager
    Human Resources

Date: _November 6, 2001_

MTC 17415 v3

ADMIN REC-0184

# LTV STEEL HOURLY PENSION PLAN
## (AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

## TABLE OF CONTENTS

**Page**

PREAMBLE ........................................................................................................1

ARTICLE I...........................................................................................................3

INTRODUCTION ...............................................................................................3
1.1    Definitions..............................................................................................3
1.2    When Retirement Occurs .....................................................................11
1.3    Provision of Benefits............................................................................12
1.4    Construction..........................................................................................12

ARTICLE IA......................................................................................................14

PARTICIPATION .............................................................................................14
1A.1    Participants On October 31, 1999 ......................................................14
1A.2    Subsequent Eligibility for Participation.............................................14
1A.3    Duration of Participation.....................................................................14

ARTICLE II........................................................................................................15

ELIGIBILITY FOR PENSION ........................................................................15
2.1    Normal Retirement................................................................................15
2.2    62/15 Retirement...................................................................................15
2.3    30-Year Retirement...............................................................................15
2.4    60/15 Retirement...................................................................................15
2.5    Permanent Incapacity Retirement ........................................................15
2.6    70/80 Retirement...................................................................................16
2.7    Rule-of-65 Retirement..........................................................................17
2.8    Deferred Vested Pension.......................................................................18
2.9    Nonduplication of Pension....................................................................19
2.10    No Payment While Eligible for Sickness and Accident Benefits .......19
2.11    Cuyahoga Valley Participants...............................................................19

ARTICLE III......................................................................................................20

AMOUNT OF PENSION ..................................................................................20
3.1    Types of Pension Payments...................................................................20
3.2    Special Payment....................................................................................20
3.3    1987 Benefit and 1992 Benefit ............................................................21
3.4    Floor Benefit and Lifetime Minimum Benefit.....................................27
3.5    DCP Annuity Equivalents.....................................................................35
3.6    Regular Pension ....................................................................................37
3.7    Increased Pension - Permanent Incapacity, 70/80 and 30-Year Transition ...........40

ADMIN REC-0185

3.8     Increased Pension – Rule-of-65 .................................................................43
3.9     Regular Pension - Part-Time Participants...................................................44
3.10    Deduction for Public Pension ....................................................................44
3.11    Deduction for Other Pension ....................................................................46
3.12    Deduction for Disability Payments...........................................................47
3.13    Maximum Annual Benefit Limitation ........................................................48
3.13A   Annual Additions .....................................................................................51
3.14    Pension Application...................................................................................53
3.15    Commencement and Termination of Regular Pension ...............................54
3.16    Deemed Lump-Sum Payment ...................................................................57
3.17    Pre-Pension Spouse Coverage ..................................................................57
3.18    Preretirement Survivor Annuity Coverage ...............................................59
3.19    Automatic 50% Spouse Option With Pop-Up ...........................................66
3.20    Other Options............................................................................................70
3.21    Qualified Domestic Relations Order Reduction .........................................74
3.22    Eligible Rollover Distribution ...................................................................74
3.23    Automatic Five-Year Term Certain ...........................................................75
3.24    DCP Accounts............................................................................................76
3.25    Special Retiree Lump-Sum Payment .........................................................86
3.26    Supplemental Pension Benefits.................................................................87

ARTICLE IV ................................................................................................88

SURVIVING SPOUSE'S BENEFIT .............................................................88
4.1     Eligibility .................................................................................................88
4.2     Amount of Benefit ....................................................................................88
4.3     Special Rules..............................................................................................88
4.4     Surviving Spouse's Benefit Increase .........................................................90
4.5     Special Payment to Certain Surviving Spouses .........................................91
4.6     Commencement and Termination of Benefit...............................................92
4.7     Determination of Status as Surviving Spouse.............................................92
4.8     Notification of Surviving Spouse Benefit ..................................................93
4.9     Surviving Spouse of Part-Time Participant ...............................................93

ARTICLE V ................................................................................................94

DETERMINATION OF CONTINUOUS SERVICE.......................................94
5.1     Continuous Service ...................................................................................94

ARTICLE VI................................................................................................98

REEMPLOYMENT AFTER ATTAINMENT OF PENSION ELIGIBILITY ...................98
6.1     Applicability of Other Sections ................................................................98
6.2     Effect on Pension ......................................................................................98
6.3     Continuous Service of Reemployed Participant .........................................98
6.4     Special Pension Eligibility after Reemployment ........................................98
6.5     Special Rules as to Amount of Pension .....................................................99

ADMIN REC-0186

**ARTICLE VII** ............................................................................................................**100**

　CLAIMS PROCEDURE ...........................................................................................100
　7.1　Claims .......................................................................................................100
　7.2　Appeals of Claims ....................................................................................101
　7.3　Disputes as to Permanent Incapacity .....................................................101

**ARTICLE VIII** ..........................................................................................................**103**

　CONTRIBUTIONS ..................................................................................................103
　8.1　Contributions by the Employing Companies .........................................103
　8.2　Contributions by Participants ..................................................................103
　8.3　Funding Policy .........................................................................................103
　8.4　Payment of Expenses ...............................................................................103

**ARTICLE IX** ............................................................................................................**104**

　ADMINISTRATION ................................................................................................104
　9.1　Named Fiduciaries ....................................................................................104
　9.2　Asset Management by Persons or Entities Other Than Trustee..............105
　9.3　Complete and Separate Allocation of Fiduciary Responsibilities ..........106
　9.4　Plan Interpretation and Findings of Facts ..............................................106
　9.5　Revocability of Action by the Plan Administrator ..................................107
　9.6　Assistance .................................................................................................107
　9.7　Exclusive Purpose ...................................................................................107
　9.8　Disclaimer of Liability .............................................................................108

**ARTICLE X** .............................................................................................................**109**

　GENERAL PROVISIONS ........................................................................................109
　10.1　Nonalienation ...........................................................................................109
　10.2　Deduction for Insurance Premium and Overpayments ...........................110
　10.3　Non-Guarantee of Employment ..............................................................111
　10.4　Rights to Trust Assets ..............................................................................111
　10.5　Incapacity to Receive Payment ...............................................................111
　10.6　Unclaimed Benefits ..................................................................................111
　10.7　Severability Provision ..............................................................................112

**ARTICLE XI** ............................................................................................................**113**

　ADOPTION PROCEDURE BY AFFILIATED COMPANIES ...............................113
　11.1　Adoption Procedure ..................................................................................113
　11.2　Additional Terms and Conditions Relating to Instrument of Adoption ...113
　11.3　Effect of Adoption by Affiliated Company .............................................113
　11.4　Employing Company Reimbursement ......................................................114
　11.5　Withdrawal of an Employing Company ...................................................114
　11.6　Corporation's Right to Terminate Adoption .............................................114

ADMIN REC-0187

**ARTICLE XII** ....................................................................................115

    AMENDMENTS, TERMINATIONS AND MERGERS.............................115
12.1   Right to Amend...........................................................................115
12.2   Prohibition on Decreasing Accrued Benefits...................................115
12.3   Plan Merger...............................................................................115
12.4   Terminations .............................................................................115

**ARTICLE XIII**...................................................................................117

    LIMITATION ON BENEFITS OF CERTAIN PARTICIPANTS .................117
13.1   Benefit Payment Restrictions.......................................................117

**ARTICLE XIV** ..................................................................................118

    TOP-HEAVY PLAN REQUIREMENTS .............................................118
14.1   Definitions.................................................................................118
14.2   Determination of Top-Heavy Status ..............................................120
14.3   Determination of Extra Top-Heavy Status......................................120
14.4   Top-Heavy Plan Requirements .....................................................121
14.5   Minimum Vesting Requirement ....................................................121
14.6   Minimum Benefit Requirement ....................................................122
14.7   Adjustment to Minimum Benefits and Allocations ...........................122
14.8   Coordination With Other Plans.....................................................123

**Exhibit A**  –  Table of Percentages (Other than River Terminal Employees)

**Exhibit B**  –  Table of Percentages (River Terminal Employees)

**Exhibit C**  –  Surviving Spouse Increase Factors

**Exhibit D**  –  Employing Companies

**Exhibit E**  –  Table of Percentages (For River Terminal Employees)

**Exhibit F**  –  Covered Employees

**Exhibit G**  –  Sold Facility

**Exhibit H-1** –  Conversion Factors for Optional Forms of Payment for DCP Account Benefit for Retirements Excluding Deferred Vested Pensions – Life with Cash Refund

**Exhibit H-2** –  Conversion Factors for Optional Forms of Payment for DCP Account Benefit for Deferred Vested Pensions – Life with Cash Refund

**Exhibit I-1**  –  Conversion Factors for Optional Forms of Payment for DCP Account Benefit for Retirements Excluding Deferred Vested Pensions – 15-Year Certain and Life

**Exhibit I-2**  –  Conversion Factors for Optional Forms of Payment for DCP Account Benefit for Deferred Vested Pensions – 15-Year Certain and Life

**ADMIN REC-0188**

**Exhibit J-1** — Conversion Factors for Optional Forms of Payment for DCP Account Benefit for Retirements Excluding Deferred Vested Pensions – 10-Year Certain and Life

**Exhibit J-2** — Conversion Factors for Optional Forms of Payment for DCP Account Benefit for Deferred Vested Pensions – 10-Year Certain and Life

**Exhibit K** — Cuyahoga Valley Railway Company Participants

**Exhibit L** — River Terminal Employee DCP Account Contributions

**Exhibit M** — Tin Business Participants

ADMIN REC-0189

# LTV STEEL HOURLY PENSION PLAN
## (AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

## PREAMBLE

LTV Steel Company, Inc., a New Jersey corporation, as successor in interest to Republic Steel Corporation hereby amends and restates the LTV Steel Hourly Pension Plan, formerly known as the LTV Steel (Republic) Hourly Pension Plan and the Pension Plan of Republic Steel Corporation Dated and Effective as of March 1, 1950 (the "Plan"), for the exclusive benefit of Participants who qualify for benefits hereunder. Except as otherwise provided herein, the effective date of such amendment and restatement hereby made is November 1, 1999.

On July 17, 1986, The LTV Corporation (the "Corporation") and substantially all of its active subsidiaries filed separate petitions for reorganization under Chapter 11 of the Bankruptcy Code. On January 12, 1987, the Pension Benefit Guaranty Corporation ("PBGC") invoked its discretionary authority under Section 4042(a) of ERISA to institute termination proceedings against the Plan. Effective January 13, 1987, the Plan was terminated by order of the United States District Court for the Southern District of New York and the PBGC was appointed statutory trustee to administer the Plan.

In August 1987, LTV Steel Company, Inc. ("LTV Steel") and certain of its affiliates entered into a collective bargaining agreement with the United Steelworkers of America ("USWA") providing that LTV Steel would replace the Plan with a new defined contribution plan to be known as the LTV Steel-USWA Pension Plan effective January 13, 1987 and certain other replacement plans (collectively, the "Replacement Plans"). On September 22, 1987, the PBGC exercised its statutory authority under Section 4047 of ERISA and ordered the Plan restored to its pretermination status and on June 18, 1990 such authority was upheld by the United States Supreme Court.

Prior to the establishment of the Replacement Plans and the restoration of the Plan, the Plan had not been amended to take into account the duplicative benefits provided under the Replacement Plans.

Effective June 28, 1993, the Corporation and LTV Steel entered into the PBGC Agreement and a closing agreement with the Internal Revenue Service covering various matters regarding the Plan. Certain provisions of such agreements, as provided herein, continue to govern the Plan.

Effective January 1, 1992, those Participants in the Plan without an account balance in any defined contribution plan maintained by the Controlled Group were spun-off into the 1992 LTV Steel (Republic) Hourly Pension Plan, effective January 1, 1992 (the "1992 Plan"). Benefits for such former Participants will be paid exclusively from the 1992 Plan.

ADMIN REC-0190

In August 1999, LTV Steel and certain of its affiliates entered into a collective bargaining agreement with the USWA (the "1999 Settlement Agreement") providing for the merger of the LTV Steel (J&L) Hourly Pension Plan, the 1992 Plan, and the 1992 LTV Steel (J&L) Hourly Pension Plan into the Plan. The merger of these plans was effective October 31, 1999. The assets and liabilities of the Company Contribution Accounts from the LTV Steel-USWA Pension Plan merged into the Plan effective December 1, 1999.

In addition, as soon as practicable after January 1, 2000, the Plan began paying existing retirees certain supplemental pension benefits previously paid under Article VIII (or corresponding predecessor provisions) of the LTV Steel Supplemental Pension Plan.

The Plan as hereby amended and restated is intended to be a plan as described in Section 414(k) of the Code and to continue to qualify under Section 401(a) of the Code, with contributions thereto made by LTV Steel and its affiliates in accordance with the PBGC Agreement, to continue to meet the requirements of ERISA and to meet the provisions of the 1999 Settlement Agreement and other labor agreements as further described herein.

ADMIN REC-0191

# ARTICLE I

# INTRODUCTION

**1.1    Definitions**

Where the following words and phrases appear in the Plan, they shall have the respective meanings set forth below, unless the contrary is clearly connoted by the context.

**(a)    Accrued Benefit**

The benefit that would be payable to a Participant under the terms of the Plan on any date (determined without regard to vesting requirements) in the normal form of benefit set forth in Article III (without ancillary benefits) commencing on the Participant's Normal Retirement Date or, if later, his break in Continuous Service.

**(b)    Actuarial Equivalent**

A benefit of equal value as determined in accordance with Exhibit A, B, E, H-1, H-2, I-1, I-2, J-1, J-2 or K, as applicable, included herein, and Paragraphs 3.3(c)(2) and (3), Paragraphs 3.4(c)(2) and (3), Paragraph 3.5, Paragraph 3.18(c)(4) and Paragraph 3.24(c)(6). Except as provided in the previous sentence and as otherwise provided in the Plan, "Actuarial Equivalent" means equality in value when computed on the basis of the 1979 George B. Buck Mortality Table for Males and an interest rate of 5%.

**(c)    Average Monthly Earnings**

Effective August 1, 1999, for retirements on or after July 31, 1999, the average monthly Earnings of a Participant for services rendered which are paid by a Controlled Group Member during the last 120 full calendar months of his Continuous Service prior to January 1, 2004 determined as follows:

(1)    The Participant's Earnings shall be calculated for each of the 10 calculation years during the last 120 full calendar months of Continuous Service prior to January 1, 2004, i.e., the first calculation year shall be the first 12 out of the last 120 full calendar months of Continuous Service prior to January 1, 2004, the second calculation year shall be the second 12 out of such 120 months and so forth through the tenth calculation year which shall be the last 12 out of such 120 months.

(2)    There shall then be selected from such 10 calculation years a "calculation period" which shall be the five consecutive calculation years in which the Participant's aggregate Earnings were the highest.

(3)    Earnings during the calculation period shall be divided by 60, except that,

ADMIN REC-0192

if during the calculation period the Participant shall have been absent from work without pay because of disability or layoff, the divisor of 60 shall be reduced by the greater of the aggregate of the full calendar months of such absence:

(i)     in excess of three in each separate period of absence; or

(ii)    in excess of six;

provided, however, that, in the case of Permanent Incapacity Retirement, before making the foregoing reduction, if the calculation period is the last five calculation years prior to January 1, 2004, there shall be deducted each full calendar month that the Participant shall have been absent without pay because of total disability during the last six calendar months of such period. Months deducted under this proviso shall not be counted as months of absence under (i) and (ii) above;

(4)     Subject to the provisions of (3) above concerning adjustment for absence from work, in the event the Participant has less than five years of accrued Continuous Service for the purpose of calculation of Earnings or benefit accrual as of December 31, 1992, the Earnings divisor of 60 shall be reduced to the number of full calendar months of such accrued Continuous Service.

**(d)    1992 Average Monthly Earnings**

The average monthly 1992 Earnings of a Participant for services rendered which are paid by a Controlled Group Member during the last 120 full calendar months of Continuous Service prior to January 1, 1993 determined as follows:

(1)     The Participant's 1992 Earnings shall be calculated for each of the 10 calculation years during the last 120 full calendar months of Continuous Service prior to January 1, 1993, i.e., the first calculation year shall be the first 12 out of the last 120 full calendar months of Continuous Service prior to January 1, 1993, the second calculation year shall be the second 12 out of such 120 months and so forth through the tenth calendar year which shall be the last 12 out of such 120 months.

(2)     There shall then be selected from such 10 calculation years a "calculation period" which shall be the three consecutive calculation years (five for a River Terminal Employee, other than a River Terminal Clerk, who retires before January 1, 1996) in which the Participant's aggregate 1992 Earnings were the highest.

(3)     1992 Earnings during the calculation period shall be divided by 36 (60 in the case of a River Terminal Employee, other than a River Terminal Clerk, who retires before January 1, 1996), except that, if during the calculation

ADMIN REC-0193

period the Participant shall have been absent from work without pay because of disability or layoff, the divisor of 36 (or 60, if applicable) shall be reduced by the greater of the aggregate of the full calendar months of such absence:

(i)    in excess of three in each separate period; or

(ii)    in excess of six;

provided, however, that in the case of Permanent Incapacity Retirement, before making the foregoing reduction, if the calculation period is the last three calculation years (five in the case of a River Terminal Employee, other than a River Terminal Clerk, who retires before January 1, 1996) prior to January 1, 1993, there shall be deducted each full calendar month that the Participant shall have been absent without pay because of total disability during the last six calendar months of such period. Months deducted under this proviso shall not be counted as months of absence under (i) and (ii) above.

(4)    Subject to the provisions of (3) above concerning adjustment for absence from work, in the event the Participant has less than three years (five in the case of a River Terminal Employee, other than a River Terminal Clerk, who retires before January 1, 1996) of accrued Continuous Service for the purpose of calculation of earnings or benefit accrual as of December 31, 1992, the earnings divisor of 36 (60 in the case of a River Terminal Employee, other than a River Terminal Clerk, who retires before January 1, 1996) shall be reduced to the number of full calendar months of such accrued Continuous Service.

(e)    **Beneficiary**

The meaning ascribed to such term in Paragraph 3.24(a).

(f)    **Bookkeeping Account**

The meaning ascribed to such term in Paragraph 3.24(a).

(g)    **Code**

Internal Revenue Code of 1986, as amended.

(h)    **Company Contribution Account**

A defined contribution account maintained for a Participant under the DCP as in effect as of November 30, 1999, the assets and liabilities of which were transferred to the Trust effective as of December 1, 1999.

ADMIN REC-0194

(i)   **Company Contributions**

The contributions made to the DCP by an Employer ("Employer" for this purpose as defined in the DCP as in effect as of November 30, 1999) prior to December 1, 1999 and designated under the DCP as in effect as of November 30, 1999 as "Company Contributions" ("Company Contributions" for this purpose as defined in the DCP as in effect as of November 30, 1999), and any ongoing contributions made by an Employing Company to a DCP Account in accordance with Exhibit K or L, including earnings thereon.

(j)   **Continuous Service**

A Participant's Continuous Service shall be determined pursuant to Article V.

(k)   **Controlled Group**

LTV Steel and any and all other corporations, trades and/or businesses, the employees of which, together with Employees of LTV Steel are required by Section 414 of the Code to be treated as if they were a single employer.

(l)   **Controlled Group Member**

Each corporation or unincorporated trade or business that is or was a member of the Controlled Group, but only during such period as it is or was a member of the Controlled Group.

(m)   **Co-Pensioner**

The person named by a Participant as his beneficiary in the election of a Co-Pensioner Option pursuant to Paragraph 3.20.

(n)   **Corporation**

The LTV Corporation, a Delaware corporation, or its successor or successors.

(o)   **Covered Employee**

An Employee of an Employing Company who is in a unit listed on Exhibit F hereto covered by a collective bargaining agreement entered into between such unit and an Employing Company. Notwithstanding the foregoing, any Employee who is a "leased employee" (as described in Paragraph 1.1(x)) shall not be deemed a Covered Employee hereunder.

(p)   **Cuyahoga Valley Participant**

The meaning ascribed to such term in Exhibit K.

(q)   **DCP**

The LTV Steel – USWA Pension Plan, in effect from time to time, and, on and after December 1, 1999, the DCP Accounts.

ADMIN REC-0195

**(r)**  **DCP Account**

The meaning ascribed to such term in Paragraph 3.24(a).

**(s)**  **DCP Annuity Equivalent**

The meaning ascribed to such term in Paragraph 3.5.

**(t)**  **Earnings**

(1)  For the purposes of (c) above, the Participant's earnings as a Covered Employee (excluding any amount provided under a program of a Controlled Group Member which, by the provisions of such program, is to be excluded for the purpose of calculating benefits under the Plan, and including the amount resulting from a cost-of-living adjustment provision); calculated as if any decreases effective March 1, 1983 and April 1, 1986 in the standard hourly wage scales of rates for both incentive and non-incentive jobs, the hourly additives for incentive jobs and the standard bi-weekly scale of rates for salaried jobs had not occurred; provided, however, that if a Participant shall have been absent from work because of absence granted by his Employing Company for Union business, to the extent a Union agreement applicable to such Participant requires earnings for such absence to be taken into account hereunder, such Participant's earnings for each month of such leave (and his W-2 earnings for the purpose of Paragraph 3.6(d)) shall, for the purpose of computing his pension only, be adjusted so as to be fairly representative ("fairly representative" for this purpose to be determined in accordance with the applicable Union agreement, if any) of his normal earnings had he not been so absent.

(2)  Any Participant who ceases to be a Covered Employee due to a transfer within the Controlled Group shall have his earnings for purposes of the Plan determined as above based on his earnings during employment as a Covered Employee. Any Participant who becomes a Covered Employee due to a transfer within the Controlled Group shall have his earnings for purposes of the Plan for any period of employment within the Controlled Group but not as a Covered Employee determined based on the definition of earnings under the defined benefit plan, if any, maintained by a Controlled Group Member that covered the Participant prior to such Participant's becoming a Covered Employee; provided that if such Participant was not covered by a defined benefit plan prior to such Participant's becoming a Covered Employee, the foregoing provision of this sentence shall not apply, and such Participant's earnings for purposes of the Plan shall be determined based on the definition of earnings contained in the defined contribution plan, if any, maintained by a Controlled Group Member that covered the Participant prior to such Participant's becoming a Covered Employee hereunder.

ADMIN REC-0196

(3)    Notwithstanding the foregoing provisions of this Paragraph 1.1(t), the annual Earnings for each Participant taken into account under this Paragraph for any Plan Year beginning on and after January 1, 1989 and before January 1, 1995 shall not exceed $200,000 and, effective for Plan Years beginning on and after January 1, 1995, such amount shall not exceed $150,000, as such amounts may be adjusted by the Commissioner of the Internal Revenue Service for increases in the cost of living in accordance with Section 401(a)(17) of the Code.

(u)    **1992 Earnings**

A Participant's Earnings excluding the amount resulting from a cost-of-living adjustment except for the first cost-of-living adjustment that was included in the base hourly or salary rates subsequent to April 30, 1974.

(v)    **Effective Date**

The effective date of the Plan, as herein amended and restated, is November 1, 1999.

(w)    **Eligible for Public Pension**

When a Participant is eligible to receive, or would upon application be eligible to receive, a Public Pension or would be so eligible except for an offset or suspension imposed by law.

(x)    **Employee**

A common-law employee of any Controlled Group Member and, to the extent required by Section 414(n) of the Code, any person who is a "leased employee" of a Controlled Group Member. For purposes of this Paragraph, a "leased employee" is any person who, pursuant to an agreement between a Controlled Group Member and any other person ("leasing organization"), has performed services for a Controlled Group Member on a substantially full time basis for a period of at least one year and, effective January 1, 1997, such services are performed under the primary direction or control of the Controlled Group Member. Contributions or benefits provided a leased employee by the leasing organization which are attributable to services performed for a Controlled Group Member will be treated as provided by the Controlled Group Member. A leased employee will not be considered an Employee of a Controlled Group Member, however, if (1) leased employees do not constitute more than 20% of the Controlled Group Member's nonhighly compensated work force (within the meaning of Section 414(n)(5)(C)(ii) of the Code) and (2) such leased employee is covered by a money purchase pension plan maintained by the leasing organization that provides (i) a nonintegrated employer contribution rate of at least 10% of compensation, including amounts contributed pursuant to a salary reduction agreement which are excludable from the leased employee's gross income under Sections 125, 402(a)(8), 402(h), or 403(b) of the Code, (ii) immediate participation, and (iii) full and immediate vesting.

ADMIN REC-0197

(y) **Employing Company and Employing Companies**

Except where otherwise provided, LTV Steel and/or any Controlled Group Member which adopts the Plan as hereinafter provided. The singular "Employing Company" is to include the plural where the context may require. As of the Effective Date, the Employing Companies are listed on Exhibit D hereto.

(z) **ERISA**

Employee Retirement Income Security Act of 1974, as amended.

(aa) **Investment Manager**

An investment manager acting pursuant to Article IX. Each Investment Manager must (a) be either (1) registered as an investment adviser under the Investment Advisers Act of 1940, (2) effective July 8, 1997, not registered as an investment adviser under such Act by reason of Section 203A(a) of such Act, but registered as an investment adviser under the laws of the state in which it maintains its principal office and place of business and have filed a copy of such registration with the Secretary of Labor, (3) a bank as defined thereunder or (4) an insurance company qualified to manage, acquire or dispose of Plan assets under the laws of more than one state, and (b) acknowledge in writing that he or it is a fiduciary with respect to the Plan.

(bb) **LTV Steel**

LTV Steel Company, Inc., its corporate successors and any corporation or corporations with which it may be merged or consolidated.

(cc) **Normal Retirement Date**

The later of the Participant's 65th birthday or the completion of five years of Continuous Service.

(dd) **Participant**

Any person who meets the requirements for participation in the Plan as set forth in Article IA.

(ee) **PBGC Agreement**

The Settlement Agreement, as amended and restated, by and among the Pension Benefit Guaranty Corporation, the Corporation and each other member of the Initial LTV Group (as defined in such Agreement).

(ff) **Permanent Shutdown**

The permanent closing of a plant and/or department or subdivision thereof, including the permanent closing of a railroad.

**ADMIN REC-0198**

**(gg) Plan**

LTV Steel Hourly Pension Plan.

**(hh) Plan Administrator**

The Corporation.

**(ii) Plan Year**

The calendar year.

**(jj) Predecessor Plan**

The LTV Steel (J&L) Hourly Pension Plan, the LTV Steel (Republic) Hourly Pension Plan, the 1992 LTV Steel (J&L) Hourly Pension Plan, and/or the 1992 LTV Steel (Republic) Hourly Pension Plan. To the extent applicable, the term "Predecessor Plan" also means any prior version of the LTV Steel (J&L) Hourly Pension Plan, the LTV Steel (Republic) Hourly Pension Plan, the 1992 LTV Steel (J&L) Hourly Pension Plan, and/or the 1992 LTV Steel (Republic) Hourly Pension Plan, or any other plan that merges into any of such plans.

**(kk) Public Pension**

A benefit in the nature of an annuity, pension or payment of similar kind:

(1)    Under Title II of the Social Security Act or its successor (hereinafter "Social Security Act"), or

(2)    Under the Railroad Retirement Act or its successor (excluding, however, any supplemental annuity thereunder so long as such supplemental annuity is subject to reduction by reason of pension payable under the Plan), or under a provision of law hereafter established, if as to such benefit a Controlled Group Member has contributed directly or indirectly by tax or otherwise with respect to employment of the Participant by the Controlled Group Member.

**(ll) River Terminal Employee**

An Employee of The River Terminal Railway Company who is designated as a Covered Employee hereunder. An Employee of The River Terminal Railway Company classified as a clerk shall be referred to as a "River Terminal Clerk." An Employee of The River Terminal Railway Company classified as an electrician shall be referred to as a "River Terminal Electrician."

**(mm) Sold Facility Participant**

A Participant who was employed at a sold facility listed on Exhibit G hereto and, on the day after the sale date was employed by the buyer and whose benefits are determined in accordance with Exhibit G.

ADMIN REC-0199

**(nn)  Special Payment**

The payment described in Paragraph 3.2 payable to a Participant.

**(oo)  Tin Business Participant**

A Participant who was employed in connection with the LTV tin business and who became employed by USX Corporation, as described in Exhibit M hereto, and whose benefits are determined in accordance with Exhibit M.

**(pp)  Trust**

The trust created by or under the Plan.

**(qq)  Trustee**

The Trustee (and any successor Trustee) designated by the Corporation to administer the Trust.

**(rr)  Union**

Any union representing Participants in the Plan in accordance with a collective bargaining agreement.

**(ss)  Valuation Date**

The meaning ascribed to such term in Paragraph 3.24(a).

**1.2  When Retirement Occurs**

For purposes of the Plan, retirement shall be considered to occur:

(a)  In the case of a Participant who applies for a pension prior to a break in Continuous Service, on the date he specifies as the date he wishes to retire, which shall be a date on or after the latest of:

 (1)  The date of his request for retirement;

 (2)  The date of his attainment of eligibility for a pension under the Plan; or

 (3)  The last day for which he earned wages from a Controlled Group Member;

 but not later than the last day of his Continuous Service; and

(b)  In the case of a Participant who applies for a pension after a break in Continuous Service, on the last day of his Continuous Service, provided that on such last day he was eligible for an immediate or deferred pension under the Plan.

ADMIN REC-0200

(c) In the case of a Sold Facility Participant, retirement shall be considered to occur as provided in (a) and (b) above, as applicable; provided, however, that except as otherwise expressly specified in the Plan with regard to Sold Facility Participants, or as required by applicable law, a Sold Facility Participant's benefit shall be determined based on the Plan or the applicable Predecessor Plan as in effect on the date of the facility sale, subject to the provisions of any amendment of the Plan or the applicable Predecessor Plan to take into account the effect of such sale.

(d) In the case of a Tin Business Participant, retirement shall be considered to occur as provided in (a) and (b) above, as applicable; provided, however, that except as otherwise expressly specified in the Plan (including Exhibit M) with regard to Tin Business Participants, or as required by applicable law, a Tin Business Participant's benefit shall be determined based on the Plan as in effect on the date of the LTV tin business sale (as described in Exhibit M).

## 1.3 Provision of Benefits

Subject to the corporate action required to provide the pension benefits and to LTV Steel's obtaining approval from the Commissioner of Internal Revenue of the trust heretofore or hereafter established under the Plan to provide the pension benefits set forth in the Plan, as exempt under the applicable provisions of the Code or successors to them, the following pension benefits, subject to all other provisions of the Plan, shall be provided by the Employing Companies or caused to be provided by the Employing Companies for the Participants.

## 1.4 Construction.

(a) Gender and Number. The masculine gender, where appearing in the Plan, shall be deemed to include the feminine gender and the singular shall be deemed to include the plural, unless the context clearly indicates to the contrary.

(b) Governing Law. Interpretation and administration of the Plan shall be governed by federal law under ERISA, consistent with other applicable federal law, and to the extent not preempted by federal law, shall be governed (1) as to any trust holding plan assets, by the law of the state in which the Trustee is chartered, (2) as to any law governing personal property, legal death, decedent's estates, community property or related matters, by the law of the state in which the person affected by such law is domiciled and (3) as to all other matters, by the law of the State of Ohio.

(c) Effect of Amendment and Restatement. This amendment and restatement of the Plan shall constitute a continuation of the Plan. This amendment and restatement is generally effective November 1, 1999. However, certain provisions of this

ADMIN REC-0201

amendment and restatement of the Plan are effective as of some other date. The provisions of this amendment and restatement that are effective prior to November 1, 1999 shall be deemed to amend the corresponding provisions of the Plan, the LTV Steel (J&L) Hourly Pension Plan, the 1992 LTV Steel (J&L) Hourly Pension Plan, and the 1992 LTV Steel (Republic) Hourly Pension Plan as in effect before this amendment and restatement and all amendments thereto, but only as specifically applicable to Participants in such Plan or Predecessor Plans or as required by applicable law. Events occurring before the applicable effective date of any provision of this amended and restated Plan shall be governed by the applicable provision of the Plan, the LTV Steel (J&L) Hourly Pension Plan, the 1992 LTV Steel (J&L) Hourly Pension Plan or the 1992 LTV Steel (Republic) Hourly Pension Plan, as applicable, in effect on the date of the event. Notwithstanding anything to the contrary herein, except as otherwise expressly specified in the Plan with regard to Sold Facility Participants, or as required by applicable law, a Sold Facility Participant's benefit shall be determined based on the Plan or the applicable Predecessor Plan as in effect on the date of the facility sale, subject to the provisions of any amendment of the Plan or the applicable Predecessor Plan to take into account the effect of such sale.

(d)    Effect of Termination Prior to Effective Date. The benefits payable with respect to an Employee or former Employee whose termination of employment with the Controlled Group occurred before November 1, 1999 (and who is not reemployed by a Controlled Group Member on or after that date) shall be determined by and paid in accordance with the terms and provisions of the applicable Predecessor Plan as in effect at the date of such termination of employment, except to the extent that certain provisions of the Plan, as amended and restated as of November 1, 1999, apply to such individual as a result of applicable law or the context clearly requires the application of such provision to such individual.

ADMIN REC-0202

# ARTICLE IA

# PARTICIPATION

**1A.1    Participants On October 31, 1999**

Each Participant in a Predecessor Plan on October 31, 1999 shall be a Participant in the Plan. The rights of a person who was a Participant in a Predecessor Plan before November 1, 1999, who was not a Covered Employee on that date, shall continue to be governed by the terms of the applicable Predecessor Plan in effect when such person's retirement occurred unless he subsequently becomes a Covered Employee.

**1A.2    Subsequent Eligibility for Participation**

Each other Employee shall become a Participant on the date on which he:

(a)    Has attained 21 years of age;

(b)    Has completed one year of Continuous Service; and

(c)    Is a Covered Employee.

Each Employee who meets the eligibility requirements of this Paragraph 1A.2 shall automatically become a Participant in the Plan as of the day he becomes eligible; provided, however, that any River Terminal Employee who was first employed subsequent to December 31, 1992 is not eligible to participate in the Plan except as provided in Exhibit L.

**1A.3    Duration of Participation**

An Employee or former Employee shall remain a Participant so long as he (a) meets the requirements of Paragraph 1A.1 or 1A.2 or (b) has a non-forfeitable interest in the Plan. However, a Participant who ceases to meet the requirements of Paragraph 1A.1 or 1A.2 shall be a Participant in the Plan when he again meets the requirements of Paragraph 1A.2.

ADMIN REC-0203

# ARTICLE II

## ELIGIBILITY FOR PENSION

**2.1    Normal Retirement**

Any Participant who shall have had at least five years of Continuous Service and shall have attained the age of 65 years at the time of his break in Continuous Service shall be eligible to retire on or after July 31, 1999 (January 1, 1996 for River Terminal Employees) and shall upon his retirement (hereinafter "Normal Retirement") be eligible for a pension.

**2.2    62/15 Retirement**

Any Participant who has not attained the age of 65 years and who shall have had at least 15 years of Continuous Service and shall have attained the age of 62 years at the time of his break in Continuous Service shall be eligible to retire on or after July 31, 1999 (January 1, 1996 for River Terminal Employees) and shall upon his retirement (hereinafter "62/15 Retirement") be eligible for a pension.

**2.3    30-Year Retirement**

Any Participant who has not attained the age of 62 years and who shall have had at least 30 years of Continuous Service at the time of his break in Continuous Service shall be eligible to retire on or after July 31, 1999 (January 1, 1996 for River Terminal Employees) and shall upon his retirement (hereinafter "30-Year Retirement") be eligible for a pension.

**2.4    60/15 Retirement**

Any Participant who has not attained the age of 62 years and who shall have had at least 15 years, but less than 30 years, of Continuous Service and shall have attained the age of 60 years at the time of his break in Continuous Service shall be eligible to retire on or after July 31, 1999 (January 1, 1996 for River Terminal Employees) and shall upon his retirement (hereinafter "60/15 Retirement") be eligible for a pension.

**2.5    Permanent Incapacity Retirement**

Any Participant who shall have had at least 15 years of Continuous Service and who shall

ADMIN REC-0204

have become permanently incapacitated at the time of his break in Continuous Service shall be eligible to retire on or after July 31, 1999 (January 1, 1996 for River Terminal Employees) and shall upon his retirement (hereinafter "Permanent Incapacity Retirement") be eligible for a pension. A Participant shall be considered to be permanently incapacitated (as "permanently incapacitated" is used herein) only (a) if he has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in any employment, by his Employing Company, within the category of Employees in which he was last employed (for a Participant covered by a collective bargaining agreement, this is defined as any employment of the type covered by such collective bargaining agreement), and (b) after such total disability shall have continued for a period of five consecutive months and, in the opinion of a qualified physician, it will be permanent and continuous during the remainder of his life. Incapacity contracted, suffered or incurred while the Participant was engaged in, or resulted from his having engaged in, a criminal enterprise, or resulting from future service in the armed forces and which prevents him from returning to employment with his Employing Company and for which he receives a military pension, shall not entitle a Participant to a pension under this Paragraph. Such pension shall be discontinued if such Participant shall cease to be permanently incapacitated prior to age 62. The permanency of incapacity may be verified by medical examination prior to age 62 at any reasonable time. Notwithstanding anything to the contrary, effective August 1, 1999 for retirements on or after July 31, 1999, if a Participant (other than a River Terminal Employee) has been granted disability benefits under Social Security with an award effective date during the period he was accruing Continuous Service or if a claim for such benefits is pending effective July 31, 1999 and is favorably resolved with an award effective date during the period he was accruing Continuous Service, such Participant shall be deemed to be permanently incapacitated hereunder.

## 2.6    70/80 Retirement

Any Participant who, at the time of his break in Continuous Service, has not attained the age of 62 years and who shall have had at least 15 years of Continuous Service and (a) shall have attained the age of 55 years and whose combined age and years of Continuous Service shall equal 70 or more, or (b) whose combined age and years of Continuous Service shall equal 80 or more, and:

(1)    Whose Continuous Service is broken by reason of a Permanent Shutdown or by reason of a layoff or physical disability; or

(2)    Whose Continuous Service is not broken and who is absent from work by reason of a layoff resulting from his election to be placed on layoff status pursuant to the provisions applicable in the event of a Permanent Shutdown; or

(3)    Whose Continuous Service is not broken and who, while on layoff status by reason of his election to be placed on such status pursuant to the provisions applicable in the event of a Permanent Shutdown, accepts a job with an

**ADMIN REC-0205**

Employing Company and, prior to the expiration of 90 consecutive calendar days from the first day worked on such job, elects to retire,

shall be eligible to retire on or after July 31, 1999 (January 1, 1996 for River Terminal Employees) and shall upon his retirement (hereinafter "70/80 Retirement") be eligible for a pension.

## 2.7 Rule-of-65 Retirement

(a) Any Participant who shall have had at least 20 years of Continuous Service as of his last day worked and, at the time of his break in Continuous Service, (1) who has not attained the age of 55 years, and (2) whose combined age and years of Continuous Service shall equal 65 or more but less than 80, and:

   (i) whose Continuous Service is broken by reason of a layoff or disability; or

   (ii) whose Continuous Service is not broken and who is absent from work by reason of a layoff resulting from his election to be placed on layoff status pursuant to the provisions applicable in the event of a Permanent Shutdown,

and who has not been offered suitable long-term employment, shall be eligible to retire on or after July 31, 1999 (January 1, 1996 for River Terminal Employees), and shall upon his retirement (hereinafter "Rule-of-65 Retirement") be eligible for a pension; provided, however, that if at the time of application for retirement his Employing Company has not yet determined whether the Participant will be offered suitable long-term employment, the Participant will not be eligible to retire until the earlier of the date on which the Employing Company advises the Participant that he will not be offered suitable long-term employment or the date on which the Participant incurs a break in Continuous Service.  For the purpose of eligibility for a Rule-of-65 Retirement, "last day worked" shall be determined without regard to any period of active employment resulting from the Participant's having been granted a transfer under the Interplant Job Opportunities Program provisions contained in an agreement with a Union if the Participant subsequently elects under such agreement to terminate his employment (or layoff status) at the new plant and to return to his home plant unless he elects to so return while on layoff that commenced after completion of six months of employment at the new plant.

(b) Unless a Participant is covered by an agreement between an Employing Company and a Union which specifically defines suitable long-term employment for the purposes of this Paragraph, a job offered to a Participant by an Employing Company will normally be considered suitable long-term employment if:

   (1) The Participant is physically qualified to perform the job;

ADMIN REC-0206

(2)    The Participant has or can acquire through training the ability and skills needed to perform the job;

(3)    The job offered is not a temporary job or a job known to be of limited duration;

(4)    The employment location of the job offered is within 250 miles of the Participant's previous employment location;

(5)    The rate of pay for the job is at least (i) 70% of the Participant's previous base rate of pay if the location of the job offered is within 70 miles of the Participant's previous employment location, or (ii) 90% of the Participant's previous base rate of pay if the employment location of the job offered is more than 70 miles from the Participant's previous employment location; and

(6)    The overall employee benefits package for the job offered is generally equivalent to the overall employee benefits package at the Participant's previous employment location.

(c)    A Participant receiving an offer of suitable long-term employment will be provided with a written explanation of his rights and obligations in connection with such offer, including the number of days in which the Participant must respond to such offer. A Participant otherwise eligible for Rule-of-65 Retirement who refuses an offer of suitable long-term employment by an Employing Company will be ineligible for Rule-of-65 Retirement.

(d)    An Employing Company may offer a Participant who is otherwise eligible or could become eligible for a Rule-of-65 Retirement a job which the Employing Company declares is not suitable long-term employment for such Participant. The Participant may elect to accept or refuse such offer; if he refuses such offer, the refusal will have no effect on his eligibility for a Rule-of-65 Retirement.

## 2.8    Deferred Vested Pension

Any Participant not eligible to receive a pension under any other provision of this Article whose Continuous Service is broken on or after July 31, 1999 (January 1, 1996 for River Terminal Employees) for any reason and who, at the time of such break in Continuous Service shall have had at least five years of Continuous Service shall be eligible for a pension (hereinafter "Deferred Vested Pension"), subject to the provisions relating to application set forth in Paragraph 3.14 and commencement of pension set forth in Paragraphs 3.15(f) and (g). At the time of such break in Continuous Service, the Plan Administrator shall furnish such a Participant an appropriate written notice of the eligibility requirements and his relevant employment data.

ADMIN REC-0207

**2.9    Nonduplication of Pension**

Notwithstanding anything to the contrary contained in the Plan, a Participant shall be eligible for and entitled to receive a pension pursuant to only one of the foregoing Paragraphs of this Article with respect to any retirement.

**2.10    No Payment While Eligible for Sickness and Accident Benefits**

Notwithstanding anything to the contrary contained in the Plan, no pension (including any Special Payment) shall be payable for any month with respect to which the Participant claims and is eligible for sickness or accident benefits provided under a program of his Employing Company or similar benefits provided under law.

**2.11    Cuyahoga Valley Participants**

Notwithstanding anything to the contrary in the Plan, this Article II shall not apply to Cuyahoga Valley Participants.

ADMIN REC-0208

# ARTICLE III

# AMOUNT OF PENSION

## 3.1    Types of Pension Payments

A pension granted pursuant to Article II shall consist of:

(a)    A special initial pension amount (hereinafter "Special Payment"), except in the case of any Participant eligible for a pension for Permanent Incapacity Retirement or a Deferred Vested Pension (or as provided in Paragraph 6.5(a)); and

(b)    A regular pension amount (hereinafter "Regular Pension"), payable in monthly installments;

provided in accordance with the provisions of this Article.

## 3.2    Special Payment

(a)    The amount of Special Payment for a Participant who was entitled to receive a vacation in the year of retirement or who would have been entitled to receive a vacation in the year of retirement except for such retirement shall be calculated as follows:

    (1)    The number of weeks of vacation to which the Participant was or would have been entitled will be determined.

    (2)    The number determined in (1) above shall be subtracted from 13 (14 in the case of a Participant eligible for more than four weeks of regular vacation in the year of retirement).

    (3)    The number determined in (1) above shall be multiplied by the Participant's vacation pay.

    (4)    The result determined in (2) above shall be multiplied by the Participant's adjusted vacation pay.

    (5)    The amounts calculated in (3) and (4) above shall be added together and then reduced by all vacation pay the Participant received in such year.

    (6)    The amount determined in (5) above shall then be reduced by:

        (i)    the greater of Regular Pension as determined in Paragraph 3.6(b) or the Transition Benefit as determined in Paragraph 3.7(b)(3), if

ADMIN REC-0209

applicable, payable for the first three full calendar months following the month of retirement; and

(ii)    the sum of three months of DCP Annuity Equivalents as determined in Paragraph 3.5.

This Subparagraph (6) shall be applicable with respect to a River Terminal Employee only if such River Terminal Employee retires on or after January 1, 1996.

(b)    The amount of Special Payment for a Participant entitled to such Payment but not in any event entitled to vacation in the year of retirement shall be calculated under the formula established in (a) above as though the Participant had retired in the year in which he was last entitled to a vacation.

(c)    The Special Payment for a Participant entitled to such Payment shall be payable for the first three full calendar months following the month in which retirement occurs. Such Special Payment shall be made in a lump sum within the first full calendar month following the month in which retirement occurs or within the month following the month in which application for pension is made, whichever is later.

(d)    With respect to any Participant referred to in the proviso contained in Paragraph 1.1(t)(1), if any such Participant makes application for pension in a year in which he is not in any event entitled to vacation, for the purpose of determining the amount of his Special Payment, the vacation pay to which he would have been entitled had he not been on leave of absence shall be used for determination of the rate to be used in calculating the Special Payment and the amount deductible therefrom for vacation.

(e)    As used in the Plan, the word "vacation" means the vacation provided under the vacation plan applicable to the Participant; "vacation pay" and "adjusted vacation pay" mean the pay for a week of such vacation; provided that, prior to January 1, 1996, "adjusted vacation pay" for a River Terminal Employee means vacation pay excluding the cost-of-living adjustment of $4.72 per hour ($3.58 per hour for River Terminal Clerks and River Terminal Electricians).

## 3.3    1987 Benefit and 1992 Benefit

(a)    Frozen Accrued Benefit as of December 31, 1992 (1992 Benefit)

The 1992 Benefit used in the calculation of Regular Pension in Paragraph 3.6 shall be determined in accordance with (1), (2) or (3) below, whichever is highest

ADMIN REC-0210

(1)    An amount equal to the Participant's 1992 Average Monthly Earnings multiplied by:

    (i)    for a Participant with more than 30 years of Continuous Service as of December 31, 1992, 34.65% plus a percentage determined by multiplying 1.26% by the number of years (and fractions thereof calculated to the nearest month) of his Continuous Service in excess of 30 years as of December 31, 1992; or

    (ii)   for a Participant with 30 or less years of Continuous Service as of December 31, 1992, 1.155% multiplied by the number of years (and fractions thereof calculated to the nearest month) of his Continuous Service as of December 31, 1992.

The monthly amount shall be adjusted in accordance with (c) below.

(2)    An amount equal to:

    (i)    for a Participant with more than 30 years of Continuous Service as of December 31, 1992, $547.50 ($427.50 for a River Terminal Clerk or a River Terminal Electrician) plus an amount determined by multiplying $20.50 ($16.50 for a River Terminal Clerk or a River Terminal Electrician) by the number of years (and fractions thereof calculated to the nearest month) of his Continuous Service in excess of 30 years as of December 31, 1992; or

    (ii)   for a Participant with more than 15, but not more than 30 years of Continuous Service as of December 31, 1992, $262.50 ($202.50 for a River Terminal Clerk or a River Terminal Electrician) plus an amount determined by multiplying $19.00 ($15.00 for a River Terminal Clerk or a River Terminal Electrician) by the number of years (and fractions thereof calculated to the nearest month) of his Continuous Service in excess of 15 years as of December 31, 1992, or

    (iii)  for a Participant with at least five, but not more than 15 years of Continuous Service as of December 31, 1992, $87.50 ($67.50 for a River Terminal Clerk or a River Terminal Electrician) plus an amount determined by multiplying $17.50 ($13.50 for a River Terminal Clerk or a River Terminal Electrician) by the number of years (and fractions thereof calculated to the nearest month) of his Continuous Service in excess of five years as of December 31, 1992.

The monthly amount shall be adjusted in accordance with (c) below.

ADMIN REC-0211

(3)    For a Participant, including a River Terminal Clerk but excluding any other River Terminal Employee (unless such River Terminal Employee retires on or after January 1, 1996), an amount equal to:

    (i)    for a Participant who retires after attainment of age 62 but prior to attainment of age 63, the Participant's 1992 Average Monthly Earnings multiplied by 1.20% and multiplied by the number of years (and fractions thereof calculated to the nearest month) of his Continuous Service as of December 31, 1992.

    (ii)   for a Participant who retires after attainment of age 63 but prior to attainment of age 63 and six months, the Participant's 1992 Average Monthly Earnings multiplied by 1.25% and multiplied by the number of years (and fractions thereof calculated to the nearest month) of his Continuous Service as of December 31, 1992.

    (iii)  for a Participant who retires after attainment of age 63 and six months, but prior to attainment of age 64, the Participant's 1992 Average Monthly Earnings multiplied by 1.30% and multiplied by the number of years (and fractions thereof calculated to the nearest month) of his Continuous Service as of December 31, 1992.

    (iv)   for a Participant who retires after attainment of age 64, the Participant's 1992 Average Monthly Earnings multiplied by the appropriate percentage from the table below and multiplied by the number of years (and fractions thereof calculated to the nearest month) of his Continuous Service as of December 31, 1992:

| RETIREMENT AGE | PERCENTAGE |
| --- | --- |
| 64 | 1.35% |
| 64-1/12 | 1.3625 |
| 64-2/12 | 1.375 |
| 64-3/12 | 1.3875 |
| 64-4/12 | 1.40 |
| 64-5/12 | 1.4125 |
| 64-6/12 | 1.425 |
| 64-7/12 | 1.4375 |
| 64-8/12 | 1.45 |
| 64-9/12 | 1.4625 |
| 64-10/12 | 1.475 |
| 64-11/12 | 1.4875 |
| 65 and above | 1.50 |

    (v)    for a Participant who retires or otherwise incurs a break in Continuous Service prior to attainment of age 62, the Participant's

ADMIN REC-0212

1992 Average Monthly Earnings multiplied by 1.50% and multiplied by 75.28% and multiplied by the number of years (and fractions thereof calculated to the nearest month) of his Continuous Service as of December 31, 1992.

(vi)    for a Participant who incurs a break in Continuous Service after the attainment of age 62 with eligibility for a Deferred Vested Pension, the Participant's 1992 Average Monthly Earnings multiplied by the percentage from (i), (ii), (iii) or (iv) above applicable as of the date of the break in Continuous Service and multiplied by the number of years (and fractions thereof calculated to the nearest month) of his Continuous Service as of December 31, 1992.

The monthly amount shall be adjusted in accordance with (c) below.

(b)    Accrued Benefit as of January 12, 1987 (1987 Benefit)

The 1987 Benefit used in the calculation of any Regular Pension in Paragraph 3.6 shall be a monthly amount determined in accordance with (a)(1) or (a)(2) above, whichever is higher subject to the following:

(1)    Continuous Service shall be calculated as of January 12, 1987.

(2)    Earnings shall be calculated under the provisions of Paragraph 1.1(d) using (i) 1992 Earnings prior to January 13, 1987 rather than December 31, 1992, (ii) a calculation period of five consecutive calculation years rather than three and (iii) a divisor of 60 rather than 36.

The monthly amount shall be adjusted in accordance with (c) below.

(c)   (1)    For a 60/15 Retirement, the monthly amount determined in (a) and (b) above is applicable only if Regular Pension commences after attainment of age 62 (hereinafter "Deferred 60/15 Pension"), and for any Deferred Vested Pension the monthly amount determined in (a) and (b) above is applicable only if:

(i)    with respect to a Participant who incurs a break in Continuous Service after attaining age 40 and completing at least 15 years of Continuous Service, Regular Pension commences after the Participant has attained age 62; or

(ii)    with respect to a Participant who incurs a break in Continuous Service either prior to attaining age 40, or after attaining age 40 and before completing at least 15 years of Continuous Service, Regular Pension commences after the Participant has attained age 65.

ADMIN REC-0213

(2)  A Participant may in his application for 60/15 Pension elect an immediate pension, and a Participant who incurs a break in Continuous Service after attaining age 40 and completing at least 15 years of Continuous Service who is entitled to a Deferred Vested Pension may, pursuant to Paragraph 3.14, make application for commencement of pension payments after attainment of age 60 and prior to attainment of age 62, and in either such case the monthly amount calculated under (a) and (b) above shall be reduced to the Actuarial Equivalent thereof in accordance with the following:

| AGE AT START OF PENSION | PERCENTAGE |
|---|---|
| 60 | 83.82% |
| 60-1/12 | 84.46 |
| 60-2/12 | 85.09 |
| 60-3/12 | 85.73 |
| 60-4/12 | 86.36 |
| 60-5/12 | 87.00 |
| 60-6/12 | 87.64 |
| 60-7/12 | 88.27 |
| 60-8/12 | 88.91 |
| 60-9/12 | 89.54 |
| 60-10/12 | 90.18 |
| 60-11/12 | 90.81 |
| 61 | 91.45 |
| 61-1/12 | 92.16 |
| 61-2/12 | 92.87 |
| 61-3/12 | 93.59 |
| 61-4/12 | 94.30 |
| 61-5/12 | 95.01 |
| 61-6/12 | 95.72 |
| 61-7/12 | 96.44 |
| 61-8/12 | 97.15 |
| 61-9/12 | 97.86 |
| 61-10/12 | 98.57 |
| 61-11/12 | 99.29 |
| 62 | 100.00 |

The above percentages shall be applied on the basis of the Participant's age to the nearest month.

(3)  A Participant who incurs a break in Continuous Service either prior to attaining age 40, or after attaining age 40 and before completing at least 15 years of Continuous Service, and who is entitled to a Deferred Vested

ADMIN REC-0214

Pension may, pursuant to Paragraph 3.14, make application for commencement of pension payments after attainment of age 60 and prior to attainment of age 65, and in such case the monthly amount calculated under (a) and (b) above shall be reduced to the Actuarial Equivalent thereof in accordance with the following:

| AGE AT START OF PENSION | PERCENTAGE |
|---|---|
| 60 | 63.10% |
| 60-1/12 | 63.58 |
| 60-2/12 | 64.06 |
| 60-3/12 | 64.54 |
| 60-4/12 | 65.02 |
| 60-5/12 | 65.50 |
| 60-6/12 | 65.98 |
| 60-7/12 | 66.45 |
| 60-8/12 | 66.93 |
| 60-9/12 | 67.41 |
| 60-10/12 | 67.89 |
| 60-11/12 | 68.37 |
| 61 | 68.85 |
| 61-1/12 | 69.38 |
| 61-2/12 | 69.92 |
| 61-3/12 | 70.45 |
| 61-4/12 | 70.99 |
| 61-5/12 | 71.53 |
| 61-6/12 | 72.06 |
| 61-7/12 | 72.60 |
| 61-8/12 | 73.14 |
| 61-9/12 | 73.67 |
| 61-10/12 | 74.21 |
| 61-11/12 | 74.75 |
| 62 | 75.28 |
| 62-1/12 | 75.89 |
| 62-2/12 | 76.49 |
| 62-3/12 | 77.10 |
| 62-4/12 | 77.70 |
| 62-5/12 | 78.30 |
| 62-6/12 | 78.91 |
| 62-7/12 | 79.51 |
| 62-8/12 | 80.11 |
| 62-9/12 | 80.71 |
| 62-10/12 | 81.32 |
| 62-11/12 | 81.93 |
| 63 | 82.53 |

ADMIN REC-0215

| AGE AT START OF PENSION | PERCENTAGE |
|---|---|
| 63-1/12 | 83.21 |
| 63-2/12 | 83.89 |
| 63-3/12 | 84.58 |
| 63-4/12 | 85.26 |
| 63-5/12 | 85.94 |
| 63-6/12 | 86.62 |
| 63-7/12 | 87.30 |
| 63-8/12 | 87.99 |
| 63-9/12 | 88.67 |
| 63-10/12 | 89.35 |
| 63-11/12 | 90.03 |
| 64 | 90.72 |
| 64-1/12 | 91.49 |
| 64-2/12 | 92.26 |
| 64-3/12 | 93.04 |
| 64-4/12 | 93.81 |
| 64-5/12 | 94.58 |
| 64-6/12 | 95.36 |
| 64-7/12 | 96.13 |
| 64-8/12 | 96.91 |
| 64-9/12 | 97.68 |
| 64-10/12 | 98.45 |
| 64-11/12 | 99.23 |
| 65 | 100.00 |

The above percentages shall be applied on the basis of the Participant's age to the nearest month.

### 3.4 Floor Benefit and Lifetime Minimum Benefit

(a)    The Floor Benefit used in the calculation of Regular Pension in Paragraph 3.6 for a Participant shall be a monthly amount equal to the greatest of (1), (2), (3) or (4), as applicable.

(1)    Effective August 1, 1999, for retirements on or after July 31, 1999, for a Participant other than a River Terminal Employee, an amount (hereinafter "percent pension") equal to the Participant's Average Monthly Earnings multiplied by:

(i)    for a Participant with more than 30 years of Continuous Service, 34.65% plus a percentage determined by multiplying 1.26% by the number of years (and fractions thereof calculated to the nearest

month) of his Continuous Service in excess of 30 years; or

     (ii)    for a Participant with 30 or less years of Continuous Service, 1.155% multiplied by the number of years (and fractions thereof calculated to the nearest month) of his Continuous Service.

  (2)    Effective August 1, 1999, for retirements on or after July 31, 1999, for a Participant other than a River Terminal Employee, an amount (hereinafter "minimum pension") equal to:

     (i)    For months after July 1999 and prior to August 2000:

         (A)    for a Participant with more than 30 years of Continuous Service, $1,050.00 plus an amount determined by multiplying $35.00 by the number of years (and fractions thereof calculated to the nearest month) of his Continuous Service in excess of 30 years; or

         (B)    for a Participant with 30 or less years of Continuous Service, an amount determined by multiplying $35.00 by the number of years (and fractions thereof calculated to the nearest month) of his Continuous Service.

     (ii)    For months after July 2000 and prior to August 2002:

         (A)    for a Participant with more than 30 years of Continuous Service, $1,575.00 plus an amount determined by multiplying $70.00 by the number of years (and fractions thereof calculated to the nearest month) of his Continuous Service in excess of 30 years; or

         (B)    for a Participant with 30 or less years of Continuous Service, an amount determined by multiplying $52.50 by the number of years (and fractions thereof calculated to the nearest month) of his Continuous Service.

     (iii)    For months after July 2002:

         (A)    for a Participant with more than 30 years of Continuous Service, $1,687.50 plus an amount determined by multiplying $75.00 by the number of years (and fractions thereof calculated to the nearest month) of his Continuous Service in excess of 30 years; or

         (B)    for a Participant with 30 or less years of Continuous Service, an amount determined by multiplying $56.25 by

ADMIN REC-0217

the number of years (and fractions thereof calculated to the nearest month) of his Continuous Service.

(3)    For a Participant other than a River Terminal Employee, the monthly 1992 Benefit calculated under the provisions of Paragraph 3.3 above multiplied by the ratio of total years of Continuous Service (and fractions thereof calculated to the nearest month) to years of Continuous Service (and fractions thereof calculated to the nearest month) accrued as of December 31, 1992.

(4)    For a River Terminal Employee who retires on or after January 1, 1996, the greater of:

(i)    a monthly benefit of $33.50 ($35.00 for retirements on or after January 1, 1997) multiplied by the total years of Continuous Service; or

(ii)    the accrued benefit under the Plan as of December 31, 1992 multiplied by the ratio of total Continuous Service to Continuous Service as of December 31, 1992.

The monthly amount shall be adjusted in accordance with (c) below.

(b)    The Lifetime Minimum Benefit used in the calculation of any Regular Pension in Paragraph 3.6 for a Participant shall be a monthly amount equal to:

(1)    For a Participant other than a River Terminal Employee eligible for the Lifetime Minimum Benefit who at retirement has completed 30 or more years of Continuous Service, the monthly amount set forth in the table below:

| ATTAINED RETIREMENT AGE | MONTHLY AMOUNT |
|---|---|
| 54 and under | $1,050 |
| 55 | $1,250 |
| 56 | $1,250 |
| 57 | $1,250 |
| 58 | $1,250 |
| 59 | $1,250 |
| 60 | $1,250 |
| 61 | $1,350 |
| 62 | $1,350 |
| 63 | $1,450 |
| 64 | $1,550 |
| 65 and above | $1,650 |

ADMIN REC-0218

(2)    For a Participant who is a River Terminal Employee who retires on or after January 1, 1996 and who at retirement has completed 30 or more years of Continuous Service and has not attained age 55, a monthly amount of $1,050.

(3)    For a Participant who is a River Terminal Employee who retires on or after January 1, 1996 and who at retirement has completed 30 or more years of Continuous Service and has attained a minimum age of 55, a monthly amount of $1,250.

(4)    For a Participant who retires or otherwise incurs a break in Continuous Service prior to the completion of 30 years of Continuous Service, the monthly amount at age 65 and above applicable to the year in which retirement occurs multiplied by a fraction, the numerator of which is the years of Continuous Service (and fractions thereof calculated to the nearest month) and the denominator of which is 30. The monthly amount shall be reduced for age at start of pension (which shall not be prior to age 60) to the Actuarial Equivalent in accordance with the percentages in (c)(3) below.

(5)    Notwithstanding any other provision of this Paragraph 3.4(b), the pension amount provided for in this Paragraph 3.4(b) shall not be applicable in the calculation of Regular Pension under Paragraph 3.6 for any Participant eligible to receive a Transition Benefit under the provisions of Paragraph 3.7(b) for any month in which the Transition Benefit is payable.

(6)    Notwithstanding any other provision of this Paragraph 3.4(b), the pension amount provided for in this Paragraph 3.4(b) shall not be applicable in the calculation of Regular Pension under Paragraph 3.6 for any Participant eligible to receive either (i) an increase to Regular Pension for a Permanent Incapacity Retirement paid under the provisions of Paragraph 3.7(a) of the Plan or (ii) an increase to Regular Pension for a 70/80 or Rule-of-65 Retirement, which increase is paid under the provisions of Paragraphs 3.7(a) or 3.8, respectively, of the Plan effective as soon as practicable after January 1, 2000, and previously under the provisions of the LTV Steel Supplemental Pension Plan.

(c)    (1)    For a 60/15 Retirement the monthly amount determined in (a) above is applicable only if Regular Pension commences after attainment of age 62 (hereinafter "Deferred 60/15 Pension"), and for any Deferred Vested Pension the monthly amount determined in (a) above is applicable only if:

(i)    with respect to a Participant who incurs a break in Continuous Service after attaining age 40 and completing at least 15 years of

ADMIN REC-0219

Continuous Service, Regular Pension commences after the Participant has attained age 62; or

(ii)  with respect to a Participant who incurs a break in Continuous Service either prior to attaining age 40, or after attaining age 40 and before completing at least 15 years of Continuous Service, Regular Pension commences after the Participant has attained age 65.

(2)  A Participant may in his application for 60/15 Pension elect an immediate pension, and a Participant who incurs a break in Continuous Service after attaining age 40 and completing at least 15 years of Continuous Service who is entitled to a Deferred Vested Pension may, pursuant to Paragraph 3.14, make application for commencement of pension payments after attainment of age 60 and prior to attainment of age 62, and in either such case the monthly amount calculated under (a) above shall be reduced to the Actuarial Equivalent thereof in accordance with the following:

| AGE AT START OF PENSION | PERCENTAGE |
|---|---|
| 60 | 83.82% |
| 60-1/12 | 84.46 |
| 60-2/12 | 85.09 |
| 60-3/12 | 85.73 |
| 60-4/12 | 86.36 |
| 60-5/12 | 87.00 |
| 60-6/12 | 87.64 |
| 60-7/12 | 88.27 |
| 60-8/12 | 88.91 |
| 60-9/12 | 89.54 |
| 60-10/12 | 90.18 |
| 60-11/12 | 90.81 |
| 61 | 91.45 |
| 61-1/12 | 92.16 |
| 61-2/12 | 92.87 |
| 61-3/12 | 93.59 |
| 61-4/12 | 94.30 |
| 61-5/12 | 95.01 |
| 61-6/12 | 95.72 |
| 61-7/12 | 96.44 |
| 61-8/12 | 97.15 |
| 61-9/12 | 97.86 |
| 61-10/12 | 98.57 |
| 61-11/12 | 99.29 |
| 62 | 100.00 |

ADMIN REC-0220

The above percentages shall be applied on the basis of the Participant's age to the nearest month.

(3)    A Participant who incurs a break in Continuous Service either prior to attaining age 40, or after attaining age 40 and before completing at least 15 years of Continuous Service, and who is entitled to a Deferred Vested Pension may, pursuant to Paragraph 3.14, make application for commencement of pension payments after attainment of age 60 and prior to attainment of age 65, and in such case the monthly amount calculated under (a) above shall be reduced to the Actuarial Equivalent thereof in accordance with the following:

| AGE AT START OF PENSION | PERCENTAGE |
|---|---|
| 60 | 63.10% |
| 60-1/11 | 63.58 |
| 60-2/12 | 64.06 |
| 60-3/12 | 64.54 |
| 60-4/12 | 65.02 |
| 60-5/12 | 65.50 |
| 60-6/12 | 65.98 |
| 60-7/12 | 66.45 |
| 60-8/12 | 66.93 |
| 60-9/12 | 67.41 |
| 60-10/12 | 67.89 |
| 60-11/12 | 68.37 |
| 61 | 68.85 |
| 61-1/12 | 69.38 |
| 61-2/12 | 69.92 |
| 61-3/12 | 70.45 |
| 61-4/12 | 70.99 |
| 61-5/12 | 71.53 |
| 61-6/12 | 72.06 |
| 61-7/12 | 72.60 |
| 61-8/12 | 73.14 |
| 61-9/12 | 73.67 |
| 61-10/12 | 74.21 |
| 61-11/12 | 74.75 |
| 62 | 75.28 |
| 62-1/12 | 75.89 |
| 62-2/12 | 76.49 |
| 62-3/12 | 77.10 |
| 62-4/12 | 77.70 |
| 62-5/12 | 78.30 |

ADMIN REC-0221

| AGE AT START OF PENSION | PERCENTAGE |
|---|---|
| 62-6/12 | 78.91 |
| 62-7/12 | 79.51 |
| 62-8/12 | 80.11 |
| 62-9/12 | 80.71 |
| 62-10/12 | 81.32 |
| 62-11/12 | 81.93 |
| 63 | 82.53 |
| 63-1/12 | 83.21 |
| 63-2/12 | 83.89 |
| 63-3/12 | 84.58 |
| 63-4/12 | 85.26 |
| 63-5/12 | 85.94 |
| 63-6/12 | 86.62 |
| 63-7/12 | 87.30 |
| 63-8/12 | 87.99 |
| 63-9/12 | 88.67 |
| 63-10/12 | 89.35 |
| 63-11/12 | 90.03 |
| 64 | 90.72 |
| 64-1/12 | 91.49 |
| 64-2/12 | 92.26 |
| 64-3/12 | 93.04 |
| 64-4/12 | 93.81 |
| 64-5/12 | 94.58 |
| 64-6/12 | 95.36 |
| 64-7/12 | 96.13 |
| 64-8/12 | 96.91 |
| 64-9/12 | 97.68 |
| 64-10/12 | 98.45 |
| 64-11/12 | 99.23 |
| 65 | 100.00 |

The above percentages shall be applied on the basis of the Participant's age to the nearest month.

3.5   **DCP Annuity Equivalents**

The DCP Annuity Equivalents used in the calculation of Regular Pension in Paragraph 3.6 shall be determined in accordance with the following:

(a)    For a Participant who retires on other than a Deferred Vested or a Deferred 60/1 Pension:

**ADMIN REC-0222**

(1)    Determine the 1992, Additive and Post-1992 DCP Accounts as follows:

    (i)    1992 DCP Account:  The DCP account balance as of December 31, 1992 attributable to Company Contributions, exclusive of any 50% increases in monthly contribution amounts for Employees who had less than 10 years of Continuous Service as of January 13, 1987, and earnings thereon as of the end of the month in which the Participant retires.

    (ii)    Additive DCP Account:  The DCP account balance, which may be zero, as of December 31, 1992 attributable to 50% increases in monthly contribution amounts for Employees who had less than 10 years of Continuous Service as of January 13, 1987, and earnings thereon as of the end of the month in which the Participant retires.

    (iii)    Post-1992 DCP Account:  The DCP account balance attributable to Company Contributions subsequent to December 31, 1992 and earnings thereon, as of the end of the month in which the Participant retires.

(2)    Determine the DCP Immediate Annuity Factor as follows:

    (i)    Effective August 1, 1999, for retirements on or after July 31, 1999:

        (A)    determine the annuity factor with a five-year term certain and life annuity without cash refund based on the Participant's retirement age to the nearest month and the following assumptions:

            (I)    an annual interest rate of 8.5%;

            (II)    the 1984 George B. Buck Mortality Table set forward 2 years, 95% male/5% female;

            (III)    benefits are paid at the beginning of each month in the form of a five-year term certain and life annuity without a cash refund;

        (B)    and multiply by the applicable Surviving Spouse Increase Factor shown on Exhibit C.

    (ii)    Effective for Participants who are River Terminal Employees who retire on or after January 1, 1996, but prior to July 31, 1999, the applicable annuity purchase rate shall be as determined under the

ADMIN REC-0223

applicable Predecessor Plan, but used for conversion of a lump-sum amount to a five-year term certain and life annuity.

(3)  Determine the Immediate 1992, Immediate Additive and Immediate Post-1992 DCP Annuity Equivalents as follows:

    (i)  Immediate 1992 DCP Annuity Equivalent:  Divide the 1992 DCP Account by the DCP Immediate Annuity Factor.

    (ii)  Immediate Additive DCP Annuity Equivalent (which may be zero): Divide the Additive DCP Account by the DCP Immediate Annuity Factor.

    (iii)  Immediate Post-1992 DCP Annuity Equivalent:  Divide the Post-1992 DCP Account by the DCP Immediate Annuity Factor.

(b)  For a Participant who retires on a Deferred Vested or a Deferred 60/15 Pension:

(1)  Determine the Deferred 1992, Deferred Additive and Deferred Post-1992 DCP Accounts, as follows:

    (i)  determine the 1992, Additive and Post-1992 DCP Accounts in the same manner as in (a) above as of the end of the month in which the Participant elects to commence payment of any portion of his DCP Account.

    (ii)  project the 1992, Additive and Post-1992 DCP Accounts to the Participant's earliest unreduced retirement age (age 62 if at least age 40 with at least 15 years of Continuous Service; otherwise, age 65) using an annual interest rate of 8.5%, to establish respectively the Deferred 1992, Deferred Additive and Deferred Post-1992 DCP Accounts.

(2)  Determine the DCP Deferred Annuity Factor as follows:

    (i)  effective August 1, 1999 for retirements on or after July 31, 1999, determine the annuity factor with a five-year term certain and life annuity without cash refund ("Annuity Factor")  based on the Participant's earliest unreduced retirement age (age 62 if at least age 40 with at least 15 years of Continuous Service; age 65 otherwise) and the following assumptions:

        (A)  an annual interest rate of 8.5%.

        (B)  the 1984 George B. Buck Mortality Table set forward two years 95% male/5% female.

ADMIN REC-0224

(C)     benefits are paid at the beginning of each month in the form of a five-year term certain and life annuity without cash refund;

provided, however, that (I) for Participants who retire on a Deferred Vested Pension, the applicable Annuity Factor described in (i) above shall be based on a monthly single life annuity, with benefits payable at the beginning of each month, and (II) for Participants who are River Terminal Employees who retire on or after January 1, 1996, but prior to July 31, 1999, the applicable annuity factor shall be as determined under the applicable Predecessor Plan but shall be based on a five-year term certain and life annuity.

(ii)     for a Deferred 60/15 Pension multiply the Annuity Factor by the applicable Surviving Spouse Increase Factor shown on Exhibit C.

(3)     Determine the Deferred 1992, Deferred Additive and Deferred Post-1992 DCP Annuity Equivalents as follows:

(i)     Deferred 1992 DCP Annuity Equivalent:  Divide the Deferred 1992 DCP Account by the DCP Deferred Annuity Factor.

(ii)     Deferred Additive DCP Annuity Equivalent (which may be zero): Divide the Deferred Additive DCP Account by the DCP Deferred Annuity Factor.

(iii)     Deferred Post-1992 DCP Annuity Equivalent:  Divide the Deferred Post-1992 DCP Account by the DCP Deferred Annuity Factor.

(4)     For a Participant whose pension benefit is reduced in accordance with the provisions of Paragraph 3.3(c) or 3.4(c), the projected Deferred 1992, Deferred Additive and Deferred Post-1992 DCP Annuity Equivalents shall be similarly reduced by multiplying each annuity equivalent amount as calculated in (3) above by the same percentage used in Paragraph 3.3(c) or 3.4(c).

(c)     (1)     In the case of a Participant previously eligible for a Deferred Vested Pension who, as the result of reemployment which results in the removal of a break in Continuous Service, becomes eligible to retire with an immediate pension benefit and who previously received a distribution of his DCP account balances following his original break in Continuous Service, the DCP account balances which were projected to his earliest unreduced retirement age in order to determine the Deferred DCP Annuities, shall be adjusted (using an interest rate of 8.5%) to his

immediate retirement date, and added to the DCP account balances used to determine the Immediate DCP Annuities.

(2) In the case of a Participant previously eligible for a Deferred Vested Pension under Paragraph 3.3(c)(3) or 3.4(c)(3) who, as the result of reemployment which results in the removal of a break in Continuous Service, becomes eligible for a Deferred Vested Pension under Paragraph 3.3(c)(2) or 3.4(c)(2) and who previously received a distribution of his DCP account balances following his original break in Continuous Service, the DCP account balances which were projected to his earliest unreduced retirement age in order to determine the Deferred DCP Annuities, shall be adjusted (using an interest rate of 8.5%) to his earliest unreduced retirement age applicable upon his subsequent break in Continuous Service, and added to the DCP account balances used to determine the Deferred DCP Annuities.

(3) In the case of a Participant previously eligible for a benefit other than a Deferred Vested Pension who, as a result of reemployment which results in the removal of a break in Continuous Service, becomes eligible to retire and who previously received a distribution of his DCP account balances following his original break in Continuous Service, such Participant's DCP account balances shall be adjusted to reflect such prior distribution.

## 3.6    Regular Pension

(a) The Regular Pension shall be determined using the benefit and DCP Annuity amounts determined in Paragraphs 3.3, 3.4 and 3.5 listed below:

(1) Benefit amounts

   (i)   1992 Benefit, in Paragraph 3.3(a)

   (ii)  1987 Benefit, in Paragraph 3.3(b)

   (iii) Floor Benefit in Paragraph 3.4(a)

   (iv)  Lifetime Minimum Benefit in Paragraph 3.4(b)

(2) DCP Annuity Equivalent amounts

   (i)   Immediate 1992 DCP Annuity Equivalent, in Paragraph 3.5(a)

   (ii)  Immediate Additive 1992 DCP Annuity Equivalent, in Paragraph 3.5(a)

ADMIN REC-022(

(iii)    Immediate Post-1992 DCP Annuity Equivalent, in Paragraph 3.5(a)

(iv)    Deferred 1992 DCP Annuity Equivalent, in Paragraph 3.5(b)

(v)    Deferred Additive DCP Annuity Equivalent, in Paragraph 3.5(b)

(vi)    Deferred Post-1992 DCP Annuity Equivalent, in Paragraph 3.5(b)

(b)    Subject to (d) below, the Regular Pension shall be a monthly amount determined in accordance with (c) below, adjusted in accordance with Paragraphs 3.7(a), 3.8, 3.10, 3.11, 3.12, 3.17(c), 3.18(e), 3.21 and 3.24(c)(6), if applicable.

(c)    The monthly amount used in the calculation of any Regular Pension shall be determined in accordance with (1), (2), (3), and (4) below:

(1)    Determine the Gross Lifetime Benefit, which shall be the higher of the Floor Benefit, and the Lifetime Minimum Benefit, if applicable.

(2)    Determine the Net Lifetime Benefit as follows:

(i)    for a Participant who retires on other than a Deferred Vested or a Deferred 60/15 Pension, deduct from the Gross Lifetime Benefit: (A) the Immediate Post-1992 DCP Annuity Equivalent and (B) the sum of the Immediate 1992 DCP Annuity Equivalent and the Immediate Additive DCP Annuity Equivalent, such sum not to exceed the amount of the 1992 Benefit.

(ii)    for a Participant who retires on a Deferred Vested or a Deferred 60/15 Pension, deduct from the Gross Lifetime Benefit: (A) the Deferred Post-1992 DCP Annuity Equivalent and (B) the sum of the Deferred 1992 DCP Annuity Equivalent and the Deferred Additive DCP Annuity Equivalent, such sum not to exceed the amount of the 1992 Benefit.

(3)    Determine the Net 1992 Benefit as follows:

(i)    for a Participant who retires on other than a Deferred Vested or a Deferred 60/15 Pension, and whose Immediate Additive DCP Annuity Equivalent is zero, deduct from the 1992 Benefit the Immediate 1992 DCP Annuity Equivalent, the result not to be less than the 1987 Benefit.

(ii)    for a Participant who retires on other than a Deferred Vested or a Deferred 60/15 Pension and whose Immediate Additive DCP Annuity Equivalent is greater than zero, (A) deduct from the

ADMIN REC-0227

difference between the 1992 Benefit and the 1987 Benefit the Immediate 1992 DCP Annuity Equivalent, the result not to be less than zero, (B) deduct from the 1987 Benefit the Immediate Additive DCP Annuity Equivalent, the result not to be less than zero, (C) add results in (A) and (B).

(iii) for a Participant who retires on a Deferred Vested or a Deferred 60/15 Pension and whose Deferred Additive DCP Annuity Equivalent is zero, deduct from the 1992 Benefit the Deferred 1992 DCP Annuity Equivalent, the result not to be less than the 1987 Benefit.

(iv) for a Participant who retires on a Deferred Vested or a Deferred 60/15 Pension and whose Deferred Additive DCP Annuity Equivalent is greater than zero, (A) deduct from the difference between the 1992 Benefit and the 1987 Benefit the Deferred 1992 DCP Annuity Equivalent, the result not to be less than zero, (B) deduct from the 1987 Benefit the Deferred Additive DCP Annuity Equivalent, the result not to be less than zero, (C) add results in (A) and (B).

(4) The monthly amount to be used in the calculation of a Regular Pension shall be the higher of the Net Lifetime Benefit or the Net 1992 Benefit as calculated in (2) and (3) above, but not less than zero.

(d) Notwithstanding anything to the contrary in (b) and (c) above, with respect to a River Terminal Employee who is not a River Terminal Clerk who retires prior to January 1, 1996,

(1) For any month in which a Participant is eligible for Public Pension related to the Railroad Retirement Act, the monthly amount used in the calculation of any Regular Pension may not exceed an amount which when added to the monthly amount of Public Pension will result in a sum that is greater than the product of:

(i) the Participant's gross average monthly Earnings, multiplied by

(ii) the sum of 70% plus 1% for each full year of Continuous Service in excess of 15;

(2) Provided, however, that a monthly amount affected by the limitation in (1) above shall not be less than an amount equal to $14.00 for each of the first 15 years of Continuous Service (and fractions thereof calculated to the nearest month) plus $15.00 for each year of Continuous Service between 15 and 30 (and fractions thereof calculated to the nearest month) and

ADMIN REC-0228

$16.00 for each year of Continuous Service in excess of 30 (and fractions thereof calculated to the nearest month); and

(3) Provided, further, that there shall be no adjustment in the monthly amount determined under (1) above because of future increases in the Participant's monthly amount of Public Pension which may become effective subsequent to the date of his retirement.

(4) The phrase "monthly amount of Public Pension " shall be:

(i) in the case of a Participant who retires with at least 30 years of covered service under the Railroad Retirement Act, 93% of the maximum primary old-age insurance benefit payable under the Social Security Act for a person first receiving such a benefit at the beginning of the year of retirement (including any increase in such a benefit retroactive to the beginning of such year), rounded to the nearest whole dollar; or

(ii) in the case of a Participant who retires with less than 30 years of covered service under the Railroad Retirement Act:

(A) 74.4%, if retirement occurs prior to attainment of age 63; or

(B) 80.6%, if retirement occurs on or after attainment of age 63 but prior to age 64; or

(C) 86.8%, if retirement occurs on or after attainment of age 64 but prior to age 65; or

(D) 93%, if retirement occurs on or after attainment of age 65;

of the maximum primary old-age insurance benefit payable under the Social Security Act for a person receiving such a benefit at the beginning of the year of retirement (including any increase in such a benefit retroactive to the beginning of such year), rounded to the nearest whole dollar; and

(iii) in no event may the monthly amount of Public Pension exceed the actual Public Pension received by the Participant.

(5) For the purpose of (1) above, "gross average monthly earnings" means the sum of the Participant's gross earnings (W-2 earnings) for the two calendar years of the last 10 calendar years prior to retirement in which the Participant's earnings were the highest divided by 24. The calendar year in which the Participant retires shall be included as one of the "last 10

ADMIN REC-0229

calendar years prior to retirement" if retirement occurs after June 30 of such year and the Participant worked in such year.

(6)     In the case of a Participant who retires on other than a Deferred Vested Pension and who did not work for one or more full calendar months due solely to layoff, disability and/or retirement during either or both of the last two calendar years in which he worked prior to retirement, his W-2 earnings shall be increased by adding for each such calendar month during that year an amount equal to 4-1/3 times his average weekly earnings, including cost-of-living adjustment, for all hours paid for by the Employing Company with respect to the biweekly pay periods in which he worked during that year, provided, however, that if he did not work in at least six biweekly pay periods in that year, his average weekly earnings shall be based on the last six biweekly pay periods in which he worked during and prior to that year. The calendar year in which the Participant retires shall be included in the "last two calendar years in which he worked prior to retirement" if retirement occurs after June 30 of such year and the Participant worked in such year.

(7)     A Participant who retires on other than a Deferred Vested Pension and who did not work during either or both of the last two calendar years prior to retirement due solely to compensable disability shall, for the purpose of the calculation in (5) above, have his W-2 earnings for the last two calendar years in which he worked adjusted by increasing his W-2 earnings for each such year by the amount provided pursuant to (6) above, if applicable, and then by the percentage increase provided by any intervening general increase granted between August 1 of the calendar year in question and August 1 of the earlier of the last two calendar years prior to retirement, except that such adjustment shall not be made with respect to W-2 earnings for either of the last two calendar years prior to retirement. The calendar year in which the Participant retires shall be included in the "last two calendar years prior to retirement" if retirement occurs after June 30 of such year and the Participant worked in such year.

## 3.7    Increased Pension - Permanent Incapacity, 70/80 and 30-Year Transition

(a)     In the determination of the amount of any Regular Pension for Permanent Incapacity or 70/80, the monthly amount determined in accordance with Paragraph 3.6(c) shall be increased by $400; provided, however, that such increase shall not be applicable with respect to a Regular Pension payable for any month for which the Participant is (1) eligible for Public Pension, or (2) receiving a Lifetime Minimum Benefit pursuant to Paragraph 3.4(b); provided, further, that in the determination of the amount of any Regular Pension for 70/80 such increase shall be effective only as soon as practicable after January 1, 2000.

(b)    A Participant other than a Participant who is a River Terminal Employee who retires on either (1) a 30-Year Retirement or (2) a 62/15 or a Normal Retirement and has completed 30 or more years of Continuous Service, shall be eligible to receive, in lieu of the Regular Pension provided in Paragraph 3.6(c), the Transition Benefit provided herein.

(1)    The Transition Benefit shall be the monthly amount determined in accordance with (i) or (ii) below, whichever is higher:

(i)    a monthly amount equal to the minimum monthly amount set forth in the table below for the age attained at retirement reduced by (A) the Immediate Post-1992 DCP Annuity Equivalent and (B) the sum of the Immediate 1992 DCP Annuity Equivalent and the Immediate Additive DCP Annuity Equivalent, such sum not to exceed the amount of the 1992 Benefit; or

(ii)    a monthly amount equal to the Regular Pension amount calculated in Paragraph 3.6(c) plus the minimum monthly addition set forth in the table below for the age attained at retirement:

| Attained Retirement Age | Minimum Monthly Amount | Minimum Monthly Addition |
|---|---|---|
| 54 and under | $1,000 | $150 |
| 55 | $1,000 | $150 |
| 56 | $1,000 | $150 |
| 57 | $1,000 | $150 |
| 58 | $1,100 | $150 |
| 59 | $1,200 | $150 |
| 60 | $1,300 | $150 |
| 61 | $1,400 | $200 |
| 62 | $1,500 | $250 |
| 63 | $1,530 | $300 |
| 64 | $1,560 | $350 |
| 65 and above | $1,600 | $400 |

(2)    The Transition Benefit provided above shall not be payable for any month after the Participant attains age 62 or dies. However, in no event will a Participant receive less than 12 months of the Transition Benefit unless death occurs during the 12-month period.

(3)    The Transition Benefit shall be adjusted in accordance with the provisions of Paragraphs 3.10, 3.11, 3.12, 3.17(c), 3.18(e), 3.21 and 3.24(c)(6), if applicable.

ADMIN REC-0231

## 3.8    Increased Pension – Rule-of-65

(a)    In the determination of the amount of any Regular Pension for Rule-of-65 Retirement, the monthly amount determined in accordance with Paragraph 3.6(c) shall be increased by $400 per month effective as soon as practicable after January 1, 2000; provided, however, that such increase shall not be applicable with respect to such a Regular Pension payable for any month for which the Participant is (1) eligible for Public Pension or (2) receiving a Lifetime Minimum Benefit pursuant to Paragraph 3.4(b). For a Participant other than a River Terminal Employee who, prior to the attainment of eligibility for Public Pension, has earned income after retirement which exceeds $15,500 in calendar year 1999, or for any subsequent calendar year, $17,000 (hereinafter "excess earned income"), the increased pension payable pursuant to this Paragraph 3.8 (hereinafter "increased pension") for any calendar year shall be reduced by $1 for each $2 of excess earned income; provided that the above $15,500 or $17,000 shall be prorated for the year in which retirement occurs and for the year in which the Participant becomes eligible for Public Pension. For a Participant who is a River Terminal Employee and who, prior to the attainment of eligibility for Public Pension, has earned income after retirement which exceeds the age 65-69 retirement test earnings limitation amount applicable in that year under Title II of the Social Security Act or the Railroad Retirement Act, if applicable (hereinafter "excess earned income"), the increased pension payable pursuant to this Paragraph 3.8 (hereinafter "increased pension") for any calendar year shall be reduced by $1 for each $2 of excess earned income; provided that the applicable indexed amount for any calendar year shall be prorated for the year in which retirement occurs and for the year in which the Participant becomes eligible for Public Pension.

(b)    Earned income shall include wages, salaries, tips, bonuses, commissions, and earnings resulting from self-employment.

(c)    To facilitate determination of annual earned income, each Participant shall at the time of Rule-of-65 Retirement authorize the Social Security Administration and/or the Railroad Retirement Board to release to the Employing Company a record of his creditable earnings for Social Security and/or Railroad Retirement Act purposes and agree to give the Employing Company by April 15 of each year a copy of his W-2 forms and a statement of his annual earned income for the preceding year on a form provided by the Employing Company. If the Participant revokes the authorization to the Social Security Administration and/or the Railroad Retirement Board or fails to submit the required information to the Employing Company by April 15 of each year, the Participant shall be presumed ineligible for any increased pension for the preceding year; provided, however, that such presumption of ineligibility will be disregarded in the event that the Participant reinstates the required authorization or submits the required information at a later date.

ADMIN REC-0232

(d)     If it is determined that the Participant was not eligible for all or part of the increased pension which he received for the preceding year, payment of the increased pension will be suspended and not resumed until the month following the month in which the Participant notifies the Employing Company that he does not expect his earned income for the 1999 calendar year to exceed $15,500 or $17,000 for any subsequent calendar year. The amount of any overpayment shall be repaid by the Participant. To the extent permissible by law, the amount of any overpayment will be recouped by reducing or discontinuing payments of the Participant's Regular Pension (and by reducing or discontinuing payment of the Participant's increased pension, if he notifies the Employing Company that he does not expect his earned income for the 1999 calendar year to exceed $15,500 or $17,000 for any subsequent calendar year) until the full amount of the overpayment has been recovered.

(e)     At the request of a Participant, the Plan may discontinue paying all or a portion of the increase in pension for a period specified by the Participant.

(f)     If it is determined that a Participant did not receive the entire increase in pension to which such Participant was entitled under this Paragraph 3.8, the additional amount due shall be paid promptly by the Plan.

### 3.9     Regular Pension - Part-Time Participants

Notwithstanding anything to the contrary contained in the foregoing provisions of this Article, the amount of the benefit provided in Paragraph 3.3(a)(2), 3.4, or 3.6(d)(2) otherwise applicable shall, in the case of any Participant who is a part-time Participant, be reduced to an amount equitably related to the hours worked by him in comparison to hours worked by other Participants but not less than the amount which would have been payable if he had retired under the Plan as in effect immediately prior to July 31, 1966.

### 3.10     Deduction for Public Pension

Deductions for Public Pension shall be made from the amount determined in accordance with Paragraphs 3.6(c) and 3.6(d) in accordance with the following provisions:

(a)     Except as provided in Paragraph 3.6(d), Regular Pension shall not be affected by Public Pension related to the Social Security Act.

(b)     For any month a Participant is eligible for Public Pension not related to the Social Security Act, there shall be a deduction for such Public Pension from the amount determined in accordance with Paragraphs 3.6(c) and 3.6(d). The amount of such deduction shall be the amount of Public Pension paid or payable to the Participant, or that would upon application become payable to him for such month, without regard to any offset, suspension or reduction imposed by law (including any reduction by reason of commencement of such Public Pension prior to the age at which it is first provided under law without such a reduction).

ADMIN REC-0233

except that for a Participant whose original date of hire was prior to January 1, 1975 the amount of such deduction shall be equal to 50% of the Tier II benefit determined in accordance with the Railroad Retirement Act; provided such deduction shall be limited to the amount, to the extent reasonably determinable, of such Public Pension attributable to employment by a Controlled Group Member; and provided, further, that in the case of a Participant eligible for Public Pension under the Railroad Retirement Act, the amount of such deduction shall be based on the provisions of such Act in effect as of the date the Participant retires.

(c)    Notwithstanding anything to the contrary in the foregoing provisions of this Paragraph 3.10, in the case of a Participant whose Employing Company at his retirement date is a common carrier railroad, for any month such Participant is eligible for Public Pension related to the Railroad Retirement Act or its successor, there shall be a deduction for such Public Pension from the amount determined in accordance with Paragraphs 3.6(c) and 3.6(d). The deduction shall be an amount by which such Public Pension exceeds:

(1)    In the case of a Participant eligible for a Railroad Retirement disability benefit or a Participant who has had at least 30 years of covered service under the Railroad Retirement Act, 93% of the maximum primary old-age insurance benefit payable under the Social Security Act for a person first receiving such a benefit at the beginning of the year of retirement, based on the provisions of such Act as of the date the Participant retires; or

(2)    In the case of a Participant who is not eligible for a Railroad Retirement disability benefit or who has not had at least 30 years of covered service under the Railroad Retirement Act:

(i)    74.4%, if retirement occurs prior to attainment of age 63,

(ii)    80.6%, if retirement occurs on or after attainment of age 63 but prior to 64,

(iii)    86.8%, if retirement occurs on or after attainment of age 64 but prior to 65, or

(iv)    93%, if retirement occurs on or after attainment of age 65,

of the maximum primary old-age insurance benefit payable under the Social Security Act for a person first receiving such a benefit at the beginning of the year of retirement, based on the provisions of such Act as of the date the Participant retires; provided, however, that the amount of reduction computed in (1) or (2) above shall be limited to 50% thereof for any Participant with Continuous Service for pension purposes prior to January 1, 1978.

ADMIN REC-0234

(d)  In lieu of any deduction otherwise described in (c) above, a Participant who is a River Terminal Clerk, or a Participant who is a River Terminal Employee other than a River Terminal Clerk and who retires on or after January 1, 1996, and whose Regular Pension is based on the Lifetime Minimum or the Floor Benefit described in Paragraph 3.4 shall have the monthly amount payable reduced by (i) for a Participant employed on or after January 1, 1978, 100% of the Tier II benefit determined in accordance with the Railroad Retirement Act or (ii) for a Participant employed prior to January 1, 1978, 50% of the Tier II benefit determined in accordance with the Railroad Retirement Act.

(e)  In the event that for any month a Participant referred to in (c) above is eligible for Public Pension not related to the Railroad Retirement Act, there shall be a deduction for such Public Pension from the amount determined in accordance with Paragraphs 3.6(c) and 3.6(d). The amount of such deduction shall be the amount of Public Pension paid or payable to the Participant, or that would upon application become payable to him for such month, without regard to any offset, suspension or reduction imposed by law (including any reduction by reason of commencement of such Public Pension prior to the age at which it is first provided under law without such a reduction); provided, however, that such deduction shall be limited to the amount, to the extent reasonably determinable, of such Public Pension attributable to employment by a Controlled Group Member; and provided further, however, that in the case of a Participant eligible for Public Pension under the Social Security Act, the amount of such deduction shall be based on the provisions of such Act in effect as of the date the Participant retires.

(f)  After a deduction for Public Pension first becomes applicable, it shall not be changed to reflect any increase of such Public Pension resulting from:

(1)  Amendment of the law under which such Public Pension is provided, if the effective date of such increase occurs after the first month with respect to which a deduction for such Public Pension became applicable; or

(2)  Subsequent employment by other than a Controlled Group Member.

### 3.11  Deduction for Other Pension

(a)  If any Participant entitled to pension benefits pursuant to the Plan is or shall become, or upon application would become, entitled to any other pension or payment in the nature of a pension (other than a payment covered by Paragraph 3.12, a benefit in the nature of an annuity, pension or payment of similar kind by reason of any law, a payment made pursuant to the Plan, a payment made pursuant to a plan adopted by a Controlled Group Member to provide benefits which the Participant would have received under the Plan but for the maximum limitations on benefits and contributions imposed by law, or benefits provided under any program of a Controlled Group Member which by the provisions of the such program are to be excluded for the purposes of calculating benefits under the

ADMIN REC-0235

Plan) from any source or fund to which a Controlled Group Member shall have directly or indirectly contributed (any such other pension or payment hereinafter "Other Pension"), then the amounts determined in accordance with Paragraphs 3.6(c), 3.6(d), 3.7 and 3.8 and otherwise payable to such Participant for any period shall be reduced by the amount of any such Other Pension (determined on a life annuity without refund basis) paid or payable to him or that would upon application become payable to him for the corresponding period; provided, however, that if such Participant shall have contributed to such source or fund, then the amount by which such amount would otherwise be reduced in accordance with the foregoing provisions of this Paragraph 3.11 shall be decreased by the amount of that part of such Other Pension which shall be attributable to the contributions which such Participant shall have made to such source or fund; and provided, further, such deduction shall be limited to the amount, to the extent reasonably determinable, of such Other Pension attributable to employment with a Controlled Group Member during a period in which the participant has been credited with Continuous Service for the purpose of calculating the amount of any Regular Pension under the Plan.

(b)    Notwithstanding the provisions of (a) above, pension benefits to which the Participant is entitled under the provisions of Section 3.24 shall not be considered as Other Pension for the purpose of this Paragraph 3.11.

### 3.12    Deduction for Disability Payments

(a)    Any amount paid to or on behalf of a Participant who is a River Terminal Employee on account of injury or occupational disease incurred in the course of his employment by a Controlled Group Member or any other employer causing disability in the nature of a permanent disability, whether pursuant to Workers' Compensation, Occupational Disease or similar statutory law (except fixed statutory payments for the loss of, or 100% loss of use of, any bodily member or a benefit in the nature of an annuity, pension or payment of similar kind by reason of any law), shall be deducted from or charged against the amount determined in accordance with Paragraphs 3.6(c), 3.7 and 3.8; provided, however, that any such deduction or charge shall be adjusted to take into account expenses such as reasonable lawyers' fees and medical expenses incurred by the Participant in processing claim for such payment, and that any payments received by such Participant under such laws shall not be deducted from any such amount for Permanent Incapacity Retirement payable prior to age 65 or from the increase in pension for Permanent Incapacity Retirement provided by Paragraph 3.7(a). If any amount which is to be deducted from or charged against the amount determined in accordance with Paragraphs 3.6(c), 3.7 and 3.8 pursuant to the foregoing portion of this Paragraph is determined with respect to a period of time, such deduction or charge shall be made only with respect to the same period. If any such amount is not determined with respect to a period of time, the Plan Administrator shall apportion the amount to a period of time under procedures reasonably designed to

result in deduction or charge comparable to that which would be made if the amount had been determined with respect to a period of time.

(b)     Notwithstanding anything to the contrary in (a) above, if, based on a claim of total and permanent disability under Federal Employers Liability Act, a Participant who is a River Terminal Employee shall either receive a settlement from his Employing Company or obtain a judgment against his Employing Company in a suit, he shall not be entitled to receive Regular Pension for Permanent Incapacity Retirement under the Plan, until the aggregate of the Regular Pension payments that he would otherwise receive under the Plan shall equal the amount of such settlement or judgment less the actuarial value of the amount of Workers' Compensation to age 65, if Workers' Compensation had been payable in this case.

(c)     Notwithstanding any provision of this Paragraph 3.12 to the contrary, effective for payments of Regular Pension made on or after June 1, 1994, no deduction under this Paragraph 3.12 relating to periods on or after June 1, 1994 shall be taken from or charged against the Regular Pension of a Participant who retired prior to June 1, 1994 unless such Participant was a River Terminal Employee or a Sold Facility Participant; provided, however, that nothing in this Paragraph (c) shall limit the deduction under this Paragraph 3.12 for amounts which may be taken from or charged against the Regular Pension of a Participant which apply to periods prior to June 1, 1994 even though such amount is determined on or after June 1, 1994.

## 3.13     Maximum Annual Benefit Limitation

(a)     Except as otherwise provided in this Paragraph 3.13, the benefits payable under the Plan with respect to a Participant for any Plan Year (which shall be the limitation year) shall not exceed, when expressed as an annual benefit in the form of a straight life annuity (with no ancillary benefits), the lesser of:

(1)     The dollar limitation in effect for such year under Section 415(b)(1)(A) of the Code; or

(2)     100% of the Participant's average compensation paid or made available to him by the Employing Companies and their Controlled Groups for the period of three consecutive calendar years during which the Participant was an active Participant in the Plan and had the greatest aggregate compensation from the Employing Companies and their Controlled Groups;

(b)     Notwithstanding the foregoing provisions of this Paragraph 3.13:

(1)     If the benefit under the Plan is payable in any form other than the life annuity form, or if the Employees contribute to the Plan or make rollover contributions or plan to plan transfers, for purposes of determining

whether the limitations described in (a) above have been satisfied, such benefit shall be adjusted, in accordance with the rules determined by the Commissioner of Internal Revenue under Treasury Regulation section 1.415-3(c), so that such benefit is equivalent to an annual benefit. For purposes of this Paragraph 3.13, any ancillary benefit which is not directly related to retirement income benefits shall not be taken into account, and that portion of any joint and survivor annuity which constitutes a qualified joint and survivor annuity (as defined in Section 417(b) of the Code) shall not be taken into account.

(2)   If the benefit under the Plan begins before the Social Security Retirement Age, for purposes of determining whether the limitation set forth in (a)(1) above has been satisfied, such limitation shall be reduced, in accordance with regulations prescribed by the Secretary of the Treasury, so that such limitation (as so reduced) equals an annual benefit (beginning when such benefit under the Plan begins) which is equivalent to an annual benefit equal to the limitation beginning at the Social Security Retirement Age, provided that the reduction is made in such manner as the Secretary of the Treasury or his delegee may prescribe which is consistent with the reduction under the Social Security Act for old age insurance benefits commencing before the Social Security Retirement Age.

(3)   If the benefit under the Plan begins after the Social Security Retirement Age, for purposes of determining whether the limitation set forth in (a)(1) above has been satisfied, such limitation shall be increased, in accordance with regulations prescribed by the Secretary of the Treasury, so that such limitation (as so increased) equals an annual benefit (beginning when such benefit under the Plan begins) which is the actuarial equivalent to an annual benefit equal to such limitation beginning at the Social Security Retirement Age.

(4)   For purposes of adjusting any benefit or limitation under (a)(1) or (a)(2) above, (A) the interest rate assumption shall be 5%, and (B) the mortality assumption shall be based on the 1983 Group Annuity Mortality Table, assuming a fixed blend of 50% of the male and female mortality rates (or such other table prescribed by the Secretary of the Treasury for this purpose under Section 417(e)(3)(A)(ii)(I) of the Code) (for periods prior to January 1, 2000, the 1979 George B. Buck Mortality Table for Males).

(c)   Notwithstanding the foregoing provisions of this Paragraph 3.13, the limitation specified in (a) above shall not be applicable if the annual benefit payable to a Participant from all defined benefit plans maintained by the Employing Companies and their Controlled Groups, does not exceed $10,000 and the Employing Companies and their Controlled Groups have not at any time maintained a defined contribution plan in which the Participant participated.

(d)     The limitation set forth in (a) above is applicable to Employees who are Participants in the Plan and to Employees who have retired or otherwise terminated their employment with the Employing Companies and their Controlled Groups with a nonforfeitable right to accrued benefits, regardless of whether they have actually begun to receive such benefits.

(e)     Notwithstanding the foregoing provisions of this Paragraph 3.13, in the case of a Participant who has less than 10 years of participation in the Plan, the limitation set forth in (a)(1) above shall be the limitation determined under (a)(1) above (without regard to this Paragraph 3.13(e)), multiplied by a fraction, the numerator of which is the number of years of participation in the Plan (or fractions thereof) credited to the Participant and the denominator of which is 10, and in the case of a Participant who has less than 10 years of Continuous Service with the Employing Companies and their Controlled Groups, the limitations set forth in (a)(2) and (c) above shall be such limitations (determined without regard to this Paragraph 3.13(e)) multiplied by a fraction, the numerator of which is the number of years (or fractions thereof) of Continuous which the Employee has with the Employing Companies and their Controlled Groups and the denominator of which is 10. Notwithstanding the foregoing provisions of this Paragraph 3.13(e), in no event shall the limitations in (a) and (b) above be reduced to an amount less than one-tenth of such limitations (determined without regard to this Paragraph 3.13(e)). To the extent provided in regulations prescribed by the Secretary of the Treasury or his delegee, this Paragraph 3.13(e) shall be applied separately with respect to each change in the benefit structure of the Plan.

(f)     Notwithstanding anything in this Paragraph 3.13 to the contrary, if the annual benefit of a Participant who has terminated employment with the Employing Companies and their Controlled Groups is limited pursuant to the limitations set forth in (a)(1) or (a)(2) above or (g) below, such annual benefit shall be increased in accordance with the cost-of-living adjustments of Section 415(d) of the Code.

(g)     With respect only to Plan Years beginning prior to January 1, 2000, if an individual is a Participant in both a defined contribution plan or plans and a defined benefit plan or plans maintained by his Employing Company and its Controlled Groups and if the sum of the defined benefit plan fraction (the projected annual benefit of the Participant under such defined benefit plan or plans over the lesser of (a) the product of 1.25, multiplied by the dollar limit in effect under Section 415(b)(1)(A) of the Code for such year or (b) the product of 1.4, multiplied by the amount which may be taken into account under Section 415(b)(1)(B) of the Code with respect to such Participant under the Plan for such year) and the defined contribution plan fraction (the sum of the annual additions, as defined in Section 415(c)(2) of the Code, to all accounts maintained for the benefit of such Participant in any such defined contribution plan or plans over the lesser of the following amounts determined for such year and for each prior year of service with his Employing Company and its Controlled Groups, (1) the

ADMIN REC-0239

product of 1.25, multiplied by the dollar limitation in effect under Section 415(c)(1)(A) of the Code for such year and each such prior year of service, or (2) the product of 1.4, multiplied by the amount which may be taken into account under Section 415(c)(1)(B) of the Code with respect to such Participant under such plan for such year and each such prior year of service) exceeds 1.0, the Plan Administrator shall reduce benefits accruing or payable under the Plan to such Participant to the extent necessary to prevent disqualification of the Plan under the Code.

(h)     For purposes of this Paragraph 3.13, (i) all qualified defined benefit plans (whether or not terminated) ever maintained by one or more Controlled Group Members shall be treated as one defined benefit plan, and all qualified defined contribution plans (whether or not terminated) ever maintained by one or more Controlled Group Members shall be treated as one defined contribution plan; (ii) the term "Controlled Group" shall be construed in light of Section 414 of the Code, as modified by Section 415(h) of the Code; (iii) the term "compensation" shall mean compensation within the meaning of Section 415(c)(3) of the Code and within the meaning of Treasury Regulation section 1.415-2(d)(11)(ii) (including, effective January 1, 1998, any elective deferral (as defined in Code Section 402(g)(3)), any amount contributed or deferred by a Controlled Group Member at the election of an Employee that is not includible in the gross income of the Employee by reason of Section 125 or 457 of the Code and, effective January 1, 2001, any elective amount that is not includible in the gross income of the Employee by reason of Section 132(f)(4) of the Code); and (iv) the term "Social Security Retirement Age" shall mean the age used as the retirement age under Section 216(l) of the Social Security Act, as amended, except that such Section shall be applied (1) without regard to the age increase factor and (2) as if the early retirement age under Section 216(l)(2) of the Social Security Act were 62.

## 3.13A  Annual Additions

(a)     In General:  Notwithstanding anything contained herein to the contrary, the maximum "annual addition" which may be contributed or allocated to a Participant's DCP Account under the Plan for any Plan Year shall not exceed the lesser of $30,000 (as adjusted in accordance with Section 415(d) of the Code) or 25% of the Participant's compensation (determined in accordance with Section 415(c)(3) of the Code and within the meaning of Treasury Regulation Section 1.415-2(d)(11)(ii) (including, effective January 1, 1998, any elective deferral (as defined in Code Section 402(g)(3)), any amount contributed or deferred by a Controlled Group Member at the election of a Participant that is not includible in the gross income of the Participant by reason of Section 125 or 457 of the Code and, effective January 1, 2001, any elective amount that is not includible in the gross income of the Participant by reason of Section 132(f)(4) of the Code).  The foregoing compensation limitation shall not apply to (1) any contribution for medical benefits (within the meaning of Section 419A(f)(2) of the Code) after

ADMIN REC-0240

separation from service which is otherwise treated as an annual addition or (2) any amount otherwise treated as an annual addition under Section 415(l)(1) of the Code. The term "annual addition" means the sum for any Plan Year of (i) all contributions made by the Employing Company and/or its Controlled Group which are allocated to the Participant's account pursuant to a defined contribution plan maintained by the Employing Company and/or its Controlled Group, (ii) all employee contributions made by the Participant to a defined contribution plan maintained by an Employing Company and/or its Controlled Group, (iii) all forfeitures allocated to the Participant's account pursuant to a defined contribution plan maintained by an Employing Company and/or its Controlled Group and (iv) amounts described in Sections 415(l)(2) and 419A(d)(2) of the Code.

(b)    Aggregation of Plans:  For purposes of this Section, all qualified defined contribution plans of an Employing Company and/or its Controlled Group shall, for purposes of these limitations, be considered as a single plan.

(c)    Adjustments to Annual Additions:  If the sum of the annual additions allocated to the DCP Account of any Participant (and the accounts of such Participant in any other defined contribution plan of the Controlled Group) would exceed the limitations of (a) above for a Plan Year, unless the Participant otherwise elects, adjustments shall be made in the following order:

(1)    Voluntary employee contributions (if any) to any defined contribution plan of the Controlled Group in which the Participant has an account made by the Participant for such Plan Year which constitute part of the annual addition (together with any gains attributable thereto) shall be returned to the Participant to the extent necessary to effectuate such reduction;

(2)    If the return of all such voluntary employee contributions is not sufficient to effectuate such reduction, elective deferral contributions as described in Section 402(g)(3) of the Code (if any) to any defined contribution plan of the Controlled Group in which the Participant has an account made on behalf of the Participant for such Plan Year which constitute part of the annual addition (together with any gains attributable thereto) shall be returned to the Participant to the extent necessary to effectuate such reduction;

(3)    If the return of all such voluntary employee contributions and the return of all such elective deferral contributions is not sufficient to effectuate such reduction, matching contributions as described in Section 401(m)(4)(A) of the Code (if any) to any defined contribution plan of the Controlled Group in which the Participant has an account made on behalf of the Participant for such Plan Year which constitute part of the annual addition (together with any gains attributable thereto) shall be reduced in accordance with the provisions of such plan;

ADMIN REC-0241

(4)    If the return of all such voluntary employee contributions, the return of all such elective deferral contributions and the reduction of all such matching contributions is not sufficient to effectuate such reduction, employer contributions (other than elective deferral contributions and matching contributions) (if any) to any defined contribution plan of the Controlled Group in which the Participant has an account made on behalf of the Participant for such Plan Year which constitute part of the annual addition shall be reduced in accordance with the provisions of such plan; and

(5)    If the return of all such voluntary employee contributions, the return of all such elective deferral contributions, the reduction of all such matching contributions and the reduction of all such employer contributions (other than elective deferral contributions and matching contributions) is not sufficient to effectuate such reduction, Plan Contributions to the LTV Steel Group Employee Stock Ownership Plan or the LTV Steel Stock Bonus Plan (as "Plan Contributions" are defined in such plans) made on behalf of the Participant for such Plan Year which constitute part of the annual addition (together with any gains attributable thereto) shall be reduced in accordance with the provisions of such Plans, as applicable.

(6)    In applying (c)(1) through (c)(5) above, reductions to contributions shall be made in the reverse order in which such contributions were made.

In the event the provisions of this Paragraph 3.13A(c) would require the reduction of Company Contributions, such contributions shall be held unallocated in a suspense account for the Plan Year and allocated and reallocated in the next Plan Year to all of the remaining Participants (subject to the limitation of this Paragraph 3.13A) before any contributions that would otherwise constitute annual additions may be made to the Plan for the Plan Year. Investment gains and losses shall not be allocated to the suspense account during the period such suspense account is required to be maintained pursuant to this Paragraph 3.13A(c). In the event of a termination of the Plan, any then remaining balance of the suspense account, to the extent it may not then be allocated to Participants, shall revert to the Employing Companies.

(d)    <u>Controlled Group Member Definition</u>:  For purposes of this Paragraph 3.13, the term "Controlled Group Member" shall be construed in accordance with the provisions of Section 415(h) of the Code.

## 3.14    Pension Application

Each application for a pension shall be in writing on a form provided by the Plan Administrator.  The Plan Administrator may require any applicant for a pension to furnish to it such information as may reasonably be required.  Except as otherwise provided in Paragraph 3.15(j), pension payments shall not commence before such application has been filed with the Plan Administrator, which filing may not occur more

ADMIN REC-0242

than 90 days prior to the date pension payments are to commence. A Participant's election to commence his pension shall require the consent of the Participant's spouse if he is married and he elects a benefit option other than the Automatic 50% Spouse Option With Pop-Up described in Paragraph 3.19 (in the case of a River Terminal Employee, the 50% Spouse Option described in Paragraph 3.20).

### 3.15    Commencement and Termination of Regular Pension

(a)    In the case of a Participant, including a Participant who is a River Terminal Employee who retires on or after January 1, 1996, who is eligible for any type of pension other than 60/15 Pension or Deferred Vested Pension, the first installment of any Regular Pension shall be payable for the first full calendar month following the month in which retirement occurs.

(b)    In the case of a Participant who is a River Terminal Employee who retires before January 1, 1996 and is eligible for any type of pension other than Permanent Incapacity Pension, 60/15 Pension or Deferred Vested Pension, the first installment of any Regular Pension shall be payable for the first full calendar month following the three calendar months for which the Special Payment is made.

(c)    In the case of a Participant who is eligible for Permanent Incapacity Pension, the first installment of any Regular Pension shall be payable for the first full calendar month following the month in which retirement occurs.

(d)    In the case of a Participant, including a Participant who is a River Terminal Employee who retires on or after January 1, 1996, and is eligible for a 60/15 Pension, the first installment of Regular Pension shall be payable for the first full calendar month following the month in the Participant attains age 62 unless the Participant elects earlier commencement in accordance with Paragraphs 3.3(c)(2) and 3.4(c)(2), in which case the first installment of Regular Pension shall be payable for the first full calendar month following the month in which retirement occurs.

(e)    In the case of a Participant who is a River Terminal Employee who retires before January 1, 1996 and is eligible for a 60/15 Pension, the first installment of Regular Pension shall be payable for the fourth full calendar month following the month in which the Participant attains age 62 unless the Participant elects earlier commencement in accordance with Paragraphs 3.3(c)(2) and 3.4(c)(2), in which case the first installment of Regular Pension shall be payable for the first full calendar month following the three calendar months for which the Special Payment is made.

(f)    In the case of a Participant who is eligible for a Deferred Vested Pension and who incurs a break in Continuous Service after attaining age 40 and completing at least

ADMIN REC-0243

15 years of Continuous Service, the first installment of Regular Pension shall be payable for the calendar month next following the Participant's 62nd birthday unless the Participant elects earlier commencement in accordance with Paragraphs 3.3(c)(2) and 3.4(c)(2), in which case the first installment of Regular Pension shall be payable for the later of (i) the calendar month specified by the Participant in his application for pension, provided such month is subsequent to the month in which he attains age 60 or (ii) the calendar month in which application for pension is made.

(g)    In the case of a Participant who is eligible for a Deferred Vested Pension and who incurs a break in Continuous Service prior to attaining age 40, or after attaining age 40 and before completing at least 15 years of Continuous Service, the first installment of Regular Pension shall be payable for the calendar month next following the Participant's 65th birthday unless the Participant elects earlier commencement in accordance with Paragraphs 3.3(c)(3) and 3.4(c)(3), in which case the first installment of Regular Pension shall be payable for the later of (i) the calendar month specified by the Participant in his application for pension, provided such month is subsequent to the month in which he attains age 60 or (ii) the calendar month in which application for pension is made.

(h)    Except as otherwise provided in Paragraph 3.23, the last installment of any Regular Pension shall be payable for the month in which the death of the Participant shall occur. Any pension amounts payable to such Participant but unpaid at the time of his death shall be paid to his surviving spouse, or if the Participant has no surviving spouse, then to his estate. In the event a Participant's Regular Pension is paid under the Automatic 50% Spouse Option With Pop-Up or any Other Option, any pension amounts payable to a surviving spouse or Co-Pensioner, as the case may be, but unpaid at death shall be paid to the estate of the surviving spouse or Co-Pensioner, as the case may be.

(i)    Notwithstanding anything to the contrary contained in the Plan, benefit payments under the Plan will begin not later than the 60th day after the close of the Plan Year in which the latest of the following events occur:

(1)    The Participant attains age 65;

(2)    The 10th anniversary of the year in which the Participant commenced participation in the Plan; or

(3)    The termination of the Participant's Continuous Service with the Controlled Group;

provided, however, that if the amount of such payment cannot be determined by such date, a payment retroactive to such date may be made no later than 60 days after the earliest date on which the amount of such payment can be ascertained under the Plan.

(j)    Notwithstanding any other provision of the Plan, to the extent required by Section 401(a)(9) of the Code:

    (1)    Any Participant who (i) is a 5% owner (as defined in Section 416 of the Code), (ii) attained age 70½ prior to January 1, 1997 or (iii) has terminated employment with the Employing Companies and their Controlled Groups and who has not commenced to receive distribution of his benefit under the Plan as of April 1 of the calendar year following the calendar year in which he attains age 70½, will commence to receive distribution of such benefit as of such date, based on the amount of such Participant's benefit as of such date. The benefit under the Plan of any other Participant who has attained age 70½ must commence distribution no later than the April 1 of the year following the year in which he terminates employment with the Employing Companies and their Controlled Groups.

    (2)    If a Participant accrues any additional benefits under the Plan after the date described in (1) above, such additional benefits shall commence to be distributed beginning with the first monthly payment made in the calendar year following the calendar year in which such additional benefit accrues. Notwithstanding the foregoing, such additional benefit accruals shall be offset (in whole or in part), in accordance with the regulations promulgated by the Secretary of the Treasury, by any benefit payments then being made to the Participant hereunder.

    (3)    The benefit of a Participant who terminates employment with the Employing Companies and their Controlled Groups after attaining age 70½ and whose payment of such benefit is delayed until such termination of employment shall be actuarially increased, to the extent required by applicable law or regulations, to take into account the period after age 70½ in which the Participant was not receiving benefits under the Plan.

    (4)    Distributions under the Plan shall be made in accordance with the provisions of Section 401(a)(9) of the Code and Treasury Regulations issued thereunder, including Proposed Treasury Regulation section 1.401(a)(9)-2, and with regard to distributions made for calendar years beginning on or after January 1, 2001, in accordance with the Treasury Regulations under Section 401(a)(9) of the Code that were proposed in January 2001, which provisions are hereby incorporated into the Plan by reference, provided that such provisions shall override the other distribution provisions of the Plan only to the extent that such other Plan provisions provide for distribution that is less rapid than required under such provisions of the Code and Regulations. The foregoing shall continue in effect until the end of the last calendar year beginning before the effective date of final Treasury Regulations under Section 401(a)(9) of the Code or such other dates as may be specified in guidance published by

the Internal Revenue Service. Nothing contained in this Paragraph 3.15 shall be construed as providing any optional form of payment that is not available under the other distribution provisions of the Plan. If the amount of the payment cannot be ascertained by the date benefits were to commence, or if it is not possible to make payment on such date because the Plan Administrator has been unable to locate the Participant after making reasonable efforts to do so, a payment (without interest) may be made retroactive to the date benefits were to commence. Such payments must be made within 60 days after (i) the earliest date on which the amount of the payment can be ascertained or (ii) the date on which the Participant is located, whichever is applicable.

**3.16    Deemed Lump-Sum Payment**

If the lump-sum Actuarial Equivalent of the benefit payable to a Participant following his break in Continuous Service is zero, such benefit shall be deemed to have been distributed pursuant to this Paragraph and the portion of his benefit which is not then nonforfeitable shall be forfeited; provided, however, that if a Participant to whom a deemed lump sum has been made is reemployed by a Controlled Group Member, he shall be deemed to have repaid such lump sum on the date he is reemployed by a Controlled Group Member provided that his break in Continuous Service did not exceed five years.

**3.17    Pre-Pension Spouse Coverage**

(a)    Except as otherwise provided in (g) below, for any Participant who had Pre-Pension Spouse Coverage in effect as of July 31, 1999, is accruing Continuous Service and dies while such Coverage is in effect, his spouse will receive a lifetime monthly payment following the Participant's death. Any monthly payment resulting from such coverage will be in addition to any Surviving Spouse's Benefit provided under Article IV. No election or reelection of Pre-Pension Spouse Coverage shall be permitted on or after August 1, 1999 (except as otherwise provided in (g) below).

(b)    A Participant may terminate Pre-Pension Spouse Coverage at any time with such termination to be effective as of the date the form prescribed for this purpose is filed with the Plan Administrator. Such coverage will automatically terminate as of the earliest of:

(1)    the date the Participant is divorced from his spouse;

(2)    the date the spouse dies;

(3)    the date preceding the Participant's retirement;

(4)    the date the Participant incurs a break in Continuous Service.

**ADMIN REC-0246**

(c)    For a Participant who is covered by Pre-Pension Spouse Coverage, the amount determined in accordance with Paragraphs 3.6(c) and 3.6(d) will be reduced by an amount equal to the product of 7/10 of 1% of such amount, multiplied by the number of years (and fractions thereof) that such coverage was in effect.

(d)    If a Participant dies while the Pre-Pension Spouse Coverage is in effect, the surviving spouse shall receive 50% of an amount determined in accordance with Paragraphs 3.6(c) and 3.6(d) as though the Participant had retired on the date of his death. In the calculation of the Participant's benefit amount under the provisions of Paragraphs 3.3, 3.4, 3.5, and 3.6, the following shall apply:

(1)    In the case of a Participant who died prior to attainment of age 65:

(i)    in the determination of the 1987 Benefit and the 1992 Benefit under the provisions of Paragraph 3.3,

(A)    the benefit amount in Paragraphs 3.3(a)(1) and 3.3(a)(2) shall be determined, as though the Participant had been age 65 on the date of his death;

(B)    the benefit amount in Paragraphs 3.3(a)(3) shall be determined, for Participants who die prior to attainment of age 62, using the 1.50% percentage for retirement at age 65, reduced in accordance with the actuarial reduction set forth in Paragraph 3.3(c)(3) for age 62; and

(C)    the benefit amount in Paragraph 3.3(a)(3) shall be determined, for Participants who die after attainment of age 62, using the applicable percentage from Paragraph 3.3(a)(3) for the Participant's age at his death; and

(ii)    in the determination of the Floor Benefit under the provisions of Paragraph 3.4(a), the benefit amount shall be calculated as though the Participant had been age 65 on the date of his death;

(iii)    the DCP Annuity Equivalents used in the calculation of the Regular Pension amount in Paragraph 3.6 shall be the Immediate 1992 DCP Annuity Equivalent, the Immediate Additive DCP Annuity Equivalent and the Immediate Post-1992 Annuity Equivalent.

(2)    The Lifetime Minimum Benefit shall be calculated in accordance with the provisions of Paragraph 3.4(b)(1), 3.4(b)(2), 3.4(b)(3) or 3.4(b)(4), whichever is applicable.

ADMIN REC-0247

The amount determined above shall be reduced in accordance with (c) above or Paragraph 3.18(e), if applicable, and multiplied by the 50% factor obtained from Exhibit A or B, as applicable, based on the difference between the ages of the Participant and his spouse as of the Participant's date of death.

(e)    The first installment of the amount payable to the Participant's spouse pursuant to this Paragraph 3.17 shall be payable for the month following the month in which the Participant's death occurs, and the last installment shall be payable for the month in which the spouse's death occurs.

(f)    Satisfactory proof of marriage of the Participant and his spouse and of the age of the Participant's spouse will be required prior to the payment of monthly installments under this coverage. Satisfactory proof of divorce or of the death of the Participant's spouse will be required for automatic termination of Pre-Pension Spouse Coverage under (b)(1) or (b)(2), as applicable, above. No consent shall be required of the Participant's spouse in order to terminate such coverage.

(g)    In the case of a River Terminal Employee, the Pre-Pension Spouse Coverage shall be provided in accordance with the provisions of the Plan in effect immediately before July 31, 1999.

## 3.18    Preretirement Survivor Annuity Coverage

(a)    Preretirement survivor annuity coverage (hereinafter "Survivor Annuity Coverage") is automatically applicable to any Participant, as described below, who has not, with the concurrence of his spouse, revoked such coverage:

   (1)    Any Participant who is accruing Continuous Service and who has completed at least five years of Continuous Service.

   (2)    Any Participant who incurs a break in Continuous Service on or after July 31, 1999 (in the case of a River Terminal Employee, January 1, 1996), and after age 60 with eligibility for a 60/15 or Deferred Vested Pension and who does not elect immediate commencement of pension.

   (3)    Any Participant who incurs a break in Continuous Service on or after July 31, 1999 (in the case of a River Terminal Employee, January 1, 1996), and prior to age 60 with eligibility only for a Deferred Vested Pension;

provided, however, this Survivor Annuity Coverage is not applicable to a Participant who is covered by the Pre-Pension Spouse Coverage provisions of Paragraph 3.17 as long as such coverage is in effect.

(b)    The surviving spouse (as defined in (d)(10) below) of a Participant who dies while Survivor Annuity Coverage is in effect will be eligible for a monthly payment:

ADMIN REC-0248

(1)    Commencing with the month following the month in which the Participant's death occurs, in the case of a Participant who dies while accruing Continuous Service and after the Participant (i) has attained 60 years of age or (ii) has completed 30 years of Continuous Service; or

(2)    In the case of a Participant who is not covered under (b)(1) above, commencing with the later of (i) the month following the month in which the Participant's 60th birthday would have occurred or (ii) the month following the month in which the Participant's death occurs; or

(3)    In the case of a Participant covered under either (a)(2) or (a)(3) above, commencing with the month specified by the surviving spouse in an application for benefit commencement, provided such month is subsequent to the month set forth in (b)(2), but no later than the month in which the Participant otherwise would have been eligible to receive an Unreduced 60/15 or Deferred Vested Pension.

Except as otherwise provided in Paragraph 3.23, the last installment of the Survivor Annuity shall be payable for the month in which the spouse's death shall occur.

(c)    The amount of the Survivor Annuity shall be determined as follows:

(1)    In the case of a Participant who dies while accruing Continuous Service, the Survivor Annuity shall be equal to the amount determined in accordance with Paragraphs 3.6(c) and 3.6(d) as though the Participant had retired on the date of his death. In the calculation of the Participant's benefit amount under the provisions of Paragraphs 3.3, 3.4, 3.5, and 3.6, the following shall apply:

(i)    in the case of a Participant who died prior to attainment of age 65:

(A)    in the determination of the 1987 Benefit and the 1992 Benefit under the provisions of Paragraph 3.3,

(I)    the benefit amount in Paragraphs 3.3(a)(1) and 3.3(a)(2) shall be determined as though the Participant had been age 65 on the date of his death;

(II)    the benefit amount in Paragraph 3.3(a)(3) shall be determined, for Participants who die prior to attainment of age 62, using the 1.50% percentage for retirement age 65, reduced in accordance with the actuarial reduction set forth in Paragraph 3.3(c)(3) for age 62; and

(III)    the benefit amount in Paragraph 3.3(a)(3) shall be determined, for Participants who die after attainment of age 62, using the applicable percentage from Paragraph 3.3(a)(3) for the Participant's age at his death.

(B)    in the determination of the Floor Benefit under the provisions of Paragraph 3.4(a), the benefit amount shall be calculated as though the Participant had been age 65 on the date of his death;

(C)    the DCP Annuity Equivalents used in the calculation of the Regular Pension amount in Paragraph 3.6 shall be the Immediate 1992 DCP Annuity Equivalent, the Immediate Additive DCP Annuity Equivalent and the Immediate Post-1992 Annuity Equivalent.

(ii)    the Lifetime Minimum Benefit shall be calculated in accordance with the provisions of Paragraph 3.4(b)(1), 3.4(b)(2), 3.4(b)(3) or 3.4(b)(4), whichever is applicable.

The amount determined above shall be reduced in accordance with (e) below, if applicable, or Paragraph 3.17(c), if applicable, multiplied by the applicable percentage obtained from (c)(4) below, based on the difference between the ages of the Participant and his spouse as of the date of the Participant's death, reduced by the Surviving Spouse's Benefit payable, if any, pursuant to Article IV; and

(2)    In the case of a Participant who had retired on a 60/15 or Deferred Vested Pension after attainment of 60 years of age and who had elected to defer commencement of pension payments and who dies prior to commencement of such payments, the Survivor Annuity shall be equal to:

(i)    the amount determined in accordance with Paragraphs 3.6(c) and 3.6(d), as though the Participant had elected to have pension payments commence with the first of the month following the date of death, or such later date as specified by the surviving spouse pursuant to (b)(3) above, reduced in accordance with Paragraph 3.18(e), if applicable, with such result multiplied by

(ii)    the applicable percentage obtained from (c)(4) below, based on the difference between the ages of the Participant and his spouse as of the date of the Participant's death, reduced by

(iii)    the surviving spouse's benefit payable, if any, pursuant to Article IV.

ADMIN REC-0250

(3)  In the case of a Participant eligible for a Deferred Vested Pension who dies prior to attainment of 60 years of age, the Survivor Annuity shall be equal to:

    (i)  the amount determined in accordance with Paragraphs 3.6(c) and 3.6(d), as though the Participant survived until age 60 and elected to have pension payments commence as of the first of the month following attainment of age 60, or such later date as specified by the surviving spouse pursuant to (b)(3) above, with such result multiplied by

    (ii)  the applicable percentage obtained from (c)(4) below, based on the difference between the ages of the Participant and his spouse as of the date of the Participant's death;

provided however, that in no event shall the combined amount payable under the Survivor Annuity and the Surviving Spouse's Benefit pursuant to Article IV, if any, be less than the amount to which the surviving spouse would have been entitled to receive under the Automatic 50% Spouse Option With Pop-Up provided for in Paragraph 3.19 (in the case of a River Terminal Employee, the 50% Spouse Option provided for in Paragraph 3.20) (determined by counting only the Participant's years of Continuous Service as of the date of his death) if:

    (A)  in the case of a Participant who dies after his "earliest retirement age," as such term is defined in Section 417(f)(3) of the Code, the Participant had retired or otherwise incurred a break in Continuous Service during the month before his death with an immediate Automatic 50% Spouse Option With Pop-Up (in the case of a River Terminal Employee, the 50% Spouse Option) (or, in the case of a Participant who effectively elected a 100% Co-Pensioner Option with his spouse as his Co-Pensioner and dies before the annuity starting date, an immediate 100% Co-Pensioner Option) commencing on the first day of the month following the month in which he died; or

    (B)  in the case of a Participant who dies on or before his earliest retirement age;

        (I)  the Participant (in the case only of a Participant who dies while he is an Employee) had incurred a break in Continuous Service on the date of his death;

        (II)  the Participant had survived to his earliest retirement age;

ADMIN REC-0251

(III)     the Participant had retired at his earliest retirement age, with a pension payable immediately under the Automatic 50% Spouse Option With Pop-Up (in the case of a River Terminal Employee, the 50% Spouse Option) (or, in the case of a Participant who effectively elected a 100% Co-Pensioner Option with his spouse as his Co-Pensioner and dies before the annuity starting date, an immediate 100% Co-Pensioner Option); and

(IV)     the Participant died on the day after his earliest retirement age.

(4)     Table of percentages to be used in (c)(1), (2) and (3) above shall be one-half of the 50% factors in Exhibit B; provided, however, that the percentages to be applied to a River Terminal Employee are contained in the table of percentages attached hereto as Exhibit E.

(d)    (1)     Within the applicable period described below, each Participant who is a River Terminal Employee and who is accruing Continuous Service shall be advised regarding Survivor Annuity Coverage, the benefits provided and the effect, or cost, of such Coverage on the Regular Pension provided pursuant to this Article. For purposes of the preceding sentence, the term "applicable period" shall mean whichever of the following periods ends last with respect to the Participant: (i) the period beginning with the first day of the Plan Year in which such Participant attains age 32 and ending with the close of the Plan Year preceding the Plan Year in which such Participant attains age 35, (ii) a reasonable period after the individual becomes such a Participant or (iii) a reasonable period after termination of employment in the case of such a Participant who terminates employment with the Controlled Group before attaining age 35.

(2)     A Participant who is a River Terminal Employee and is covered by Paragraphs 3.18(a)(2) and (3) will be advised upon termination of employment regarding Survivor Annuity Coverage, the benefits provided, and the effect, or cost, of such Coverage on the pension provided pursuant to this Article III. There shall be no charge for coverage after retirement or the break in Continuous Service if a Participant, with the concurrence of his spouse, files a valid revocation within 90 days of the date he is notified regarding such Coverage.

(3)     A Participant who is a River Terminal Employee, with the consent of his spouse, may revoke Survivor Annuity Coverage, (i) in the case of such a Participant covered by (d)(1), on or after the later of (A) completion of five years of Continuous Service and (B) the first day of the Plan Year in which such Participant attains age 35, or (ii) in the case of such a Participant covered by (d)(2), at any time after termination of employment.

ADMIN REC-0252

Once the spouse has consented to such a Participant's election to revoke Survivor Annuity Coverage in the manner provided herein, the spouse's consent may not be revoked.

(4)    Revocation of Survivor Annuity Coverage may be effected by filing the form prescribed for this purpose with the Plan Administrator. To be valid, the revocation must be signed by the Participant and his spouse in the presence of a Notary Public and the form notarized. Such revocation will be effective the date the form is received by the Plan Administrator. Such revocation is valid only with respect to the spouse executing the revocation.

(5)    Survivor Annuity Coverage will automatically terminate as of the earliest of:

    (i)    the date the Participant is divorced from his spouse, unless otherwise provided under a qualified domestic relations order, as defined in Section 414(p) of the Code;

    (ii)    the date the spouse dies;

    (iii)    except in the case of a Participant covered by Paragraphs 3.18(a)(2) and (3), the date of the Participant's retirement;

    (iv)    in the case of a Participant covered by Paragraphs 3.18(a)(2) and (3), the last day of the month preceding the first month for which pension is paid;

    (v)    the day following the date the Participant dies.

(6)    A Participant who is a River Terminal Employee will automatically be covered by Survivor Annuity Coverage unless such Participant and the spouse revoke such Coverage as of the later of (i) the date that is one year after the date the Participant and his spouse are first married or (ii) the date the Participant completes five years of Continuous Service.

(7)    A Participant who revokes Survivor Annuity Coverage may subsequently elect such coverage at any time by submitting the prescribed form, together with satisfactory proof of marriage and the ages of the Participant and his spouse, to the Plan Administrator. Such election will not be effective until the form and documents required are received by the Plan Administrator.

(8)    A Participant who is a River Terminal Employee and who returns to the employ of a Controlled Group Member after having been retired and receiving a pension or after having incurred a break in Continuous Service

with eligibility for a 60/15 or Deferred Vested Pension, shall automatically be provided Survivor Annuity Coverage effective with his first day of reemployment unless the Participant, with the concurrence of his spouse, revokes such coverage within 90 days of the date of reemployment.

(9)    Satisfactory proof of marriage of the Participant and his spouse and the age of the Participant's spouse will be required prior to the payment of monthly installments under Survivor Annuity Coverage. Satisfactory proof of divorce or of the death of the Participant's spouse will be required for automatic termination of Survivor Annuity Coverage under (d)(5)(i) or (ii) above.

(10)    A person shall be considered a surviving spouse for purposes of this Paragraph 3.18 only if:

(i)    immediately after a Participant's death, such person is a widow or widower of such Participant within the provisions of the Social Security Act, except that where such Act requires reference to the law of the District of Columbia, the applicable law shall be that of the State of Ohio; and

(ii)    such person and the Participant were married for at least one year immediately preceding the date of death.

However, to the extent provided in any qualified domestic relations order, as defined in Section 206(d) of ERISA and Section 414(p) of the Code, the former spouse of a Participant shall be treated as the surviving spouse of the Participant if the Participant and such former spouse were married for at least one year.

(11)    Notwithstanding anything to the contrary contained in the Plan, spousal consent will not be required to revoke the coverage provided under this Paragraph 3.18 if it is established to the satisfaction of the Plan Administrator that the consent of the spouse cannot be obtained because there is no spouse, because the spouse cannot be located or because of such other circumstances as the Secretary of the Treasury may by regulations prescribe.

(e)    (1)    If a Participant who is a River Terminal Employee is covered by Survivor Annuity Coverage, the amount determined in accordance with Paragraphs 3.6(c) and 3.6(d) will be reduced by an amount equal to the amount determined in accordance with Paragraphs 3.6(c) and 3.6(d) multiplied by the sum of:

(i)    1/10 of 1% for each year (and fraction thereof) that such Coverage was in effect prior to such Participant's attainment of age 50;

provided, however, that in the case of such a Participant who is accruing Continuous Service, no charge for such coverage shall be made until such Participant has attained 35 years of age and completed five years of Continuous Service;

(ii)     3/10 of 1% for each year (and fraction thereof) that such Coverage was in effect after such Participant attained age 50 and prior to attainment of age 60;

(iii)    5/10 of 1% for each year (and fraction thereof) that such Coverage was in effect after such Participant attained age 60;

(iv)    an adverse selection charge which shall be made each time such Participant elects Survivor Annuity Coverage (following a revocation of the same), equal to 1/10, 3/10 or 5/10 of 1%, whichever is applicable, based on the age of such Participant as of the date such Coverage is elected; and

(v)     the percentage determined pursuant to Paragraph 3.17(c) for each year that Pre-Pension Spouse Coverage was in effect.

(2)     There shall be no charge for Survivor Annuity Coverage for the period between August 23, 1984, and September 1, 1986 and the period between January 13, 1987 and December 31, 1990.  For any Participant other than a River Terminal Employee, effective August 1, 1999 for retirements on or after July 31, 1999, there shall be no charge for Survivor Annuity Coverage.

(f)     Notwithstanding anything to the contrary contained herein, in the event a Participant has elected Pre-Pension Spouse Coverage and such Coverage is in effect at the Participant's death (or, in the case of a River Terminal Employee, he has not revoked Survivor Annuity Coverage and dies accidentally after having met the age and service requirements for Pre-Pension Spouse Coverage and before the effective date of Pre-Pension Spouse Coverage), any benefit payable to the surviving spouse shall be payable under Paragraph 3.17 and no benefit shall be payable to such spouse under this Paragraph.

### 3.19    Automatic 50% Spouse Option With Pop-Up

(a)     (1)     The normal form of payment under the Plan shall be as determined under (i) for a Participant who has a spouse at the time pension payments are to commence and under (ii) for a Participant who does not have a spouse at such time.

(i)      Effective August 1, 1999 for retirements on or after July 31, 1999, unless a Participant who has a spouse at the time pension payments

ADMIN REC-0255

are to commence revokes the Automatic 50% Spouse Option With Pop-Up (in the case of a River Terminal Employee, the 50% Spouse Option described in Paragraph 3.20) within the period established by (a)(3) below, such Participant shall receive a Net Reduced Pension (as defined below) during his lifetime, and after the death of the Participant his spouse shall receive a lifetime monthly payment equal to one-half of his Reduced Pension (as defined below).

(ii)   A Participant who does not have a spouse at the time pension payments are to commence shall receive his Regular Pension during his lifetime only unless such Participant elects an Other Option in accordance with the provisions set forth in Paragraph 3.20.

(2)   For the purpose of this Paragraph 3.19, Reduced Pension means an amount equal to the product of:

(i)   the amount determined in accordance with Paragraphs 3.6(c) and 3.6(d) reduced in accordance with Paragraphs 3.17(c), 3.18(e) and 3.24(c)(6), if applicable, and subject to the deductions provided pursuant to Paragraphs 3.10 and 3.11, if applicable, multiplied by

(ii)   the applicable percentage obtained from Exhibit A or B, as applicable, based on the ages of the Participant and his spouse at the date pension payments commence;

and Net Reduced Pension means the Reduced Pension increased in accordance with the provisions of Paragraphs 3.7 and 3.8 if applicable, and decreased in accordance with the provisions of Paragraph 3.12, if applicable.

(3)   A Participant may revoke the Automatic 50% Spouse Option With Pop-Up (in the case of a River Terminal Employee, the 50% Spouse Option described in Paragraph 3.20) by written notice duly filed with the Plan Administrator at any time, effective January 1, 1997, within the period that begins not more than 90 days and ends not less than seven days prior to the date pension payments commence, and

(i)   receive the Regular Pension otherwise payable under the Plan during his lifetime only; or

(ii)   elect an Other Option in accordance with the provisions set forth in Paragraph 3.20.

ADMIN REC-0256

(4)    A Participant may cancel a revocation of the Automatic 50% Spouse Option With Pop-Up (in the case of a River Terminal Employee, the 50% Spouse Option described in Paragraph 3.20) at any time during the period in which he may revoke such Option.

(b)    Any monthly payment resulting from the Automatic 50% Spouse Option With Pop-Up (in the case of a River Terminal Employee, the 50% Spouse Option described in Paragraph 3.20) will be in addition to any Surviving Spouse's Benefit provided under Article IV.

(c)    In the case of a Participant who has not revoked the Automatic 50% Spouse Option With Pop-Up (in the case of a River Terminal Employee, the 50% Spouse Option described in Paragraph 3.20), the first installment of Net Reduced Pension shall be payable for the month in which he is first entitled under Paragraph 3.15 to receive Regular Pension. The last installment of such Net Reduced Pension shall be payable for the month in which the Participant's death shall occur; provided, however, that any monthly installments payable to such Participant and remaining unpaid at the time of his death will be paid to his spouse, if then surviving. The first monthly payment to the Participant's spouse shall be payable for the month following the month in which the Participant's death shall occur, but not for any month prior to the month for which the Participant would have first been entitled to receive a Net Reduced Pension, and the last monthly payment to such spouse shall be payable for the month in which such spouse shall die.

(d)    Any revocation of the Automatic 50% Spouse Option With Pop-Up (in the case of a River Terminal Employee, the 50% Spouse Option described in Paragraph 3.20) shall be executed on the form prescribed for this purpose by the Plan Administrator and shall be deemed to be duly filed when it shall have been received by the Plan Administrator.

(e)    Satisfactory proof of marriage of the Participant and his spouse and of the age of the Participant's spouse will be required prior to the payment of monthly installments under this coverage.

(f)    If any Participant shall die prior to commencement of pension payments, the Participant's spouse shall not be entitled to any payments pursuant to this Paragraph 3.19.

(g)    If any Participant shall not have revoked the Automatic 50% Spouse Option With Pop-Up (in the case of a River Terminal Employee, the 50% Spouse Option described in Paragraph 3.20) within the period established by (a)(3) above and his spouse shall die after the end of such period, but prior to the death of such Participant, such Participant if he is not a River Terminal Employee shall thereafter receive pension installments equal to his Regular Pension, and if he is a River Terminal Employee shall thereafter continue to receive the Net Reduced Pension.

ADMIN REC-0257

(h)    If any Participant shall not have revoked the Automatic 50% Spouse Option With Pop-Up (in the case of a River Terminal Employee, the 50% Spouse Option described in Paragraph 3.20) and his spouse shall die within the period established by (a)(3) above, the Participant shall be treated the same as if he had revoked such option.

(i)    Notwithstanding anything to the contrary contained in this Paragraph 3.19, if, after the retirement of a Participant who shall not have revoked the Automatic 50% Spouse Option With Pop-Up (in the case of a River Terminal Employee, the 50% Spouse Option described in Paragraph 3.20), the amount of Regular Pension which would have been payable to him under the Plan had he revoked such option is subject to any further deduction, change, offset or correction, then the amount payable under such option to such Participant and/or his spouse shall be adjusted to reflect any such further deduction, change, offset or correction. .

(j)    For the purpose of this Paragraph 3.19, in the case of a Participant who retires on other than a Deferred Vested Pension or a Deferred 60/15 Pension, pension payments shall be deemed to commence as of the date of retirement and, in the case of a Participant who retires on a Deferred Vested Pension or a Deferred 60/15 Pension, pension payments shall be deemed to commence as of the first of the month for which Regular Pension is first payable under the provisions of Paragraph 3.15.

(k)    Notwithstanding anything to the contrary contained in this Paragraph 3.19, a Participant may revoke the Automatic 50% Spouse Option With Pop-Up (in the case of a River Terminal Employee, the 50% Spouse Option described in Paragraph 3.20) only with the written consent of his spouse. Revocation of this option may be effected by filing the prescribed form with the Plan Administrator. To be valid, the form must be signed by the Participant and his spouse in the presence of a notary public and the form notarized. This notarized form will be effective only when the form is filed with the Plan Administrator. Once the spouse has consented to a Participant's election to revoke the Automatic 50% Spouse Option With Pop-Up (in the case of a River Terminal Employee, the 50% Spouse Option described in Paragraph 3.20) in the manner provided herein, the spouse's consent may not be revoked. The election to revoke the Automatic 50% Spouse Option With Pop-Up (in the case of a River Terminal Employee, the 50% Spouse Option described in Paragraph 3.20) must designate a Co-Pensioner or a form of benefits that may not be changed without the written consent of the Participant's spouse, unless the written consent of the spouse expressly permits designations by the Participant without any requirement of further consent by the spouse. The spouse's consent must acknowledge the effect of the revocation.

(l)    Notwithstanding anything contained in (k) above, spousal consent will not be required to revoke the coverage under this Paragraph 3.19 if it is established to the satisfaction of the Plan Administrator that such consent of the spouse cannot be

ADMIN REC-0258

obtained because there is no spouse, because the spouse cannot be located or because of such other circumstances as the Secretary of the Treasury may by regulations prescribe.

(m)    The Plan Administrator shall provide each Participant, not more than 90 days nor less than seven days before the date his pension payments are to commence, a written explanation of:

(1)    the terms and conditions of the Automatic 50% Spouse Option With Pop-Up (in the case of a River Terminal Employee, the 50% Spouse Option described in Paragraph 3.20);

(2)    the Participant's right to make and the effect of, a revocation of the Automatic 50% Spouse Option With Pop-Up (in the case of a River Terminal Employee, the 50% Spouse Option described in Paragraph 3.20);

(3)    the rights of the Participant's spouse under the Automatic 50% Spouse Option With Pop-Up (in the case of a River Terminal Employee, the 50% Spouse Option described in Paragraph 3.20); and

(4)    a general description of the eligibility features and relative values of the optional forms of benefit provided under the Plan.

## 3.20    Other Options

(a)    Subject to the provisions of Paragraph 3.19, any Participant may, under the conditions set forth in (d) below, by written notice duly filed with the Plan Administrator:

(1)    Elect to convert the Regular Pension otherwise payable to him under the Plan upon retirement into a Net Reduced Pension, in accordance with the 100% Co-Pensioner Option, the 50% Co-Pensioner Option or the 50% Spouse Option described below; or

(2)    Revoke any such election previously made, in which event he shall be treated as if he had not made such election; or

(3)    Change any such election from one to the other of such options and/or change the person previously named as his Co-Pensioner.

100% CO-PENSIONER OPTION -- A Net Reduced Pension payable to the Participant during his life, with the provision that after his death an amount equal to the Reduced Pension shall be paid to his Co-Pensioner.

50% CO-PENSIONER OPTION -- A Net Reduced Pension payable to the Participant during his life, with the provision that after his death an

ADMIN REC-0259

amount equal to one-half of the Reduced Pension shall be paid to his Co-Pensioner.

50% SPOUSE OPTION – A Net Reduced Pension payable to the Participant during his life, with the provision that after his death an amount equal to one-half of his reduced pension shall be paid to his spouse.

(b)  For the purpose of this Paragraph 3.20, Reduced Pension means an amount equal to the product of:

(1)  The amount determined in accordance with Paragraphs 3.6(c) and 3.6(d) reduced in accordance with Paragraphs 3.17(c), 3.18(e) and 3.24(c)(6), if applicable, and subject to the deductions provided pursuant to Paragraphs 3.10 and 3.11, if applicable, multiplied by

(2)  The applicable percentage obtained from Exhibit A or B, as applicable, based on the ages of the Participant and his Co-Pensioner or spouse at the date pension payments commence as described in (m) below;

and Net Reduced Pension means the Reduced Pension increased in accordance with the provisions of Paragraphs 3.7 and 3.8, if applicable, and decreased in accordance with the provisions of Paragraph 3.12, if applicable.

(c)  Notwithstanding anything to the contrary in (a) and (b) above, if the Participant has elected either the 100% Co-Pensioner Option or the 50% Co-Pensioner Option and if, upon retirement, the Participant has a spouse who can become eligible for a Surviving Spouse's Benefit:

(1)  The Participant shall receive a pension equal to the sum of:

(i)  50% of an amount equal to the monthly amount determined in accordance with Paragraphs 3.6(c) and 3.6(d) reduced in accordance with Paragraphs 3.17(c), 3.18(e) and 3.24(c)(6), if applicable, and subject to the deductions provided pursuant to Paragraphs 3.10 and 3.11, if applicable; and

(ii)  50% of his Reduced Pension,

increased in accordance with the provisions of Paragraphs 3.7 and 3.8, if applicable, and decreased in accordance with the provisions of Paragraph 3.12, if applicable.

(2)  The Participant's Co-Pensioner shall, following the Participant's death, receive an amount equal to 50% of the Participant's Reduced Pension if the Participant had elected a 100% Co-Pensioner Option, or an amount

ADMIN REC-0260

equal to 25% of the Participant's Reduced Pension if the Participant had elected a 50% Co-Pensioner Option.

(3)    For the purposes of determining the appropriate Reduced Pension, if the Participant's Co-Pensioner is other than the Participant's spouse, it will be presumed that the Participant does not have a spouse unless he furnishes proof to the contrary in the form of a marriage certificate or other evidence satisfactory to the Plan Administrator.

(d)    Any Participant may in accordance with the provisions of (a) above and the provisions of Paragraph 3.19, elect to revoke the Automatic 50% Spouse Option With Pop-Up provided under Paragraph 3.19 (in the case of a River Terminal Employee, the 50% Spouse Option described in Paragraph 3.20) and to have his pension payable to him in a form provided in this Paragraph 3.20 at any time during the 90-day period ending on the date pension payments to him are to commence.

(e)    In the case of a Participant who shall have elected one of the options specified, the first installment of Net Reduced Pension shall be payable for the month for which he is first entitled under Paragraph 3.15 to receive a Regular Pension; and the last installment of such Net Reduced Pension to the Participant shall be payable for the month in which his death shall occur; provided, however, that any monthly installments payable to such Participant and remaining unpaid at the time of his death may be paid to his Co-Pensioner or spouse, if then surviving.  The first monthly payment to his Co-Pensioner or spouse shall be payable for the month following the month in which such Participant's death shall occur, but not for any month prior to the month for which the Participant would have first been entitled to receive a Net Reduced Pension, and the last monthly payment that shall be payable to such Co-Pensioner or spouse shall be payable for the month in which such Co-Pensioner or spouse shall die.

(f)    Any election or revocation of an option or change of an option election and/or Co-Pensioner pursuant to this Paragraph 3.20 shall be executed on a form prescribed for such purpose by the Plan Administrator and shall be deemed to be duly filed when it shall have been received by the Plan Administrator.

(g)    Satisfactory proof of age of the named Co-Pensioner or spouse will be required prior to the payment of pension installments under an elected option.  No consent shall be required of the Co-Pensioner or spouse in any election under any Other Option in order to revoke such election or to change the Co-Pensioner and/or the option elected; provided, however, that in the event the Co-Pensioner is the Participant's spouse, any such change is subject to the provisions of (n) below.

(h)    If any Participant shall have elected an option under this Paragraph 3.20 and shall die prior to commencement of pension payments, such election shall cease to be of any effect, and the Co-Pensioner or spouse shall not be entitled to any

ADMIN REC-0261

payments by reason of the election of such option.

(i)    If any Participant shall have elected an option under this Paragraph 3.20 and his Co-Pensioner or spouse shall die (1) after such Participant shall have commenced receiving pension payments or, if later, (2) after the expiration of the 90-day period described in (d) above but prior to the death of such Participant, such Participant shall continue to receive Net Reduced Pension installments in accordance with such option.

(j)    If any Participant shall have elected an option under this Paragraph 3.20 and his Co-Pensioner or spouse shall die (1) before such Participant shall have commenced receiving pension payments or, if later, (2) before the expiration of the 90-day period described in (d) above then the Participant shall be treated the same as if he had not made such election.

(k)    Notwithstanding anything to the contrary contained in this Paragraph 3.20, if, after the retirement of a Participant who shall have elected any Other Option, the amount of Regular Pension which would have been payable to him under the Plan had he not elected an option is subject to any further deduction, change, offset or correction, then the amount payable under an elected option to such Participant and/or his Co-Pensioner or spouse shall be adjusted to reflect any such further deduction, change, offset or correction.

(l)    Notwithstanding anything to the contrary contained in this Paragraph 3.20, in the event that the amount payable to a Co-Pensioner is determined as though the Participant did not have a spouse who could become eligible for a Surviving Spouse's Benefit because such Participant who had a spouse at retirement failed to notify the Plan Administrator that he had such a spouse, the amount otherwise payable to the Co-Pensioner for any month shall be reduced by the amount of any Surviving Spouse's Benefit provided for the same month pursuant to Article IV of the Plan.

(m)    For the purpose of this Paragraph 3.20, in the case of a Participant who retires on other than a Deferred Vested Pension or a Deferred 60/15 Pension, pension payments shall be deemed to commence as of the date of retirement and, in the case of a Participant who retires on a Deferred Vested Pension or a Deferred 60/15 Pension, pension payments shall be deemed to commence as of the first of the month for which Regular Pension is first payable under the provisions of Paragraph 3.15.

(n)    Notwithstanding anything to the contrary contained in this Paragraph 3.20, if a Participant who revokes the Automatic 50% Spouse Option With Pop-Up (in the case of a River Terminal Employee, the 50% Spouse Option described in Paragraph 3.20) elects to receive a 50% Co-Pensioner Option or a 100% Co-Pensioner Option and the Co-Pensioner is not the Participant's spouse, the spouse must consent to the designation of the specific Co-Pensioner or a form of benefits.

Once the spouse has consented to a Participant's Co-Pensioner designation or election of a form of benefits by filing the prescribed form with the Plan Administrator, the spouse's consent may not be revoked. To be valid, the form must be signed by the Participant and his spouse in the presence of a notary public and the form notarized. This notarized form will be effective only when the form is filed with the Plan Administrator. Any subsequent change in election by the Participant, however, must also satisfy the spousal consent requirements. The spouse's consent will not be required in any case where the Participant establishes to the satisfaction of the Plan Administrator that such consent cannot be obtained because there is no spouse, because the spouse cannot be located, or because of such other circumstances as the Secretary of the Treasury may by regulations prescribe.

### 3.21    Qualified Domestic Relations Order Reduction

In the event that a qualified domestic relations order, as defined in Section 414(p) of the Code, requires payment to a third party of all or part of the pension benefits which would be otherwise immediately payable to a Participant except for the fact that such Participant has not yet terminated employment with the Controlled Group or has terminated employment with the Controlled Group but has not applied for benefits, any benefit which subsequently becomes payable under the Plan shall, consistent with Section 414(p) of the Code, be reduced in a manner so that the amount of the benefit actually payable to such Participant and the amount of pension benefits payable to such third party shall be the Actuarial Equivalent of the pension benefits which would otherwise be payable to such Participant under the Plan in the absence of such order.

### 3.22    Eligible Rollover Distribution

(a)    To the extent that a distribution from the Plan is an "eligible rollover distribution" (as defined in Section 401(a)(31) or 402(c)(4) of the Code), the Participant, surviving spouse or, if applicable, alternate payee (as defined in Section 414(p) of the Code) who will receive an eligible rollover distribution may elect a direct rollover of that distribution into an "eligible retirement plan" (as defined in Section 401(a)(31)(D) of the Code). A direct rollover is a payment made by the Plan to an eligible retirement plan specified by the Participant, surviving spouse or alternate payee pursuant to Section 401(a)(31) of the Code and the regulations thereunder.

(b)    The Plan Administrator shall provide a Participant, surviving spouse or alternate payee who will receive an eligible rollover distribution with a written notice describing his rights under this Paragraph 3.22, such other information required to be provided under Section 402(f) of the Code, and, if applicable, the right to defer receipt of such distribution no less than 30 days nor more than 90 days before the date scheduled for payment of such distribution. Notwithstanding the foregoing, such distribution may commence less than 30 days after such written notice is provided to the Participant, surviving spouse or alternate payee provided that (i)

ADMIN REC-0263

the recipient is clearly informed by the Plan Administrator of his right to a period of at least 30 days after receiving the written notice to consider a particular form of benefit and (2) after receiving the written notice, the recipient affirmatively elects the distribution. Nothing contained in this Paragraph 3.22 shall be construed to accelerate the timing of a distribution otherwise provided in the Plan.

(c)     The Plan Administrator shall adopt, and may amend from time to time, rules of uniform application governing payments pursuant to this Paragraph 3.22.

### 3.23     Automatic Five-Year Term Certain

(a)     Eligibility

Notwithstanding anything herein to the contrary, a Participant (including a River Terminal Employee who retires on or after January 1, 1996) who retires on other than a Deferred Vested Pension will be entitled to receive the benefits described in (b) below for a minimum of 60 months following the first of the month for which Regular Pension is first payable under the provisions of Paragraph 3.15.

(b)     Amount of Benefit

(1)     For any month which is prior to both (i) the end of the 60-month period defined in (a) above, and (ii) the month following the month in which the Participant's death occurs, the monthly payment otherwise payable to the Participant under the Plan for such month shall be increased to the extent necessary so that the total amount payable to the Participant under the Plan for such month shall not be less than the Participant's Regular Pension, as determined in accordance with Paragraph 3.6(c) or 3.6(d).

(2)     For any month which is both (i) prior to the end of the 60-month period defined in (a) above, and (ii) after the month in which the Participant's death occurs, the surviving spouse shall be entitled to a monthly payment under this Paragraph 3.23 equal to the difference between:

(i)     the monthly payment the Participant would have been entitled to for such month if he had not died, as determined in accordance with Paragraph 3.6(c) or 3.6(d) after taking into account the adjustments made by Paragraphs 3.9, 3.10, 3.11, 3.17(c), 3.18(e), 3.21 and 3.24(c)(6); and

(ii)     the total of all amounts otherwise payable for such month under the Plan on behalf of the Participant to his surviving spouse or Co-Pensioner.

ADMIN REC-0264

In the event that there is no surviving spouse, such benefit will be paid the person designated by the Participant as his beneficiary, and if there is no surviving beneficiary, such benefit will be paid to the estate of the Participant.

(c)    Any Participant may, in accordance with the provisions of (b) above and on a form prescribed for such purpose by the Plan Administrator, designate a beneficiary in the event of the death of the spouse or change such a beneficiary designation at any time prior to his death. Such beneficiary designation shall be deemed to be effective when it shall have been received by the Plan Administrator.

(d)    Pre-Retirement Death

   (1)    In the event a Participant who is eligible to retire (on other than a Deferred Vested Pension) makes application for retirement during any calendar month and then dies in the month in which his retirement occurred (while such application for retirement is pending), the benefits provided under this Paragraph 3.23 will be paid as if the Participant survived until such requested retirement date. Notwithstanding anything to the contrary contained herein, except as otherwise provided in (2) below, the protection afforded by this Paragraph 3.23 shall be inapplicable to any Participant who has filed an application for retirement and then revoked the same.

   (2)    Effective August 1, 1999 for deaths on or after July 31, 1999, in the event a Participant (other than a River Terminal Employee) who is accruing Continuous Service and who is eligible to retire on a 30-Year, 60/15, 62/15 or Normal Retirement dies prior to making application for retirement, the benefits provided under this Paragraph 3.23 shall be payable in accordance with (b)(2) above.

**3.24    DCP Accounts**

(a)    Definitions

   (1)    Beneficiary. The person the Participant designated from time to time by filing a written designation with the Plan Administrator to receive the Participant's DCP Account payable upon the death of the Participant; provided, however, that (except as otherwise provided in Paragraph 3.19(k)), a Participant's spouse, if any, shall automatically be deemed to be the Participant's designated beneficiary, notwithstanding any contrary designation. If any unmarried Participant fails to designate a Beneficiary, or if the Beneficiary designated by a deceased Participant dies before him or before complete distribution of the Participant's DCP Account, then the Participant's Beneficiary shall be the estate of the Participant. If a surviving spouse elects a form of payment under (c)(2)(ii) that provides

for payments after the spouse's death, the spouse's Beneficiary shall be the estate of the spouse unless the spouse designates otherwise by filing a written designation with the Plan Administrator.

(2)     Bookkeeping Account.  A separate bookkeeping account established and maintained for a Participant, in accordance with (b)(1) below, solely for purposes of facilitating certain calculations as described in this Paragraph 3.24.

(3)     DCP Account.  A separate account established and maintained for a Participant under the Plan, the assets of which are segregated within the Trust with all other assets of all other DCP Accounts.

(4)     Valuation Date.  The last day of each month.

(b)     DCP Accounts

(1)     Establishment.  The Plan Administrator shall cause a DCP Account to be established for (A) each Participant with a Company Contribution Account in the DCP on November 30, 1999, the assets and liabilities of which were transferred to the Trust effective as of December 1, 1999, (B) each Participant in the office and clerical bargaining unit of the LTV Steel Hennepin Works and with an account under the LTV Steel Retirement Plan on February 28, 2000, the assets and liabilities of which were transferred to the Trust effective as of February 29, 2000, and (C) each River Terminal Employee or Cuyahoga Valley Participant hired on or after December 1, 1999.  The Plan Administrator shall also establish and maintain for each Participant (other than River Terminal Employees and Cuyahoga Valley Participants) a Bookkeeping Account.  The Plan Administrator shall cause to be maintained records for each DCP Account and each Bookkeeping Account showing contributions to and payments from such accounts and the amount of income, gains and losses attributable thereto.

(2)     Contributions.  Any contributions made under Exhibit K or L, as applicable, shall be subject to the limitations provided in Paragraph 3.13A and shall be paid in cash by the applicable Employing Company to the Trustee within 15 days following the last day of each month during the Plan Year for which the contributions are being made.

(i)     No contributions shall be made to a DCP Account by or on behalf of a Participant other than a River Terminal Employee or a Cuyahoga Valley Participant.

(ii)    The applicable Employing Company shall make contributions, for periods beginning on and after December 1, 1999, on behalf of

each Participant who is a River Terminal Employee or Cuyahoga Valley Participant to such Participant's DCP Account in accordance with Exhibit K or L, as applicable.

(3)   Initial Value of Accounts. The initial value of a Participant's DCP Account is equal to (i) the amount transferred effective as of December 1, 1999, to the Plan from his Company Contribution Account in the DCP, (ii) for each Participant in the office and clerical bargaining unit of the LTV Steel Hennepin Works, the amount transferred effective as of February 29, 2000, to the Plan from his account under the LTV Steel Retirement Plan, and (iii) in the case of any Participant who did not have a Company Contribution Account or an account under the LTV Steel Retirement Plan, zero. The initial value of each Participant's Bookkeeping Account shall be equal to such amount as indicated under the bookkeeping account for such Participant established and maintained pursuant to agreement with the Union in conjunction with the original establishment of the DCP prior to December 1, 1999.

(4)   Adjustments to Accounts. Company Contributions shall be allocated to the DCP Accounts of the Participants on whose behalf such Company Contributions were made, effective as of the last day of the month for which such Company Contributions were made. The Trust assets attributable to DCP Accounts and to the Suspense Account shall be valued at fair market value as of such Valuation Date, and the net earnings (or losses) and the net appreciation (or depreciation) in the value of the Trust assets shall be allocated to the DCP Account of each Participant and to the Suspense Account as of such date in the same ratio to such total as the balance of the Participant's DCP Account and the balance of the Suspense Account as of such Valuation Date, determined before any allocations described in this sentence or the preceding sentence, bears to the aggregate of the balances of all DCP Accounts and the Suspense Account as of such Valuation Date, determined before any allocations described in this sentence or the preceding sentence. The amount credited to each Participant's Bookkeeping Account shall be adjusted as of each Valuation Date for net earnings (or losses) and net appreciation (or depreciation) in the same manner as the DCP Accounts are adjusted and as though the amount credited to the Bookkeeping Account were invested in the same investments as the DCP Accounts; provided, however, that under no circumstances shall any Bookkeeping Account be funded or treated as funded.

(c)   Distribution of Accounts

(1)   Vesting and Forfeitures

A Participant (or surviving spouse) shall be entitled to a distribution under

this Paragraph 3.24(c) only if the Participant is fully vested in his DCP Account and his Bookkeeping Account. A Participant shall be fully vested in his DCP Account and his Bookkeeping Account upon the earliest of:

(i)     completion of five years of Continuous Service;

(ii)    attainment of age 65;

(iii)   permanent incapacity (as defined in Paragraph 2.5); and

(iv)    death.

If a Participant who is not vested in his DCP Account and his Bookkeeping Account and who is not a River Terminal Employee or Cuyahoga Valley Participant has a break in Continuous Service, his DCP Account shall be transferred to a suspense account established under the Trust ("Suspense Account"). Such Participant's Bookkeeping Account shall continue to be maintained and adjusted as in accordance with (b)(4) during any period during which the Participant's DCP Account remains in the Suspense Account. As of the last day of the Plan Year during which the fifth anniversary of the Participant's break in Continuous Service occurs, amounts transferred to the Suspense Account shall be forfeited, the value of such Participant's Bookkeeping Account shall be deemed zero, such Bookkeeping Account shall thereafter cease to be maintained, and any forfeited amount in the Suspense Account shall be transferred from the Suspense Account to the unallocated portion of the Trust and used to reduce future contributions by Employing Companies in accordance with Paragraph 8.1. If a Participant who is not vested in his DCP Account and who is a River Terminal Employee or Cuyahoga Valley Participant has a break in Continuous Service, his DCP Account shall be forfeited and applied to offset future Company Contributions under Exhibit K or L, as applicable, or to pay administrative expenses. The Plan Administrator shall establish and maintain a clearing account solely for the purposes of recording forfeitures and investment experience thereon for any forfeited amounts attributable to the DCP Account of a River Terminal Employee or Cuyahoga Valley Participant, such clearing account to be adjusted for investment experience as the Plan Administrator shall direct. If a Participant is reemployed before he incurs five consecutive one-year breaks in Continuous Service, the amount of forfeitures (adjusted for any gains or losses subsequent to the date of forfeiture) shall be restored to the Participant's DCP Account from the Suspense Account or, in the case of a Participant who is a River Terminal Employee or a Cuyahoga Valley Participant, from any forfeitures not yet applied to offset future Company Contributions or to pay administrative expenses and, if such forfeitures do not suffice to restore such Participant's DCP Account, from additional

ADMIN REC-0268

contributions by the Employing Company to be made as necessary for such purpose.

(2)    Distribution on Death

In the event that a Participant dies before receiving payment of any portion of his DCP Account, the following shall apply:

(i)    If the Participant is not married at the time of his death, such Participant's DCP Account shall be paid to such Participant's Beneficiary in a single lump sum as soon as administratively practicable following the date of the Participant's death.

(ii)    If the Participant is married at the time of his death:

(A)    Such Participant's DCP Account shall be paid to such Participant's surviving spouse in any of the following forms, as such spouse shall elect:

(I)    a single lump-sum cash payment equal to such amount as the surviving spouse may designate, but limited to the greater of (aa) $10,000 or (bb) 10% of the sum of the Participant's DCP Account and his Bookkeeping Account, provided that such single lump-sum cash payment shall not exceed the total amount of the Participant's DCP Account; and any remaining portion of the DCP Account shall be paid, at the spouse's election, in the form specified in (II), (III), (IV), (V) or (VI) below; provided, however, that if, after giving effect to such single lump-sum cash payment, the Participant's DCP Account would be less than $3,500, the spouse may elect that the remaining balance of the DCP Account be distributed in a single lump-sum cash payment;

(II)    a single life annuity;

(III)    a single life annuity with cash refund;

(IV)    payments for five years, and if the spouse is then still living, thereafter during the spouse's remaining lifetime, with payments continuing to the spouse's Beneficiary for the remainder of the initial five-year period if the spouse dies during such initial five-year period;

ADMIN REC-0269

(V)    payments for 10 years, and if the spouse is then still living, thereafter during the spouse's remaining lifetime, with payments continuing to the spouse's Beneficiary for the remainder of the initial 10-year period if the spouse dies during such initial 10-year period.

(VI)    payments for 15 years, and if the spouse is then still living, thereafter during the spouse's remaining lifetime, with payments continuing to the spouse's Beneficiary for the remainder of the initial 15-year period if the spouse dies during such initial 15-year period.

(B)    Notwithstanding anything to the contrary, the surviving spouse of a Participant in the office and clerical bargaining unit at the LTV Steel Hennepin Works shall be eligible, in addition to the other forms of benefit specified in (A) above, to receive any amount up to and including the Participant's entire DCP Account in a single lump-sum cash payment.

(C)    If a Participant's DCP Account is payable under (A) above to a surviving spouse or if such Participant has a zero balance in his DCP Account, and if such Participant's Bookkeeping Account has a balance of more than zero, a portion of the Regular Pension determined under Paragraph 3.6 shall be paid in the form elected by the spouse under (A) above for payment of the DCP Account, such portion to be determined as the equivalent (calculated in the same manner as provided in (c)(6) below) of the Bookkeeping Account, with the Regular Pension otherwise determined under Paragraph 3.6 adjusted in the same manner as provided in (c)(6) below; provided, however, that if a spouse elects to receive a lump-sum payment under (A)(I), the portion of the Bookkeeping Account payable as a lump sum shall be equal to such amount as the surviving spouse may designate but limited to the excess of (I) the greater of $10,000 (or, if less, the sum of the DCP Account and the Bookkeeping Account) or 10% of the sum of the DCP Account and the Bookkeeping Account over (II) the DCP Account.

(D)    The annuity value of the DCP Account payable to a spouse under (A), and the annuity value of the portion of the Regular Pension payable under (B), shall be determined in

ADMIN REC-0270

accordance with (c)(6), but based on the spouse's age.

(3)  Normal Form of Payment

    (i)  <u>Married Participant</u>. The normal form of distribution of a Participant's DCP Account to a Participant who has not died prior to the commencement of benefits hereunder and who is eligible for any type of pension shall be, in the case of a married Participant, the Automatic 50% Spouse Option With Pop-Up described in Paragraph 3.19 (in the case of a River Terminal Employee, the 50% Spouse Option described in Paragraph 3.20).

    (ii)  <u>Unmarried Participant</u>. The normal form of distribution of a Participant's DCP Account to a Participant who has not died prior to the commencement of benefits hereunder shall be, in the case of an unmarried Participant, a Regular Pension payable in accordance with Paragraph 3.19(a)(1)(ii).

    (iii)  The annuity value of a Participant's DCP Account shall be determined in accordance with (6)(i) below.

(4)  Optional Forms of Payment for DCP Accounts

    (i)  In lieu of the normal form of distribution provided in (3) above, a Participant may elect an alternate form of payment described in (ii) below. Such election must be made in the manner described in Paragraph 3.19(k).

    (ii)  Upon an election as described in (i) above, a Participant's DCP Account may be paid in any one of the alternate forms described in this Subparagraph (ii).

        (A)  a single lump-sum cash payment equal to such amount as the Participant may designate but limited to the greater of (I) $10,000 or (II) 10% of the sum of the Participant's DCP Account and his Bookkeeping Account, provided that such single lump-sum cash payment shall not exceed the total amount of the Participant's DCP Account; and any remaining portion of the DCP Account paid, at the Participant's election, either in the same form as the Participant elects for payment of his Regular Pension or in the form specified in (B), (C), or (D) below; provided, however, that if, after giving effect to such single lump-sum cash payment, the Participant's DCP Account would be less than $3,500, the Participant may elect that the remaining

ADMIN REC-0271

> balance of the Participant's DCP Account be distributed in a single lump-sum cash payment;

      (B)     a single life annuity with cash refund;

      (C)     payments for 10 years, and if the Participant is then still living, thereafter during the Participant's remaining lifetime, with payments continuing to the Participant's Beneficiary for the remainder of the initial 10-year period if the Participant dies during such initial 10-year period;

      (D)     payments for 15 years, and if the Participant is then still living, thereafter during the Participant's remaining lifetime, with payments continuing to the Participant's Beneficiary for the remainder of the initial 15-year period if the Participant dies during such initial 15-year period.

    (iii)    Notwithstanding anything to the contrary, a Participant in the office and clerical bargaining unit at the LTV Steel Hennepin Works shall be eligible, in addition to the other optional forms of benefit specified in (ii) above, to receive any amount up to and including his entire DCP Account in a single lump-sum cash payment.

    (iv)    To the extent a distribution pursuant to this Paragraph (4) is an Eligible Rollover Distribution (as defined in Section 401(a)(31) or 402(c)(4) of the Code), the Participant, Beneficiary (provided such Beneficiary is a spouse) or, if applicable, alternate payee (as defined in Section 414(p) of the Code) who will receive such Eligible Rollover Distribution may elect a direct rollover of that Distribution into an "eligible retirement plan" (as defined in Section 401(a)(31)(D) of the Code).

    (v)    The annuity value of a Participant's DCP Account shall be determined in accordance with (6)(i) below.

  (5)    Additional Forms of Payment for Portion of Regular Pension

    (i)    Notwithstanding anything to the contrary in the Plan, any Participant who has not died prior to the commencement of benefits hereunder, who is eligible for any type of pension, and whose Bookkeeping Account has a balance of more than zero:

      (A)     If the Participant elects to receive any portion of his DCP Account under (4)(ii)(A) above or if the Participant has a zero balance in his DCP Account, the Participant shall be eligible to elect to receive a portion of his Regular Pension

ADMIN REC-0272

in a single lump-sum cash payment, such portion to be determined as the equivalent (calculated as provided in (6)(ii) below) of an amount equal to the excess of (I) such amount as the Participant designates but limited to the greater of $10,000 (or, if less, the sum of such Participant's DCP Account and his Bookkeeping Account) or 10% of the sum of such Participant's DCP Account and his Bookkeeping Account over (II) such Participant's DCP Account, with his Regular Pension otherwise determined under Paragraph 3.6 adjusted as provided in (6)(ii) below.

(B)    Either in combination with an election under (A) above or separately if (A) above is inapplicable, the Participant shall be eligible to elect to receive a portion of his Regular Pension in any of the optional forms provided in (4)(ii)(B), (C) or (D) above , such portion to be determined as the equivalent (calculated as provided in (6)(iii) below) of any portion of such Participant's Bookkeeping Account that remains after giving effect (if applicable) to (A) above, with his Regular Pension otherwise determined under Paragraph 3.6 adjusted as provided in (6)(iii) below.  Notwithstanding the foregoing, if the Participant elects to receive any portion of his DCP Account under (4)(ii)(B), (C) or (D), the only optional form of payment available under this (5)(i)(B) shall be the form the Participant elects with regard to his DCP Account under (4)(ii)(B), (C) or (D).

(ii)    If a Participant does not elect  to receive any portion of his Regular Pension under this (5), such Participant shall receive his Regular Pension otherwise determined under Paragraph 3.6.

(iii)    The annuity value of any amount payable under (5)(i)(B) shall be determined in accordance with (6)(iii) below.

(6)    Determination of Annuity Value and Adjustments to Regular Pension

(i)    For purposes of determining the annuity value of the Participant's DCP Account for payment under any annuity form provided in (3) or (4) above, the Participant's DCP Account shall be equal to the sum of the DCP Annuity Equivalents in Paragraph 3.5; provided, however, that if a Participant elects to receive any portion of his DCP Account in a single lump-sum cash payment under (4)(ii)(A), the annuity value of such Participant's DCP Account shall be reduced by an amount proportionate to the amount of lump sum as compared to the amount of the DCP Account.  The annuity value of any portion of the Participant's DCP Account that is payable

ADMIN REC-027:

under (3)(i) shall be adjusted by the factors contained in Exhibit A or B, as applicable; and the annuity value of any portion of the Participant's DCP Account that is payable under (4)(ii)(A) as an annuity or under (4)(ii)(B), (C) or (D) shall be adjusted by the factors contained in Exhibit A, B, H-1, H-2, I-1, I-2, J-1 or J-2, as applicable.

(ii)    In the event that a Participant elects to receive any portion of his Regular Pension as a single lump-sum cash payment under (5)(i)(A) above, the lump-sum amount shall be determined as provided in (5)(i)(A) above; and such Participant's Regular Pension shall be reduced by an amount equivalent to such lump-sum payment, calculated in the same manner as provided under Paragraph 3.5(a)(2)(i) and (ii), as applicable, but using (A) an interest rate equal to the annual rate of interest on 30-year Treasury securities in effect for the October preceding the calendar year during which such distribution will be made, and (B) the 1983 Group Annuity Mortality Table, assuming a fixed blend of 50% of the male and female mortality rates (or such other table as prescribed by the Secretary of the Treasury for this purpose under Code Section 417(e)(3)(A)(ii)(I)); provided, however, that if the interest rate and mortality table provided under Paragraph 3.5(a)(2)(i) and (ii) would yield a larger benefit for the Participant, such interest rate and mortality table shall be applied instead of the interest rate and mortality table specified in this (6)(ii).

(iii)    In the event that a Participant elects to receive any portion of his Regular Pension in an optional annuity form under (5)(i)(B) above, the annuity value of the amount payable under (5)(i)(B) shall be determined as, and such Participant's Regular Pension shall be reduced by an amount, equal to the sum of the DCP Annuity Equivalents in Paragraph 3.5 if such DCP Annuity Equivalents were based on the Participant's Bookkeeping Account (instead of the Participant's DCP Account) after giving effect to any election under (5)(i)(A). The annuity value of any portion of the Participant's Regular Pension that is payable under (5)(i)(B) as an annuity shall be adjusted by the factors contained in Exhibit H-1, H-2, I-1, I-2, J-1 or J-2, as applicable.

(7)    Commencement of Payment of DCP Account

(i)    Except as otherwise described in (ii) below, distribution of a Participant's DCP Account will commence at the same time as the Participant's Regular Pension.

ADMIN REC-0274

(ii) In the case of a Participant who is eligible for a Deferred 60/15 Pension or a Deferred Vested Pension, the Participant's DCP Account will be payable in accordance with Paragraph 3.15(d), (f) or (g), as applicable; provided, however, that a Participant may elect to have the annuity value of his DCP Account paid as described in Paragraph (3) or (4) above, or Paragraphs 3.19 or 3.20, beginning for the month immediately following his break in Continuous Service or any later month prior to the month in which his Regular Pension commences.

(8) Transfer of DCP Account and Cessation of Bookkeeping Account

Upon distribution of any portion of a Participant's DCP Account or Regular Pension in accordance with this Paragraph 3.24 or Exhibit K, (i) any portion of such DCP Account that is not distributed in a lump sum shall be transferred to the portion of the Trust allocable to the defined benefit portion of the Plan, (ii) such Participant's Bookkeeping Account shall be deemed to be zero and shall cease to be maintained, and (iii) this Paragraph 3.24 shall cease to be applicable to such Participant (or such Participant's surviving spouse or Beneficiary, if applicable).

(d) Valuation of DCP Account

For purposes of any distribution under this Paragraph 3.24, a Participant's DCP Account and Bookkeeping Account shall be valued as of the Valuation Date immediately preceding the date of distribution described in this Paragraph 3.24.

(e) Unclaimed Benefits

In the event that all or any portion of the DCP Account payable to a Participant or Beneficiary hereunder shall, at the expiration of seven years after it shall become payable, remain unpaid solely by reason of the inability of the Plan Administrator, after sending a registered letter, return receipt requested, to the last known address, to ascertain the whereabouts of such Participant or Beneficiary, the amount so distributable shall be transferred to the Suspense Account, subject to the right of the Participant or Beneficiary to reclaim it.

(f) Cuyahoga Valley Participants

Notwithstanding anything to the contrary, the provisions of this Section 3.24 shall not apply to any Cuyahoga Valley Participant except as specified in Exhibit K.

## 3.25    Special Retiree Lump-Sum Payment

Effective for any Participant (other than a River Terminal Employee or Sold Facility Participant, including any individual who at the time of retirement was a River Terminal

Employee or Sold Facility Participant) who retired on other than a Deferred Vested Pension on or before December 31, 1992, and who is receiving a Regular Pension under the Plan as of November 1, 2000, a lump-sum payment shall be made on November 1, 2000 to such individual in accordance with the following:

| Period Participant Retired | Lump-Sum Amount |
| --- | --- |
| Pre-7/31/1974 | $486 |
| 7/31/1974-7/30/1977 | $432 |
| 7/31/1977-7/30/1980 | $378 |
| 7/31/1980-2/28/1983 | $324 |
| 3/1/1983-3/31/1986 | $270 |
| 4/1/1986-12/31/1992 | $216 |

3.26   **Supplemental Pension Benefits**

Effective for any Participant who retired and commenced receipt of supplemental pension benefits under Article VIII (or corresponding predecessor provisions) of the LTV Steel Supplemental Pension Plan, beginning as soon as practicable after January 1, 2000, such supplemental pension benefits shall be paid under the Plan and not under the LTV Steel Supplemental Pension Plan.

ADMIN REC-0276

# ARTICLE IV

# SURVIVING SPOUSE'S BENEFIT

**4.1    Eligibility**

With respect to any Participant who has completed at least 15 years of Continuous Service and who dies on or after July 31, 1999 (in the case of a River Terminal Employee, January 1, 1996):

(a)    At a time (1) when he is accruing Continuous Service, or (2) before application for pension and after a break in Continuous Service which occurred on or after July 31, 1999 (in the case of a River Terminal Employee, January 1, 1996), under conditions of eligibility for retirement on immediate pension; or

(b)    After retirement on or after July 31, 1999 (in the case of a River Terminal Employee, January 1, 1996) on other than a Deferred Vested Pension,

his surviving spouse, as determined pursuant to Paragraph 4.7, shall be eligible for a monthly benefit (hereinafter "Surviving Spouse's Benefit"), as set forth below.

**4.2    Amount of Benefit**

Unless the provisions of Paragraph 4.3 result in a higher amount, the amount of any Surviving Spouse's Benefit payable shall be $200.00 ($140.00 for a River Terminal Employee) for any month before the month in which the surviving spouse attains the age at which widow's or widower's benefits are first provided under a law referred to in Paragraph 1.1(kk) and $150.00 ($90.00 for a River Terminal Employee) for any month thereafter.

**4.3    Special Rules**

Unless the provisions of Paragraph 4.2 result in a higher amount, the amount of any Surviving Spouse's Benefit payable shall be determined in accordance with the following:

(a)    If eligibility for such a benefit arises by reason of the death of a Participant covered by Paragraph 4.1(a), the monthly amount of the benefit, subject to the provisions of (d) and (e) below, shall be equal to 50% of the amount determined in accordance with Paragraphs 3.6(c) and 3.6(d), after taking into account the adjustments made by Paragraphs 3.11, 3.17(c), 3.18(e), 3.21 and 3.24(c)(6), as though the Participant had retired on the date of his death and, in the case of a Participant who died prior to attainment of age 62, as though he were age 62 on

ADMIN REC-0277

the date of his death. In the calculation of the Participant's benefit amount under the provisions of Paragraphs 3.3, 3.4, 3.5, and 3.6, the following shall apply:

(1)    In the case of a Participant who died prior to attainment of age 62:

(i)    in the determination of the 1987 Benefit and the 1992 Benefit under the provisions of Paragraph 3.3, (A) the benefit amount in Paragraphs 3.3(a)(1) and 3.3(a)(2) shall be determined as though the Participant had been age 62 on the date of his death and (B) the benefit amount in Paragraph 3.3(a)(3) shall be determined using the 1.50% percentage for retirement age 65, at the actuarial reduction set forth in Paragraph 3.3(c)(3) for age 62;

(ii)    in the determination of the Floor Benefit under the provisions of Paragraph 3.4(a), the benefit amount shall be calculated as though the Participant had been age 62 on the date of his death;

(iii)    the DCP Annuity Equivalents used in the calculation of the Regular Pension amount in Paragraph 3.6 shall be the Immediate 1992 DCP Annuity Equivalent, the Immediate Additive DCP Annuity Equivalent and the Immediate Post-1992 Annuity Equivalent.

(2)    The Lifetime Minimum Benefit shall be calculated in accordance with the provisions of Paragraph 3.4(b)(1), 3.4(b)(2), 3.4(b)(3) or 3.4(b)(4), whichever is applicable, and, in the case of a Participant who died prior to attainment of age 62, as though he were age 62 on the date of his death.

(b)    If eligibility for such a benefit arises by reason of the death of a Participant covered by Paragraph 4.1(b), the monthly amount of the benefit, subject to the provisions of (c), (d) and (e) below, shall be equal to 50% of the amount determined in accordance with Paragraphs 3.6(c) and 3.6(d). If on the date of his death, the Participant was receiving a Transition Benefit under the provisions of Paragraph 3.7(b), the benefit amount shall be determined as though the Participant had not been eligible to receive a Transition Benefit.

(c)    In the case of a Participant who dies after 60/15 Retirement and prior to age 62 and who had elected to defer the commencement of Regular Pension until after attainment of age 62, the Regular Pension payable to the Participant shall, for the purposes of applying the provisions of (b) above, be deemed to be the amount determined in accordance with Paragraphs 3.6(c) and 3.6(d) which would have been payable if, under the provisions of the Plan, he had been permitted to and had elected to receive Regular Pension commencing with the first month for which the Surviving Spouse's Benefit is payable.

ADMIN REC-0278

(d)    Commencing with the first Surviving Spouse's Benefit payable after the surviving spouse attains the age at which widow's or widower's benefits are first provided under a law referred to in Paragraph 1.1(kk), the amount of the Surviving Spouse's Benefit otherwise payable for any month shall be reduced by 50% of the amount of the widow's or widower's benefit to which the surviving spouse is, or upon application would be, entitled for such month based on the law in effect at the time the Surviving Spouse's Benefit first becomes payable (without regard to any offset or suspension imposed by such law). If the surviving spouse is not eligible for such a widow's or widower's benefit for such month, the amount of the reduction shall be equal to 50% of the amount of the widow's or widower's benefit that could have become payable to the surviving spouse for such month, based on the Participant's wages, if the surviving spouse had been eligible and had applied for such a benefit. For purposes of this Paragraph 4.3(d), with respect to a River Terminal Employee, the amount of the widow's or widower's benefit under the Railroad Retirement Act (to which the 50% is to be applied) shall be the greater of:

(1)    The amount of such benefit; or

(2)    80.5% of the maximum primary old-age insurance benefit payable under the Social Security Act for a person first receiving such benefit at the beginning of the year of retirement or the year of death, whichever is earlier, (including any increase in such benefit retroactive to the beginning of such year).

(e)    If the surviving spouse receives, or upon application would be entitled to receive, any payment derived from rights acquired by the Participant, which would if received by the Participant have been subject to deduction under Paragraph 3.11 from any Regular Pension otherwise payable to the Participant (except any such payment received by the surviving spouse by reason of an election by the Participant to receive a reduced payment), the amount of such payment (determined on a life annuity without refund basis) not attributable to the contributions of the Participant shall be deducted from the Surviving Spouse's Benefit otherwise determined under this Paragraph 4.3.

## 4.4    Surviving Spouse's Benefit Increase

A Surviving Spouse who is:

(a)    Receiving, or eligible to receive based on the death of a River Terminal Employee who died, while accruing Continuous Service, prior to February 29, 2000, with 15 or more years of Continuous Service; or

(b)    Receiving, or eligible to receive, upon the death of a Participant who retired as a River Terminal Employee and died prior to February 29, 2000;

ADMIN REC-0279

a Surviving Spouse's Benefit under the provisions of Paragraphs 4.2 and 4.3 shall have such monthly benefit payable increased by $40.00.

4.5   **Special Payment to Certain Surviving Spouses**

(a)   Effective August 1, 1999, each surviving spouse who would be entitled to a Surviving Spouse's Benefit under this Article IV with respect to (i) a Participant who (A) completed at least 15 years of Continuous Service, (B) retired prior to July 31, 1974, on other than a Deferred Vested Pension, and (C) either is deceased as of August 1, 1999 or dies on or before July 31, 2004, or (ii) a Participant who died prior to July 31, 1974 after completing at least 15 years of Continuous Service, shall receive a special lump-sum payment as determined below; provided, however, that no individual shall be considered a surviving spouse for purposes of this Paragraph if such individual is otherwise eligible to receive a surviving spouse's benefit under any other collectively bargained defined benefit pension plan maintained by any Controlled Group Member:

| Payment Date | Amount |
|---|---|
| 11/30/1999 | $500 |
| 5/31/2000 | $525 |
| 11/30/2000 | $525 |
| 5/31/2001 | $550 |
| 11/30/2001 | $550 |
| 5/31/2002 | $575 |
| 11/30/2002 | $575 |
| 5/31/2003 | $600 |
| 11/30/2003 | $600 |
| 5/31/2004 | $625 |

(b)   Effective August 1, 1999, each surviving spouse entitled to a Surviving Spouse's Benefit under this Article IV with respect to a Participant who died on or before July 31, 1999 following retirement prior to June 1, 1994, or to a Participant who died in active service prior to June 1, 1994, with 15 or more years of Continuous Service, shall receive a special lump-sum payment as determined below:

| Payment Date | Amount |
|---|---|
| 11/30/1999 | $145 |
| 11/30/2000 | $195 |
| 11/30/2001 | $220 |
| 11/30/2002 | $245 |
| 11/30/2003 | $270 |

ADMIN REC-0280

(c)  Effective August 1, 1999, each surviving spouse entitled to a Surviving Spouse's Benefit under this Article IV with respect to a Participant who retired prior to June 1, 1994 and dies after July 31, 1999 but on or before July 31, 2004, shall receive a special lump-sum payment as determined below:

| Payment Date | Amount |
|---|---|
| 11/30/1999 | $300 |
| 5/31/2000 | $325 |
| 11/30/2000 | $325 |
| 5/31/2001 | $350 |
| 11/30/2001 | $350 |
| 5/31/2002 | $350 |
| 11/30/2002 | $350 |
| 5/31/2003 | $375 |
| 11/30/2003 | $375 |
| 5/31/2004 | $375 |

(d)  Notwithstanding anything to the contrary, this Paragraph 4.5 shall not apply to any River Terminal Employee or Sold Facility Participant, including any individual who at the time of retirement was a River Terminal Employee or Sold Facility Participant.

**4.6  Commencement and Termination of Benefit**

The first installment of any Surviving Spouse's Benefit shall be payable for the month following the month in which the Participant shall die, and the last installment shall be payable for the month in which the surviving spouse shall die; provided, however, that a Surviving Spouse's Benefit shall not be payable for any month for which a Special Payment was payable to the Participant. In connection with an application for a Surviving Spouse's Benefit the Plan Administrator may require the surviving spouse to grant any authorization necessary to receive relevant records from the agency administering the law referred to in Paragraph 4.3(d).

**4.7  Determination of Status as Surviving Spouse**

A person shall be considered a surviving spouse for the purposes of this Article IV only if (a) immediately after a Participant's death, such person is a widow or widower of such Participant within the provisions of the Social Security Act, except that, notwithstanding the provisions of Paragraph 1.4(b), where such Act requires reference to the law of the District of Columbia, the applicable law shall be that of the State of Ohio, and (b) with respect to a Participant who dies after retirement, such person was married to the Participant at the date of the Participant's retirement.

ADMIN REC-0281

**4.8     Notification of Surviving Spouse Benefit**

The Plan Administrator shall make reasonable effort by an appropriate method or methods to inform the surviving spouse of an eligible Participant of the existence of this benefit.

**4.9     Surviving Spouse of Part-Time Participant**

In the case of a surviving spouse of a deceased part-time Participant, notwithstanding the provisions of Paragraph 4.2, the amounts set forth in such Paragraph 4.2 shall be reduced on the same basis as is provided in Paragraph 3.9 for the reduction of the benefit provided in Paragraph 3.3(a)(2), 3.4 or 3.6(d)(2) of a part-time Participant, whether or not such benefit was applicable to such deceased part-time Participant.

# ARTICLE V

# DETERMINATION OF CONTINUOUS SERVICE

**5.1**    **Continuous Service**

The term Continuous Service as used in the Plan means service prior to retirement calculated from the Employee's last hiring date (this means in the case of a break in Continuous Service, Continuous Service shall be calculated from the date of reemployment following the last unremoved break in Continuous Service) in accordance with the following provisions; provided, however, that the last hiring date shall be based on the practices in effect at the time the break occurred:

(a)    There shall be no deduction for any time lost which does not constitute a break in Continuous Service, except that in determining length of Continuous Service for pension purposes:

     (1)    That portion of any absence which continues beyond two years from commencement of absence due to a layoff or physical disability shall not be creditable as Continuous Service; provided, however, that absence due to injury while on duty shall not break Continuous Service and shall be creditable as Continuous Service until termination of the period for which statutory compensation is payable, provided that the Employee returns to work as soon as he is physically able to do so; and

     (2)    The period between a break in service and the date of reemployment which results in the removal of a break in accordance with (c) below shall not be creditable as Continuous Service.

Effective August 1, 1999 for retirements on or after July 31, 1999, notwithstanding the foregoing, an Employee (other than a River Terminal Employee) who was accruing Continuous Service on July 31, 1999 and who was absent due to layoff for two or more years between January 1, 1980 and June 1, 1994 and was either recalled or rehired prior to August 1, 1999 shall receive as Continuous Service the lesser of one year or the period of time between the end of two years of layoff and the date of his recall or rehire.

(b)    Continuous Service shall be broken by:

     (1)    Voluntary termination of employment by the Participant (sometimes referred to as a "quit");

ADMIN REC-0283

(2)     Termination due to discharge for cause, suspension or leave of absence, any of which continues for more than six months;

(3)     Termination due to Permanent Shutdown;

(4)     Absence for a reason other than those referred to in (7) below which continues for more than two years, except that (i) absence due to injury while on duty shall not break Continuous Service until the termination of the period for which statutory compensation is payable provided that the Employee returns to work as soon as he is physically able to do so; and (ii) if an Employee absent on account of layoff or disability in excess of two years returns to work with an Employing Company within the period during which he retains his accumulated Continuous Service in accordance with the rules of his Employing Company, the break in Continuous Service shall be removed;

(5)     Failure of an Employee on layoff due to level of operations to report to the Employing Company's employment office within 10 days of registered mail notice or to have a satisfactory excuse for not so reporting (effective only on and after August 1, 1999, for Participants formerly covered under the LTV Steel (Republic) Hourly Pension Plan);

(6)     Absence due to sickness, if the Employee does not periodically (every 30 days) report his status to the Employing Company's employment office or have a satisfactory excuse for not so reporting (effective only on and after August 1, 1999, for Participants formerly covered under the LTV Steel (Republic) Hourly Pension Plan);

(7)     For the sole purpose of determining eligibility for pension pursuant to Paragraph 2.1 or unreduced pension commencing at age 65 pursuant to Paragraph 2.8, absence which commences on or after January 1, 1985, and because of maternity or paternity leave shall be credited with a period of service as follows:

(i)     where an Employee is absent from work because of Maternity or Paternity Leave, he shall be credited with a period of service for the first 12 months of such absence. Where the absence continues beyond 12 months, the period beginning after the 12th month and through the 24th month shall be treated for the purpose of determining the Employee's Continuous Service neither as a period of service nor a period of severance.

(ii)    for the purposes of this Paragraph, Maternity or Paternity Leave means absence from work by reason of the pregnancy of the Employee, the birth of a child of the Employee, the placement of a child in connection with the adoption of such child by an

ADMIN REC-0284

Employee, or the caring for a child of the Employee during the period immediately following the child's birth or placement for adoption. The Plan Administrator shall determine, under rules of uniform application and based on information provided to the Plan Administrator by the Employee, whether the Employee's absence from work is due to maternity or paternity leave.

provided, however, that Continuous Service shall not be considered to be broken by absence of any Employee who enters the military, naval or merchant marine service of the United States and who has reemployment rights under the law and complies with requirements of law as to reemployment and is reemployed. Continuous Service shall include service in the employ of one or more of the Employing Companies and shall include employment in any company whose stocks or properties shall have been heretofore acquired; provided, however, that the Employee entered the employ of an Employing Company upon the acquisition of such stock or properties; and, provided further, however, that if at the time of such acquisition credit for Continuous Service for the purpose of pension benefits shall have been granted by an Employing Company, Continuous Service shall be determined in accordance with such credit. Continuous Service shall not include service of Employees in the Employ of any company whose stocks or properties may be acquired hereafter unless and only to the extent that at the time of such acquisition, credit for Continuous Service for the purpose of pension benefits shall be granted to such Employees.

(c)  Notwithstanding anything to the contrary contained in the foregoing, an Employee who incurs a break in Continuous Service prior to becoming eligible for an immediate or deferred vested pension, and who is reemployed by a Controlled Group Member shall, upon completion of one year of Continuous Service following such reemployment, have such break in Continuous Service removed if the period between the break and the date of reemployment is not more than five years.

(d)  For the sole purpose of determining eligibility for pension pursuant to Paragraph 2.1 or unreduced pension commencing at age 65 pursuant to Paragraph 2.8, an Employee who on or after January 1, 1976 incurs a break in Continuous Service by reason of quit or discharge prior to becoming eligible for an immediate or deferred vested pension, who is reemployed within one year of such quit or discharge without having his break in Continuous Service removed pursuant to (b)(2) above and who upon incurring a subsequent break in Continuous Service has less than five years (10 years if such break was prior to January 1, 1989) of Continuous Service calculated in accordance with this Paragraph 5.1 shall receive credit for the Continuous Service accrued prior to the first break described above and for the period between such break and the date of reemployment plus any

ADMIN REC-0285

other Continuous Service which would result from application of (c) above taking into account service credited pursuant to this Paragraph 5.1(d).

(e)    Qualified Military Service

Notwithstanding any provisions of the Plan to the contrary, effective December 12, 1994, an authorized leave of absence due to service in the Armed Forces of the United States shall not constitute a break in Continuous Service and contributions, benefits and service credited with respect to qualified military service will be provided in accordance with Section 414(u) of the Code.

(f)    Transfers

Any Participant who ceases to be a Covered Employee due to a transfer within the Controlled Group shall have his Continuous Service for pension purposes determined based only on his periods of employment as a Covered Employee, unless an agreement with a Union covering such Participant provides otherwise.

(g)    Service with Certain Predecessor Companies

Effective August 1, 1999 for terminations of employment on or after July 31, 1999, notwithstanding anything to the contrary, to the extent Continuous Service is not otherwise credited under the foregoing provisions of this Paragraph 5.1, subject to Paragraph 6.3, any Participant who terminated employment with Jones & Laughlin Steel Corporation, Youngstown Sheet and Tube Company or Republic Steel Corporation prior to June 30, 1984, and who at the time of such termination of employment was eligible for a vested pension under such company's qualified defined benefit pension plan, shall be credited with Continuous Service under the Plan as though all of such Participant's employment with any of such companies had been with the Controlled Group.  Under no circumstances shall Continuous Service be credited more than once for the same period of time.

ADMIN REC-0286

# ARTICLE VI

## REEMPLOYMENT AFTER ATTAINMENT
## OF PENSION ELIGIBILITY

### 6.1 Applicability of Other Sections

Except as otherwise provided in this Article VI, the provisions of all other Paragraphs of the Plan shall be applicable to any Participant who has been reemployed by a Controlled Group Member after having been retired and receiving a pension or after having attained eligibility for a Deferred Vested Pension as provided under the Plan.

### 6.2 Effect on Pension

Any Participant who is receiving a pension under the Plan shall upon reemployment by a Controlled Group Member have his pension discontinued.

### 6.3 Continuous Service of Reemployed Participant

(a)  Any Participant who has been retired and receiving a pension or who is eligible for a Deferred Vested Pension under the Plan and who shall be reemployed by a Controlled Group Member shall be credited with his Continuous Service as at the date of his prior retirement plus his Continuous Service accruing after reemployment for the purpose of calculating any subsequent pension benefits to which he may become entitled.

(b)  If any Participant is reemployed after August 1, 1980 and more than three years after the Participant retired or more than three years after he incurred a break in Continuous Service with eligibility for Deferred Vested Pension and such Participant again retires or incurs a break in Continuous Service before completing at least five years of Continuous Service after such reemployment, then the amount of pension payable with respect to the period of Continuous Service accrued before the most recent prior retirement or prior break in Continuous Service shall be determined pursuant to the provisions of the Plan in effect at the time of such prior retirement or prior break in Continuous Service.

### 6.4 Special Pension Eligibility after Reemployment

Notwithstanding anything to the contrary contained in the Plan, any Participant who has been retired and is receiving a pension for Rule-of-65 Retirement or 70/80 Retirement pursuant to the provisions of the Plan or similar provisions of a Predecessor Plan and is subsequently reemployed by a Controlled Group Member shall upon ceasing work after such reemployment and prior to age 62 by reason of a Permanent Shutdown or by reason

of a layoff or physical disability be eligible to retire and shall upon his retirement (hereinafter "Reinstated Rule-of-65 Retirement" if he had previously retired on Rule-of-65 Retirement or "Reinstated 70/80 Retirement" if he had previously retired on 70/80 Retirement) be eligible for a pension commencing with the month following the month in which retirement occurs; provided, however, that such Participant shall not be eligible under the provisions of this Paragraph 6.4 to retire during a period of absence from work due to a physical disability until such disability shall have continued for a period of six consecutive full calendar months. The amount of Regular Pension for Reinstated 70/80 Retirement shall be determined the same as a Regular Pension for 70/80 Retirement, and the amount of Regular Pension for Reinstated Rule-of-65 Retirement shall be determined the same as a Regular Pension for Rule-of-65 Retirement.

**6.5    Special Rules as to Amount of Pension**

(a)    A Special Payment shall not be made in any case where a Special Payment from the Plan or the LTV Steel Supplemental Pension Plan or under another plan maintained by a Controlled Group Member was made to the Participant for a prior retirement under the Plan or under another plan maintained by a Controlled Group Member.

(b)    Upon reemployment of a Participant who previously received a distribution of his DCP account balances following a break in Continuous Service, such Participant's DCP account balances shall be adjusted as provided in Paragraph 3.5(c).

ADMIN REC-028

**ARTICLE VII**

**CLAIMS PROCEDURE**

**7.1     Claims**

(a)     Any Participant (or the spouse, Co-Pensioner or beneficiary of such Participant) who is covered by a collective bargaining agreement which provides for filing of claims for benefits under the Plan pursuant to such agreement(s), and who believes he is entitled to receive a benefit under the Plan that he has not received, may file a grievance in accordance with the grievance procedure of such collective bargaining agreement. Action on any such grievance shall be taken in accordance with the grievance procedures under the collective bargaining agreement.

(b)     Any Participant, spouse, Co-Pensioner or beneficiary not described in (a) above (hereinafter referred to as a "claimant") who believes that he is entitled to receive a benefit under the Plan that he has not received may file a written claim with the Plan Administrator (on a form furnished by the Plan Administrator) specifying the basis for his claim and the facts upon which he relies in making such claim. Such claim must be signed by the claimant or his authorized representative and shall be deemed filed when delivered to the Plan Administrator.

(c)     Unless such claim made by a claimant described in (b) above is allowed in full, within 90 days after such claim is filed (plus an additional period of 90 days if required for processing and if notice of the extension is given to the claimant within the first 90-day period), the Plan Administrator shall cause written notice to be mailed to such claimant of the total or partial denial of such claim. Such notice shall be written in a manner calculated to be understood by the claimant and shall state:

(1)     The specific reason(s) for the denial of the claim;

(2)     Specific reference(s) to pertinent Plan provisions on which the denial of the claim was based;

(3)     A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

(4)     An explanation of the review procedures specified in Paragraph 7.2.

(d)     If notice of denial of a claim of a claimant described in (b) above is not furnished within the time specified above, the claim shall be deemed to have denied in full

## 7.2    Appeals of Claims

(a)    Within 60 days after the denial of a claim made by a claimant described in Paragraph 7.1(b), such claimant may appeal such denial by filing with the Appeals Committee designated by the Corporation (or its delegee) a written request for a review of such claim (on a form provided by the Appeals Committee (or its delegee)). If such claimant does not file such a request with the Appeals Committee (or its delegee) within such 60-day period, the claimant shall be conclusively presumed to have accepted as final and binding the initial decision of the Plan Administrator on his claim.

(b)    If such an appeal is so filed within such 60 days, the Appeals Committee (or its delegee) shall (1) conduct a full and fair review of such claim and (2) mail or deliver to the claimant a written decision on the matter based on the facts and pertinent provisions of the Plan within a period of 60 days after the receipt of the request for review unless special circumstances require an extension of time, in which case such decision shall be rendered not later than 120 days after receipt of such request. If an extension of time for review is required, written notice of the extension shall be furnished to the claimant prior to the commencement of the extension.

(c)    Such decision (1) shall be written in a manner calculated to be understood by the claimant, (2) shall state the specific reason(s) for the decision, (3) shall make specific reference(s) to pertinent provisions of the Plan on which the decision is based and (4) shall, to the extent permitted by applicable law, be final and binding on all interested persons.

(d)    During such full review, the claimant or his duly authorized representative shall be given an opportunity to review documents that are pertinent to the claimant's claim and to submit issues and comments in writing.

(e)    If the decision on review is not furnished within such 60-day or 120-day period, as the case may be, the claim shall be deemed denied in full on review.

## 7.3    Disputes as to Permanent Incapacity

If any difference shall arise between an Employing Company or the Plan Administrator and any Participant as to whether such Participant is or continues to be permanently incapacitated within the meaning of Paragraph 2.5, such difference shall be resolved as follows:

The Participant shall be examined by a physician appointed for the purpose by the Plan Administrator and by a physician selected for the purpose by the Participant. If they shall disagree concerning whether the Participant is permanently incapacitated, that question shall be submitted to a third physician selected by

such two physicians. The medical opinion of the third physician, after examination of the Participant and consultation with the other two physicians, shall decide such question. The fees and expenses of the third physician shall be shared equally by the Employing Company and the Participant.

Notwithstanding the foregoing, effective August 1, 1999 for retirements on or after July 31, 1999, if a Participant (other than a River Terminal Employee) has been granted disability benefits under Social Security with an award effective date during the period he was accruing Continuous Service or if a claim for such benefits is pending effective July 31, 1999 and is favorably resolved with an award effective date during the period he was accruing Continuous Service, such Participant will be deemed to be permanently incapacitated within the meaning of Paragraph 2.5.

# ARTICLE VIII

## CONTRIBUTIONS

**8.1**     **Contributions by the Employing Companies**

The Employing Companies, acting under the advice of the actuary for the Plan selected by the Corporation, intend but do not guarantee to make contributions to the Trust in such amounts and at such times as are required to maintain the Plan and the Trust on a sound actuarial basis in accordance with the requirements of ERISA and the Code. Except as otherwise provided by law, the Employing Companies shall, however, be under no obligation or restriction whatever as to contributions to the Trust or the amount or timing thereof. Except as provided in Paragraph 12.4 hereof, all contributions to the Trust shall be irrevocable and shall be used to pay benefits under the Plan or to pay reasonable expenses of the Plan and Trust. Forfeitures, if any, arising due to any reason shall be applied to reduce contributions to the Plan to the extent and in the manner permitted by law, not to increase the benefits otherwise payable to the Participants.

**8.2**     **Contributions by Participants**

Participants are not required or permitted to make contributions to the Plan.

**8.3**     **Funding Policy**

The Corporation shall determine, establish and carry out a funding policy and method consistent with the objectives of the Plan and the requirements of applicable law.

**8.4**     **Payment of Expenses**

Reasonable expenses incident to the management and operation of the Plan, including, without limitation, required PBGC premiums and the compensation of the actuary, the Trustee, attorneys, auditors, accountants, Investment Managers or advisors for the Plan, if any, and such other administrative, technical and clerical assistance as may be required, shall be payable out of the Trust; provided, however, that the Corporation, in its absolute discretion, may elect at any time to have one or more of the Employing Companies pay part or all thereof directly, but any such election shall not bind the Corporation as to its right to elect with respect to the same or other expenses at any other time to have such expenses reimbursed or paid from the Trust.

# ARTICLE IX

## ADMINISTRATION

**9.1   Named Fiduciaries**

The following persons are named as fiduciaries under the Plan and shall be the only named fiduciaries hereunder.

(a)   Plan Administrator

The Corporation shall be the Plan Administrator and shall be responsible for all fiduciary functions under the Plan, unless the function is explicitly delegated to another named fiduciary thereunder. Notwithstanding the preceding sentence, the Corporation may delegate to any person(s) any one or more of its powers, functions, duties or responsibilities with respect to the Plan. Any delegation pursuant to the preceding sentence (1) shall be signed on behalf of the delegator and delivered to the delegee, (2) shall contain such provisions and conditions relating to such delegation as the delegator deems appropriate, (3) shall specify the powers, functions, duties and responsibilities therein delegated, (4) may be amended from time to time by the delegator and (5) may be revoked (in whole or in part) at any time by written notice from one party to the other.

(b)   Other Named Fiduciaries

(1)   The Trustee, which shall be appointed by the Corporation, shall have exclusive authority and discretion to manage the assets of the Plan, subject to the provisions of Paragraph 9.2.

(2)   The Corporation shall perform day-to-day administrative duties with respect to the Plan.

(3)   The Corporation shall appoint, direct, monitor and terminate trustees; appoint, monitor and terminate Investment Managers; and oversee and enforce the rights of the Plan under the PBGC Agreement.

(c)   General

Any person or group of persons may serve in more than one fiduciary capacity with respect to the Plan. Any named fiduciary hereunder may, by resolution of its board of directors or pursuant to such other formal procedures as it shall establish, designate persons other than the named fiduciaries to carry out the fiduciary responsibilities under the Plan. The named fiduciaries, and the persons so

designated by them, may employ one or more persons to render service with regard to any responsibility such fiduciary has under the Plan.

## 9.2    Asset Management by Persons or Entities Other Than Trustee

### (a)    Investment Managers

The Corporation may appoint one or more Investment Managers to manage (including the power to acquire and to dispose of) the assets of the Plan or any portion thereof, and, if more than one Investment Manager is appointed, the Corporation may allocate responsibility for managing particular assets or particular portions of the assets of the Plan among such Investment Managers; provided, however, that custody of assets of the Plan managed by an Investment Manager so appointed shall be held by a person or entity qualified under applicable law to serve as such, and the Investment Manager shall serve at the pleasure of the Corporation.

### (b)    Insurance Contracts

The Corporation shall have the power to direct the Trustee to cause the assets of the Plan, or any portion thereof, to be invested or to continue to be invested in group annuity contracts, guaranteed investment contracts or any other contracts issued by any insurance company as the Corporation deems desirable. In connection with and as a part of any such contract with any insurance company, the Corporation may grant to such insurance company such control over the investment of funds deposited with or paid to such insurance company as it deems desirable. Any such contract with any insurance company may be held by the Trustee or may be held by the Corporation outside any trust, as the Corporation may from time to time determine.

### (c)    Group or Pooled Trust Arrangements

The Corporation shall have the power, by written direction to the Trustee, to cause the assets of the Plan held by such Trustee, or any part thereof, to be transferred to and to be invested as part of the assets of any group or pooled trust arrangement, including the Consolidated Retirement Trust for The LTV Corporation and Affiliates, or, if already so invested, to remain so invested, in either case subject to removal from such investment at any time by further direction of the Corporation. Upon execution of an appropriate agreement between the Corporation and the trustee of such a trust, that trustee shall be the Trustee of the Plan assets so transferred, with the powers and responsibilities of the Trustee as provided in the Plan, and the assets of the Plan so held shall be deemed a separate trust as provided in Section 405(b)(3)(A) of ERISA.

ADMIN REC-0294

**9.3    Complete and Separate Allocation of Fiduciary Responsibilities**

This Article IX is intended to allocate to each named fiduciary and each investment manager the individual responsibility for the prudent execution of the functions assigned to each. The performance of such responsibilities shall be deemed a several and not a joint assignment. None of such responsibilities nor any other responsibility is intended to be shared by two or more of them unless such sharing shall be provided by a specific provision of the Plan or the Trust. Whenever one named fiduciary or investment manager is required by the Plan to follow the directions of another, the two shall not be deemed to have been assigned a shared responsibility, but the responsibility of the one giving the direction shall be deemed to be its sole responsibility, and the responsibility of the one receiving such direction shall be to follow it insofar as such direction is on its face proper under the Plan and applicable law. Any person to whom such responsibilities have not been allocated or delegated shall not be responsible with respect to any action directed, taken or omitted by the fiduciary or individual corporation or other entity serving in a fiduciary capacity to whom such responsibilities have been allocated or delegated unless he participates knowingly in, or knowingly undertakes to conceal, an act or omission or such other fiduciary or individual, corporation or entity, knowing such act or omission is a breach or, if he has knowledge of a breach, he fails to make reasonable efforts under the circumstances to remedy the breach.

**9.4    Plan Interpretation and Findings of Facts**

(a)    Subject to the provisions of Article VII, the Plan Administrator shall have sole and absolute discretion (1) to interpret the provisions of the Plan (including, without limitation, by supplying omissions from, correcting deficiencies in, or resolving inconsistencies or ambiguities in, the language of the Plan), (2) to make factual findings with respect to any issue arising under the Plan, (3) to determine the rights and status under the Plan of Participants and other persons, (4) to decide disputes arising under the Plan, and (5) to make any determinations and findings with respect to the benefits payable thereunder and the persons entitled thereto as may be required for the purposes of the Plan.

(b)    In furtherance of, but without limiting, the foregoing, the Plan Administrator is hereby granted the following specific authorities, which it shall discharge in its sole and absolute discretion in accordance with the terms of the Plan (as interpreted, to the extent necessary, by the Plan Administrator):

(1)    To resolve all questions (including factual questions) arising under the provisions of the Plan as to any individual's entitlement to become a Participant;

(2)    To determine the amount of benefits, if any, payable to any person under the Plan (including, to the extent necessary, making any factual findings with respect thereto); and

ADMIN REC-0295

(3)    To the extent applicable, to conduct the claims review procedure specified in Article VII.

(c)    All decisions of the Plan Administrator as to the facts of any case, as to the interpretation of any provision of the Plan or its application to any case, and as to any other interpretative matter or other determination or questions under the Plan shall be final and binding on all persons affected thereby, subject to the provisions of Paragraph 9.5 and Article VII. The Plan Administrator shall direct the Trustee relative to benefits to be paid under the Plan and shall furnish the Trustee with any information reasonably required by it for the purpose of paying benefits under the Plan.

## 9.5    Revocability of Action by the Plan Administrator

Any action taken by the Plan Administrator with respect to the rights or benefits under the Plan of any Participant, spouse, Co-Pensioner or beneficiary shall be revocable by the Plan Administrator as to payments or distributions not theretofore made pursuant to such action; and appropriate adjustments may be made in future payments or distributions to a Participant, his spouse, Co-Pensioner or beneficiary to offset any excess payment or underpayment theretofore made to such Participant, spouse, Co-Pensioner or beneficiary.

## 9.6    Assistance

The Plan Administrator may employ such clerical, legal, actuarial, accounting, or other assistance or services as it deems necessary or advisable in connection with the performance of its functions or duties.

## 9.7    Exclusive Purpose

(a)    All property and funds of the Trust including income from investments and from all other sources, shall be retained for the exclusive benefit of the Participants, as provided in the Plan, and shall be used solely to pay benefits to Participants, their spouses, Co-Pensioners or beneficiaries.

(b)    Anything in the Plan to the contrary notwithstanding, there shall be returned to the Corporation to the extent permitted by law, any amount contributed:

(1)    Which was contributed by reason of a mistake of fact;

(2)    Which was conditioned upon deductibility of such contribution under Section 404 of the Code, if the amount is not so deductible; or

(3)    Which in the case of a plan termination remains after satisfaction of liabilities of the Plan to Participants and beneficiaries.

ADMIN REC-0296

(c)     If a contribution to the Trust is made by a mistake of fact, the excess of the amount contributed over the amount that would have been contributed had there not occurred a mistake of fact shall be returned to the Corporation within one year after the payment of such contribution.  If a contribution to the Trust is made that is not fully deductible under Section 404 of the Code (or any successor thereto), such contribution, to the extent the deduction therefor is disallowed, shall be returned to the Corporation within one year after the disallowance of the deduction.  Earnings attributable to contributions returned to the Corporation pursuant to this Paragraph may not be returned, but losses attributable thereto shall reduce the amount to be returned.

**9.8     Disclaimer of Liability**

Except as otherwise provided under Sections 404 through 409 of ERISA, neither the board of directors of the Corporation, an Employing Company, the Trustee, the Corporation nor any person designated to carry out fiduciary responsibilities pursuant to this Article IX shall be liable for any act, or failure to act, which is made in good faith pursuant to the provisions of the Plan.

**ADMIN REC-0297**

## ARTICLE X

## GENERAL PROVISIONS

**10.1    Nonalienation**

Benefits payable under the Plan shall not be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, charge, garnishment, execution, or levy of any kind, either voluntary or involuntary (but excluding devolution by death or mental incompetency) prior to being actually received by the person entitled to the benefit under the terms of the Plan.  Any attempt to anticipate, alienate, sell, transfer, assign, pledge, encumber, charge or otherwise dispose of any right to benefits payable hereunder shall be void.  The preceding sentences shall not apply to:

(a)    The creation, assignment or recognition of a right to any benefit payable with respect to a Participant pursuant to a qualified domestic relations order (as defined in Section 414(p) of the Code);

(b)    The enforcement of a federal tax levy pursuant to Section 6331 of the Code;

(c)    The collection by the United States on a judgment resulting from an unpaid tax assessment; or

(d)    With respect to any judgment, order or decree issued or settlement entered into on or after August 5, 1997, any offset of a Participant's benefit under the Plan by an amount the Participant is ordered or required to pay to the Plan if:

(1)    the order or requirement to pay arises:

(i)    under a judgment or conviction for a crime involving the Plan;

(ii)    under a civil judgment (including a consent order or decree) entered by a court in an action brought in connection with a violation (or alleged violation) of Part 4, Subtitle B of Title I of ERISA; or

(iii)    pursuant to a settlement agreement between the Secretary of Labor and the Participant or a settlement agreement between the Pension Benefit Guaranty Corporation and the Participant in connection with a violation (or alleged violation) of Part 4, Subtitle B of Title I of ERISA by a fiduciary or any other person.

ADMIN REC-0298

(2)    the judgment, order, decree or settlement agreement expressly provides for the offset of all or part of the amount ordered or required to be paid to the Plan against the Participant's benefits under the Plan; and

(3)    in a case in which the survivor annuity requirements of Section 401(a)(11) of the Code apply with respect to distributions from the Plan to the Participant, if the Participant has a spouse at the time at which the offset is to be made:

(i)    either the spouse has consented in writing to such offset and such consent is witnessed by a notary public or representative of the Plan (or it is established to the satisfaction of a Plan representative that such consent may not be obtained under circumstances described in Section 417(a)(2)(B) of the Code, or an election to waive the right of the spouse is in effect in accordance with the requirements of Section 417(a) of the Code);

(ii)   such spouse is ordered or required in such judgment, order, decree or settlement to pay an amount to the Plan in connection with a violation of Part 4 of such Subtitle;

(iii)  in such judgment, order, decree or settlement, such spouse retains the right to receive the survivor annuity pursuant to Section 401(a)(11)(A)(i) or (ii), as applicable, determined in accordance with Section 401(a)(13)(D) of the Code.

The Trust shall not in any manner be liable for, or subject to, the debts, contracts, liabilities, engagements, or torts of any person entitled to benefits hereunder. The Plan Administrator shall develop procedures to determine whether a domestic relations order is qualified under Section 414(p) of the Code.

**10.2    Deduction for Insurance Premium and Overpayments**

Upon authorization by a Participant on a form approved by the Plan Administrator, the amount of premium payable by him for health and hospitalization coverage upon retirement under a group insurance plan provided by an Employing Company, or the amount of any overpayments made to the Participant by an Employing Company or an insurer in the course of paying any health, hospitalization, insurance, supplemental unemployment, extended vacation or other benefits provided by any plan of an Employing Company shall be deducted from any pension payable under the Plan to the extent permitted by law.

ADMIN REC-0299

### 10.3   Non-Guarantee of Employment

Nothing contained in the Plan shall be construed as a contract of employment between an Employing Company and any Participant, or as a right of any Participant to be continued in the employment of an Employing Company, or as a limitation of the right of an Employing Company to discharge any of the Participants, with or without cause.

### 10.4   Rights to Trust Assets

No Participant shall have any right to, or interest in, any assets of the Trust upon termination of his employment or otherwise, except as provided from time to time under the Plan, and then only to the extent of the benefits payable to such Participant out of the assets of the Trust. Except as provided by ERISA, all payments of benefits as provided for in the Plan shall be made solely out of the assets of the Trust. Neither the board of directors of the Corporation, an Employing Company, an Investment Manager, the Trustee, nor any person designated to carry out fiduciary responsibilities pursuant to Article IX (including the Corporation) shall be liable for any insufficiency of the Trust's assets.

### 10.5   Incapacity to Receive Payment

In the event that the Plan Administrator finds that any Participant, spouse, Co-Pensioner or beneficiary entitled to receive benefits hereunder is (at the time such benefits are payable) unable to care for his affairs because of a physical, mental, or legal incompetence, the Plan Administrator may, in its sole discretion, cause any payment due him, for which prior claim has not been made by a duly qualified guardian or other legal representative, to be paid to such one or more persons as may be chosen by the Plan Administrator from among the following:  the institution maintaining or responsible for the maintenance of such person, his spouse, his children, or other relative by blood or marriage.  Any payment made pursuant to this Paragraph shall be a complete discharge of all liability under the Plan with respect of such payment.

### 10.6   Unclaimed Benefits

(a)   In the event that all or any portion of the benefit payable hereunder to a Participant, spouse, Co-Pensioner or beneficiary shall, at the expiration of one year after it shall become payable, remain unpaid solely by reason of the inability of the Plan Administrator to ascertain the whereabouts of such person, the amount so distributable shall be forfeited and applied to reduce contributions by the Employing Companies to the Plan as provided in Article VIII; provided, however, that such amount shall be reinstated (without provision for interest thereon) upon a proper claim therefore made by the Participant or if applicable, his spouse, Co-Pensioner or beneficiary.

ADMIN REC-0300

(b)     The Plan Administrator shall take reasonable steps to ascertain the whereabouts of Participants, spouses, Co-Pensioners and beneficiaries to whom distributions are payable.  Such steps shall include sending a registered letter, return receipt requested, to the last known address of such person, and making such further inquiries as the Plan Administrator deems appropriate.

**10.7   Severability Provision**

If any provision of the Plan or the application thereof to any circumstance(s) or person(s) is invalid, the remainder of the Plan and the application of such provision to other circumstances or persons shall not be affected thereby.

ADMIN REC-0301

# ARTICLE XI

## ADOPTION PROCEDURE BY AFFILIATED COMPANIES

### 11.1    Adoption Procedure

Any Controlled Group Member may become an Employing Company under the Plan upon approval by the Corporation or its delegee. Any other Affiliated Company may become an Employing Company under the Plan provided that (a) the Corporation or its delegee approves the adoption of the Plan by the Affiliated Company and designates the Affiliated Company as an Employing Company; (b) the Affiliated Company executes an instrument of adoption adopting the Plan, together with all amendments then in effect, upon appropriate resolutions binding upon such Affiliated Company; and (c) the instrument of adoption provides that the Affiliated Company agrees to be bound by any other terms and conditions that may be required by the Corporation or its delegee, provided that such terms and conditions are not inconsistent with the purposes of the Plan. For purposes of this Article XI, "Affiliated Company" shall mean any corporation or unincorporated trade or business, at least 25% of which is owned by the Corporation or a member of its Controlled Group.

### 11.2    Additional Terms and Conditions Relating to Instrument of Adoption

Each instrument of adoption executed by an Affiliated Company may contain such terms and conditions governing the application of the Plan to its Employees covered by such instrument as may be specified by such Affiliated Company and approved by the Corporation or its delegee and, without limiting the generality of the foregoing, may specify the Employees of the Affiliated Company who will be considered Covered Employees under the Plan, additional eligibility requirements for membership in the Plan and any other provision that such Affiliated Company (with the approval of the Corporation or its delegee) shall consider necessary or appropriate to carry out the provisions of the Plan as to its Employees covered by such instrument. In the event of inconsistency between the other provisions of the Plan and such terms and conditions set forth in any instrument of adoption, the latter shall control as to the Employees (or former Employees) covered by such instrument; provided, however, that if such inconsistency results from changes made in provisions of the Plan to comply with applicable law, then such provisions of the Plan shall control as to the Employees (or former Employees) covered by such instrument.

### 11.3    Effect of Adoption by Affiliated Company

An Affiliated Company that adopts the Plan pursuant to an instrument of adoption will be deemed to be an Employing Company for all purposes hereunder, unless otherwise specified in the instrument of adoption or by the Corporation or its delegee. In addition,

the Corporation or its delegee may provide, in its discretion and by appropriate resolutions, that the Employees of such Affiliated Company will receive credit for their employment with the Affiliated Company prior to the date it became an Affiliated Company for purposes of determining the eligibility of such Employees to participate in the Plan, the vested and nonforfeitable interest of such Employees in their benefits under the Plan and/or the amount of their benefits under the Plan, provided that such credit will be applied in a uniform and nondiscriminatory manner with respect to all such Employees.

## 11.4  Employing Company Reimbursement

Each Employing Company shall, upon demand from the Corporation, reimburse the Corporation for the Employing Company's appropriate share of any expenses, insurance premiums or plan funding necessary to provide benefits under the Plan.

## 11.5  Withdrawal of an Employing Company

(a)  Any Employing Company (except LTV Steel) that adopts the Plan may elect separately to withdraw from the Plan and such withdrawal shall constitute a termination of the Plan as to such Employing Company. Unless otherwise permitted by the Corporation, any such withdrawal and termination shall be expressed in an instrument executed by the terminating Employing Company and filed with the Corporation or its delegee, and shall (except as may otherwise be required by applicable law) become effective when so filed unless some other effective date is designated in such instrument and approved by the Corporation or its delegee.

(b)  Unless waived by the Corporation, an Affiliated Company shall be responsible for claims of its Participants and covered dependents incurred but not presented for payment as of the date of withdrawal.

## 11.6  Corporation's Right to Terminate Adoption

The Corporation shall have the right to terminate any Employing Company's adoption of the Plan at any time.

ADMIN REC-0303

# ARTICLE XII

## AMENDMENTS, TERMINATIONS AND MERGERS

### 12.1  Right to Amend

The Corporation reserves the right, acting through and pursuant to resolutions of its board of directors, to make from time to time any amendment or amendments to the Plan, including amendments which are retroactive in effect, so long as those amendments do not permit any reversion of assets of the Trust Fund to the Employer except as provided in Paragraph 9.7.

### 12.2  Prohibition on Decreasing Accrued Benefits

No amendment to the Plan (other than an amendment described in Section 412(c)(8) of the Code) shall have the effect of decreasing the accrued benefit of any Participant. For purposes of the preceding sentence, a Plan amendment that has the effect of (a) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations of the Secretary of the Treasury) or (b) eliminating an optional form of benefit (except as permitted by any such regulations) with respect to benefits attributable to service before the amendment, shall be treated as decreasing accrued benefits; provided, however, that in the case of a retirement-type subsidy this sentence shall apply only with respect to a Participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy.

### 12.3  Plan Merger

The Corporation shall have the right, acting through and pursuant to resolutions of its board of directors, to merge or transfer all or any part of the assets and liabilities of the Plan with or to those of any other qualified plan at anytime. After any merger or transfer of Plan assets or liabilities, benefits will be no less, if the merged plan were then terminated, than they would have been before such merger or transfer if the Plan had then been terminated.

### 12.4  Terminations

(a)    Right to Terminate

The Plan is intended to be permanent, but the Corporation may at any time, acting through and pursuant to resolutions of its board of directors, terminate the Plan in whole or in part and may direct and require the Trustee to liquidate the share of the Trust Fund allocable to such Participants, their spouses, Co-Pensioners or beneficiaries; provided, however, that there shall not be a termination or partial

ADMIN REC-0304

termination until the Corporation terminates or partially terminates the Plan in writing or the Commissioner of the Internal Revenue Service determines that a termination or partial termination has occurred. Upon termination or partial termination (within the meaning of Section 411(d)(3) of the Code) of the Plan, an affected Participant's interest under the Plan shall be considered as nonforfeitable to the extent funded. In the event an Employing Company shall for any reason cease to exist, with respect to the Employees of such Employing Company, the Plan, unless continued by another employer, shall terminate.

(b)    Manner of Distribution

If the Plan is terminated by the Corporation as to all Employing Companies, no contributions shall thereafter be required to be made to the Trust, except as otherwise required by the PBGC Agreement or applicable law, and the assets remaining in the Trust (available to provide benefits) shall be allocated in accordance with applicable law for the purposes of paying benefits provided for in the Plan. After all liabilities of the Plan to Participants, their spouses, Co-Pensioners and beneficiaries have been satisfied, any residual assets remaining in the Plan shall be distributed in accordance with Paragraph 9.7(b)(3) and in accordance with applicable law.

ADMIN REC-0305

# ARTICLE XIII

# LIMITATION ON BENEFITS OF CERTAIN PARTICIPANTS

**13.1    Benefit Payment Restrictions**

(a)    Notwithstanding any other provision of the Plan to the contrary, in the event of a termination of the Plan, the benefit of any highly compensated employee (and former highly compensated employee) (as defined below) shall be limited to a benefit that is nondiscriminatory under Section 401(a)(4) of the Code.

(b)    (1)    Notwithstanding any other provision of the Plan, the annual payments provided by the Plan with respect to any Participant who is a highly compensated employee or former highly compensated employee and who is one of the 25 highest paid Employees of the Controlled Group (a "Restricted Participant") shall be restricted to an amount equal in each year to the payments that would be made on behalf of the Restricted Participant under (i) a straight life annuity that is the Actuarial Equivalent of the sum of (A) the Restricted Participant's accrued benefit, and (B) the Restricted Participant's other benefits under the Plan (other than a Social Security supplement), and (ii) Social Security supplements to which the Restricted Participant is entitled, if any.

(2)    The limitations described in Subparagraph (b)(1) shall not apply if (i) after payment to a Restricted Participant of all of his benefits under the Plan, the value of Plan assets equals or exceeds 110% of the value of current liabilities, (ii) prior to payment to a Restricted Participant of all of his benefits under the Plan, the value of the Restricted Participant's benefits is less than 1% of the value of the Plan's current liabilities, or (iii) the value of all benefits payable to the Restricted Participant under the Plan does not exceed $5,000.

(c)    Miscellaneous Provisions

(1)    For purposes of this Paragraph, the term "highly compensated employee" shall mean an Employee described in Section 414(q) of the Code; the term "former highly compensated employee" shall mean a former Employee described in Section 414(q)(6) of the Code; the term "current liabilities" shall mean those liabilities described in Section 412(l)(7) of the Code; and the term "benefit" shall mean the benefit to which a Restricted Participant is entitled under the Plan, loans in excess of the amount specified in Section 72(p)(2)(A) of the Code, any periodic income, any withdrawal values payable to a living Employee, and any death benefits not provided for by insurance on the Employee's life.

(2)    The provisions of this Paragraph are meant to comply with the requirements of Treasury Regulation section 1.401(a)(4)-5(b) and shall be interpreted accordingly.

# ARTICLE XIV

## TOP-HEAVY PLAN REQUIREMENTS

**14.1   Definitions**

For the purposes of this Article, the following terms, when used with initial capital letters shall have the following respective meanings:

(a)   **Aggregation Group:**  Permissive Aggregation Group or Required Aggregation Group, as the context shall require.

(b)   **Annual Retirement Benefit:**  A benefit payable annually in the form of a single life annuity (with no ancillary benefits) beginning at a Participant's Normal Retirement Date under the Plan.

(c)   **Compensation:**  Except as specifically provided elsewhere in this Article, "compensation" as defined in Paragraph 3.13(h), subject to the limitation in effect for the Plan Year under Section 401(a)(17) of the Code.

(d)   **Defined Benefit Plan:**  A qualified plan as defined in Section 414(j) of the Code.

(e)   **Defined Contribution Plan:**  A qualified plan as defined in Section 414(i) of the Code.

(f)   **Determination Date:**  For any Plan Year, the last day of the immediately preceding Plan Year.

(g)   **Employer or Employers:**  The Controlled Group.

(h)   **Extra Top-Heavy Group:**  An Aggregation Group if, as of a Determination Date, the aggregate present value of accrued benefits for Key Employees in all plans in the Aggregation Group (whether Defined Benefit Plans or Defined Contribution Plans) is more than 90% of the aggregate present value of all accrued benefits for all employees in such plans.

(i)   **Extra Top-Heavy Plan:**  See Paragraph 14.3 below.

(j)   **Former Key Employee:**  A Non-Key Employee with respect to a Plan Year who was a Key Employee in a prior Plan Year.  Such term shall also include his Beneficiary in the event of his death.

(k)   **Key Employee:**  An Employee or former Employee who, at any time during the current Plan Year or any of the four preceding Plan Years, is (1) an officer of an Employer (as the term "officer" is limited in Section 416(i)(1)(A) of the Code) having an annual Compensation,

ADMIN REC-0307

greater than 50% of the amount in effect under Section 415(b)(1)(A) of the Code for any such Plan Year, (2) one of the 10 Employees having annual Compensation from an Employer of more than the limitation in effect under Section 415(c)(1)(A) of the Code and owning (or considered as owning within the meaning of Section 318 of the Code) the largest interests in an Employer, (3) a 5% owner (as such term is defined in Section 416(i)(1)(B)(i) of the Code), or (4) a 1% owner (as such term is defined in Section 416(i)(1)(B)(ii) of the Code) having an annual Compensation of more than $150,000. For purposes of (2) above, if two Employees have the same interest in an Employer, the Employee having greater annual Compensation from an Employer shall be treated as having a larger interest. The term "Key Employee" shall also include such Employee's Beneficiary in the event of his death. For purposes of this Paragraph (k), "Compensation" has the meaning given such term by Section 414(q)(4) of the Code.

(l)   **Non-Key Employee:** An Employee or former Employee who is not a Key Employee. Such term shall also include his Beneficiary in the event of his death.

(m)  **Permissive Aggregation Group:** The group of qualified plans of an Employer consisting of:

   (1)   The plans in the Required Aggregation Group; plus

   (2)   One or more plans designated from time to time by the Corporation that are not part of the Required Aggregation Group but that satisfy the requirements of Sections 401(a)(4) and 410 of the Code when considered with the Required Aggregation Group.

(n)   **Required Aggregation Group:** The group of qualified plans of an Employer consisting of:

   (1)   Each plan in which a Key Employee participates; plus

   (2)   Each other plan which enables a plan in which a Key Employee participates to meet the requirements of Section 401(a)(4) or 410 of the Code.

(o)   **Top-Heavy Accrued Benefit:** A Participant's (including a Participant who has received a total distribution from the Plan) or a Beneficiary's accrued benefit under the Plan as of the most recent Valuation Date within the 12-month period ending on the Determination Date, provided, however, that (1) such accrued benefit shall include the aggregate distributions made to such Participant or Beneficiary during the five consecutive Plan Years ending with the Plan Year that includes the Determination Date (including distributions under a terminated plan which if it had not been terminated would have been included in a Required Aggregation Group) and (2) if an Employee or former Employee has not performed services for any Employer maintaining the Plan at any time during the five-year period ending on the Determination Date, any accrued benefit for such Employee or former Employee (and/or the accrued benefit of his Beneficiary) shall not be taken into account. The accrued benefit of any Participant (other than a Key Employee) shall be determined under the method which is used for accrual purposes for all plans of the Controlled Group, or if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under Section 411(b)(1)(C) of the Code. In determining a Participant's Top-Heavy Accrued Benefit, proportional subsidies are ignored and nonproportional subsidies are taken into account.

(p)   **Top-Heavy Group:**  An Aggregation Group if, as of a Determination Date, the aggregate present value of accrued benefits for Key Employees in all plans in the Aggregation Group (whether Defined Benefit Plans or Defined Contribution Plans) is more than 60% of the aggregate present value of accrued benefits for all employees in such plans.

(q)   **Top-Heavy Plan:**  See Paragraph 14.2 hereof.

(r)   **Valuation Date:**  The valuation date for computing Plan costs for minimum funding under Section 412 of the Code.

## 14.2   Determination of Top-Heavy Status

(a)   Except as provided by (b) and (c) below, the Plan shall be a Top-Heavy Plan if, as of the Determination Date:

(1)   The aggregate present value of Top-Heavy Accrued Benefits for Key Employees is more than 60% of the aggregate present value of Top-Heavy Accrued Benefits of all Employees, excluding for this purpose the aggregate Top-Heavy Accrued Benefits of Former Key Employees; or

(2)   The Plan is included in a Required Aggregation Group which is a Top-Heavy Group.

(b)   If the Plan is included in a Required Aggregation Group which is not a Top-Heavy Group, the Plan shall not be a Top-Heavy Plan notwithstanding the fact that the Plan would otherwise be a Top-Heavy Plan under (a)(1) above.

(c)   If the Plan is included in a Permissive Aggregation Group which is not a Top-Heavy Group, the Plan shall not be a Top-Heavy Plan notwithstanding the fact that the Plan would otherwise be a Top-Heavy Plan under (a) above.

## 14.3   Determination of Extra Top-Heavy Status

(a)   Except as provided by (b) and (c) below, the Plan shall be an Extra Top-Heavy Plan if, as of the Determination Date:

(1)   The aggregate present value of Top-Heavy Accrued Benefits for Key Employees is more than 90% of the aggregate present value of all Top-Heavy Accrued Benefits of all Employees, excluding for this purpose the aggregate present value Top-Heavy Accrued Benefits of Former Key Employees; or

ADMIN REC-0309

(2)    The Plan is included in a Required Aggregation Group which is an Extra Top-Heavy Group.

(b)    If the Plan is included in a Required Aggregation Group which is not an Extra Top-Heavy Group, the Plan shall not be an Extra Top-Heavy Plan notwithstanding the fact that the Plan would otherwise be an Extra Top-Heavy Plan under (a)(1) above.

(c)    If the Plan is included in a Permissive Aggregation Group which is not an Extra Top-Heavy Group, the Plan shall not be an Extra Top-Heavy Plan notwithstanding the fact that the Plan would otherwise be an Extra Top-Heavy Plan under (a) above.

## 14.4    Top-Heavy Plan Requirements

Notwithstanding any other provisions of the Plan to the contrary, if the Plan is a Top-Heavy Plan for any Plan Year, the Plan shall then satisfy the following requirements for such Plan Year:

(a)    The minimum vesting requirement as set forth in Paragraph 14.5;

(b)    The minimum benefit requirement as set forth in Paragraph 14.6; and

(c)    The adjustment to minimum benefits and allocations as set forth in Paragraph 14.7.

## 14.5    Minimum Vesting Requirement

If the Plan is a Top-Heavy Plan for any Plan Year, each Employee who has completed at least two years of Continuous Service and who has been credited with an hour of service after the Plan becomes a Top-Heavy Plan shall have a nonforfeitable right to a percentage of his accrued benefit derived from Employer contributions determined under the following schedule:

| Years of Continuous Service | Nonforfeitable Percentage |
|---|---|
| 0-2 | 0 |
| 3 or more | 100 |

The vesting schedule described in the immediately preceding sentence shall cease to be applicable when the Plan ceases to be a Top-Heavy Plan, provided that the Employer contributions that become nonforfeitable pursuant thereto before the Plan ceases to be a Top-Heavy Plan shall remain nonforfeitable and the change in the vesting schedule resulting from the inapplicability of the vesting schedule described in the immediately preceding sentence shall be subject to the requirements of Section 411(a)(10) of the Code.

ADMIN REC-0310

**14.6    Minimum Benefit Requirement**

Except as otherwise provided in Paragraphs 14.7 and 14.8 hereof, if the Plan is a Top-Heavy Plan for any Plan Year, the accrued benefit derived from Employer contributions of each Participant who is a Non-Key Employee and who is credited with a year of Continuous Service for such Plan Year, when expressed as an Annual Retirement Benefit, shall be not less than the lesser of:

(a)    2% of the Participant's average Compensation for years in the testing period times his years of Continuous Service with an Employer; or

(b)    20% of the Participant's average Compensation for years in the testing period.

For purposes of this Paragraph, years of Continuous Service completed in a Plan Year beginning before January 1, 1984 and years of Continuous Service during a Plan Year for which the Plan was not a Top-Heavy Plan shall not be taken into account. The testing period under this Paragraph shall be the period of consecutive Plan Years (not exceeding five) during which the Participant had the greatest aggregate Compensation from an Employer, provided that the Plan Years shall not be included:

(1)    For which he was not credited with a year of Continuous Service;

(2)    Which end before January 1, 1984; and

(3)    Which begin after the close of the last Plan Year in which the Plan was a Top-Heavy Plan or an Extra Top-Heavy Plan.

**14.7    Adjustment to Minimum Benefits and Allocations**

If the Plan is a Top-Heavy Plan for any Plan Year and if an Employer maintains a Defined Contribution Plan which covers Participants in the Plan:

(a)    Each Non-Key Employee who is a Participant in the Plan and who is covered by such Defined Contribution Plan shall receive the minimum benefit provided by Paragraph 14.6 hereof, except that if he receives contributions under the Defined Contribution Plan which, when added to forfeitures received by him under such Defined Contribution Plan, equal 5% of his Compensation for such Plan Year, he shall not receive the minimum benefit provided by Paragraph 14.6 hereof.

ADMIN REC-0311

(b)      With respect only to Plan Years beginning prior to January 1, 2000, calculations under Paragraphs 3.13(g)(1) and (2) hereof shall be made by substituting "1.0" for "1.25" for each place such "1.25" figure appears, and calculations under Section 415(e)(7)(B)(I) of the Code shall be made by substituting "$41,500" for "$51,875" for each place such "$51,875" amount appears.

## 14.8    Coordination With Other Plans

(a)      In applying this Article, an Employer and all Controlled Group Members shall be treated as a single Employer, and the qualified plans maintained by such single Employer shall be taken into account.

(b)      In the event that another Defined Contribution Plan or Defined Benefit Plan maintained by an Employer provides contributions or benefits on behalf of Participants in the Plan, such other plan(s) shall be taken into account in determining whether the Plan has satisfied Paragraph 14.4 hereof; and the minimum benefit required for a Non-Key Employee in the Plan under Paragraph 14.6 hereof shall, in accordance with the provisions of this Article and as permitted by Section 416 of the Code and the regulations thereunder, be reduced or eliminated if such minimum benefit is required to be provided by such other plan(s).

Principles similar to those specifically applicable to the Plan under this Article, and in general, as provided for in Section 416 of the Code and the regulations thereunder, shall be applied to the other plans required to be taken into account under this Article in determining whether the Plan and such other plans meet the requirements of such Section 416 of the Code and the regulations thereunder.

ADMIN REC-0312

IN WITNESS WHEREOF, and as conclusive evidence of the adoption of the foregoing, THE LTV CORPORATION, a Delaware corporation, has caused its corporate seal to be affixed hereto and has caused the Plan to be duly executed in its name and behalf by its proper officers hereunto duly authorized this _6 th_ day of _November_, 2001, to be effective November 1, 1999.

ATTEST:

THE LTV CORPORATION

By: _____

Frank E. Filipovitz
General Manager
Human Resources

ADMIN REC-0313

# LTV STEEL HOURLY PENSION PLAN
## (AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

## EXHIBIT A
### TABLE OF PERCENTAGES
### (OTHER THAN RIVER TERMINAL EMPLOYEES)

This Table of Percentages will be used in calculating the amounts payable if one of the following options is applicable and benefits commence to be paid on or after August 1, 1999 to or on behalf of a Participant other than a River Terminal Employee: the Pre-Pension Spouse Coverage (50%), the Preretirement Survivor Annuity Coverage, the Automatic 50% Spouse Option With Pop-Up, the 50% Spouse Option, the 50% Co-Pensioner Option, or the 100% Co-Pensioner Option.

### Difference Between Ages of Participant and Spouse or Co-Pensioner

| | Participant Older | | | Participant Younger | | |
|---|---|---|---|---|---|---|
| Years | 50% Pop-Up | 50% | 100% | 50% Pop-Up | 50% | 100% |
| 0 | 87.0% | 88.0% | 81.0% | 87.0% | 88.0% | 81.0% |
| 1 | 86.6 | 87.6 | 80.4 | 87.4 | 88.4 | 81.6 |
| 2 | 86.2 | 87.2 | 79.8 | 87.8 | 88.8 | 82.2 |
| 3 | 85.8 | 86.8 | 79.2 | 88.2 | 89.2 | 82.8 |
| 4 | 85.4 | 86.4 | 78.6 | 88.6 | 89.6 | 83.4 |
| 5 | 85.0 | 86.0 | 78.0 | 89.0 | 90.0 | 84.0 |
| 6 | 84.6 | 85.6 | 77.4 | 89.4 | 90.4 | 84.6 |
| 7 | 84.2 | 85.2 | 76.8 | 89.8 | 90.8 | 85.2 |
| 8 | 83.8 | 84.8 | 76.2 | 90.2 | 91.2 | 85.8 |
| 9 | 83.4 | 84.4 | 75.6 | 90.6 | 91.6 | 86.4 |
| 10 | 83.0 | 84.0 | 75.0 | 91.0 | 92.0 | 87.0 |
| 11 | 82.6 | 83.6 | 74.4 | 91.4 | 92.4 | 87.6 |
| 12 | 82.2 | 83.2 | 73.8 | 91.8 | 92.8 | 88.2 |
| 13 | 81.8 | 82.8 | 73.2 | 92.2 | 93.2 | 88.8 |
| 14 | 81.4 | 82.4 | 72.6 | 92.6 | 93.6 | 89.4 |
| 15 | 81.0 | 82.0 | 72.0 | 93.0 | 94.0 | 90.0 |
| 16 | 80.6 | 81.6 | 71.4 | 93.4 | 94.4 | 90.6 |
| 17 | 80.2 | 81.2 | 70.8 | 93.8 | 94.8 | 91.2 |
| 18 | 79.8 | 80.8 | 70.2 | 94.2 | 95.2 | 91.8 |
| 19 | 79.4 | 80.4 | 69.6 | 94.6 | 95.6 | 92.4 |
| 20 and over | 79.0 | 80.0 | 69.0 | 95.0 | 96.0 | 93.0 |

NOTES: Participant's age and spouse's or Co-Pensioner's age rounded to the nearest whole year; e.g., age 51 years, six months becomes 52. Age differential is net difference between Participant's and spouse's or Co-Pensioner's ages as rounded. If the named Co-Pensioner is not the Participant's spouse and the Participant is more than 10 years older than the named Co-Pensioner, the payment to the Co-Pensioner shall be adjusted in accordance with Proposed Treasury Regulation Section 1.401(a)(9)-2.

LTV STEEL HOURLY PENSION PLAN
(AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

EXHIBIT B
TABLE OF PERCENTAGES (RIVER TERMINAL EMPLOYEES)

This Table of Percentages will be used in calculating the amounts payable if one of the following options is applicable and benefits are paid to or on behalf of a River Terminal Employee: the Pre-Pension Spouse Coverage (50%), the 50% Spouse Option, the 50% Co-Pensioner Option, or the 100% Co-Pensioner Option.

| Difference Between Ages of Participant And Spouse or Co-Pensioner | 51 and Under | | 52 to 54 | | 55 to 57 | | 58 to 60 | | 61 to 63 | | 64 and Over | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 50% | 100% | 50% | 100% | 50% | 100% | 50% | 100% | 50% | 100% | 50% | 100% |
| **Participant Older** | | | | | | | | | | | | |
| 20 or more years | 71% | 56% | 72% | 57% | 73% | 58% | 73% | 58% | 74% | 58% | 74% | 58% |
| 17, 18 or 19 years | 71 | 56 | 72 | 58 | 73 | 59 | 74 | 60 | 75 | 60 | 75 | 60 |
| 14, 15 or 16 years | 72 | 57 | 73 | 59 | 74 | 60 | 75 | 61 | 76 | 62 | 76 | 62 |
| 11, 12 or 13 years | 73 | 58 | 74 | 60 | 75 | 62 | 77 | 63 | 77 | 64 | 78 | 64 |
| 8, 9 or 10 years | 74 | 59 | 75 | 61 | 77 | 63 | 78 | 65 | 79 | 66 | 80 | 65 |
| 5, 6 or 7 years | 75 | 60 | 76 | 62 | 78 | 65 | 79 | 67 | 81 | 68 | 81 | 69 |
| 2, 3 or 4 years | 76 | 62 | 77 | 64 | 79 | 67 | 81 | 69 | 82 | 71 | 83 | 72 |
| Less than 2 years | 77 | 64 | 79 | 66 | 81 | 69 | 83 | 71 | 84 | 73 | 85 | 75 |
| **Participant Younger** | | | | | | | | | | | | |
| Less than 2 years | 77% | 64% | 79% | 66% | 81% | 69% | 83% | 71% | 84% | 73% | 85% | 75% |
| 2, 3 or 4 years | 79 | 66 | 80 | 68 | 82 | 71 | 84 | 74 | 85 | 76 | 87 | 78 |
| 5, 6 or 7 years | 80 | 68 | 82 | 70 | 84 | 73 | 86 | 76 | 88 | 79 | 89 | 81 |
| 8, 9 or 10 years | 82 | 70 | 84 | 73 | 86 | 76 | 88 | 79 | 90 | 82 | 91 | 84 |
| 11, 12 or 13 years | 84 | 73 | 85 | 75 | 88 | 79 | 90 | 82 | 92 | 85 | 93 | 87 |
| 14, 15 or 16 years | 86 | 75 | 87 | 78 | 89 | 81 | 91 | 84 | 93 | 87 | 94 | 90 |
| 17, 18 or 19 years | 87 | 78 | 89 | 81 | 91 | 84 | 93 | 87 | 95 | 90 | 96 | 92 |
| 20 or more years | 89 | 80 | 91 | 83 | 93 | 87 | 94 | 89 | 96 | 92 | 96 | 93 |

Column group header: **Participant's Age**

NOTES: Participant's age and spouse's or co-pensioner's age rounded to the nearest whole year: e.g., age 51 years, six months becomes 52. Age differential is net difference between Participant's and spouse's or Co-Pensioner's ages as rounded. If the named Co-Pensioner is not the Participant's spouse and the Participant is more than 10 years older than the named Co-Pensioner, the payment to the Co-Pensioner shall be adjusted in accordance with Proposed Treasury Regulation Section 1.401(a)(9)-2.

ADMIN REC-0315

# LTV STEEL HOURLY PENSION PLAN
## (AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

### EXHIBIT C
### SURVIVING SPOUSE INCREASE FACTORS

| Age | Nearest Months | | | | | | | | | | | |
|-----|------|------|------|------|------|------|------|------|------|------|------|------|
| Years | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 30 | 1.0104 | 1.0104 | 1.0105 | 1.0105 | 1.0105 | 1.0106 | 1.0106 | 1.0106 | 1.0107 | 1.0107 | 1.0107 | 1.0108 |
| 31 | 1.0108 | 1.0108 | 1.0109 | 1.0109 | 1.0109 | 1.0110 | 1.0110 | 1.0110 | 1.0111 | 1.0111 | 1.0111 | 1.0112 |
| 32 | 1.0112 | 1.0112 | 1.0113 | 1.0113 | 1.0113 | 1.0114 | 1.0114 | 1.0114 | 1.0115 | 1.0115 | 1.0115 | 1.0116 |
| 33 | 1.0116 | 1.0116 | 1.0117 | 1.0117 | 1.0117 | 1.0118 | 1.0118 | 1.0118 | 1.0119 | 1.0119 | 1.0119 | 1.0120 |
| 34 | 1.0120 | 1.0120 | 1.0121 | 1.0121 | 1.0122 | 1.0122 | 1.0123 | 1.0123 | 1.0123 | 1.0124 | 1.0124 | 1.0125 |
| 35 | 1.0125 | 1.0125 | 1.0126 | 1.0126 | 1.0126 | 1.0127 | 1.0127 | 1.0127 | 1.0128 | 1.0128 | 1.0128 | 1.0129 |
| 36 | 1.0129 | 1.0129 | 1.0130 | 1.0130 | 1.0130 | 1.0131 | 1.0131 | 1.0131 | 1.0132 | 1.0132 | 1.0132 | 1.0133 |
| 37 | 1.0133 | 1.0133 | 1.0134 | 1.0134 | 1.0134 | 1.0135 | 1.0135 | 1.0135 | 1.0136 | 1.0136 | 1.0136 | 1.0137 |
| 38 | 1.0137 | 1.0137 | 1.0138 | 1.0138 | 1.0138 | 1.0139 | 1.0139 | 1.0139 | 1.0140 | 1.0140 | 1.0140 | 1.0141 |
| 39 | 1.0141 | 1.0141 | 1.0142 | 1.0142 | 1.0142 | 1.0143 | 1.0143 | 1.0143 | 1.0144 | 1.0144 | 1.0144 | 1.0145 |
| 40 | 1.0145 | 1.0145 | 1.0146 | 1.0146 | 1.0146 | 1.0146 | 1.0147 | 1.0147 | 1.0147 | 1.0147 | 1.0148 | 1.0148 |
| 41 | 1.0148 | 1.0148 | 1.0149 | 1.0149 | 1.0149 | 1.0149 | 1.0150 | 1.0150 | 1.0150 | 1.0150 | 1.0151 | 1.0151 |
| 42 | 1.0151 | 1.0151 | 1.0152 | 1.0152 | 1.0152 | 1.0152 | 1.0153 | 1.0153 | 1.0153 | 1.0153 | 1.0154 | 1.0154 |
| 43 | 1.0154 | 1.0154 | 1.0154 | 1.0154 | 1.0154 | 1.0154 | 1.0155 | 1.0155 | 1.0155 | 1.0155 | 1.0155 | 1.0155 |
| 44 | 1.0155 | 1.0155 | 1.0155 | 1.0156 | 1.0156 | 1.0156 | 1.0156 | 1.0156 | 1.0156 | 1.0157 | 1.0157 | 1.0157 |
| 45 | 1.0157 | 1.0157 | 1.0157 | 1.0157 | 1.0157 | 1.0157 | 1.0157 | 1.0157 | 1.0157 | 1.0157 | 1.0157 | 1.0157 |
| 46 | 1.0157 | 1.0157 | 1.0157 | 1.0157 | 1.0157 | 1.0157 | 1.0157 | 1.0157 | 1.0157 | 1.0157 | 1.0157 | 1.0157 |
| 47 | 1.0157 | 1.0157 | 1.0157 | 1.0157 | 1.0156 | 1.0156 | 1.0156 | 1.0156 | 1.0156 | 1.0156 | 1.0155 | 1.0155 |
| 48 | 1.0155 | 1.0155 | 1.0155 | 1.0154 | 1.0154 | 1.0154 | 1.0154 | 1.0153 | 1.0153 | 1.0153 | 1.0153 | 1.0152 |
| 49 | 1.0152 | 1.0152 | 1.0151 | 1.0151 | 1.0151 | 1.0150 | 1.0150 | 1.0150 | 1.0149 | 1.0149 | 1.0149 | 1.0148 |
| 50 | 1.0148 | 1.0148 | 1.0147 | 1.0147 | 1.0146 | 1.0146 | 1.0145 | 1.0145 | 1.0144 | 1.0144 | 1.0143 | 1.0143 |
| 51 | 1.0142 | 1.0141 | 1.0141 | 1.0140 | 1.0140 | 1.0139 | 1.0139 | 1.0138 | 1.0137 | 1.0137 | 1.0136 | 1.0136 |
| 52 | 1.0135 | 1.0134 | 1.0134 | 1.0133 | 1.0132 | 1.0131 | 1.0131 | 1.0130 | 1.0129 | 1.0128 | 1.0128 | 1.0127 |
| 53 | 1.0126 | 1.0125 | 1.0124 | 1.0123 | 1.0122 | 1.0121 | 1.0121 | 1.0120 | 1.0119 | 1.0118 | 1.0117 | 1.0116 |
| 54 | 1.0115 | 1.0114 | 1.0113 | 1.0112 | 1.0111 | 1.0110 | 1.0109 | 1.0108 | 1.0107 | 1.0106 | 1.0105 | 1.0104 |

127

\legal\LTV\LTV Steel Pension Plan Final.doc

## LTV STEEL HOURLY PENSION PLAN
### (AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

### EXHIBIT C
### SURVIVING SPOUSE INCREASE FACTORS

| Age Years | Nearest Months | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 55 | 1.0103 | 1.0102 | 1.0101 | 1.0100 | 1.0099 | 1.0098 | 1.0097 | 1.0095 | 1.0094 | 1.0093 | 1.0092 | 1.0091 |
| 56 | 1.0090 | 1.0089 | 1.0088 | 1.0086 | 1.0085 | 1.0084 | 1.0083 | 1.0081 | 1.0080 | 1.0079 | 1.0078 | 1.0076 |
| 57 | 1.0075 | 1.0074 | 1.0072 | 1.0071 | 1.0070 | 1.0068 | 1.0067 | 1.0066 | 1.0064 | 1.0063 | 1.0062 | 1.0060 |
| 58 | 1.0059 | 1.0058 | 1.0056 | 1.0055 | 1.0054 | 1.0052 | 1.0051 | 1.0050 | 1.0048 | 1.0047 | 1.0046 | 1.0044 |
| 59 | 1.0043 | 1.0042 | 1.0041 | 1.0039 | 1.0038 | 1.0037 | 1.0036 | 1.0034 | 1.0033 | 1.0032 | 1.0031 | 1.0029 |
| 60 | 1.0028 | 1.0027 | 1.0026 | 1.0025 | 1.0023 | 1.0022 | 1.0021 | 1.0020 | 1.0019 | 1.0018 | 1.0016 | 1.0015 |
| 61 | 1.0014 | 1.0013 | 1.0012 | 1.0012 | 1.0011 | 1.0010 | 1.0009 | 1.0008 | 1.0007 | 1.0007 | 1.0006 | 1.0005 |
| 62 | 1.0004 | 1.0004 | 1.0003 | 1.0003 | 1.0003 | 1.0002 | 1.0002 | 1.0001 | 1.0001 | 1.0001 | 1.0001 | 1.0000 |
| 63 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 |
| 64 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 |
| 65 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 |
| 66 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 |
| 67 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 |
| 68 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 |
| 69 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 |
| 70 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 |
| 71 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 |
| 72 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 |
| 73 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 |
| 74 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 |
| 75 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 |
| 76 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 |
| 77 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 |
| 78 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 |
| 79 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 |

| 80 | 1.0000 |
|---|---|

128

ADMIN REC-0317

**LTV STEEL HOURLY PENSION PLAN**
**(AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)**

**EXHIBIT D**
**EMPLOYING COMPANIES**

LTV Steel Company, Inc.
The River Terminal Railway Company
Cuyahoga Valley Railway Company (for purposes of Exhibit K only)
Copperweld Tubing Products Company (effective January 1, 2001)

ADMIN REC-0318

## LTV STEEL HOURLY PENSION PLAN
### (AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

### EXHIBIT E
### TABLE OF PERCENTAGES (FOR RIVER TERMINAL EMPLOYEES)

This Table of Percentages will be used in calculating the amounts payable under the Survivor Annuity Coverage for a Participant who is a River Terminal Employee.

| Difference Between Ages of Participant and Spouse | Participant's Age at Death | | |
|---|---|---|---|
| | Prior to 61 | 61 to 63 | 64 and Over |
| **Participant Older** | | | |
| 20 or more years | 36.5% | 37.0% | 37.0% |
| 17, 18 or 19 years | 37.0 | 37.5 | 37.5 |
| 14, 15 or 16 years | 37.5 | 38.0 | 38.0 |
| 11, 12 or 13 years | 38.5 | 38.5 | 39.0 |
| 8, 9 or 10 years | 39.0 | 39.5 | 40.0 |
| 5, 6 or 7 years | 39.5 | 40.5 | 40.5 |
| 2, 3 or 4 years | 40.5 | 41.0 | 41.5 |
| less than 2 years | 41.5 | 42.0 | 42.5 |
| **Participant Younger** | | | |
| Less than 2 years | 41.5% | 42.0% | 42.5% |
| 2, 3 or 4 years | 42.0 | 43.0 | 43.5 |
| 5, 6 or 7 years | 43.0 | 44.0 | 44.5 |
| 8, 9 or 10 years | 44.0 | 45.0 | 45.5 |
| 11, 12 or 13 years | 45.0 | 46.0 | 46.5 |
| 14, 15 or 16 years | 45.5 | 46.5 | 47.0 |
| 17, 18 or 19 years | 46.5 | 47.5 | 48.0 |
| 20 or more years | 47.0 | 48.0 | 48.0 |

ADMIN REC-0319

LTV STEEL HOURLY PENSION PLAN
(AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

EXHIBIT F
COVERED EMPLOYEES

## LTV STEEL COMPANY, INC.

UNITS REPRESENTED BY THE UNITED STEELWORKERS OF AMERICA (USWA):

BASIC LABOR AGREEMENT(S) (Former Republic Steel Bargaining Units) --

The steel plant and continuous strip mill at Cleveland, OH (P&M)
The steel plant at Youngstown, OH (P&M)
The Warren Coke Plant (P&M)
The Chicago Coke Plant (P&M)
The tubular plants at Cleveland and Elyria, OH (P&M)
The tubular plant at Counce, TN
Cleveland Strip Mill Office and Plant (O&C)
Cleveland Steel Plant (O&C)
Youngstown Office & Plant (O&C)
Warren Coke Plant Clerical (O&C)
Lorain Pellet Terminal at Lorain, OH

BASIC LABOR AGREEMENT(S) (Former J&L Bargaining Units) --

Pittsburgh, Hennepin, Cleveland, Aliquippa and Indiana Harbor (P&M)
Clerical and Technical Bargaining Unit at Indiana Harbor Works (O&C)
Property Protection Bargaining Unit at Indiana Harbor Works
Hennepin Works (O&C)

SEPARATE LABOR AGREEMENTS --

Grand River Lime Plant - USWA Local 1179 (Same as USWA P&M)
Indiana Harbor Bricklayers -- International Union of Bricklayers and Allied
    Craftsmen Local No. 4 Indiana and Kentucky, Merrillville Chapter (Same as
    USWA P&M)

UNITS REPRESENTED BY THE UNITED PLANT GUARD WORKERS OF AMERICA
(UPGWA) (EFFECTIVE MAY 2000, SECURITY, POLICE AND FIRE PROFESSIONALS OF
AMERICA (SPFPA)):

Youngstown Plant Guards - UPGWA Local 64 (Same as USWA O&C)
Warren Coke Plant Guards - UPGWA Local 64 (Same as USWA O&C)
Cleveland Works West Guards -- UPGWA Local 145 (Same as USWA P&M)

ADMIN REC-0320

## LTV STEEL HOURLY PENSION PLAN
### (AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

### EXHIBIT F continued
### COVERED EMPLOYEES

## COPPERWELD TUBING PRODUCTS COMPANY

UNITS REPRESENTED BY THE UNITED STEELWORKERS OF AMERICA (USWA):

SEPARATE LABOR AGREEMENT

Ferndale Tubular Plant – USWA Local 2508 (Same as USWA P&M)*
Marion Plant – USWA Local 1949 (Effective May 1, 2000)*

\*    Prior to January 1, 2001, employees at the Ferndale Tubular Plant and the Marion Plant
were employed by LTV Steel Company, Inc.

## CUYAHOGA VALLEY RAILWAY COMPANY

UNITS REPRESENTED BY THE UNITED STEELWORKERS OF AMERICA (USWA):

SEPARATE LABOR AGREEMENT –

USWA Local 185

UNITS REPRESENTED BY THE UNITED TRANSPORTATION UNION (UTU):

SEPARATE LABOR AGREEMENT(S) –

Clerks – UTU Local 1748
Maintenance of Way – UTU Local 1748
Maintenance of Equipment – UTU Local 1748
Trainmen – UTU Local 1748
Enginemen – UTU Local 1748

## RIVER TERMINAL RAILWAY COMPANY

UNITS REPRESENTED BY THE UNITED TRANSPORTATION UNION (UTU):

SEPARATE LABOR AGREEMENT(S) –

Enginemen, Hostlers and Hostler Helpers
Conductors and Brakemen
Yard Masters
Car, Bridge and Signal Department Employees
Clerical, Office, Station and Storehouse Employees
Locomotive Shop Employees
Electricians

ADMIN REC-0321

LTV STEEL HOURLY PENSION PLAN
(AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

EXHIBIT G
SOLD FACILITY

A Sold Facility Participant shall be entitled to commence his benefit under the Plan in accordance with the terms of the Plan without regard to whether the Sold Facility Participant is employed with the buyer of the facility, provided that the facility sale occurred on or after June 1, 1986. For any facility sale that occurred prior to June 1, 1986, a Sold Facility Participant shall be entitled to commence his benefit in accordance with the terms of the Plan only after such Sold Facility Participant has terminated employment with the buyer of the facility. Effective with respect to any facility sale on or after June 1, 1986, if a Sold Facility Participant elects to commence his benefit under the Plan prior to termination of employment with the buyer of such facility, such Sold Facility Participant's Continuous Service for purposes of eligibility and vesting shall be determined as of the date of the facility sale. Unless otherwise provided in the Plan, a Sold Facility Participant who does not commence his benefit under the Plan until after termination of employment with the buyer of the facility shall be credited with Continuous Service while employed with the buyer of such facility for eligibility and vesting purposes, but not in determining the amount of any benefit under the Plan. Except as otherwise expressly specified in the Plan or this Exhibit with regard to Sold Facility Participants, or as required by applicable law, a Sold Facility Participant's benefit shall be determined based on the Plan or the applicable Predecessor Plan as in effect on the date of the facility sale, subject to the provisions of any amendment of the Plan or the applicable Predecessor Plan to take into account the effect of such sale.

| Facility | Date of Sale |
|---|---|
| Bar Division (RESI) | November 28, 1989 |
| Warren/Niles and Drainage Products (WCI) | August 31, 1988 |
| Aliquippa 14" Mill | November 6, 1987 |
| Republic Storage Systems | June 16, 1986 |
| LTV Steel Specialty Products | April 25, 1986 |
| Barrel Corporation (Republic Container Company) | August 31, 1985 |
| Massillon (Enduro Stainless) | November 30, 1984 |
| Vesta Mine (Massey) | May 20, 1982 |
| Indianapolis & Youngstown Stainless & Strip Division (Cold Metal Products) | November 30, 1980 |
| Steel Service Center (Edgcomb) | February 28, 1978 |
| Container Division (Cortland Container) | January 13, 1976 |
| Wire Rope Division (Bridon-American) | January 8, 1975 |

ADMIN REC-0322

# LTV STEEL HOURLY PENSION PLAN
## (AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

### EXHIBIT H-1

#### CONVERSION FACTORS FOR OPTIONAL
#### FORMS OF PAYMENT FOR DCP ACCOUNT BENEFIT
#### FOR RETIREMENTS EXCLUDING
#### DEFERRED VESTED PENSIONS

#### LIFE WITH CASH REFUND

| AGE | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 33 | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% |
| 34 | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.4% | 99.4% |
| 35 | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% |
| 36 | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.3% | 99.4% | 99.4% | 99.3% |
| 37 | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% |
| 38 | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% |
| 39 | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% |
| 40 | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% |
| 41 | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% |
| 42 | 99.1% | 99.1% | 99.1% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% |
| 43 | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 98.9% | 98.9% | 98.9% | 98.9% |
| 44 | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.8% |
| 45 | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% |
| 46 | 98.8% | 98.7% | 98.7% | 98.7% | 98.7% | 98.7% | 98.7% | 98.7% | 98.7% | 98.7% | 98.7% | 98.7% |
| 47 | 98.7% | 98.6% | 98.6% | 98.6% | 98.6% | 98.6% | 98.6% | 98.6% | 98.6% | 98.6% | 98.6% | 98.5% |
| 48 | 98.5% | 98.5% | 98.5% | 98.5% | 98.5% | 98.5% | 98.5% | 98.5% | 98.5% | 98.4% | 98.4% | 98.4% |
| 49 | 98.4% | 98.4% | 98.4% | 98.4% | 98.4% | 98.4% | 98.3% | 98.3% | 98.3% | 98.3% | 98.3% | 98.3% |
| 50 | 98.3% | 98.3% | 98.2% | 98.2% | 98.2% | 98.2% | 98.2% | 98.2% | 98.2% | 98.2% | 98.1% | 98.1% |
| 51 | 98.1% | 98.1% | 98.1% | 98.1% | 98.1% | 98.0% | 98.0% | 98.0% | 98.0% | 98.0% | 98.0% | 98.0% |
| 52 | 97.9% | 97.9% | 97.9% | 97.9% | 97.9% | 97.8% | 97.8% | 97.8% | 97.8% | 97.8% | 97.8% | 97.7% |
| 53 | 97.7% | 97.7% | 97.7% | 97.7% | 97.6% | 97.6% | 97.6% | 97.6% | 97.6% | 97.6% | 97.5% | 97.5% |
| 54 | 97.5% | 97.5% | 97.5% | 97.4% | 97.4% | 97.4% | 97.4% | 97.3% | 97.3% | 97.3% | 97.3% | 97.3% |
| 55 | 97.2% | 97.2% | 97.2% | 97.2% | 97.1% | 97.1% | 97.1% | 97.1% | 97.1% | 97.0% | 97.0% | 97.0% |
| 56 | 97.0% | 96.9% | 96.9% | 96.9% | 96.9% | 96.9% | 96.8% | 96.8% | 96.8% | 96.8% | 96.7% | 96.7% |
| 57 | 96.7% | 96.6% | 96.6% | 96.6% | 96.5% | 96.5% | 96.5% | 96.5% | 96.4% | 96.4% | 96.4% | 96.4% |
| 58 | 96.3% | 96.3% | 96.3% | 96.2% | 96.2% | 96.2% | 96.2% | 96.1% | 96.1% | 96.1% | 96.0% | 96.0% |
| 59 | 96.0% | 95.9% | 95.9% | 95.9% | 95.9% | 95.8% | 95.8% | 95.8% | 95.7% | 95.7% | 95.7% | 95.6% |
| 60 | 95.6% | 95.6% | 95.5% | 95.5% | 95.5% | 95.4% | 95.4% | 95.4% | 95.3% | 95.3% | 95.3% | 95.2% |
| 61 | 95.2% | 95.2% | 95.1% | 95.1% | 95.1% | 95.0% | 95.0% | 95.0% | 94.9% | 94.9% | 94.9% | 94.8% |
| 62 | 94.8% | 94.8% | 94.7% | 94.7% | 94.7% | 94.6% | 94.6% | 94.6% | 94.5% | 94.5% | 94.5% | 94.4% |
| 63 | 94.4% | 94.3% | 94.3% | 94.3% | 94.2% | 94.2% | 94.2% | 94.1% | 94.1% | 94.1% | 94.0% | 94.0% |
| 64 | 94.0% | 93.9% | 93.9% | 93.9% | 93.8% | 93.8% | 93.8% | 93.7% | 93.7% | 93.7% | 93.6% | 93.6% |
| 65 | 93.6% | 93.5% | 93.5% | 93.5% | 93.4% | 93.4% | 93.4% | 93.3% | 93.3% | 93.3% | 93.2% | 93.2% |
| 66 | 93.2% | 93.1% | 93.1% | 93.1% | 93.0% | 93.0% | 93.0% | 92.9% | 92.9% | 92.9% | 92.8% | 92.8% |
| 67 | 92.8% | 92.7% | 92.7% | 92.7% | 92.6% | 92.6% | 92.5% | 92.5% | 92.5% | 92.4% | 92.4% | 92.4% |
| 68 | 92.3% | 92.3% | 92.3% | 92.2% | 92.2% | 92.2% | 92.1% | 92.1% | 92.1% | 92.1% | 92.0% | 92.0% |
| 69 | 92.0% | 91.9% | 91.9% | 91.9% | 91.8% | 91.8% | 91.8% | 91.7% | 91.7% | 91.7% | 91.7% | 91.6% |

ADMIN REC-0323

LTV STEEL HOURLY PENSION PLAN
(AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

### EXHIBIT H-1 continued

CONVERSION FACTORS FOR OPTIONAL
FORMS OF PAYMENT FOR DCP ACCOUNT BENEFIT
FOR RETIREMENTS EXCLUDING
DEFERRED VESTED PENSIONS

### LIFE WITH CASH REFUND

| AGE | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 70 | 91.6% | 91.6% | 91.5% | 91.5% | 91.5% | 91.5% | 91.4% | 91.4% | 91.4% | 91.4% | 91.3% | 91.3% |
| 71 | 91.3% | 91.2% | 91.2% | 91.2% | 91.2% | 91.1% | 91.1% | 91.1% | 91.1% | 91.0% | 91.0% | 91.0% |
| 72 | 91.0% | 90.9% | 90.9% | 90.9% | 90.9% | 90.8% | 90.8% | 90.8% | 90.8% | 90.7% | 90.7% | 90.7% |
| 73 | 90.7% | 90.6% | 90.6% | 90.6% | 90.6% | 90.5% | 90.5% | 90.5% | 90.5% | 90.4% | 90.4% | 90.4% |
| 74 | 90.4% | 90.3% | 90.3% | 90.3% | 90.3% | 90.3% | 90.2% | 90.2% | 90.2% | 90.2% | 90.2% | 90.1% |
| 75 | 90.1% | 90.1% | 90.1% | 90.1% | 90.1% | 90.0% | 90.0% | 90.0% | 90.0% | 90.0% | 90.0% | 89.9% |
| 76 | 89.9% | 89.9% | 89.9% | 89.9% | 89.9% | 89.9% | 89.9% | 89.9% | 89.9% | 89.8% | 89.8% | 89.8% |
| 77 | 89.8% | 89.8% | 89.8% | 89.8% | 89.8% | 89.8% | 89.8% | 89.8% | 89.8% | 89.8% | 89.8% | 89.8% |
| 78 | 89.8% | 89.8% | 89.8% | 89.8% | 89.8% | 89.8% | 89.8% | 89.8% | 89.8% | 89.8% | 89.8% | 89.8% |
| 79 | 89.8% | 89.8% | 89.8% | 89.8% | 89.8% | 89.8% | 89.8% | 89.8% | 89.8% | 89.8% | 89.8% | 89.8% |
| 80 | 89.8% | | | | | | | | | | | |

## LTV STEEL HOURLY PENSION PLAN
### (AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

### EXHIBIT H-2

### CONVERSION FACTORS FOR OPTIONAL
### FORMS OF PAYMENT FOR DCP ACCOUNT BENEFIT
### FOR DEFERRED VESTED PENSIONS

### LIFE WITH CASH REFUND

| AGE | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 33 | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% |
| 34 | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.3% | 99.3% | 99.3% |
| 35 | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.2% | 99.2% | 99.3% | 99.2% |
| 36 | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% |
| 37 | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% |
| 38 | 99.2% | 99.2% | 99.2% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.0% | 99.0% | 99.0% |
| 39 | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.0% | 99.0% | 99.0% | 99.0% |
| 40 | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% |
| 41 | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.8% |
| 42 | 98.9% | 98.9% | 98.9% | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% | 98.7% |
| 43 | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% | 98.7% | 98.7% | 98.7% | 98.7% | 98.7% | 98.7% | 98.6% |
| 44 | 98.7% | 98.7% | 98.7% | 98.7% | 98.7% | 98.6% | 98.6% | 98.6% | 98.6% | 98.6% | 98.6% | 98.6% |
| 45 | 98.6% | 98.6% | 98.6% | 98.6% | 98.6% | 98.5% | 98.5% | 98.5% | 98.5% | 98.5% | 98.5% | 98.5% |
| 46 | 98.5% | 98.5% | 98.5% | 98.5% | 98.4% | 98.4% | 98.4% | 98.4% | 98.4% | 98.4% | 98.4% | 98.4% |
| 47 | 98.4% | 98.3% | 98.3% | 98.3% | 98.3% | 98.3% | 98.3% | 98.3% | 98.3% | 98.3% | 98.2% | 98.2% |
| 48 | 98.2% | 98.2% | 98.2% | 98.2% | 98.2% | 98.2% | 98.1% | 98.1% | 98.1% | 98.1% | 98.1% | 98.1% |
| 49 | 98.1% | 98.0% | 98.0% | 98.0% | 98.0% | 98.0% | 98.0% | 98.0% | 97.9% | 97.9% | 97.9% | 97.9% |
| 50 | 97.9% | 97.9% | 97.8% | 97.8% | 97.8% | 97.8% | 97.8% | 97.8% | 97.7% | 97.7% | 97.7% | 97.7% |
| 51 | 97.7% | 97.7% | 97.6% | 97.6% | 97.6% | 97.6% | 97.6% | 97.5% | 97.5% | 97.5% | 97.5% | 97.5% |
| 52 | 97.5% | 97.4% | 97.4% | 97.4% | 97.4% | 97.3% | 97.3% | 97.3% | 97.3% | 97.2% | 97.2% | 97.2% |
| 53 | 97.2% | 97.1% | 97.1% | 97.1% | 97.1% | 97.1% | 97.0% | 97.0% | 97.0% | 97.0% | 96.9% | 96.9% |
| 54 | 96.9% | 96.9% | 96.8% | 96.8% | 96.8% | 96.7% | 96.7% | 96.7% | 96.7% | 96.6% | 96.6% | 96.6% |
| 55 | 96.5% | 96.5% | 96.5% | 96.4% | 96.4% | 96.4% | 96.3% | 96.3% | 96.3% | 96.3% | 96.2% | 96.2% |
| 56 | 96.2% | 96.1% | 96.1% | 96.1% | 96.0% | 96.0% | 95.9% | 95.9% | 95.9% | 95.8% | 95.8% | 95.8% |
| 57 | 95.7% | 95.7% | 95.7% | 95.6% | 95.6% | 95.6% | 95.5% | 95.5% | 95.4% | 95.4% | 95.4% | 95.3% |
| 58 | 95.3% | 95.2% | 95.2% | 95.2% | 95.1% | 95.1% | 95.0% | 95.0% | 95.0% | 94.9% | 94.9% | 94.8% |
| 59 | 94.8% | 94.7% | 94.7% | 94.6% | 94.6% | 94.6% | 94.5% | 94.5% | 94.4% | 94.4% | 94.3% | 94.3% |
| 60 | 94.2% | 94.2% | 94.1% | 94.1% | 94.0% | 94.0% | 93.9% | 93.9% | 93.8% | 93.8% | 93.7% | 93.7% |
| 61 | 93.6% | 93.6% | 93.5% | 93.5% | 93.4% | 93.4% | 93.3% | 93.3% | 93.2% | 93.2% | 93.1% | 93.1% |
| 62 | 93.0% | 93.0% | 92.9% | 92.8% | 92.8% | 92.7% | 92.7% | 92.6% | 92.6% | 92.5% | 91.8% | 91.7% |
| 63 | 92.3% | 92.3% | 92.2% | 92.2% | 92.1% | 92.1% | 92.0% | 91.9% | 91.9% | 91.8% | 91.8% | 91.0% |
| 64 | 91.7% | 91.6% | 91.5% | 91.5% | 91.4% | 91.4% | 91.3% | 91.2% | 91.2% | 91.1% | 91.1% | 91.0% |
| 65 | 90.9% | 90.9% | 90.8% | 90.8% | 90.7% | 90.6% | 90.6% | 90.5% | 90.4% | 90.4% | 90.3% | 90.3% |
| 66 | 90.2% | 90.1% | 90.1% | 90.0% | 89.9% | 89.9% | 89.8% | 89.7% | 89.7% | 89.6% | 89.5% | 89.5% |
| 67 | 89.4% | 89.3% | 89.3% | 89.2% | 89.1% | 89.1% | 89.0% | 88.9% | 88.9% | 88.8% | 88.7% | 88.7% |
| 68 | 88.6% | 88.5% | 88.4% | 88.4% | 88.3% | 88.2% | 88.2% | 88.1% | 88.0% | 88.0% | 87.9% | 87.8% |
| 69 | 87.8% | 87.7% | 87.6% | 87.5% | 87.5% | 87.4% | 87.3% | 87.3% | 87.2% | 87.1% | 87.1% | 87.0% |

ADMIN REC-0325

# LTV STEEL HOURLY PENSION PLAN
## (AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

### EXHIBIT H-2 continued

### CONVERSION FACTORS FOR OPTIONAL
### FORMS OF PAYMENT FOR DCP ACCOUNT BENEFIT
### FOR DEFERRED VESTED PENSIONS

### LIFE WITH CASH REFUND

| AGE | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|-----|---|---|---|---|---|---|---|---|---|---|----|----|
| 70 | 86.9% | 86.8% | 86.8% | 86.7% | 86.6% | 86.6% | 86.5% | 86.4% | 86.3% | 86.3% | 86.2% | 86.1% |
| 71 | 86.0% | 86.0% | 85.9% | 85.8% | 85.7% | 85.7% | 85.6% | 85.5% | 85.4% | 85.4% | 85.3% | 85.2% |
| 72 | 85.1% | 85.1% | 85.0% | 84.9% | 84.8% | 84.7% | 84.7% | 84.6% | 84.5% | 84.4% | 84.3% | 84.3% |
| 73 | 84.2% | 84.1% | 84.0% | 83.9% | 83.8% | 83.8% | 83.7% | 83.6% | 83.5% | 83.4% | 83.3% | 83.2% |
| 74 | 83.2% | 83.1% | 83.0% | 82.9% | 82.8% | 82.7% | 82.6% | 82.6% | 82.5% | 82.4% | 82.3% | 82.2% |
| | | | | | | | | | | | | |
| 75 | 82.1% | 82.0% | 81.9% | 81.9% | 81.8% | 81.7% | 81.6% | 81.5% | 81.4% | 81.3% | 81.2% | 81.1% |
| 76 | 81.1% | 81.0% | 80.9% | 80.8% | 80.7% | 80.6% | 80.5% | 80.4% | 80.3% | 80.3% | 80.2% | 80.1% |
| 77 | 80.0% | 79.9% | 79.8% | 79.7% | 79.6% | 79.5% | 79.4% | 79.4% | 79.3% | 79.2% | 79.1% | 79.0% |
| 78 | 78.9% | 78.8% | 78.7% | 78.6% | 78.5% | 78.4% | 78.4% | 78.3% | 78.2% | 78.1% | 78.0% | 77.9% |
| 79 | 77.8% | 77.7% | 77.6% | 77.5% | 77.4% | 77.3% | 77.2% | 77.1% | 77.0% | 76.9% | 76.8% | 76.7% |
| | | | | | | | | | | | | |
| 80 | 76.6% | | | | | | | | | | | |

ADMIN REC-0326

# LTV STEEL HOURLY PENSION PLAN
## (AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

## EXHIBIT I-1

### CONVERSION FACTORS FOR OPTIONAL
### FORMS OF PAYMENT FOR DCP ACCOUNT BENEFIT
### FOR RETIREMENTS EXCLUDING
### DEFERRED VESTED PENSIONS

#### 15-YEAR CERTAIN AND LIFE

| AGE | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 33 | 99.5% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% |
| 34 | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% |
| 35 | 99.4% | 99.4% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% |
| 36 | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% |
| 37 | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% |
| 38 | 99.2% | 99.2% | 99.2% | 99.1% | 99.1% | 99.1% | 99.1% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% |
| 39 | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.0% | 99.0% | 99.0% | 98.9% | 98.9% | 98.9% |
| 40 | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 98.9% | 98.9% | 98.8% |
| 41 | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.8% | 98.8% | 98.8% | 98.8% |
| 42 | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% | 98.7% | 98.7% | 98.6% | 98.6% | 98.6% | 98.6% |
| 43 | 98.7% | 98.7% | 98.7% | 98.7% | 98.7% | 98.7% | 98.5% | 98.5% | 98.5% | 98.5% | 98.5% | 98.5% |
| 44 | 98.6% | 98.6% | 98.6% | 98.6% | 98.6% | 98.6% | 98.4% | 98.4% | 98.4% | 98.3% | 98.3% | 98.3% |
| 45 | 98.5% | 98.4% | 98.4% | 98.4% | 98.4% | 98.4% | 98.4% | 98.2% | 98.2% | 98.2% | 98.1% | 98.1% |
| 46 | 98.3% | 98.3% | 98.3% | 98.3% | 98.2% | 98.2% | 98.2% | 98.2% | 98.2% | 98.0% | 97.9% | 97.9% |
| 47 | 98.1% | 98.1% | 98.1% | 98.1% | 98.0% | 98.0% | 98.0% | 98.0% | 98.0% | 98.0% | 97.7% | 97.7% |
| 48 | 97.9% | 97.9% | 97.9% | 97.8% | 97.8% | 97.8% | 97.8% | 97.8% | 97.7% | 97.7% | 97.7% | 97.7% |
| 49 | 97.7% | 97.6% | 97.6% | 97.6% | 97.6% | 97.5% | 97.5% | 97.5% | 97.5% | 97.4% | 97.4% | 97.4% |
| 50 | 97.4% | 97.3% | 97.3% | 97.3% | 97.3% | 97.2% | 97.2% | 97.2% | 97.1% | 97.1% | 96.7% | 96.7% |
| 51 | 97.0% | 97.0% | 97.0% | 96.9% | 96.9% | 96.9% | 96.9% | 96.8% | 96.8% | 96.3% | 96.3% | 96.3% |
| 52 | 96.7% | 96.6% | 96.6% | 96.6% | 96.5% | 96.5% | 96.5% | 96.4% | 96.4% | 95.9% | 95.8% | 95.8% |
| 53 | 96.2% | 96.2% | 96.2% | 96.1% | 96.1% | 96.0% | 96.0% | 96.0% | 95.9% | 95.3% | 95.3% | 95.3% |
| 54 | 95.7% | 95.7% | 95.7% | 95.6% | 95.6% | 95.5% | 95.5% | 95.4% | 94.8% | 94.7% | 94.7% | 94.6% |
| 55 | 95.2% | 95.2% | 95.1% | 95.1% | 95.0% | 95.0% | 94.9% | 94.9% | 94.2% | 94.1% | 94.0% | 94.0% |
| 56 | 94.6% | 94.5% | 94.5% | 94.4% | 94.4% | 94.3% | 94.3% | 93.5% | 93.4% | 93.4% | 93.3% | 93.2% |
| 57 | 93.9% | 93.9% | 93.8% | 93.7% | 93.7% | 93.6% | 93.6% | 92.7% | 92.6% | 92.6% | 92.5% | 92.4% |
| 58 | 93.2% | 93.1% | 93.0% | 93.0% | 92.9% | 92.8% | 92.8% | 91.9% | 91.8% | 91.7% | 91.6% | 91.6% |
| 59 | 92.4% | 92.3% | 92.2% | 92.1% | 92.1% | 92.0% | 91.9% | 91.9% | 91.8% | 91.7% | 91.6% | 91.6% |
| 60 | 91.5% | 91.4% | 91.3% | 91.3% | 91.2% | 91.1% | 91.0% | 90.9% | 90.9% | 90.8% | 90.7% | 90.6% |
| 61 | 90.5% | 90.5% | 90.4% | 90.3% | 90.2% | 90.1% | 90.0% | 89.9% | 89.9% | 89.8% | 89.7% | 89.6% |
| 62 | 89.5% | 89.4% | 89.3% | 89.3% | 89.2% | 89.1% | 89.0% | 89.0% | 88.9% | 88.8% | 88.7% | 88.5% |
| 63 | 88.4% | 88.4% | 88.3% | 88.2% | 88.1% | 88.0% | 87.9% | 87.8% | 87.7% | 87.6% | 87.5% | 87.4% |
| 64 | 87.3% | 87.2% | 87.1% | 87.0% | 86.9% | 86.8% | 86.7% | 86.6% | 86.5% | 86.4% | 86.3% | 86.2% |
| 65 | 86.1% | 86.0% | 85.9% | 85.8% | 85.7% | 85.6% | 85.5% | 85.4% | 85.3% | 85.2% | 85.1% | 84.9% |
| 66 | 84.8% | 84.7% | 84.6% | 84.5% | 84.4% | 84.3% | 84.2% | 84.1% | 84.0% | 83.9% | 83.7% | 83.6% |
| 67 | 83.5% | 83.4% | 83.3% | 83.2% | 83.1% | 83.0% | 82.8% | 82.7% | 82.6% | 82.5% | 82.4% | 82.3% |
| 68 | 82.2% | 82.0% | 81.9% | 81.8% | 81.7% | 81.6% | 81.5% | 81.3% | 81.2% | 81.1% | 81.0% | 80.9% |
| 69 | 80.7% | 80.6% | 80.5% | 80.4% | 80.3% | 80.1% | 80.0% | 79.9% | 79.8% | 79.6% | 79.5% | 79.4% |

ADMIN REC-0327

# LTV STEEL HOURLY PENSION PLAN
## (AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

### EXHIBIT I-1 continued

### CONVERSION FACTORS FOR OPTIONAL
### FORMS OF PAYMENT FOR DCP ACCOUNT BENEFIT
### FOR RETIREMENTS EXCLUDING
### DEFERRED VESTED PENSIONS

#### 15-YEAR CERTAIN AND LIFE

| AGE | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 70 | 79.3% | 79.2% | 79.0% | 78.9% | 78.8% | 78.7% | 78.5% | 78.4% | 78.3% | 78.2% | 78.0% | 77.9% |
| 71 | 77.8% | 77.7% | 77.5% | 77.4% | 77.3% | 77.2% | 77.0% | 76.9% | 76.8% | 76.6% | 76.5% | 76.4% |
| 72 | 76.3% | 76.1% | 76.0% | 75.9% | 75.7% | 75.6% | 75.5% | 75.4% | 75.2% | 75.1% | 75.0% | 74.8% |
| 73 | 74.7% | 74.6% | 74.4% | 74.3% | 74.2% | 74.1% | 73.9% | 73.8% | 73.7% | 73.5% | 73.4% | 73.3% |
| 74 | 73.1% | 73.0% | 72.9% | 72.8% | 72.6% | 72.5% | 72.4% | 72.2% | 72.1% | 72.0% | 71.8% | 71.7% |
| 75 | 71.6% | 71.5% | 71.3% | 71.2% | 71.1% | 70.9% | 70.8% | 70.7% | 70.6% | 70.4% | 70.3% | 70.2% |
| 76 | 70.0% | 69.9% | 69.8% | 69.7% | 69.5% | 69.4% | 69.3% | 69.2% | 69.0% | 68.9% | 68.8% | 68.7% |
| 77 | 68.5% | 68.4% | 68.3% | 68.2% | 68.0% | 67.9% | 67.8% | 67.7% | 67.5% | 67.4% | 67.3% | 67.2% |
| 78 | 67.1% | 66.9% | 66.8% | 66.7% | 66.6% | 66.5% | 66.3% | 66.2% | 66.1% | 66.0% | 65.9% | 65.8% |
| 79 | 65.6% | 65.5% | 65.4% | 65.3% | 65.2% | 65.1% | 65.0% | 64.8% | 64.7% | 64.6% | 64.5% | 64.4% |
| 80 | 64.3% | | | | | | | | | | | |

ADMIN REC-0328

# LTV STEEL HOURLY PENSION PLAN
## (AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

## EXHIBIT I-2

### CONVERSION FACTORS FOR OPTIONAL
### FORMS OF PAYMENT FOR DCP ACCOUNT BENEFIT
### FOR DEFERRED VESTED PENSIONS

### 15-YEAR CERTAIN AND LIFE

| AGE | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 33 | 99.4% | 99.4% | 99.4% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% |
| 34 | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.2% |
| 35 | 99.3% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% |
| 36 | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% |
| 37 | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.0% | 99.0% |
| 38 | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% |
| 39 | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% |
| 40 | 98.9% | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% |
| 41 | 98.7% | 98.7% | 98.7% | 98.7% | 98.7% | 98.7% | 98.7% | 98.7% | 98.7% | 98.7% | 98.6% | 98.6% |
| 42 | 98.6% | 98.6% | 98.6% | 98.6% | 98.6% | 98.6% | 98.6% | 98.6% | 98.5% | 98.5% | 98.5% | 98.5% |
| 43 | 98.5% | 98.5% | 98.5% | 98.5% | 98.5% | 98.4% | 98.4% | 98.4% | 98.4% | 98.4% | 98.4% | 98.4% |
| 44 | 98.4% | 98.4% | 98.3% | 98.3% | 98.3% | 98.3% | 98.3% | 98.3% | 98.3% | 98.2% | 98.2% | 98.2% |
| 45 | 98.2% | 98.2% | 98.2% | 98.2% | 98.1% | 98.1% | 98.1% | 98.1% | 98.1% | 98.1% | 98.1% | 98.0% |
| 46 | 98.0% | 98.0% | 98.0% | 98.0% | 98.0% | 97.9% | 97.9% | 97.9% | 97.9% | 97.9% | 97.9% | 97.8% |
| 47 | 97.8% | 97.8% | 97.8% | 97.8% | 97.7% | 97.7% | 97.7% | 97.7% | 97.7% | 97.6% | 97.6% | 97.6% |
| 48 | 97.6% | 97.6% | 97.6% | 97.5% | 97.5% | 97.5% | 97.4% | 97.4% | 97.4% | 97.4% | 97.3% | 97.3% |
| 49 | 97.3% | 97.3% | 97.2% | 97.2% | 97.2% | 97.2% | 97.1% | 97.1% | 97.1% | 97.1% | 97.0% | 97.0% |
| 50 | 97.0% | 96.9% | 96.9% | 96.9% | 96.9% | 96.8% | 96.8% | 96.8% | 96.7% | 96.7% | 96.7% | 96.6% |
| 51 | 96.6% | 96.6% | 96.5% | 96.5% | 96.5% | 96.4% | 96.4% | 96.4% | 96.3% | 96.3% | 96.3% | 96.2% |
| 52 | 96.2% | 96.2% | 96.1% | 96.1% | 96.0% | 96.0% | 95.9% | 95.9% | 95.9% | 95.8% | 95.8% | 95.7% |
| 53 | 95.7% | 95.7% | 95.6% | 95.6% | 95.5% | 95.5% | 95.4% | 95.4% | 95.3% | 95.3% | 95.2% | 95.2% |
| 54 | 95.1% | 95.1% | 95.0% | 95.0% | 94.9% | 94.9% | 94.8% | 94.8% | 94.7% | 94.7% | 94.6% | 94.6% |
| 55 | 94.5% | 94.5% | 94.4% | 94.3% | 94.3% | 94.2% | 94.2% | 94.1% | 94.1% | 94.0% | 93.9% | 93.9% |
| 56 | 93.8% | 93.8% | 93.7% | 93.6% | 93.6% | 93.5% | 93.4% | 93.4% | 93.3% | 93.2% | 93.2% | 93.1% |
| 57 | 93.0% | 93.0% | 92.9% | 92.8% | 92.8% | 92.7% | 92.6% | 92.5% | 92.5% | 92.4% | 92.3% | 92.2% |
| 58 | 92.2% | 92.1% | 92.0% | 91.9% | 91.9% | 91.8% | 91.7% | 91.6% | 91.5% | 91.5% | 91.4% | 91.3% |
| 59 | 91.2% | 91.1% | 91.0% | 91.0% | 90.9% | 90.8% | 90.7% | 90.6% | 90.5% | 90.4% | 90.4% | 90.3% |
| 60 | 90.2% | 90.1% | 90.0% | 89.9% | 89.8% | 89.7% | 89.6% | 89.5% | 89.4% | 89.3% | 89.2% | 89.2% |
| 61 | 89.1% | 89.0% | 88.9% | 88.8% | 88.7% | 88.5% | 88.4% | 88.3% | 88.2% | 88.1% | 89.0% | 87.9% |
| 62 | 87.8% | 87.7% | 87.6% | 87.5% | 87.4% | 87.3% | 87.2% | 87.1% | 87.0% | 86.9% | 86.8% | 86.6% |
| 63 | 86.5% | 86.4% | 86.3% | 86.2% | 86.1% | 86.0% | 85.8% | 85.7% | 85.6% | 85.5% | 85.4% | 85.3% |
| 64 | 85.1% | 85.0% | 84.9% | 84.8% | 84.7% | 84.5% | 84.4% | 84.3% | 84.2% | 84.1% | 83.9% | 83.8% |
| 65 | 83.7% | 83.6% | 83.4% | 83.3% | 83.2% | 83.0% | 82.9% | 82.8% | 82.6% | 82.5% | 82.4% | 82.3% |
| 66 | 82.1% | 82.0% | 81.9% | 81.7% | 81.6% | 81.5% | 81.3% | 81.2% | 81.1% | 80.9% | 80.8% | 80.7% |
| 67 | 80.5% | 80.4% | 80.2% | 80.1% | 80.0% | 79.8% | 79.7% | 79.5% | 79.4% | 79.2% | 79.1% | 79.0% |
| 68 | 78.8% | 78.7% | 78.5% | 78.4% | 78.2% | 78.1% | 77.9% | 77.8% | 77.6% | 77.5% | 77.3% | 77.2% |
| 69 | 77.1% | 76.9% | 76.7% | 76.6% | 76.4% | 76.3% | 76.1% | 76.0% | 75.8% | 75.7% | 75.5% | 75.4% |

ADMIN REC-0329

# LTV STEEL HOURLY PENSION PLAN
## (AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

### EXHIBIT I-2 continued

### CONVERSION FACTORS FOR OPTIONAL
### FORMS OF PAYMENT FOR DCP ACCOUNT BENEFIT
### FOR DEFERRED VESTED PENSIONS

### 15-YEAR CERTAIN AND LIFE

| AGE | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 70 | 75.2% | 75.1% | 74.9% | 74.8% | 74.6% | 74.4% | 74.3% | 74.1% | 74.0% | 73.8% | 73.7% | 73.5% |
| 71 | 73.3% | 73.2% | 73.0% | 72.8% | 72.7% | 72.5% | 72.4% | 72.2% | 72.0% | 71.9% | 71.7% | 71.5% |
| 72 | 71.4% | 71.2% | 71.0% | 70.9% | 70.7% | 70.5% | 70.4% | 70.2% | 70.0% | 69.9% | 69.7% | 69.5% |
| 73 | 69.4% | 69.2% | 69.0% | 68.9% | 68.7% | 68.5% | 68.3% | 68.2% | 68.0% | 67.8% | 67.7% | 67.5% |
| 74 | 67.3% | 67.1% | 67.0% | 66.8% | 66.6% | 66.4% | 66.3% | 66.1% | 65.9% | 65.8% | 65.6% | 65.4% |
| 75 | 65.2% | 65.1% | 64.9% | 64.7% | 64.5% | 64.4% | 64.2% | 64.0% | 63.8% | 63.7% | 63.5% | 63.3% |
| 76 | 63.1% | 63.0% | 62.8% | 62.6% | 62.4% | 62.3% | 62.1% | 61.9% | 61.7% | 61.6% | 61.4% | 61.2% |
| 77 | 61.0% | 60.9% | 60.7% | 60.5% | 60.3% | 60.2% | 60.0% | 59.8% | 59.6% | 59.5% | 59.3% | 59.1% |
| 78 | 58.9% | 58.8% | 58.6% | 58.4% | 58.2% | 58.1% | 57.9% | 57.7% | 57.6% | 57.4% | 57.2% | 57.0% |
| 79 | 56.9% | 56.7% | 56.5% | 56.4% | 56.2% | 56.0% | 55.9% | 55.7% | 55.5% | 55.4% | 55.2% | 55.0% |
| 80 | 54.8% | | | | | | | | | | | |

ADMIN REC-0330

# LTV STEEL HOURLY PENSION PLAN
## (AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

### EXHIBIT J-1

### CONVERSION FACTORS FOR OPTIONAL
### FORMS OF PAYMENT FOR DCP ACCOUNT BENEFIT
### FOR RETIREMENTS EXCLUDING
### DEFERRED VESTED PENSIONS

### 10-YEAR CERTAIN AND LIFE

| AGE | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 33 | 99.8% | 99.8% | 99.8% | 99.8% | 99.8% | 99.8% | 99.8% | 99.8% | 99.8% | 99.8% | 99.8% | 99.8% |
| 34 | 99.8% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% |
| 35 | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% |
| 36 | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.6% | 99.6% |
| 37 | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.6% | 99.6% |
| 38 | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% |
| 39 | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.5% |
| 40 | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.5% |
| 41 | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% |
| 42 | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% |
| 43 | 99.5% | 99.5% | 99.5% | 99.5% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% |
| 44 | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% |
| 45 | 99.4% | 99.4% | 99.4% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% |
| 46 | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.2% | 99.2% | 99.2% |
| 47 | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% |
| 48 | 99.2% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.0% |
| 49 | 99.1% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% |
| 50 | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.8% | 98.8% | 98.8% |
| 51 | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% | 98.7% | 98.7% | 98.7% | 98.7% | 98.7% | 98.7% | 98.7% |
| 52 | 98.7% | 98.6% | 98.6% | 98.6% | 98.6% | 98.6% | 98.6% | 98.6% | 98.5% | 98.5% | 98.5% | 98.5% |
| 53 | 98.5% | 98.5% | 98.4% | 98.4% | 98.4% | 98.4% | 98.4% | 98.4% | 98.3% | 98.3% | 98.3% | 98.3% |
| 54 | 98.3% | 98.3% | 98.2% | 98.2% | 98.2% | 98.2% | 98.2% | 98.1% | 98.1% | 98.1% | 98.1% | 98.1% |
| 55 | 98.0% | 98.0% | 98.0% | 98.0% | 97.9% | 97.9% | 97.9% | 97.9% | 97.9% | 97.8% | 97.8% | 97.8% |
| 56 | 97.8% | 97.7% | 97.7% | 97.7% | 97.7% | 97.6% | 97.6% | 97.6% | 97.6% | 97.5% | 97.5% | 97.5% |
| 57 | 97.5% | 97.4% | 97.4% | 97.4% | 97.3% | 97.3% | 97.3% | 97.3% | 97.2% | 97.2% | 97.2% | 97.1% |
| 58 | 97.1% | 97.1% | 97.0% | 97.0% | 97.0% | 96.9% | 96.9% | 96.9% | 96.8% | 96.8% | 96.4% | 96.3% |
| 59 | 96.7% | 96.7% | 96.6% | 96.6% | 96.6% | 96.5% | 96.5% | 96.5% | 96.4% | 96.4% | 96.4% | 96.3% |
| 60 | 96.3% | 96.2% | 96.2% | 96.2% | 96.1% | 96.1% | 96.0% | 96.0% | 96.0% | 95.9% | 95.9% | 95.8% |
| 61 | 95.8% | 95.8% | 95.7% | 95.7% | 95.6% | 95.6% | 95.5% | 95.5% | 95.4% | 95.4% | 95.4% | 95.3% |
| 62 | 95.3% | 95.2% | 95.2% | 95.1% | 95.1% | 95.0% | 95.0% | 94.9% | 94.9% | 94.8% | 94.8% | 94.7% |
| 63 | 94.7% | 94.7% | 94.6% | 94.6% | 94.5% | 94.4% | 94.4% | 94.3% | 94.3% | 94.2% | 94.2% | 94.1% |
| 64 | 94.1% | 94.0% | 94.0% | 93.9% | 93.9% | 93.8% | 93.7% | 93.7% | 93.6% | 93.6% | 93.5% | 93.5% |
| 65 | 93.4% | 93.3% | 93.3% | 93.2% | 93.2% | 93.1% | 93.1% | 93.0% | 92.9% | 92.9% | 92.8% | 92.8% |
| 66 | 92.7% | 92.6% | 92.6% | 92.5% | 92.4% | 92.4% | 92.3% | 92.3% | 92.2% | 92.1% | 92.1% | 92.0% |
| 67 | 91.9% | 91.9% | 91.8% | 91.7% | 91.7% | 91.6% | 91.5% | 91.5% | 91.4% | 91.3% | 91.3% | 91.2% |
| 68 | 91.1% | 91.0% | 91.0% | 90.9% | 90.8% | 90.8% | 90.7% | 90.6% | 90.5% | 90.5% | 90.4% | 90.4% |
| 69 | 90.2% | 90.2% | 90.1% | 90.0% | 89.9% | 89.9% | 89.8% | 89.7% | 89.6% | 89.6% | 89.5% | 89.4% |

ADMIN REC-0331

# LTV STEEL HOURLY PENSION PLAN
## (AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

### EXHIBIT J-1 continued

#### CONVERSION FACTORS FOR OPTIONAL
#### FORMS OF PAYMENT FOR DCP ACCOUNT BENEFIT
#### FOR RETIREMENTS EXCLUDING
#### DEFERRED VESTED PENSIONS

#### 10-YEAR CERTAIN AND LIFE

| AGE | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 70 | 89.3% | 89.2% | 89.2% | 89.1% | 89.0% | 88.9% | 88.8% | 88.7% | 88.7% | 88.6% | 88.5% | 88.4% |
| 71 | 88.3% | 88.3% | 88.2% | 88.1% | 88.0% | 87.9% | 87.8% | 87.7% | 87.6% | 87.6% | 87.5% | 87.4% |
| 72 | 87.3% | 87.2% | 87.1% | 87.0% | 86.9% | 86.8% | 86.8% | 86.7% | 86.6% | 86.5% | 86.4% | 86.3% |
| 73 | 86.2% | 86.1% | 86.0% | 85.9% | 85.8% | 85.7% | 85.6% | 85.5% | 85.4% | 85.3% | 85.2% | 85.2% |
| 74 | 85.1% | 85.0% | 84.9% | 84.8% | 84.7% | 84.6% | 84.5% | 84.4% | 84.3% | 84.2% | 84.1% | 84.0% |
| 75 | 83.9% | 83.8% | 83.7% | 83.6% | 83.5% | 83.4% | 83.3% | 83.2% | 83.1% | 83.0% | 82.9% | 82.8% |
| 76 | 82.7% | 82.6% | 82.5% | 82.4% | 82.3% | 82.2% | 82.1% | 82.0% | 81.9% | 81.8% | 81.7% | 81.6% |
| 77 | 81.5% | 81.4% | 81.3% | 81.1% | 81.0% | 80.9% | 80.8% | 80.7% | 80.6% | 80.5% | 80.4% | 80.3% |
| 78 | 80.2% | 80.1% | 80.0% | 79.9% | 79.8% | 79.7% | 79.6% | 79.5% | 79.4% | 79.3% | 79.2% | 79.1% |
| 79 | 79.0% | 78.9% | 78.8% | 78.7% | 78.6% | 78.5% | 78.4% | 78.3% | 78.2% | 78.1% | 78.0% | 77.9% |
| 80 | 77.8% | | | | | | | | | | | |

# LTV STEEL HOURLY PENSION PLAN
## (AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

### EXHIBIT J-2

#### CONVERSION FACTORS FOR OPTIONAL
#### FORMS OF PAYMENT FOR DCP ACCOUNT BENEFIT
#### FOR DEFERRED VESTED PENSIONS

#### 10-YEAR CERTAIN AND LIFE

| AGE | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 33 | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.7% | 99.6% |
| 34 | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% |
| 35 | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% |
| 36 | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.6% | 99.5% | 99.6% |
| 37 | 99.6% | 99.6% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% |
| 38 | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% | 99.5% |
| 39 | 99.5% | 99.5% | 99.5% | 99.5% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% |
| 40 | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% |
| 41 | 99.4% | 99.4% | 99.4% | 99.4% | 99.4% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% |
| 42 | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% | 99.3% |
| 43 | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% |
| 44 | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.2% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% |
| 45 | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.1% | 99.0% | 99.0% | 99.0% |
| 46 | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 99.0% | 98.9% |
| 47 | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.9% | 98.7% | 98.8% |
| 48 | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% | 98.8% | 98.7% | 98.7% | 98.7% | 98.7% |
| 49 | 98.7% | 98.7% | 98.7% | 98.7% | 98.7% | 98.6% | 98.6% | 98.6% | 98.6% | 98.6% | 98.6% | 98.6% |
| 50 | 98.6% | 98.5% | 98.5% | 98.5% | 98.5% | 98.5% | 98.5% | 98.5% | 98.4% | 98.4% | 98.4% | 98.4% |
| 51 | 98.4% | 98.4% | 98.3% | 98.3% | 98.3% | 98.3% | 98.3% | 98.3% | 98.2% | 98.2% | 98.2% | 98.2% |
| 52 | 98.2% | 98.2% | 98.1% | 98.1% | 98.1% | 98.1% | 98.1% | 98.0% | 98.0% | 98.0% | 98.0% | 97.9% |
| 53 | 97.9% | 97.9% | 97.9% | 97.9% | 97.8% | 97.8% | 97.8% | 97.8% | 97.7% | 97.7% | 97.7% | 97.7% |
| 54 | 97.7% | 97.6% | 97.6% | 97.6% | 97.5% | 97.5% | 97.5% | 97.5% | 97.4% | 97.4% | 97.4% | 97.4% |
| 55 | 97.3% | 97.3% | 97.3% | 97.2% | 97.2% | 97.2% | 97.1% | 97.1% | 97.1% | 97.1% | 97.0% | 97.0% |
| 56 | 97.0% | 96.9% | 96.9% | 96.9% | 96.8% | 96.8% | 96.8% | 96.7% | 96.7% | 96.6% | 96.6% | 96.6% |
| 57 | 96.5% | 96.5% | 96.5% | 96.4% | 96.4% | 96.3% | 96.3% | 96.3% | 96.2% | 96.2% | 96.1% | 96.1% |
| 58 | 96.1% | 96.0% | 96.0% | 95.9% | 95.9% | 95.8% | 95.8% | 95.7% | 95.7% | 95.6% | 95.6% | 95.5% |
| 59 | 95.5% | 95.5% | 95.4% | 95.4% | 95.3% | 95.3% | 95.2% | 95.2% | 95.1% | 95.1% | 95.0% | 95.0% |
| 60 | 94.9% | 94.9% | 94.8% | 94.7% | 94.7% | 94.6% | 94.6% | 94.5% | 94.5% | 94.4% | 94.3% | 94.3% |
| 61 | 94.2% | 94.2% | 94.1% | 94.0% | 94.0% | 93.9% | 93.9% | 93.8% | 93.7% | 93.7% | 93.6% | 93.5% |
| 62 | 93.5% | 93.4% | 93.3% | 93.3% | 93.2% | 93.1% | 93.1% | 93.0% | 92.9% | 92.9% | 92.8% | 92.7% |
| 63 | 92.7% | 92.6% | 92.5% | 92.4% | 92.4% | 92.3% | 92.2% | 92.1% | 92.1% | 92.0% | 91.9% | 91.8% |
| 64 | 91.8% | 91.7% | 91.6% | 91.5% | 91.4% | 91.4% | 91.3% | 91.2% | 91.1% | 91.0% | 91.0% | 90.9% |
| 65 | 90.8% | 90.7% | 90.6% | 90.5% | 90.5% | 90.4% | 90.3% | 90.2% | 90.1% | 90.0% | 89.9% | 89.8% |
| 66 | 89.7% | 89.6% | 89.6% | 89.5% | 89.4% | 89.3% | 89.2% | 89.1% | 89.0% | 88.9% | 88.8% | 88.7% |
| 67 | 88.6% | 88.5% | 88.4% | 88.3% | 88.2% | 88.1% | 88.0% | 87.9% | 87.8% | 87.7% | 87.6% | 87.5% |
| 68 | 87.4% | 87.3% | 87.2% | 87.1% | 87.0% | 86.9% | 86.8% | 86.7% | 86.6% | 86.4% | 86.3% | 86.2% |
| 69 | 86.1% | 86.0% | 85.9% | 85.8% | 85.7% | 85.6% | 85.4% | 85.3% | 85.2% | 85.1% | 85.0% | 84.9% |

ADMIN REC-0333

# LTV STEEL HOURLY PENSION PLAN
## (AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

### EXHIBIT J-2 continued

#### CONVERSION FACTORS FOR OPTIONAL
#### FORMS OF PAYMENT FOR DCP ACCOUNT BENEFIT
#### FOR DEFERRED VESTED PENSIONS

### 10-YEAR CERTAIN AND LIFE

| AGE | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|-----|------|------|------|------|------|------|------|------|------|------|------|------|
| 70 | 84.8% | 84.6% | 84.5% | 84.4% | 84.3% | 84.1% | 84.0% | 83.9% | 83.8% | 83.7% | 83.5% | 83.4% |
| 71 | 83.3% | 83.1% | 83.0% | 82.9% | 82.8% | 82.6% | 82.5% | 82.4% | 82.2% | 82.1% | 82.0% | 81.8% |
| 72 | 81.7% | 81.6% | 81.4% | 81.3% | 81.2% | 81.0% | 80.9% | 80.7% | 80.6% | 80.5% | 80.3% | 80.2% |
| 73 | 80.0% | 79.9% | 79.8% | 79.6% | 79.5% | 79.3% | 79.2% | 79.0% | 78.9% | 78.7% | 78.6% | 78.4% |
| 74 | 78.3% | 78.1% | 78.0% | 77.8% | 77.7% | 77.5% | 77.4% | 77.2% | 77.1% | 76.9% | 76.7% | 76.6% |
| 75 | 76.4% | 76.3% | 76.1% | 76.0% | 75.8% | 75.6% | 75.5% | 75.3% | 75.2% | 75.0% | 74.8% | 74.7% |
| 76 | 74.5% | 74.4% | 74.2% | 74.0% | 73.9% | 73.7% | 73.5% | 73.4% | 73.2% | 73.0% | 72.9% | 72.7% |
| 77 | 72.5% | 72.4% | 72.2% | 72.0% | 71.9% | 71.7% | 71.5% | 71.4% | 71.2% | 71.0% | 70.8% | 70.7% |
| 78 | 70.5% | 70.3% | 70.2% | 70.0% | 69.8% | 69.7% | 69.5% | 69.3% | 69.1% | 69.0% | 68.8% | 68.6% |
| 79 | 68.4% | 68.3% | 68.1% | 67.9% | 67.8% | 67.6% | 67.4% | 67.2% | 67.1% | 66.9% | 66.7% | 66.5% |
| 80 | 66.4% | | | | | | | | | | | |

ADMIN REC-0334

LTV STEEL HOURLY PENSION PLAN
(AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

EXHIBIT K
CUYAHOGA VALLEY RAILWAY COMPANY PARTICIPANTS

Any Covered Employee who is covered by a collective bargaining agreement between the Cuyahoga Valley Railway Company and a Union shall become a Participant in the Plan as of the first date on which such Covered Employee is both a Covered Employee and covered by such collective bargaining agreement; provided, however, that any Covered Employee who becomes a Participant in accordance with this sentence shall be considered a Participant in the Plan for purposes of the benefits payable under this Exhibit K only. Any such Covered Employee shall be referred to herein as a "Cuyahoga Valley Participant." A Cuyahoga Valley Participant shall be eligible only for the benefits payable under this Exhibit K and not otherwise for any benefits payable under the Plan. This Exhibit K shall be effective December 1, 1999.

I.     Monthly Contributions

For each month beginning on or after December 1, 1999, for which a Cuyahoga Valley Participant would receive credit for Continuous Service for benefit accrual purposes under the Plan if such Cuyahoga Valley Participant were accruing a benefit under the defined benefit portion of the Plan, the Cuyahoga Valley Railway Company shall contribute to such Cuyahoga Valley Participant's DCP Account an amount equal to 40 times the Hourly Amount (as determined from the following table) for such Cuyahoga Valley Participant's age as of January 1 times the number of weeks in the payroll periods paid during the month.

| Age on January 1 | Hourly Amount if hired prior to 1/1/1981 | Hourly Amount if hired on or after 1/1/1981 |
|---|---|---|
| Under 30 | .245 | .163 |
| 30-34 | .339 | .233 |
| 35-39 | .444 | .304 |
| 40-44 | .572 | .385 |
| 45-49 | .724 | .490 |
| 50-54 | .911 | .619 |
| 55-50 | 1.121 | .759 |
| 60 and over | 1.331 | .911 |

II.     Coordination with Paragraph 3.24 of the Plan

All the provisions of Paragraph 3.24 of the Plan shall apply to a Cuyahoga Valley Participant as though references to "Participant" in such Paragraph are to "Cuyahoga Valley Participant"; provided, however, that Paragraphs 3.24(c)(2), (c)(3), (c)(4), (c)(5), (c)(6) and (c)(7), as well as Paragraph 3.24(d), shall not apply. Notwithstanding the foregoing, references to Bookkeeping Accounts in Paragraph 3.24 shall not apply to Cuyahoga Valley Participants.

ADMIN REC-0335

III.    Commencement of Distribution

Subject to Paragraphs 3.15(i) and 3.15(j), distribution of a Cuyahoga Valley Participant's vested DCP Account shall normally be made as soon as practicable following the latest of (a) the date such Participant quits, retires or is discharged from the employ of an Employing Company, (b) the Participant's death, and (c) the expiration of a 12-month period after the Participant remains absent from active employment with an Employing Company for any reason other than those specified in (a) or (b) above; provided that no Participant shall be considered eligible for a distribution under this Paragraph solely because he has transferred from the employ of one Controlled Group Member to the employ of another Controlled Group Member. Notwithstanding the foregoing, if the value of a Participant's vested DCP Account exceeds $3,500, immediate distribution (within the meaning of Section 411(a)(11) of the Code) of any portion of such Participant's vested DCP Account cannot occur unless the Participant and, if the Participant is married at the time of commencement of the distribution of benefits, the Participant's spouse (or, if the Participant has died, the surviving spouse) consent in writing prior to the commencement of the distribution. The failure of a Participant (and, if applicable, the Participant's spouse) to consent to a distribution will be deemed to be an election to defer the commencement of the payment of benefits under the Participant's Normal Retirement Date; provided that a Participant (and, if applicable, the Participant's spouse) may consent to an earlier distribution of all of the Participant's vested DCP Account at any time and may subsequently revoke such consent prior to the time any such distribution is made. All distributions made hereunder shall be valued as of the Valuation Date immediately preceding the date designated for commencement of the distribution on the Participant's or Beneficiary's application.

IV.    Form of Distribution

(a)    The normal form of distribution of benefits under the Plan to a Cuyahoga Valley Participant who has not died prior to the commencement of benefits shall, in the case of a married Cuyahoga Valley Participant, be a "qualified joint and survivor annuity," and shall, in the case of an unmarried Cuyahoga Valley Participant, be a single life annuity. The qualified joint and survivor annuity shall consist of an annuity for the life of the Cuyahoga Valley Participant, with a survivor annuity for the life of the Cuyahoga Valley Participant's spouse which is equal to 50% of the amount of the annuity which is payable during the joint lives of the Cuyahoga Valley Participant and the spouse, and which is the actuarial equivalent of a single life annuity for the life of the Cuyahoga Valley Participant.

(b)    A death benefit shall normally be paid in the form of a "qualified preretirement survivor annuity" to the surviving spouse of a Cuyahoga Valley Participant in the Plan who dies prior to the commencement of benefits. The qualified preretirement survivor annuity shall consist of an annuity for the life of the surviving spouse, the actuarial equivalent of which is equal to the Cuyahoga Valley Participant's vested DCP Account as of the date of death. If a Cuyahoga Valley Participant's Beneficiary is a person other than the Cuyahoga Valley Participant's spouse, a death benefit shall be paid to such Beneficiary in the form of a single lump-sum cash payment which is equal to such Cuyahoga Valley

ADMIN REC-0336

Participant's vested DCP Account.

(c)    Notwithstanding the normal form of payment of benefits as a qualified joint and survivor annuity, and the distribution of death benefits as a qualified preretirement survivor annuity to the Cuyahoga Valley Participant's surviving spouse, the Plan Administrator shall direct the immediate distribution of such Cuyahoga Valley Participant's vested DCP Account in a single lump-sum cash payment if such vested DCP Account does not exceed $3,500; provided such distribution shall not be made after the commencement of benefit payments unless the Cuyahoga Valley Participant and his spouse (or the surviving spouse, if the Cuyahoga Valley Participant has died) consent in writing to such distribution.

(d)    A Cuyahoga Valley Participant may, during the Applicable Election Period, elect to waive the qualified joint and survivor annuity form of benefit and elect payment in one of the forms described in (f) below, and may revoke any such election. Such election shall not take effect unless (1) the spouse of the Participant consents in writing to such election, (2) such election designates a Beneficiary or designates a form of benefit which may not be changed without spousal consent (or the consent of the spouse expressly permits designation by the Participant without any requirement of further consent by the spouse), and (3) the spouse's consent acknowledges the effect of such election and is witnessed by a notary public; or (4) it is established to the satisfaction of a Plan representative that such consent may not be obtained because there is no spouse, because the spouse cannot be located, or because of such other circumstances as are prescribed by regulations of the Secretary of the Treasury. Any consent by a spouse (or establishment that the consent of a spouse may not be obtained) shall be effective only with respect to such spouse. The term "Applicable Election Period" as used herein shall mean the 90-day period ending on the date benefit payments would commence.

(e)    The Plan Administrator shall provide to each Cuyahoga Valley Participant a written explanation of the following:

    (1)    The terms and conditions of the qualified joint and survivor annuity;

    (2)    The Cuyahoga Valley Participant's right to make, and the effect of, an election to waive the qualified joint and survivor annuity form of benefit;

    (3)    The right of the Cuyahoga Valley Participant's spouse to consent to any election to waive the qualified joint and survivor annuity form of benefit;

    (4)    The Cuyahoga Valley Participant's right to make, and the effect of, a revocation of such election; and

    (5)    A general description of the eligibility features and relative values of the optional forms of benefit described in (f) below.

ADMIN REC-0337

The aforesaid written explanation shall be provided to each Participant not more than 90 nor less than seven days before the payment of benefits is to begin.

(f)    In the event of an effective waiver of the qualified joint and survivor annuity form of payment in accordance with the terms of (d) above, and in the case of an unmarried Cuyahoga Valley Participant or a surviving spouse of a Cuyahoga Valley Participant, the amount payable to the Cuyahoga Valley Participant (or his surviving spouse), shall be paid in one or more of the following methods as selected by the Cuyahoga Valley Participant (or surviving spouse):

(1)    A single life annuity with or without cash refund;

(2)    A single lump-sum cash payment of the balance of the Cuyahoga Valley Participant's vested DCP Account, but limited to the greater of (i) $10,000 or (ii) 10% of the balance credited thereto subject to the consent of the Cuyahoga Valley Participant's spouse; provided, however, that if after giving effect to such single sum cash payment such vested DCP Account would be less than $3,500, then the Cuyahoga Valley Participant (or surviving spouse) may elect that the remaining balance be distributed in a single lump-sum cash payment.

(3)    An annuity for the life of the Cuyahoga Valley Participant with a survivor annuity for the life of his spouse which is equal to 100% of the amount of the annuity which is payable during the joint lives of the Cuyahoga Valley Participant and his spouse.

(4)    Payments for 10 years, and if the Cuyahoga Valley Participant is then still living, thereafter during his remaining lifetime. If the Cuyahoga Valley Participant dies during the initial 10-year period, payments shall continue to his Beneficiary for the remainder of such 10-year period.

(5)    Payments for 15 years, and if the Cuyahoga Valley Participant is then still living, thereafter during his remaining lifetime. If the Cuyahoga Valley Participant dies during the initial 15-year period, payments shall continue to his Beneficiary for the remainder of such 15-year period.

(6)    Payments for five years, and if the Cuyahoga Valley Participant is then still living, thereafter during his remaining lifetime. If the Cuyahoga Valley Participant dies during the initial five-year period, payments shall continue to his Beneficiary for the remainder of such five-year period.

(7)    Notwithstanding the foregoing, if the value of the Cuyahoga Valley Participant's vested DCP Account does not exceed $3,500, the Plan Administrator shall direct the immediate distribution of such vested DCP Account in a single lump-sum cash payment to the Cuyahoga Valley

ADMIN REC-0338

Participant or, if applicable, his Beneficiary.

(8)  (i)  Notwithstanding the foregoing, to the extent that a distribution pursuant to this Article is an Eligible Rollover Distribution (as defined in Section 401(a)(31) or 402(c)(4) of the Code), the Cuyahoga Valley Participant, Beneficiary (provided such Beneficiary is a spouse) or, if applicable, alternate payee (as defined in Section 414(p) of the Code) who will receive such Eligible Rollover Distribution may elect a direct rollover of that Distribution into an "eligible retirement plan" (as defined in Section 401(a)(31)(D) of the Code). A direct rollover is a payment made by the Plan to an eligible retirement plan specified by the Cuyahoga Valley Participant, spouse or alternate payee pursuant to Section 401(a)(31) of the Code and the regulations thereunder.

(ii)  The Plan Administrator shall provide a Cuyahoga Valley Participant, spouse or alternate payee who will receive an Eligible Rollover Distribution with a written notice describing his rights under this Paragraph, such other information required to be provided under Section 402(f) of the Code, and, if applicable, the right to defer receipt of such Distribution no less than 30 days nor more than 90 days before the date scheduled for payment of such Distribution. Notwithstanding the foregoing, such Distribution may commence less than 30 days after such written notice is provided to the Cuyahoga Valley Participant, spouse or alternate payee provided that (A) the recipient is clearly informed by the Plan Administrator of his right to a period of at least 30 days after receiving the written notice to consider a particular form of benefit and (B) after receiving the written notice, the recipient affirmatively elects the Distribution. Nothing contained in this Subparagraph shall be construed to accelerate the timing of a distribution otherwise provided in the Plan.

V.  Annuity Value

The annuity value of any distribution hereunder shall be determined using an annual interest rate of 8.5% and the 1984 George B. Buck Mortality Table set forward two years, 95% male and 5% female.



ADMIN REC-0339

LTV STEEL HOURLY PENSION PLAN
(AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

## EXHIBIT L
### RIVER TERMINAL EMPLOYEE DCP ACCOUNT CONTRIBUTIONS

Any River Terminal Employee who is not already a Participant in the Plan shall become a Participant in the Plan as of the first date on which such individual becomes a River Terminal Employee; provided, however, that any Covered Employee who becomes a Participant in accordance with this sentence shall be considered a Participant in the Plan for purposes of the benefits payable under this Exhibit L only. Any such River Terminal Employee who becomes a Participant only under this Exhibit L shall be eligible only for the benefits payable under this Exhibit L and not otherwise for any benefits payable under the Plan.

For each month for which a River Terminal Employee receives credit for Continuous Service earned on or after December 1, 1999 under the Plan (or would receive credit if such River Terminal Employee were accruing benefits under the Plan other than benefits provided under this Exhibit L and Paragraph 3.24), the Employing Company shall make a monthly contribution in an amount equal to 40 times the Hourly Amount (as determined from the following table) for the Employee's age as of January 1 times the weeks in the payroll periods paid in the month.

| Age on January 1 | Hired On or After 1/1/78 Hourly Amount | Hired Prior to 1/1/78 Hourly Amount |
|---|---|---|
| Under 30 | .163 | .245 |
| 30-34 | .233 | .339 |
| 35-39 | .304 | .444 |
| 40-44 | .385 | .572 |
| 45-49 | .490 | .724 |
| 50-54 | .619 | .911 |
| 55-59 | .759 | 1.121 |
| 60 and Over | .911 | 1.331 |

ADMIN REC-0340

### LTV STEEL HOURLY PENSION PLAN
### (AMENDED AND RESTATED EFFECTIVE NOVEMBER 1, 1999)

### EXHIBIT M
### TIN BUSINESS PARTICIPANTS

For purposes of this Exhibit M and the Plan, a "Tin Business Participant" shall mean any Participant who was employed on February 28, 2001 (1) at the Indiana Harbor Works in connection with the LTV tin business or (2) at the Aliquippa Works in connection with the LTV tin business, whether actively working or absent from work due to layoff, disability, sickness or accident (whether or not due to occupational injury or disease), and who became employed by USX Corporation (for purposes of this Exhibit M, "USX") in connection with the sale of the LTV tin business pursuant to the Asset Purchase and Sale Agreement dated as of October 5, 2000, between USX Corporation and LTV Steel Company, Inc. An "Aliquippa Tin Business Participant" shall mean a Tin Business Participant employed at the Aliquippa Works, and an "Indiana Harbor Tin Business Participant" shall mean a Tin Business Participant employed at the Indiana Harbor Works.

Effective on and after February 28, 2001, a Tin Business Participant shall be credited with Continuous Service under Article V for eligibility for a benefit under Paragraphs 2.1, 2.2, 2.3, 2.4, 2.8, 3.18, 3.24 and 4.1 of the Plan, but not for purposes of determining the amount of any benefit under the Plan, as long as such Tin Business Participant remains employed with USX; provided that any Continuous Service credited pursuant to the foregoing shall not be taken into account in determining such Tin Business Participant's eligibility under the Plan until such Tin Business Participant terminates employment with USX at which time such Tin Business Participant shall incur a break in Continuous Service for purposes of the Plan and shall cease to be credited under this Exhibit M with any further Continuous Service under the Plan. Notwithstanding anything to the contrary in this Exhibit M, effective on and after February 28, 2001, no Tin Business Participant shall be eligible for 70/80 Retirement benefits under Paragraph 2.6 or Rule-of-65 Retirement benefits under Paragraph 2.7, nor shall any Tin Business Participant be eligible for Permanent Incapacity Retirement benefits under Paragraph 2.5; provided, however, that any Aliquippa Tin Business Participant who is disabled as of February 28, 2001, and who does not return to work prior to retirement, shall be eligible for Permanent Incapacity Retirement under Paragraph 2.5 without regard to this sentence. Notwithstanding anything to the contrary in this Exhibit M, any disabled Aliquippa Tin Business Participant covered under the foregoing shall be credited with Continuous Service for purposes of benefit accrual under the Plan from February 28, 2001 until the date of such Aliquippa Tin Business Participant's retirement under the Plan.

A Tin Business Participant's benefit under the Plan shall be determined based on Earnings paid through February 28, 2001, on the benefit level in effect under the Plan on February 28, 2001, and on such Tin Business Participant's Continuous Service as determined in accordance with this Exhibit M; provided, however, that any Tin Business Participant's benefit under the Plan shall take into account, without regard to whether he was eligible to retire under the Plan as of February 28, 2001, the dollar multiplier benefit increases ($56.25 and $75.00) under Paragraph 3.4(a)(2)(iii). A surviving spouse's benefits under Paragraph 4.2 shall be determined based on the benefit schedule in effect under such Paragraph on February 28, 2001.

ADMIN REC-0341

Notwithstanding anything to the contrary in the foregoing, effective after February 28, 2001, with respect to surviving spouse benefits under Paragraph 4.2, Lifetime Minimum Benefits under Paragraph 3.4(b), Transition Benefits under Paragraph 3.7(b) and the Special Payment under Paragraph 3.2, the amount payable under the Plan to or on behalf of a Tin Business Participant shall be pro-rated based on the ratio of such Tin Business Participant's Continuous Service credited through February 28, 2001 to such Tin Business Participant's combined Continuous Service, including Continuous Service credited in accordance with this Exhibit M as a result of employment with USX. The pro rata amount payable under the Plan shall be determined based on the benefit schedule in effect under the Plan on February 28, 2001, and, for purposes of determining the Special Payment amount under Paragraph 3.2, based on a Tin Business Participant's vacation eligibility and vacation pay as of February 28, 2001. With respect to the Special Payment and Transition Benefit for Aliquippa Tin Business Participants, the Plan shall be responsible for the pro rata payments to all Aliquippa Tin Business Participants who are immediately eligible for either such benefit as of February 28, 2001, except those who are eligible solely as a result of eligibility for 70/80 Retirement or Rule-of-65 Retirement benefits. With respect to the Special Payment and Transition Benefit for Indiana Harbor Tin Business Participants, the Plan shall be responsible for the pro rata payments to all Indiana Harbor Tin Business Participants who are immediately eligible for either such benefit on the date of any such Indiana Harbor Tin Business Participant's retirement except for an Indiana Harbor Tin Business Participant who is eligible solely as a result of eligibility for 70/80 Retirement or Rule-of-65 Retirement benefits.

ADMIN REC-0342

## AGREEMENT FOR TERMINATION OF PENSION PLAN, APPOINTMENT OF TRUSTEE, AND ESTABLISHMENT OF PLAN TERMINATION DATE

THIS AGREEMENT, dated and effective as of March 31, 2002, is made by and between the Pension Benefit Guaranty Corporation ("PBGC"), a United States government agency and corporation, and The LTV Corporation ("LTV"), a Delaware corporation.

### RECITALS

1.  PBGC administers the federal pension insurance program set forth in Title IV of the Employee Retirement Income Security Act of 1974, *as amended* ("ERISA"), 29 U.S.C. §§ 1301-1461 (1994 & Supp. V 1999).

2.  Effective March 1, 1950, Republic Steel Corporation, now known as LTV Steel Company, Inc. ("LTV Steel"), established the Pension Plan of Republic Steel Corporation, subsequently known as the LTV Steel (Republic) Hourly Pension Plan, and now known as the LTV Steel Hourly Pension Plan (the "Plan"), to provide benefits for certain of its employees.

3.  On July 17, 1986, LTV and substantially all of its active subsidiaries filed separate petitions for reorganization under Chapter 11 of the Bankruptcy Code.

4.  On January 12, 1987, the PBGC instituted proceedings to terminate the Plan pursuant to section 4042 of ERISA. Effective January 13, 1987, the Plan was terminated by order of the United States District Court for the Southern District of New York.

5.  On September 22, 1987, the PBGC exercised its statutory authority under section 4047 of ERISA to restore the Plan to its pretermination status. Such restoration was upheld by the United States Supreme Court on June 18, 1990.

6.  Effective October 31, 1999, the LTV Steel (J&L) Hourly Pension Plan, the 1992 LTV Steel (Republic) Hourly Pension Plan, and the 1992 LTV Steel (J&L) Hourly Pension Plan were merged into the Plan. In December 1999, LTV Steel executed a document captioned "Declaration of Merger" which provided for the merger of the employer contribution portion of the LTV Steel-USWA Pension Plan, an individual account plan, with the Plan.

7.  PBGC has determined that the Plan is an employee pension benefit plan to which 29 U.S.C. § 1321(a) applies, and that, except to the extent it may be treated as an individual account plan, the Plan is not exempt under 29 U.S.C. § 1321(b) and is thus subject to Title IV of ERISA.

8.  LTV is the administrator of the Plan within the meaning of 29 U.S.C. §§ 1002(16) and 1301(a)(1).

9.  On December 29, 2000, the primary contributing sponsor of the Plan, LTV Steel, and 48 of its affiliates filed petitions for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Ohio. On December 7, 2001, the Bankruptcy Court approved LTV Steel's "asset protection plan" under which LTV's steel manufacturing, processing, and finishing operations would be shut down and liquidated.

10. On February 28, 2002, the Bankruptcy Court approved the sale of most of LTV's assets relating to its steelmaking business. The sale is expected to close in April 2002. Under the terms of the asset purchase agreement, the purchaser will not assume sponsorship of the Plan.

11. PBGC has issued to LTV a notice of its determination, pursuant to 29 U.S.C. § 1342(a)(2), that the Plan will be unable to pay benefits when due, and its determination, pursuant to 29 U.S.C. § 1342(c), that the Plan must be terminated to protect the interests of Plan participants.

## STATEMENT OF AGREEMENT

NOW, THEREFORE, PBGC and LTV agree that, except to the extent PBGC has determined that the Plan may be treated as an individual account plan:

1.  The Plan is hereby terminated pursuant to 29 U.S.C. § 1342(c).

2.  The Plan's termination date is hereby established, pursuant to 29 U.S.C. § 1348, as March 31, 2002.

3.  PBGC is hereby appointed trustee of the Plan, and will assume trusteeship of the Plan on March 31, 2002 ("Date of Trusteeship").

2

ADMIN REC-0344

4.    LTV and any other person having possession, custody, or control of any records, assets, or other property of the Plan shall transfer, convey, and deliver to PBGC such records, assets, or property.

5.    As of the Date of Trusteeship, PBGC will have, with respect to the Plan, all of the rights and powers of a trustee specified in ERISA or the Plan, or otherwise granted by law.

3

**ADMIN REC-0345**

IN WITNESS WHEREOF, the parties have caused this document to be executed by their duly authorized representatives.

Pension Benefit Guaranty Corporation

By: _____

Mary Averill, Auditor, TPD-7

The LTV Corporation

By: _____

Frank E. Filipovitz

Vice President for Human Resources

4

ADMIN REC-0346