## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEROY MONTGOMERY, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 07-2234(EGS) |
| ) | |
| v. ) | |
| ) | |
| PENSION BENEFIT GUARANTY ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION

Plaintiff Leroy Montgomery seeks judicial review of a
February 4, 2005 determination by the Pension Benefit Guaranty
Corporation ("PBGC" or "agency") that he is not entitled to
benefits under the LTV Steel Hourly Pension Plan ("Plan"), the
successor to the Pension Plan for Hourly Employees of Youngstown
Sheet and Tube Company and Affiliates ("YS&T Plan").  Although
plaintiff acknowledges that he did not work sufficient calendar
years to qualify for benefits under the YS&T Plan, he claims that
he is entitled to benefits based on the number of hours he
actually worked during that time.  Pending before the Court is
the PBGC's Motion for Summary Judgment.  Upon consideration of
the motion, response and reply thereto, the applicable law, the
entire administrative record, and for the reasons stated herein,
the Court **GRANTS** the PBGC's motion.

I.  **Legal Framework**

　　A.  **Statutory Background**

　　　The Employee Retirement Income Security Act of 1974 ("ERISA" or "Act"), 29 U.S.C. § 1001 *et seq.*, is a "comprehensive and reticulated statute" imposing a wide range of requirements on private pension plans.  *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361 (1980).  One such requirement contained in ERISA is minimum vesting standards, which include a ceiling on the amount of time an employee may be required to work before his benefits vest.  *See* 29 U.S.C. § 1053(a)(2).  These requirements were enacted to protect employees who were otherwise being denied access to benefits despite long periods of employment.  *See Holt v. Winpisinger*, 811 F.2d 1532, 1536-37 (D.C. Cir. 1987) ("One of ERISA's principal aims in reforming the Nation's employee pension plans was to establish vesting ceilings so that employees with lengthy service would no longer lose accrued benefits simply because their employment terminated before they became eligible to retire.").  The vesting provisions contained in ERISA, however, apply only prospectively to "persons actually employed when [ERISA] became effective" on January 1, 1976.  *Cohen v. Martin's*, 694 F.2d 296, 298 (2d Cir. 1982) (reasoning that because the vesting requirements in 29 U.S.C. § 1053(a) refer to "employees" and are subject to the applicability provision in § 1061(b)(2), which limits application to "plan years beginning

2

after December 31, 1975," § 1053(a)'s requirements apply only to individuals employed as of that date); *Fremont v. McGraw-Edison Co.*, 606 F.2d 752, 755 (7th Cir. 1979) (applying similar reasoning and concluding that § 1053(a) "only protects against forfeiture the benefits of those who are in an employee status on January 1, 1976, or thereafter"); *see also Stewart v. Nat'l Shopmen Pension Fund*, 563 F. Supp. 773, 777 (D.D.C. 1983) (relying on above interpretations of the vesting requirements in distinguishing another ERISA provision on the basis that the latter provision referred to "participants" rather than "employees"), *rev'd on other grounds*, 730 F.2d 1552 (D.C. Cir. 1984).

ERISA, through Title IV of the Act, also established a mandatory federal insurance program to protect certain private-sector employees and their beneficiaries from being "deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans." *Pension Ben. Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 637 (1990) (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 720 (1984)); *see also Nachman Corp.*, 446 U.S. at 374 ("One of Congress' central purposes in enacting this complex legislation was to prevent the 'great personal tragedy' suffered by employees whose vested benefits are not paid when pension plans are terminated." (footnote omitted)). In addition,

Title IV created the PBGC, a wholly owned U.S. corporation that administers the insurance program. *See* 29 U.S.C. § 1301 *et seq.* Thus, "[w]hen a plan covered under Title IV terminates with insufficient assets to satisfy its pension obligations to the employees, the PBGC becomes trustee of the plan, taking over the plan's assets and liabilities.  The PBGC then uses the plan's assets to cover what it can of the benefit obligations." *LTV Corp.*, 496 U.S. at 637 (citing 29 U.S.C. § 1344).

The PBGC guarantees "all nonforfeitable benefits," 29 U.S.C. § 1322, which are defined as benefits "for which a participant has satisfied the conditions of entitlement under the plan." *Id.* § 1301(a)(8).  When the PBGC becomes the trustee of a terminated plan, the agency obtains both plan and participant records and determines how much each participant is or will be due.  Def.'s Mot. Summ. J. at 4.  The agency then sends a determination letter to the participant, who may challenge the benefit determination by appealing to the PBGC Appeals Board.  *See* 29 C.F.R. §§ 4003.21, 4003.51.  "In reaching its decision, the Appeals Board shall consider those portions of the file relating to the initial determination, all material submitted by the appellant and any third parties in connection with the appeal, and any additional information submitted by PBGC staff." *Id.* § 4003.59(a).  Such a decision constitutes the PBGC's final agency action.  *Id.* § 4003.59(b).  After exhausting these administrative remedies, a

4

plan participant may then seek judicial review of the PGBC's
determination.  29 U.S.C. § 1303(f).

**B.  Standard of Review**

Under Rule 56 of the Federal Rules of Civil Procedure,
summary judgment is appropriate if the pleadings on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law.  Fed. R. Civ. P.
56(c).  Material facts are those that "might affect the outcome
of the suit under the governing law."  *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary
judgment bears the initial burden of demonstrating an absence of
a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477
U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir.
1994).  In considering whether there is a triable issue of fact,
the court must draw all reasonable inferences in favor of the
non-moving party.  *Tao*, 27 F.3d at 638.  The non-moving party's
opposition, however, must consist of more than mere unsupported
allegations or denials and must be supported by affidavits or
other competent evidence setting forth specific facts showing
that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);
*see Celotex Corp.*, 477 U.S. at 324.

As a government agency, the PBGC is subject to the
provisions of the Administrative Procedure Act ("APA").  5 U.S.C.

§ 551 *et seq.*; *see LTV Corp.*, 496 U.S. at 636.  When reviewing agency action pursuant to the APA, the Court must determine whether the challenged decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  In applying the "arbitrary and capricious" standard, a court "may not supply a reasoned basis for the agency's action that the agency itself has not given," but a court should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  Upon review of an agency's action, the Court must engage in a "thorough, probing, in-depth review" to determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415-16 (1971).  The Court's review, however, is limited to the administrative record that was before the agency at the time that its decision was made.  5 U.S.C. § 706; *Florida Power & Light Co. v. Lorian*, 470 U.S. 729, 743-44 (1985).

## II.  Factual and Procedural Background

Plaintiff was employed by Youngstown Sheet and Tube Company ("YS&T") from May 19, 1959 until March 17, 1973 – a period totaling approximately thirteen years and nine months.

Administrative Record ("A.R.") 7.  As a YS&T employee, he was a participant in the YS&T Plan.  *See generally id.* at 122-81. Plaintiff claims that he left YS&T because he believed that the work environment was unhealthy, and attributes his subsequently diagnosed lung cancer to his employment at YS&T.  *Id.* at 114-15. In June 1991, plaintiff applied to LTV Steel Company, the successor to YS&T, for pension benefits.  *Id.* at 7.  The administrative record does not reveal the precise disposition of the application, but given plaintiff's subsequent application to the PBGC for benefits, it appears that plaintiff's LTV application was denied.

In September 2004, after the PBGC became the statutory trustee of the Plan, plaintiff applied to the agency for benefits.[1]  *Id.* at 4-5.  The PBGC issued a determination letter in October 2004, finding that plaintiff was not entitled to a pension benefit because he did not meet the fifteen-year service requirement contained in the YS&T Plan.  *Id.* at 14.

Plaintiff then filed an appeal with the PBGC Appeals Board, raising five issues for review.  *See id.* at 18-19.  Specifically, plaintiff claimed that he qualified for pension benefits because

---

[1]  Plaintiff's daughter, Vikki Montgomery, acted on her father's behalf in most of the proceedings before the PBGC.  Moreover, various parts of the administrative record refer to the claimant as the "Estate of Leroy Montgomery."  Plaintiff is alive, however, so that designation was erroneous. This Court will not distinguish between plaintiff and his daughter when discussing the proceedings below, but notes that plaintiff was at no point represented by legal counsel at the administrative level.

(1) the fifteen-year service requirement did not apply because of the vesting requirements contained in 29 U.S.C. § 1053(a); (2) he had worked "enough overtime hours (500) to qualify for the 15 years"; (3) he had served in the military for a number of years before his employment at YS&T began; (4) he retired on disability in 1990; and (5) other employees who had worked at the company for less time than he had were receiving pension benefits. *Id.*

The Appeals Board denied plaintiff's appeal in February 2005. First, it explained that 29 U.S.C. § 1053(a) did not apply to plaintiff because his employment with YS&T ended before 1974. *Id.* at 28. With respect to plaintiff's overtime hours, the Appeals Board stated that the YS&T Plan "measures continuous service from hire date until continuous service is broken, regardless of how many hours are worked." *Id.* The Appeals Board thus concluded that "overtime may not be used to increase [plaintiff's] service." *Id.* The PBGC likewise rejected plaintiff's claims regarding his military service and disability status, explaining that neither of those entitled him to pension benefits under either statutory provisions or the YS&T Plan language. *Id.* at 30.

Finally, the Appeals Board addressed plaintiff's statement about other employees receiving pensions while having worked for less time than plaintiff:

> Plan provisions are complicated and have varying
> effective dates. For example, with only 5 years of

> service a Plan participant who worked after 1988 could
> earn a vested benefit.  Thus, seemingly similarly-
> situated participants may be affected by different Plan
> provisions.  Therefore, other participants receiving a
> benefit with less service than [plaintiff] do not show
> [plaintiff] is entitled to a benefit.

*Id.*  The Appeals Board also explained that the PBGC "will always, even after an appeal is closed, consider any new, specific evidence that you may be entitled to a different benefit."  *Id.* Plaintiff corresponded with the agency two more times in 2005, but the agency maintained its position that plaintiff was not entitled to benefits under the YS&T Plan.

Plaintiff, acting through counsel, filed the instant lawsuit in December 2007.  In his Complaint, plaintiff alleges that the PBGC's determination "was an abuse of discretion and was not in accordance with law" because (1) plaintiff worked "a substantial number of overtime hours such that he effectively had far more than 15 years of continuous service"; (2) hours of service, not calendar years, were used to determine pension eligibility for other YS&T Plan participants whose employment ended before ERISA went into effect; and (3) the fifteen-year service requirement was "unreasonable and unconscionable" because it was actively concealed from plaintiff and other YS&T Plan participants by the company.  Compl. ¶ 13.  The PBGC's Motion for Summary Judgment, filed in May 2008, is now ripe for decision by this Court.


## III.  Discussion

The agency's argument in favor of summary judgment is straightforward, mirroring the determination that it made in the administrative proceedings:  Plaintiff "did not have the requisite years of service to receive a benefit under the YS&T Plan that were in effect when he retired in 1973.  Therefore, he is not entitled to a benefit."  Def.'s Mot. Summ. J. at 3.  In particular, the PBGC argues that section 2.6 of the Pension Agreement for Employees of Youngstown Sheet and Tube Company (effective July 31, 1972) ("the YS&T Agreement") unambiguously requires a participant to have fifteen years of continuous service in order to be eligible for benefits under the YS&T Plan.[2]  Furthermore, according to the PBGC, section 5.1 of the YS&T Agreement makes clear that service "is measured by the length of time that a participant was employed, not the number of hours worked."  Def.'s Mot. Summ. J. at 9.  The agency therefore argues that even if plaintiff could demonstrate he worked overtime hours, such a showing would not be relevant to his benefit determination.  *Id.*

Plaintiff, in his Opposition to the agency's Motion for Summary Judgment, acknowledges that "the full extent of [his

---

[2]  Although multiple pension agreements – reflecting the various plans that have succeeded the YS&T Agreement – appear in the administrative record, the parties agree that the YS&T Agreement is the governing document in this case.  *See* Def.'s Mot. Summ. J. at 8 (referring to the YS&T Agreement as the "governing document for the YS&T Plan in 1973"); Pl.'s Opp'n to Def.'s Mot. Summ. J. at 8 (citing to the YS&T Agreement when referring to "[t]he relevant terms of the pension agreement in effect at the time of Plaintiff's resignation").

overtime hours] was not developed in the administrative record."
Pl.'s Opp'n to Def.'s Mot. Summ. J. at 4.  He argues, however,
that "YS&T's practice was to calculate a participant's years of
continuous service based on the total number of hours worked
rather than on the number of calendar years the individual was
employed."[3]  *Id.* at 8.  According to plaintiff, this past
practice created an implied term in the YS&T Agreement.  *See id.*
at 7.  Furthermore, he claims that because the administrative
record does not contain evidence as to "whether this implied
contractual term existed and, if it did, whether Plaintiff had
sufficient overtime hours to qualify for a pension benefit under
it," the Court should remand to the agency for additional
investigation.  *Id.* at 8 (citing *Florida Power & Light Co.*, 470
U.S. at 743-44).

Upon review of the relevant terms of the YS&T Agreement, the
Court concludes that the PBGC's interpretation of that agreement
is not only reasonable, but indeed is the only reasonable
reading.  *See, e.g., United Mine Workers of Am. 1974 Pension v.*

_____

[3]  The PBGC argues that plaintiff failed to make this argument during
the administrative proceedings and that it is therefore outside the scope of
this Court's appropriate consideration.  Def.'s Mot. Summ. J. at 10.  As
discussed above, a review of the administrative record demonstrates that
plaintiff did raise the argument that the overtime hours were sufficient to
qualify him for a benefit under the YS&T Plan.  *See* A.R. 18-19.  That argument
must be construed liberally because plaintiff proceeded *pro se* before the
agency.  *See Calloway v. Brownlee*, 366 F. Supp. 2d 43, 55 (D.D.C. 2005)
("[T]his Court and the agency must take pains to protect the rights of *pro se*
parties against the consequences of technical errors." (citing *Haines v.
Kerner*, 404 U.S. 519, 520 (1972)).  The Court therefore rejects the PBGC's
argument that this particular claim has been waived.

11

*Pittston* Co., 984 F.2d 469, 473 (D.C. Cir. 1993) ("In cases
requiring the court to construe the meaning of a contract, the
dispute may be resolved as a matter of law if the contested
agreement admits of only one reasonable interpretation.").  As
the agency notes, section 5.1 does not speak in terms of hours.
The term "hours" actually appears nowhere in the YS&T Agreement.
Rather, section 5.1 measures continuous service from the hire
date to the date that a participant terminates employment with
the company.  A.R. 36 (YS&T Agreement § 5.1) (calculating
"continuous service" as service "from the participant's last
hiring date" to a number of fixed dates, including resignation,
discharge, and termination).

In short, the unambiguous terms of the YS&T Agreement simply
do not contemplate the consideration of hours worked – whether
regular hours or overtime hours – in the calculation of
continuous service.[4]  This Court therefore rejects plaintiff's
contention that the administrative record is somehow incomplete
for failing to demonstrate how many overtime hours plaintiff
actually worked.  Contrary to plaintiff's argument, the Court
agrees with the PBGC's assertion that such information is
irrelevant to the determination of benefits in this case and that
a remand to the agency is unnecessary.

---

[4]  Likewise, the application for benefits filled out by plaintiff in
1991 included spaces in which to report years, months, and days of employment,
but provided no place to account for hours worked.  A.R. 7.

In light of the plain and unambiguous language of the YS&T
Agreement, the Court is also unpersuaded by plaintiff's argument
that an implied term of the agreement was created by the
company's alleged practice of calculating continuous service
based on hours worked.  Although plaintiff correctly states that
"[a]n employer's established past practice can become an implied
term of a collective bargaining agreement," *Bonnell/Tredegar
Industries, Inc. v. NLRB*, 46 F.3d 339, 344 (4th Cir. 1995), the
agency did not abuse its discretion in this case by failing to
investigate whether – more than thirty years ago – YS&T
calculated the continuous service of other employees in a manner
that would have been wholly inconsistent with the express,
unambiguous terms of the YS&T Agreement.

Finally, the Court finds significant that a 1980 regulation
promulgated by the Department of Treasury, an agency partially
responsible for administering ERISA, expressly authorizes an
employers' use of the exact method contained in the YS&T Plan
when calculating a plan participant's length of service for
vesting purposes.[5]  *See* 26 C.F.R. § 1.410(a)-7(a); *Johnson v.
Buckley*, 356 F.3d 1067, 1072 (9th Cir. 2004) (upholding against

---

[5] Of course, ERISA prohibits employers to require the length of service
required by the YS&T Plan.  But plaintiff has apparently conceded in this case
that 29 U.S.C. § 1053(a) does not apply to him.  *See generally* Compl. (no
reference to ERISA's vesting requirements).  The Court also agrees with the
agency that plaintiff abandoned his argument that the YS&T Plan's vesting
requirement was unconscionable and unreasonable by failing to address that
claim in his opposition to the PBGC's motion.  Based on that conclusion, the
Court need not address whether that argument was properly presented at the
administrative level.

challenge the "elapsed-time regulation," which permits to
calculate entitlement to benefits "with reference to the total
period of time which elapses while the employee is employed"
(quoting 26 C.F.R. § 1.410(a)-7(a)(1)(ii)); *Swaida v. IBM
Retirement Plan*, 570 F. Supp. 482, 490 (S.D.N.Y. 1983) (same),
*aff'd* 728 F.2d 159 (2d Cir. 1984).  The regulation lends weight
to the PBGC's contention that its interpretation of the YS&T
Agreement is reasonable, particularly because the method
described and authorized by the 1980 regulation "was a reflection
of the manner in which vesting and benefit accrual for many
private retirement benefit plans were already being calculated
across the country."  *Johnson*, 356 F.3d at 1072; *see also Swaida*,
570 F. Supp. at 489 (explaining that before the passage of ERISA,
the elapsed-time method "was the almost universal method . . . ,
accepted by labor and management alike to measure an employee's
service for vesting purposes").

    In sum, the Court agrees with the PBGC that plaintiff is not
entitled to benefits under the YS&T Plan because he did not meet
the continuous-service requirement in the YS&T Agreement.  The
agency's determination therefore could not have been "arbitrary,
capricious, an abuse of discretion, or otherwise not in
accordance with law."  5 U.S.C. § 706(2)(A).


**IV.  Conclusion**

14

For the foregoing reasons, the PBGC's Motion for Summary Judgment is **GRANTED**.  An appropriate Order accompanies this Memorandum Opinion.

**Signed:      Emmet G. Sullivan**
**             United States District Judge**
**             March 2, 2009**